Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles H. Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Cody Dixon*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY DIXON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HONEST COMPANY, INC., NIKOLAOS VLAHOS, KELLY KENNEDY, JESSICA WARREN, KATIE BAYNE, SCOTT DAHNKE, ERIC LIAW, JEREMY LIEW, AVIK PRAMANIK, MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, BOFA SECURITIES, INC., CITIGROUP GLOBAL MARKETS, INC., WILLIAM BLAIR & COMPANY, L.L.C., GUGGENHEIM SECURITIES, LLC, TELSEY ADVISORY GROUP LLC, C.L. KING & ASSOCIATES, INC., LOOP CAPITAL MARKETS LLC, PENSERRA SECURITIES LLC, and SAMUEL A. RAMIREZ & COMPANY, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

CLASS ACTION COMPLAINT

Plaintiff Cody Dixon ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by The Honest Company, Inc. ("Honest" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Honest; and (c) review of other publicly available information concerning Honest.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Honest common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's May 2021 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2. Honest claims it is a "digitally-native, mission-driven brand focused on leading the clean lifestyle movement, creating a community for conscious consumers and seeking to disrupt multiple consumer product categories." Honest's three product categories are (1) Diapers and Wipes, (2) Skin and Personal Care, and (3) Household and Wellness. According to Honest, these three categories represented 63%, 26% and 11% of Honest's 2020 revenue, respectively.

3. On May 6, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 6,451,613 shares of common stock, plus an additional 3,871,050 shares of common stock pursuant to the underwriter's option to purchase additional shares at a price of $16.00 per share. Certain existing stockholders also sold an aggregate of

19,355,387 shares of common stock in the IPO for $16.00 per share, including 15,229,543 by the executive officers and directors of Honest as a group (excluding the underwriters' over-allotment option). The Company received proceeds of approximately $91.1 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used for "general corporate purposes" including "operating expenses, working capital and capital expenditures for future growth, including marketing and direct-to-consumer advertising investments, innovation and adjacent product category expansion, international growth investment and organizational capabilities investments." Honest further claimed that it "may also use a portion of the net proceeds . . . to acquire complementary businesses, products, services or technologies."

4. Approximately two months after the IPO, on August 13, 2021, before the market opened, Honest issued a press release titled "The Honest Company Reports Second Quarter 2021 Financial Results." Therein, Honest reported a net loss of $20 million for the second quarter of 2021, as compared to a net loss of only $0.4 million for the second quarter of 2020. Honest disclosed that its revenue grew only 3% as compared to the second quarter of 2020, because it was negatively impacted by "an estimated $3.7 million COVID-19 stock-up impact primarily in Diapers and Wipes in the prior year period." Honest also disclosed that its Diapers and Wipes category revenue declined 2% compared to the second quarter of 2020. Honest further disclosed that "Household and Wellness revenue declined 6% from the second quarter of 2020 as consumer and customer demand for sanitization products decreased as consumers became vaccinated and customers managed heavy levels of inventory."

5. On this news, the Company's stock price fell $3.98 per share, or 28%, to close at $10.07 per share on August 13, 2021, on unusually heavy trading volume.

6. On August 19, 2021, the Company's stock price closed at an all-time low of $9.16 per share, a nearly 43% decline from the $16.00 per share IPO price.

7. The Registration Statement was materially false and misleading and omitted: (1) that, prior to the IPO, the Company's results had been significantly impacted by a multimillion-dollar COVID-19 stock-up for products in the Diapers and Wipes category and Household and Wellness category; (2) that, at the time of the IPO, the Company was experiencing decelerating demand for such products; (3) that, as a result, the Company's financial results would likely be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13. Plaintiff Cody Dixon, as set forth in the accompanying certification, incorporated by reference herein, purchased Honest common stock pursuant or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Honest is incorporated under the laws of the Delaware with its principal executive offices located in Los Angeles, California. Honest's shares trade on the NASDAQ exchange under the symbol "HNST."

15. Defendant Nikolaos Vlahos ("Vlahos") was the Chief Executive Officer ("CEO") and a Director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Kelly Kennedy ("Kennedy") was the Executive Vice President and Chief Financial Officer ("CFO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Jessica Warren ("Warren") was the Chief Creative Officer and a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendant Katie Bayne ("Bayne") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant Scott Dahnke ("Dahnke") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendant Eric Liaw ("E. Liaw") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21. Defendant Jeremy Liew ("J. Liew") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22. Defendant Avik Pramanik ("Pramanik") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23. Defendants Vlahos, Kennedy, Warren, Bayne, Dahnke, E. Liaw, J. Liew, and Pramanik are collectively referred to hereinafter as the "Individual Defendants."

24. Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for the Company's IPO. In the IPO, Morgan Stanley agreed to purchase 9,627,997 shares of the Company's common stock, exclusive of the over-allotment option.

25. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO. In the IPO, J.P. Morgan agreed to purchase 7,166,405 shares of the Company's common stock, exclusive of the over-allotment option.

26. Defendant Jefferies LLC ("Jefferies") served as an underwriter for the Company's IPO. In the IPO, Jefferies agreed to purchase 3,771,792 shares of the Company's common stock, exclusive of the over-allotment option.

27. Defendant BofA Securities, Inc. ("BofA") served as an underwriter for the Company's IPO. In the IPO, BofA agreed to purchase 1,191,092 shares of the Company's common stock, exclusive of the over-allotment option.

28. Defendant Citigroup Global Markets, Inc. ("Citigroup") served as an underwriter for the Company's IPO. In the IPO, Citigroup agreed to purchase 1,191,092 shares of the Company's common stock, exclusive of the over-allotment option.

29. Defendant William Blair & Company, L.L.C. ("William Blair") served as an underwriter for the Company's IPO. In the IPO, William Blair agreed to purchase 952,874 shares of the Company's common stock, exclusive of the over-allotment option.

30. Defendant Guggenheim Securities, LLC ("Guggenheim") served as an underwriter for the Company's IPO. In the IPO, Guggenheim agreed to purchase 774,210 shares of the Company's common stock, exclusive of the over-allotment option.

31. Defendant Telsey Advisory Group LLC ("Telsey") served as an underwriter for the Company's IPO. In the IPO, Telsey agreed to purchase 416,882 shares of the Company's common stock, exclusive of the over-allotment option.

32. Defendant C.L. King & Associates, Inc. ("C.L. King") served as an underwriter for the Company's IPO. In the IPO, C.L. King agreed to purchase 178,664 shares of the Company's common stock, exclusive of the over-allotment option.

33. Defendant Loop Capital Markets LLC ("Loop") served as an underwriter for the Company's IPO. In the IPO, Loop agreed to purchase 178,664 shares of the Company's common stock, exclusive of the over-allotment option.

34. Defendant Penserra Securities LLC ("Penserra") served as an underwriter for the Company's IPO. In the IPO, Penserra agreed to purchase 178,664 shares of the Company's common stock, exclusive of the over-allotment option.

35. Defendant Samuel A. Ramirez & Company, Inc. ("Samuel A. Ramirez") served as an underwriter for the Company's IPO. In the IPO, Samuel A. Ramirez agreed to purchase 178,664 shares of the Company's common stock, exclusive of the over-allotment option.

36. Defendants Morgan Stanley, J.P. Morgan, Jefferies, BofA, Citigroup, William Blair, Guggenheim, Telsey, C.L. King, Loop, Penserra, and Samuel A. Ramirez are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Honest common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's May 2021 IPO. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Honest's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Honest shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Honest or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Honest; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is

impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

43. Honest claims it is a "digitally-native, mission-driven brand focused on leading the clean lifestyle movement, creating a community for conscious consumers and seeking to disrupt multiple consumer product categories." Honest's three product categories are (1) Diapers and Wipes, (2) Skin and Personal Care, and (3) Household and Wellness. According to Honest, these three categories represented 63%, 26% and 11% of Honest's 2020 revenue, respectively.

### The Company's False and/or Misleading Registration Statement and Prospectus

44. On April 9, 2021, the Company filed its initial registration statement on Form S-1 with the SEC, which forms part of the Registration Statement.

45. On April 26, 2021, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on May 4, 2021.

46. On May 6, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 6,451,613 shares of common stock, plus an additional 3,871,050 shares of common stock pursuant to the underwriter's option to purchase additional shares at a price of $16.00 per share. Certain existing stockholders also sold an aggregate of 19,355,387 shares of common stock in the IPO for $16.00 per share, including 15,229,543 by the executive officers and directors of Honest as a group (excluding the underwriters' over-allotment option). The Company received proceeds of

approximately $91.1 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used FOR "general corporate purposes" including "operating expenses, working capital and capital expenditures for future growth, including marketing and direct-to-consumer advertising investments, innovation and adjacent product category expansion, international growth investment and organizational capabilities investments." Honest further claimed that it "may also use a portion of the net proceeds . . . to acquire complementary businesses, products, services or technologies."

47. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

48. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

49. With respect to Honest's past performance and prospects, the Registration Statement stated, in relevant part:

> As we have executed against our Innovation Strategy, we have been successful in reinvigorating growth, improving product mix, significantly enhancing our gross margin profile and turning profitable on an adjusted EBITDA basis. We have achieved the following financial results:
>
> - From 2018 to 2020, we grew revenue by a 12% compound annual growth rate, or CAGR, from $237.9 million to $300.5 million, with only a slight decline in 2019 as we offset declines from Non-Core Products;
>
> - We achieved 27.6% year-over-year revenue growth in 2020, recording year-over-year revenue growth rates of 16.4%, 35.5%, and 116.5% in our Diapers and Wipes, Skin and Personal Care and Household and Wellness categories, respectively;
>
> - We also increased gross margin by 1,080 basis points from 25.1% in 2018 to 35.9% in 2020, by driving growth in higher-margin products and channels, leveraging our strategic relationships with retailers, gaining leverage on fixed costs in

- fulfillment, as well as executing on accretive product innovation; and

- In 2020, we reported a net loss of $14.5 million and adjusted EBITDA of $11.2 million, or 4% of revenue.

50. With respect to the Impact of COVID 19, the Registration Statement stated that "[c]hanges in macro-level consumer spending trends, including as a result of the COVID-19 pandemic, *could* result in fluctuations in our operating results." (Emphasis added.) It further stated, in relevant part:

> The COVID-19 pandemic has caused general business disruption worldwide beginning in January 2020. The full extent to which the COVID-19 pandemic will directly or indirectly impact our cash flow, business, financial condition, results of operations and prospects will depend on future developments that are uncertain.
>
> As a result of the COVID-19 pandemic, we temporarily closed our headquarters, supported our employees and contractors to work remotely, and implemented travel restrictions. These actions represented a significant change in how we operated our business, but we believe that we successfully navigated this transition. In an effort to provide a safe work environment for our employees, we have implemented various social distancing measures, including replacing in-person meetings with virtual interactions. We will continue to take actions as may be required or recommended by government authorities or as we determine are in the best interests of our employees and other business partners in light of the pandemic.
>
> We have experienced relatively minor impacts on our inventory availability and delivery capacity since the outbreak, none of which has materially impacted our ability to service our consumers and retail and third-party ecommerce customers. We have taken measures to bolster key aspects of our supply chain, such as securing secondary suppliers and ensuring sufficient inventory to support our continued growth in the face of the pandemic. We continue to work with our existing manufacturing, logistics and other supply chain partners to ensure our ability to service our consumers and retail and third-party ecommerce customers.
>
> ***We believe COVID-19 has been one of the drivers of demand in our Digital channel as consumers have shifted to online shopping amid the pandemic. Additionally, our Household and Wellness product category has benefitted from increasing demand for sanitization products. We accelerated our development timeline for certain product launches, launching our disinfecting spray and alcohol wipes in 2020. There is no assurance that we will continue to experience such increases in demand.*** We may see a decline in use of online shopping and demand for sanitization products when the COVID-19 pandemic subsides.
>
> The operations of our retail partners, manufacturers and suppliers have also been impacted by the COVID-19 pandemic. While the duration and

extent of the COVID-19 pandemic depends on future developments that cannot be accurately predicted at this time, it has already had an adverse effect on the global economy and the ultimate societal and economic impact of the COVID-19 pandemic remains unknown. In particular, the conditions caused by this pandemic may negatively impact collections of accounts receivable and reduce expected spending from new consumers, all of which could adversely affect our business, financial condition, results of operations and prospects during fiscal 2021 and potentially future periods.

(Emphasis added.)

51. The Registration Statement was materially false and misleading and omitted: (1) that, prior to the IPO, the Company's results had been significantly impacted by a multimillion-dollar COVID-19 stock-up for products in the Diapers and Wipes category and Household and Wellness category; (2) that, at the time of the IPO, the Company was experiencing decelerating demand for such products; (3) that, as a result, the Company's financial results would likely be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## The Subsequent Disclosure

52. On August 13, 2021, before the market opened, Honest issued a press release titled "The Honest Company Reports Second Quarter 2021 Financial Results." Therein, Honest reported a net loss of $20 million for the second quarter of 2021, as compared to a net loss of only $0.4 million for the second quarter of 2020. Honest disclosed that its revenue grew only 3% as compared to the second quarter of 2020, because it was negatively impacted by "an estimated $3.7 million COVID-19 stock-up impact primarily in Diapers and Wipes in the prior year period." Honest also disclosed that its Diapers and Wipes category revenue declined 2% compared to the second quarter of 2020. Honest further disclosed that "Household and Wellness revenue declined 6% from the second quarter of 2020 as consumer and customer demand for sanitization products decreased as consumers became vaccinated and

customers managed heavy levels of inventory." The press release stated, in relevant part:

> LOS ANGELES, Aug. 13, 2021 (GLOBE NEWSWIRE) -- The Honest Company (NASDAQ: HNST), a digitally native, mission-driven brand focused on leading the clean lifestyle movement, reported second quarter 2021 financial results for the three and six months ended June 30, 2021.
>
> "The underlying strength and financial performance of our overall business for the first half of 2021 reflects the ongoing success of our strategic initiatives focused on Content, Community, Commerce, and our powerful innovation and category expansion," said Nick Vlahos, Chief Executive Officer of The Honest Company. "For the first half of 2021, we were pleased to deliver 8% revenue and volume growth on top of the accelerated COVID stock-up surge of 25% revenue growth that we saw in the first half of 2020 as compared to the first half of 2019. We also exceeded our gross margin expectations for the overall business in the first half of 2021, showing the strength of our business at a time when our entire industry faced a challenging input cost, inventory and supply chain environment."
>
> Vlahos continued, "During the second quarter we saw positive consumer response to our new Clean Conscious Diaper and marketing innovation with over 17% retail consumption growth for Honest's Diapers, Wipes and Personal Care products as measured by syndicated data for the thirteen-weeks ended June 27, 2021. This growth is on top of the significant COVID-19 stock-up we experienced in the Diapers and Wipes category in 2020. As we look to the remainder of the year, we continue to have confidence in our three year strategic plan, Strategy 2023, and are focused on executing with excellence to deliver shareholder value over the long-term and solidify Honest's position as the next generation, modern CPG company."
>
> **Second Quarter Highlights**
>
> - **Revenue** grew 3% from the second quarter of 2020; excluding an estimated $3.7 million COVID-19 stock-up impact primarily in Diapers and Wipes in the prior year period, revenue growth was 9%:
>   - **Skin and Personal Care** revenue increased 16% from the second quarter of 2020 and increased 39% as compared to the second quarter of 2019.
>   - **Diapers and Wipes** declined 2% as compared to the second quarter of 2020 with mid-single digit growth in diapers offset by the 2020 COVID-19 stock-up impact in the prior year period. Diapers and Wipes grew 17% as compared to the second quarter of 2019.
>   - **Household and Wellness** revenue declined 6% from the second quarter of 2020 as consumer and customer demand for sanitization products decreased as consumers became

CLASS ACTION COMPLAINT

12

vaccinated and customers managed heavy levels of inventory. Household and Wellness declined 31% as compared to the second quarter of 2019 as we simplified the product portfolio while discontinuing certain non-core products that did not align with our revamped product strategy.

- **Gross margin** was 36% representing a decrease of 50 basis points from the second quarter of 2020 and expansion of 710 basis points from the second quarter of 2019; notably, gross margin expanded 110 basis points from the first quarter of 2021; the gross margin decline from the second quarter of 2020 was driven by more normalized levels of trade spend; the expansion in gross margin versus the second quarter of 2019 and the first quarter of 2021 was driven in part by our cost savings and product mix initiatives

- **Net loss** was $20.0 million (including one-time IPO related costs and other transaction-related expenses) and **adjusted EBITDA** was a loss of $0.8 million for the second quarter of 2021

53. On this news, the Company's stock price fell $3.98 per share, or 28%, to close at $10.07 per share on August 13, 2021, on unusually heavy trading volume. On August 19, 2021, the Company's stock price closed at an all-time low of $9.16 per share, a nearly 43% decline from the $16.00 per share IPO price.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act

### (Against All Defendants)

54. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

56. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

57. Honest is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

58. As issuer of the shares, Honest is strictly liable to Plaintiff and the Class for the misstatements and omissions.

59. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

60. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

61. Plaintiff acquired Honest shares pursuant and/or traceable to the Registration Statement for the IPO.

62. Plaintiff and the Class have sustained damages. The value of Honest shares has declined substantially subsequent to and due to the Defendants' violations.

### SECOND CLAIM

### Violation of Section 15 of the Securities Act

### (Against the Individual Defendants)

63. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

64. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

65. The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Honest within the meaning of Section 15 of the Securities Act. The Individual Defendants had the power and influence and exercised the same to cause Honest to engage in the acts described herein.

66. The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

67. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: September 15, 2021

GLANCY PRONGAY & MURRAY LLP

By:   /s/ Charles H. Linehan
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Plaintiff Cody Dixon*

CLASS ACTION COMPLAINT

15

## SWORN CERTIFICATION OF PLAINTIFF
## THE HONEST COMPANY, INC. (HNST) SECURITIES LITIGATION

I, Cody Dixon, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the The Honest Company, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in The Honest Company, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

8/19/2021                              *[signature: Cody D]*
_____                     _____
     Date                                      Cody Dixon

**Cody Dixon's Transactions in The Honest Company, Inc. (HNST)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/18/2021 | Bought | 909 | $16.2400 |
| 6/18/2021 | Bought | 264 | $16.2600 |
| 6/18/2021 | Bought | 67 | $16.2700 |
| 6/18/2021 | Bought | 1,868 | $16.2800 |
| 6/18/2021 | Bought | 1,616 | $16.2900 |
| 6/18/2021 | Bought | 2,395 | $16.2782 |