**LABATON SUCHAROW LLP**
Jonathan Gardner*
David J. Schwartz*
Alfred L. Fatale III*
Lisa Strejlau*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
dschwartz@labaton.com
afatale@labaton.com
lstrejlau@labaton.com

*admitted *pro hac vice*

*Lead Counsel for Lead Plaintiff
and the Proposed Class*

**THORNTON LAW FIRM LLP**
David Bricker (State Bar No. 158896)
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone: (310) 282-8676
Facsimile: (310) 388-5316
Email: dbricker@tenlaw.com

*Liaison Counsel for Lead Plaintiff and
the Proposed Class*

[*Additional counsel on signature page*]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE HONEST COMPANY, INC. SECURITIES LITIGATION | **2:21-CV-07405-MCS-PLA** <br><br> ECF CASE <br><br> **LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AND AMENDED COMPLAINT** <br><br> Date:  April 18, 2022 <br> Time: 9:00 a.m. <br> Judge: Hon. Mark C. Scarsi <br> Courtroom:  7C |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

I.  PRELIMINARY STATEMENT ................................................................................1

II.  FACTUAL BACKGROUND ...................................................................................4

III.  APPLICABLE LEGAL STANDARDS....................................................................5

IV.  THE COMPLAINT SUFFICIENTLY ALLEGES ACTIONABLE
MISSTATEMENTS AND OMISSIONS...................................................................8

    A.  Statements and Omissions Concerning Honest's Product
Innovation and its Clean Conscious Diaper Were Materially False
and Misleading .............................................................................................8

    B.  Statements and Omissions Concerning Honest's COVID-19
Inventory Stock-Up Were Materially False and Misleading ..................14

V.  THE ALLEGED MISSTATEMENTS AND OMISSIONS ARE
MATERIAL..............................................................................................................17

    A.  The Misstatements Were Not Excusable Puffery ...................................18

    B.  The Misstatements Are Not Protected by the Bespeaks Caution
Doctrine ......................................................................................................20

    C.  Defendants' Remaining Materiality Arguments are Unavailing ...........21

VI.  DEFENDANTS HAD AN INDEPENDENT DUTY—BUT FAILED—
TO DISCLOSE TRENDS, RISKS, AND UNCERTAINTIES
SURROUNDING HONEST'S PROBLEMATIC PRODUCT
INNOVATION AND CHANGING CONSUMER BEHAVIOR....................23

VII.  CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3226701 Canada, Inc. v. Qualcomm, Inc.*,
  2017 WL 4759021 (S.D. Cal. Oct. 20, 2017).................................................9, 10

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ............................................................................10, 11

*Murphy v. Precision Castparts Corp.*,
  2017 WL 3084274 (D. Or. June 27, 2017).........................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................6

*In re Atossa Genetics Inc. Sec. Litig.*,
  868 F.3d 784 (9th Cir. 2017) .......................................................................20, 24

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
  851 F. Supp. 2d 746 (S.D.N.Y. 2012) ...............................................................21

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................5, 6

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ...........................................................9, 11, 12, 22

*Bielousov v. GoPro, Inc.*,
  2017 WL 3168522 (N.D. Cal. July 26, 2017) ...................................................19

*In re BioMarin Pharm. Inc. Sec. Litig.*,
  2022 WL 164299 (N.D. Cal. Jan. 6, 2022).........................................................13

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
  2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ..................................16, 17, 22, 23

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) .............................................................................15

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) ......................................................19

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) .......................................................................7

*In re Coty Inc. Sec. Litig.*, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)...............................................11, 12

*In re CPI Card Grp. Inc. Sec. Litig.*, 2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017)....................................................25

*Curry v. Yelp Inc.*, 2015 WL 1849037 (N.D. Cal. Apr. 21, 2015)......................................................9

*In re Facebook Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487 (S.D.N.Y. 2013) ...................................................................24

*In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809 (N.D. Cal. 2019).................................................................18

*Flynn v. Sientra, Inc.*, 2016 WL 3360676 (C.D. Cal. June 9, 2016)......................................................15

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Circ. 1994) ................................................................................7

*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983).........................................................................................6, 7

*Hunt v. Bloom Energy Corp.*, 2021 WL 4461171 (N.D. Cal. Sept. 29, 2021)..................................................13

*In re IAC/InterActive Corp. Sec. Litig.*, 695 F. Supp. 2d 109 (S.D.N.Y. 2010) ...........................................................11, 12

*In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983 (S.D. Cal. 2005) ...............................................................13

*Johnson v. Riverside Healthcare Sys. LP*, 534 F.3d 1116 (9th Cir. 2008) ............................................................................7

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ..........................................................3, 5, 11, 15

*Knollenberg v. Harmonic, Inc.*,
   152 F. App'x 674 (9th Cir. 2005) ..................................................................7

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   242 F. Supp. 3d 950 (C.D. Cal. 2017) ........................................................11

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ......................................................................21

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ....................................................................12

*Lomingkit v. Apollo Educ. Grp. Inc.*,
   275 F. Supp. 3d 1139 (D. Ariz. 2017) ........................................................15

*Lorenz v. Safeway, Inc.*,
   241 F. Supp. 3d 1005 (N.D. Cal. 2017) ......................................................17

*Mahaptra v. Truecar, Inc.*,
   2015 WL 12552062 (C.D. Cal. Dec. 9, 2015) ..............................................9

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) .......................................................................................7

*Metzler Inv. GMBH v. Corinthian Colleges., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ....................................................................12

*Mingbo Cai v. Switch, Inc.*,
   2019 WL 3065591 (D. Nev. July 12, 2019) ................................................24

*Mirmehdi v. United States*,
   689 F.3d 975 (9th Cir. 2012) ......................................................................25

*Mulligan v. Impax Lab'ys, Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014) ..............................................17, 18, 19

*In re Netflix, Inc. Sec. Litig.*,
   2005 WL 1562858 (N.D. Cal. June 28, 2005) ..............................................9

*In re Network Equip. Techs., Inc. Litig.*,
   762 F.Supp. 1359 (N.D.Cal.1991) ..............................................................13

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) ....................................................................12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .................................................................................6, 7, 8

*Ostrofe v. H.S. Crocker Co., Inc.*,
670 F.2d 1378 (9th Cir. 1982), *judgment vacated on other grounds*,
460 U.S. 1007 (1983) ....................................................................................2

*Pirani v. Slack Techs., Inc.*,
445 F. Supp. 3d 367 (N.D. Cal. 2020), *motion to certify appeal
granted*, 2020 WL 7061035 (N.D. Cal. June 5, 2020) ................................22, 24

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) .....................................................................18

*In re Restoration Robotics, Inc. Sec. Litig.*,
417 F. Supp. 3d 1242 (N.D. Cal. 2019)......................................................13, 23

*Robb v. Fitbit Inc.*,
216 F. Supp. 3d 1017 (N.D. Cal. 2016)...........................................................9

*Roberts v. Zuora, Inc.*,
2020 WL 2042244 (N.D. Cal. Apr. 28, 2020)................................................19

*Rubke v. Capitol Bancorp Ltd*,
551 F.3d 1156 (9th Cir. 2009) ..................................................................6, 17

*S.E.C. v. Todd*,
642 F.3d 1207 (9th Cir. 2011) .....................................................................24

*Sanders v. Realreal, Inc.*,
2021 WL 1222625 (N.D. Cal. Mar. 31, 2021) ...............................................13

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ....................................................................22, 23

*Smilovits v. First Solar, Inc.*,
2012 WL 6574410 (D. Ariz. Dec. 17, 2012).................................................19

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) .......................................................................20

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .....................................................................23

*Sudunagunta v. NantKwest, Inc.*,
   2017 WL 8810760 (C.D. Cal. Sept. 20, 2017) ....................................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..............................................................................................5

*In re Tesla, Inc. Sec. Litig.*,
   477 F. Supp. 3d 903 (N.D. Cal. 2020)..................................................................13

*In re Thoratec Corp. Sec. Litig.*,
   2006 WL 1305226 (N.D. Cal. May 11, 2006)......................................................22

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
   33 F. Supp. 3d 1107 (N.D. Cal. 2014), *aff'd in part, rev'd in part and
   remanded*, 669 F. App'x 878 (9th Cir. 2016)......................................................23

*In re Violin Memory Sec. Litig.*,
   2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) .......................................................7

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   282 F. Supp. 3d 1074 (N.D. Cal. 2017)................................................................18

*Zaghian v. Farrell*,
   675 F. App'x 718 (9th Cir. 2017).........................................................................24

*Zucco Partners, LLC v. Digimare Corp.*,
   552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ..............................12

**Statutes**

15 U.S.C. § 77k(a) ...........................................................................................................6

15 U.S.C. § 77k(e) ...........................................................................................................2

15 U.S.C. § 77o ................................................................................................................6

Securities Act of 1933..............................................................................................*passim*

Securities Exchange Act of 1934.......................................................................................7

**Other Authorities**

17 C.F.R. § 229.105(c) ...................................................................................................24

17 C.F.R. § 229.303(a)(2)(ii)..........................................................................................23

17 C.F.R. § 230.408 ...............................................................................................24

Rule 8(a)...........................................................................................................7, 8, 13

Rule 9(b) ...................................................................................................................7

Rule 12(b)(6)............................................................................................................5

Rule 408 .................................................................................................................24

Lead Plaintiff Kathie Ng ("Lead Plaintiff") respectfully submits this memorandum in opposition to Defendants' Motion to Dismiss the Consolidated and Amended Complaint and Memorandum of Points and Authorities ("MTD") and the Underwriter Defendants' Joinder therein.[1] ECF Nos. 60, 62.

## I.   PRELIMINARY STATEMENT

This strict liability securities class action, brought solely under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o, arises from Honest's May 2021 IPO. As set forth more fully herein and in the CAC, Honest's IPO registration statement and prospectus (the "Offering Documents") were materially false and misleading and omitted material facts in two critical respects.

***First***, the Offering Documents failed to disclose that, ***at the time of the IPO***, Honest's Clean Conscious Diaper—the latest of its purportedly innovative, safe, and effective products—was neither safe nor effective. As a result, the Offering Documents misrepresented important elements of the effectiveness and sustainability of Honest's growth strategy. While the Offering Documents touted Honest's product innovation and its critical Diapers & Wipes segment—its largest revenue driver—as the "heart" of Honest's business, Honest's customers experienced at the time of the IPO leaks, blow outs, and chemical irritations due to a pre-IPO diaper reformulation. Honest's "strategic customer acquisition tool," *i.e.*, its diapers, opposed what Defendants' claimed as Honest consumers vowed to switch to alternative diaper brands.

***Second***, the Offering Documents misrepresented the impact of COVID-19 on Honest's business by failing to disclose that, ***at the time of the IPO***, COVID-19 was no longer the driver of demand the Offering Documents said it was, but rather, retailers

---

[1] Citations to paragraphs ("¶") are to paragraphs in the Consolidated Class Action Complaint filed on February 21, 2022 (the "Complaint" or "CAC"). ECF No. 59. Unless otherwise noted, emphasis is added and internal citations and quotation marks are omitted throughout. "Defendants" collectively refers to The Honest Company, Inc. ("Honest" or the "Company"); the "Individual Defendants" who signed the IPO's registration statement, ¶¶16-23; and the "Underwriter Defendants" who underwrote Honest's initial public offering (the "IPO" or "Offering"). ¶¶26-37.

were destocking COVID-19 products and demand for these products was decreasing. Although Honest was tracking inventory daily and monitoring trends monthly such that the deceleration in sales was readily apparent at the time of the IPO, it was not until months later that Defendant Vlahos acknowledged that the Company experienced a COVID-19 stock-up over the past year—and at least *nine months* before the IPO.

Due to the Offering Documents' false and misleading statements and omissions, Honest's stock collapsed from its IPO price of $16.00 per share to close at $10.55 on September 15, 2021, the day this action was filed. As a result, investors have incurred over $300 million in statutory damages. *See* 15 U.S.C. § 77k(e). Defendants' request to dismiss this action brought to recoup those investor losses is entirely without merit.

Defendants seek dismissal by inappropriately asking this Court to draw countless inferences in their favor, when it is Lead Plaintiff who is afforded those inferences at this stage. Defendants claim the Offering Documents' statements and omissions about its Diapers & Wipes segment at the helm of Honest's product innovation and customer acquisition were not false and misleading—and more egregiously—would not matter to investors. This argument cannot be squared with the CAC's allegations regarding the importance of Honest's Diapers and Wipes to Honest's overall business. Moreover, Defendants brush in broad strokes over the CAC's factual allegations regarding the Company's inventory stock-up and their own post-IPO admissions in which Defendant Vlahos admitted that this COVID-19 stock up predated the IPO *by over nine months*.

In support of its unavailing arguments, Defendants repeatedly cherry-pick the CAC and Offering Documents, spotlighting select portions of allegations to suggest that information was disclosed. But "[i]t is axiomatic that the allegations of a complaint must be read as a whole, and ... viewed broadly and liberally." *Ostrofe v. H.S. Crocker*, 670 F.2d 1378, 1381 (9th Cir. 1982), *judgment vacated on other grounds*, 460 U.S. 1007 (1983). Read correctly in context, the CAC plausibly alleges that contemporaneous adverse facts rendered the statements concerning Honest's product innovation, customer acquisition and fleeting demand false and misleading when made.

Nevertheless, Defendants urge this Court to consider documents it seeks to judicially notice to make a finding of fact as to what was known to the market. This is precisely what the Ninth Circuit warned is a "concerning pattern in securities cases[,]" *i.e.*, defendants "exploiting" the incorporation-by-reference doctrine and judicial notice "improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998-99 (9th Cir. 2018). The Court should not condone Defendants converting their Motion into a pre-discovery motion for summary judgment.

Defendants' last-ditch effort to achieve dismissal improperly examines isolated passages from the CAC and submit that they are immaterial purported statements of corporate optimism or protected by the bespeaks caution doctrine. Defendants distort the CAC and force the Court to parse and review each allegation in isolation, rather than in their totality, must be rejected. This is especially true with factual questions such as materiality. Read as a whole, as it must be, the CAC must be sustained.

In addition to arguing the Offering Documents did not omit any material information, Defendants argue Honest had no duty to disclose that very information. In fact, Defendants had several duties independent of the Securities Act's text to disclose the material adverse facts, trends, uncertainties, and risks alleged in the Complaint as required by Item 303 of SEC Regulation S-K, requiring disclosure of "known trends or uncertainties that have had or that [the registrant] reasonably [expects will] have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations," and under Item 105 of Regulation S-K, requiring disclosure of the "[most significant] factors that make an investment in the registrant or offering speculative or risky" and to "adequately describe[] the risk." "[O]nce defendants [choose] to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against positive information." *Orexigen Therapeutics*, 899 F.3d at 1008-09. Defendants were bound by but neglected to fulfill these duties.

## II.   FACTUAL BACKGROUND

This case arises from the false and misleading Offering Documents filed in connection with Honest's May 2021 initial public offering of over 29 million shares of common stock. ¶¶1, 76. Priced at $16 per share, the IPO generated more than $400 million in proceeds for Honest and the selling stockholders, while the banks that underwrote the IPO collected over $30 million in fees. ¶¶39, 76-77.

Headquartered in Los Angeles, California, Honest develops, markets and sells purportedly clean and sustainable household and personal care products. ¶¶2, 45. Of Honest's three main product categories—(i) Diapers and Wipes; (ii) Skin and Personal Care; and (iii) Household and Wellness—Honest's Diapers and Wipes segment is its largest and most important, accounting for 63% of Honest's 2020 revenue. ¶46. Honest describes itself as an "omnichannel brand," meaning its products are available wherever customers shop, whether on digital platforms or in retail channels. ¶¶49-50.

In addition to being Honest's most material and substantial revenue source, the Offering Documents describe the Diapers and Wipes segment as the center of Honest's product ecosystem, serving as an entry point for new parents to become customers for everyday family needs. ¶47. The Company describes its diapers as a strategic customer acquisition tool and commissioned a third-party study showing that prior to the January 2021 diaper reformulation, 90% of Honest's diaper buyers went on to purchase more of Honest's non-diaper products. ¶48.

The Offering Documents begin with a "Letter from the Founder," wherein Defendant Warren acknowledges "[Trust] is hard to earn and it's easy to lose." ¶3. The Offering Documents hailed Honest's product innovation as central to its growth strategy, pledging to develop clean, sustainable, and effective products and iterated the importance of diapers to Honest's "product ecosystem." ¶86-88. The Offering Documents touted COVID-19 as a key driver of demand and growth, benefitting from the shift to online shopping and increased demand for sanitization products. ¶¶66-68.

However, unbeknownst to investors, at the time of the IPO, Honest's Clean

Conscious Diaper customers were experiencing leaks, blowouts, and rashes on its child users, who flooded the Company with negative reviews—often responded to by an Honest team member. ¶¶66-68. Many customers vowed to stop buying Honest diapers following their January 2021 reformulation. ¶¶59-63. Similarly, although the Offering Documents told investors it benefitted from the COVID-19 pandemic, demand for Honest's sanitization products was actually decreasing and retailers were destocking these products. ¶8. Honest created daily reports detailing the Company's inventory and monitored inventory trends monthly, such that the post-IPO acknowledged customer "stock-up" was readily apparent at the time of the IPO. ¶¶72-75.

Just weeks after the IPO, Honest reported a net loss of $4.5 million and reported a decrease in revenue for its Diapers and Wipes category, which the Company attributed to COVID-19 pantry loading *and* the transition to Honest's Clean Conscious Diaper. ¶¶111-12. The following quarter, Honest reported a net loss of $20 million and its revenue grew only 3% because of an estimated $3.7 million COVID-19 stock-up impact primarily in Diapers & Wipes. ¶116. The Company further reported "softer than expected" sales in its Household and Wellness category as consumer demand decreased for sanitization and disinfecting products. ¶117. On this day, for the first time, Defendant Vlahos acknowledged the true extent of Honest's COVID-19 stock-up, recognizing the stock-up persisted throughout "the year ago period." ¶119. After this news, on August 19, 2021, the Company's stock closed at a low of $9.16 per share— 43% less than its IPO price. ¶123. Since its IPO, the value of Honest's common stock has collapsed from its $16 per share offering price to as low as $5.54 per share. *Id*.

## III.    APPLICABLE LEGAL STANDARDS

In assessing a Rule 12(b)(6) motion, the Court must consider the complaint in its entirety, "accept all factual allegations ... as true[,]" and construe them in the light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 322 (2007). A complaint "does not need detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), but rather must simply "contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Contrary to Defendants' many invitations to do so, and even asking for inferences in their favor,[2] "[a]sking for plausible grounds … does not impose a probability requirement." *Twombly*, 550 U.S. at 555-56.

The Securities Act "protects investors by ensuring that companies issuing securities ... make a full and fair disclosure of information relevant to a public offering." *Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 178 (2015). Section 11 imposes a "stringent standard of liability on the parties who play a direct role in a registered offering[,]" *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983), *e.g.*, the issuer, the underwriters, and any person signing the registration statement, where the registration statement (1) contains an untrue statement of a material fact, (2) omits to state a material fact required to be stated therein, or (3) omits to state a material fact necessary to make the statements therein not misleading. *Rubke v. Capitol Bancorp*, 551 F.3d 1156, 1161 (9th Cir. 2009); *see also* 15 U.S.C. § 77k(a). Section 15 makes an issuer's "control persons" liable for primary violations of Section 11. 15 U.S.C. § 77o.[3] A fact is material where "a reasonable investor would

[2] *See e.g.*, MTD  2 (asking Court to infer in Defendants' favor that customer reviews are "unrepresentative"); 7-8 (asking Court to weigh reliability of customer reviews); 8 (asking Court to consider what CW-1 did not say); 9 (asking Court to assume "equal, or even greater, amounts of *positive* customer feedback"); 10 (asking Court to infer that despite negative diaper reviews, diapers were still a "strategic customer acquisition tool"); 11 (asking Court to infer Honest could not have lost customers because revenue did not immediately decrease); 12 (asking Court to infer that diaper revenues were driven by a quality product rather than a new but faulty product); 12 (asking Court to use judicially noticeable document to "wholly refute" CAC's claim regarding Honest's diapers); 17 (asking Court to infer "daily reports" demonstrate facts contrary to the CAC's allegations); 19 (asking Court to accept "Honest was presumably equally well positioned to take advantage of a shift away from online shopping"); 23-24 (seeking to infer then-existing facts were not "presently known" despite acknowledging the CAC "repeatedly claims that defendants were *aware* of undisclosed facts").

[3] Because the CAC establishes a Section 11 claim, and Defendants do not seek dismissal of the Section 15 claims on any independent grounds, they must be also be sustained. *See* MTD Section V.

have viewed the nondisclosed information as having significantly altered the total mix of information made available." *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 28 (2011). Once a material misstatement is shown, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements[,]" while other "defendants bear the burden of demonstrating due diligence" at a later stage. *Huddleston*, 459 U.S. at 382.

The CAC's Securities Act claims are subject to the permissive notice pleading standards of Rule 8(a). *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, 856 F.3d 605, 624 (9th Cir. 2017); *see also In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *8 (N.D. Cal. Oct. 31, 2014) (Rule 8(a) applies where "Plaintiffs … have pleaded non-fraud bases for liability"). Rule 8(a) does not impose "an onerous burden" as "[s]pecific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Johnson v. Riverside Healthcare*, 534 F.3d 1116, 1122 (9th Cir. 2008).

Although Defendants halfheartedly suggest that the Court may apply Rule 9(b)'s heightened pleading standard to the CAC, (*see* MTD Section IV.E), such a standard is inapplicable here.[4] Contrary to each case cited by Defendants, which expressly asserted fraud-based claims pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), Lead Plaintiff's claims are solely strict liability premised on a negligence theory. ¶¶132, 144. *Omnicare*, 575 U.S. at 179 (plaintiff "need not prove ... that the defendant acted with any intent to deceive or defraud"). Lead Plaintiff does not allege "any of the Defendants committed intentional or reckless misconduct or ... acted with scienter or fraudulent intent" and "expressly disclaims any allegations of scienter or fraudulent intent in these non-fraud claims." ¶¶132, 144; *Knollenberg v. Harmonic*, 152 F. App'x

---

[4] Even though it does not apply, the CAC satisfies the heightened pleading standard of Rule 9(b) by using "contemporaneous statements" and goes so far as to "set forth, in a specific manner, the reasons why the charged statements are alleged to be false when made." *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1550 (9th Circ. 1994); *see also* ¶¶89, 91, 95, 98, 100, 102, 104-105, 107-108, 110.

674, 684 (9th Cir. 2005) (claims "not grounded in fraud" where plaintiffs "disclaim any allegations of fraud"). Moreover, the CAC's express disclaimer of fraud (¶¶132, 144), has been given its intended effect by the U.S. Supreme Court. *Omnicare*, 575 U.S. at 178. Accordingly, Rule 8(a) applies.

## IV. THE COMPLAINT SUFFICIENTLY ALLEGES ACTIONABLE MISSTATEMENTS AND OMISSIONS

The CAC alleges that—unbeknownst to investors—(1) Honest's reformulation of its Clean Conscious Diaper was neither safe nor effective, such that Honest was not executing on its "costovation" strategy and was unable to take advantage of its diapers as a strategic customer acquisition tool; and (2) despite touting the boon the COVID-19 pandemic had been for the Company, retailers were destocking COVID-19 products and demand for those products was decreasing as customers had stocked up on these products during 2020. *See* ¶¶85-110.

### A. Statements and Omissions Concerning Honest's Product Innovation and its Clean Conscious Diaper Were Materially False and Misleading

Defendants argue that none of the CAC's allegations support an actionable misstatement or omissions about Honest's Clean Conscious Diaper. MTD 7. Yet, this is based on their fatally narrow view of the CAC's allegations. The CAC does not allege merely that customers did not like the new diaper, but also alleges that Honest failed to disclose: (i) the Clean Conscious Diaper reformulation was neither safe nor effective; (ii) the Clean Conscious Diaper was not improving performance of Honest's diapers; (iii) Honest was not achieving the pillars of its costovation strategy; (iv) Honest was not capturing the benefits of its diapers as a "strategic customer acquisition tool;" and (v) Honest was losing customers and revenue as a result. ¶¶89, 91.

Defendants take issue with the multitude of negative customer reviews in the CAC illustrating the faulty and ineffective reformulation of Honest's Clean Conscious Diaper. MTD 8-9. Defendants characterize the reviews as of "unknown provenance" and "dubious value," yet the reviews came from Honest's own online retailers and

Facebook page, and many of the reviews were responded to by Honest, often directing Honest's customers to reach out to the Company. *See* ¶¶60-62.[5] In any event, such attacks on credibility are not to be assessed on a motion to dismiss. *Berson v. Applied Signal Tech.*, 527 F.3d 982, 985 (9th Cir. 2008) (holding disputes over confidential witnesses' statements "must at least await discovery").

Further, it is not—as Defendants argue—only the customer complaints that support the CAC's allegations that Honest's Clean Conscious Diaper was not safe or effective and did not improve the performance of Honest's diapers as the Offering Documents claimed. ¶¶89, 91. The CAC's negative customer reviews which, coupled with the CAC's CW allegations and Defendants' own post-IPO admissions, demonstrate that contrary to the Offering Documents' statements, Honest's Clean Conscious Diaper was neither safe nor effective and that Honest would lose customers revenue as a result. ¶¶53-63, 112 (Defendant Kennedy describing a 2% decrease in revenue as Honest transitioned to its Clean Conscious Diaper); *see also Robb v. Fitbit*, 216 F. Supp. 3d 1017, 1029 (N.D. Cal. 2016) (finding material misrepresentation based on CW statements and consumer complaints where plaintiffs allege "the product itself does not do the thing it claims to do.").

For this reason, Defendants' authority is readily distinguishable. MTD 9 (relying on *In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *7 (N.D. Cal. June 28, 2005); *Mahaptra v. Truecar*, 2015 WL 12552062, at *1 (C.D. Cal. Dec. 9, 2015); *Curry v. Yelp*, 2015 WL 1849037, at *8 (N.D. Cal. Apr. 21, 2015)). In *Netflix*, *Truecar*, and *Yelp*, plaintiffs merely alleged the existence of some customer complaints to "independently" establish the falsity of defendants' statements. *Yelp*, 2015 WL 1849037, at *8. Conversely, in *Qualcomm*, the Court found allegations based on consumer complaints, media sources and confidential witness testimony provided

---

[5] The Offering Documents touted the Company's product innovation as the "heart of [Honest's] business," touting Honest's product development and its ability to innovate based on its direct connection to its consumers, which "enables us to understand what consumers' needs are and inspires our product innovation pipeline …" ¶90.

"adequate corroborating detail" to establish plausibility. *See 3226701 Canada, Inc. v. Qualcomm*, 2017 WL 4759021, at \*19 (S.D. Cal. Oct. 20, 2017).

Defendants also argue that the Offering Documents cannot be false or misleading because the CAC does not challenge that Honest's used its diapers as a "strategic customer acquisition tool." MTD 9-10 n.8. Importantly, the CAC does not allege that Honest lied about its diapers being a strategic customer acquisition tool—rather it alleges the opposite. If, indeed, Honest's diapers were a strategic customer acquisition tool, then Honest was not able to take advantage of the benefits of such a tool after the Clean Conscious Diaper "crashed and burned" such that its diapers were not effective and improved, its diaper customers were not expanding their purchases beyond diapers to Honest's non-diaper products, and misled investors as a result. ¶¶48, 59, 60-63.

In an attempt to convert their early-stage motion into one for summary judgment, Defendants improperly seek to use a judicially noticeable fact to "wholly refute" the CAC's allegations regarding Honest's diaper revenue. MTD 12. The CAC alleges that the reformulation of Honest's Clean Conscious Diaper did not work as well as prior versions and customers were unhappy as a result. ¶¶59, 60-62 (reviews from Honest's retailers confirming pre-IPO disastrous reception of Clean Conscious Diaper). Importantly, despite Defendants' ignorance, Honest's Diapers & Wipes sales ***did*** decrease in the first quarter reported after the IPO. ¶¶111-12 ("Starting with Diapers and Wipes, the category decreased 2% as we transitioned to our Clean Conscious Diaper ..."). Defendants' claim that Honest's diaper revenue actually increased and was offset by a decrease in wipes is a factual question for another day. MTD 12.

In any event, an increase in revenue, if true,[6] is still consistent with the false and misleading nature of the Offering Documents since the CAC does not allege that customers did not purchase the Clean Conscious Diapers, but rather once they did, they did not continue to do so. Indeed, the Ninth Circuit in *Alphabet* recently made clear

---

[6] The Securities Act deals only with statements made in a registration statement, so the truth of Defendants' later statements are not pleading issues.

that omissions are actionable "even if it does not … have an immediate financial impact on the company." *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 704 (9th Cir. 2021). Likewise, in *Orexigen*, the Ninth Circuit concluded that although financial results were "technically accurate, the issue is whether, having learned new information that diminished the weight of those results, Orexigen was obligated to share that information. We conclude Orexigen was so obligated." *Orexigen Therapeutics*, 899 F.3d at 1015. Thus, it "cannot [be said] as a matter of law, that defendants fulfilled th[eir] duty" to disclose the adverse information that diminished the weight of Honest's "innovative, award-winning products" with improved "safety, sustainability, efficacy, and design" they so heavily touted to the market. ¶¶54, 90; *Berson*, 527 F.3d at 987.[7] Importantly, omissions and misstatements which are qualitatively materially misleading are just as actionable as those based upon quantitative falsity. *See Knox v. Yingli Green Energy Holding,* 242 F. Supp. 3d 950, 971 (C.D. Cal. 2017) ("[C]ourts should also take into account qualitative factors in assessing materiality.").

Defendants' backwards argument regarding Lead Plaintiff's confidential witness allegations is similarly unavailing. Relying primarily on Exchange Act cases where scienter is a necessary element not present here, Defendants argue that the Ninth Circuit consistently requires allegations of "sufficient corroborating details" regarding whether the CW has a basis for their statements. Def Mem. 7 n.5.[8] Yet, it is because those claims

---

[7] Importantly, in addition to its allegations about the Clean Conscious Diaper reformulation, the CAC also alleges that the Offering Documents were false and misleading for failing to disclose the then-existing COVID-19 inventory stock up that flattened consumer demand. *See* ¶¶72-74, 92-95; *see also infra* Section V.B.

[8] Defendants rely on *In re IAC/InterActive Corp. Sec. Litig.*, 695 F. Supp. 2d 109, 120 (S.D.N.Y. 2010) and *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *8 (S.D.N.Y. Mar. 29, 2016) in an attempt to discredit the CAC's CW allegations. MTD 8. Unlike the present case, which alleges existing and known trends or uncertainties concerning the Company's Clean Conscious Diaper reformulation and destocking of sanitization products, the complaint in *IAC/InterActive Corp.* was premised on a non-actionable theory of mismanagement and the alleged "trend" of "poor business practices" was supported by "only one" allegation that "one hotel chain" would stop working with

Footnote continued on next page

are Exchange Act claims that such allegations are held to a heightened pleading standard. *See Zucco Partners v. Digimare*, 552 F.3d 981, 995-997 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("Confidential witness whose statements are introduced ***to establish scienter*** must be described with sufficient particularity."). Indeed, it is beyond dispute that in this case, factual allegations—whether attributed to a former employee or otherwise—must be accepted as true and construed in the light most favorable to plaintiffs. *See Metzler Inv. GMBH v. Corinthian Colleges*, 540 F.3d 1049, 1056 (9th Cir. 2008) (allegations accepted as true where allegations "supported principally by statements taken from confidential witnesses"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016) (accepted as true, allegations attributed to a confidential witness "demonstrate that the [statements] ... were false").

Second, ignoring well-settled Ninth Circuit law, Defendants improperly seek to attack each CWs' credibility at the pleading stage. *Applied Signal*, 527 F.3d at 985 (holding disputes over confidential witnesses' statements "must at least await discovery"). Even under Defendants' heightened standard, none of Defendants' cited authority requires that the CAC's CWs have an understanding of whether a material misstatement or omission was contained in the IPO Offering Documents, but rather that they were in a position to hold the knowledge attributed to them. *See Nursing Home Pension Fund, Local 144 v. Oracle*, 380 F.3d 1226, 1233 (9th Cir. 2004).

For example, CW-1 was employed prior to and during the IPO as a Manager of Social Marketing and explained customers were unhappy with the change in Honest's diapers, corroborated by the CAC's online customer reviews demonstrating the same. ¶¶60-62. Surely, it is plausible that a Manager of Social Media Marketing would have a grasp on online feedback (sourced in part from social media) in a Company who claimed it had a "significant competitive advantage" and whose "direct connection with

---

IAC. *Id.* at 119-120; *see also In re Coty*, 2016 WL 1271065, at *8 (confidential witness described only that some products were being returned or destroyed without noting any larger-scale trend that products were being destocked in a "material way").

our community enables us to understand what consumers' needs are …" ¶90; *Compare Sanders v. Realreal*, 2021 WL 1222625, at \*8 (N.D. Cal. Mar. 31, 2021) (finding witness allegations meet Defendants' heightened particularity requirement where role is "encapsulated within their job title") *with* MTD 18 (citing *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1068 (W.D. Wash. 2003)).

Likewise, CW-2 received daily reports detailing inventory and confirmed Honest monitored inventory trends on a monthly basis, such that a significant decline in sales and build up in inventory would have been readily apparent from Honest's internal reporting. ¶¶72-73. Thus, CW-2 is not "merely regurgitating gossip and innuendo," (MTD 18 (citing *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1142–43 (W.D. Wash. 2006)),[9] but instead had access to real time data that materially differed from what was disclosed to investors. ¶¶72-73. These facts easily demonstrate plausibility at the pleading stage. *See Hunt v. Bloom Energy*, 2021 WL 4461171, at \*12 (N.D. Cal. Sept. 29, 2021) (finding CW who oversaw, *inter alia*, construction contracts sufficiently alleged to be in a position to know about construction delays).

Defendants' comparison of what CW-1 has stated and their own fabrications about what CW-1 has not yet disclosed (MTD 7-8), is unsupported in the law since all inferences must be drawn in Lead Plaintiff's favor and the Court should not weigh competing inferences. *See In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995 (S.D. Cal. 2005) ("[A] weighing of factual disputes [is] a process that is improper on a motion to dismiss."); *In re Network Equip. Techs., Inc. Litig.,* 762 F.Supp. 1359, 1363 (N.D.Cal.1991) ("Court[s] should not...generate an evidentiary record and then weigh evidence...to dismiss [a] complaint."); *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1260 (N.D. Cal. 2019) ("Because Rule 8(a)(2)'s plausibility standard

---

[9] Defendants' attack on the CWs' statements, as well as the customer reviews, as hearsay are based upon questions of admissibility and are not to be addressed at this stage of litigation. *See In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at \*11 (N.D. Cal. Jan. 6, 2022) ("Whether a statement will ultimately be admissible under the Federal Rules of Evidence is not the question" at the motion to dismiss stage); *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 935 (N.D. Cal. 2020) (declining to determine whether certain evidence will be admissible at trial on a motion to dismiss).

applies, this Court must draw inference in Plaintiff's favor.").

### B. Statements and Omissions Concerning Honest's COVID-19 Inventory Stock-Up Were Materially False and Misleading

The CAC alleges the Offering Documents failed to disclose the negative impacts of COVID-19 that had *already occurred* at the time of the IPO and describes in detail the reasons those statements are false and misleading. *See* ¶¶95(a)-(e) (describing then-existing facts that rendered the Offering Documents' statements about COVID-19 false and misleading). Not only does the CAC allege that Honest generated daily reports detailing the Company's inventory and that Honest monitored inventory trends monthly—making it "clear from the reports and meetings" that there was a decline in the sale of wipes and sanitizers—but after the IPO, Defendant Vlahos *told* investors that Honest's COVID-19 stock up *predated the IPO*. *See* ¶¶72, 119 (explaining on post-IPO August 13, 2021 earnings call that Honest experienced a "COVID-19 stock up impact *in the year ago period*"). Thus, it is not only the CW statements but Defendants' own admission that demonstrates the omission of then-present facts.

Honest mislead investors by disclosing certain drivers of its success while omitting factors that rendered that purported success less promising. *Compare* ¶93 (explaining COVID-19 has been a driver of demand but omitting the resultant COVID-19 inventory stock up), ¶94 (touting Honest's omnichannel approach as "agnostic as to the channel where consumers [shop]" but omitting retailers' destocking of COVID-19 products) *and Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at *9 (D. Or. June 27, 2017) (defendant's representations about its "growth" due to customer demand actionable where it "did not include disclosure of the additional facts that [defendant] was aggressively pulling in sales"). Indeed, Defendants concede these statements were material to investors. *See* MTD 22 n.18.

Confusingly, Defendants spend an entire page of their motion discussing statements that are *not* alleged to be false and misleading. MTD 14; *see also* ¶¶8, 68. Where they do discuss the Offering Documents' false and misleading statements,

Defendants' selective quotes omit the crux of the CAC's allegations that the Offering Documents failed to disclose that, at the time of the IPO, its statements that Honest "*may* see a decline in … demand for sanitization products" was already occurring. *See* ¶¶93, 95; *Lomingkit v. Apollo Educ. Grp.*, 275 F. Supp. 3d 1139, 1161 (D. Ariz. 2017) ("[T]he Ninth Circuit has [carved out a niche for] risk warnings [that are] actionable as material omissions when the warning speaks to 'entirely ... as-yet-unrealized risks and contingencies' and neglects to alert potential investors to the fact that the "risks may already have come to fruition.""); *see also Orexigen*, 899 F.3d at 1018. Defendants' authority misses the mark, as the CAC does not allege that Honest's historical financial data is false. MTD 14. Rather, the CAC alleges that, at the time of the IPO, the ***then-existing*** impact of COVID-19 on Honest's financial condition was not "uncertain" and the Company was ***already*** seeing a decline in demand for its sanitization products such that the Offering Documents misled investors. ¶¶93-95.

As to the CAC's challenges to the Offering Documents' inadequate risk factors (¶¶96-110), it is not—as Defendants argue—that Honest failed to predict the inarguably uncertain "future course of the pandemic." MTD 15. No so. Of the six risk disclosures challenged, only two even mention COVID-19. ¶¶103, 109. And as Defendants state, Honest warned only that consumer demand "***might***" be negatively impacted by a list of its risk factors. MTD 15. Yet, these risks were already occurring at the time of the IPO such that a warning of their potential was false and misleading to investors. *See Flynn v. Sientra*, 2016 WL 3360676, at *10-11 (C.D. Cal. June 9, 2016). Thus, although Honest need not have the ability to "forecast future events" (MTD 16), it ***was*** required to disclose then-existing facts to its investors in the Offering Documents. These omissions "affirmatively create[d] an impression of a state of affairs that differ[ ] in a material way from the one that actually exists." *Brody v. Transitional Hosps.*, 280 F.3d 997, 1006 (9th Cir. 2002) (MTD 16).

Defendants seek to use Honest's August 2021 post-IPO earnings call as a shield, curiously arguing that because the earnings statement post-dated the IPO by five weeks,

the information reported therein did not exist until then either. MTD 17.[10] Yet Defendants acknowledge that in the related press release, Honest discloses a $3.7 million COVID-19 stock-up in Diapers and Wipes "***in the prior year period.***" ¶116. CW-2's statements confirm Honest had access to daily inventory reporting and tracked inventory trends monthly such that the Company was negligent in not knowing (or disclosing) that, as corroborated by the CWs, this slowdown in sales and resultant inventory stock-up pre-existing the IPO. ¶¶72-73. Defendants' contention that Honest was not required to disclose this deceleration in revenue is not supported by its authority. MTD 17. For example, in *In re Progenity, Inc.*, as Defendants' admit, the disclosure of data in Honest's possession only need not be disclosed "so long as the omission of that data does not render the statements they do share misleading." 2021 WL 3929708, at *9 n.13 (S.D. Cal. Sept. 1, 2021). But in *Progenity*, unlike here, the registration statement had "clearly warned that at the time of the IPO, Progenity had experienced a significant drop in test volume due to the COVID-19 pandemic." *Id.* at *10. Honest made no such disclosure (¶¶93-94, 103, 109), and the disclosure of a ***potential*** deceleration in revenue (irrespective of whether its revenue was accurate through 2020, five months prior to the IPO) is insufficient. *See Bos. Ret. Sys. v. Uber Techs.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020) (finding defendants were "required to remain transparent about the company's financial position" based on "information available to them at the time the statements were made.").

Further, the Offering Documents' statements regarding its "omnichannel approach" were false and misleading because, whether or not Honest was "agnostic as to the channel where consumers" shop, it did not insulate the Company from changing consumer preferences in the way the Offering Documents claimed. ¶¶49-52, 94-96. Specifically, this strategy was touted as protecting the Company from changing consumer preferences, but failed to disclose that it would not (and could not) overcome

---

[10] Defendants' reference to "unrelated factors" (*see* MTD 17 n.15) and the extent of their impact is clearly a question of fact not appropriately raised in this motion.

changing customer needs as the pandemic lessened, namely an already-existing decline in demand for sanitization products. ¶¶94-96. It cannot reasonably be said that the CAC does not explain why these statements were false and misleading (MTD 18), as the CAC provides a litany of reasons why they are so. *See* ¶95(a)-(e).

Moreover, contrary to Defendants' argument, Honest's omnichannel strategy need not have caused nor exacerbated the drop in revenue for its characterization in the Offering Documents to be false or misleading. *Cf.* MTD 19 and *Uber Techs.*, 2020 WL 4569846, at *7 (finding plaintiff "plausibly alleged" that defendants were compelled to disclose more than they did where "the information defendants *did* disclose 'create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed].'") (emphasis in original).

The question before the Court is not whether each misstatement read in isolation presents a plausible theory of liability. *Lorenz v. Safeway*, 241 F. Supp. 3d 1005, 1023 (N.D. Cal. 2017) ("complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). The question is whether, read as a whole and "when construed in the light most favorable to [Lead Plaintiff]," the CAC "plausibly suggest[s]" the Offering Documents contained material omissions and misrepresentations that would have misled a reasonable investor. *Id.*; *see also Rubke*, 551. F.3d at 1161. The CAC easily satisfies this standard for each of the misstatements pled in the Complaint, as it alleges contemporaneous adverse facts and omissions that rendered the statements false and misleading when made.

## V.    THE ALLEGED MISSTATEMENTS AND OMISSIONS ARE MATERIAL

Defendants' claim that the alleged misstatements or omissions are not material is without merit. "[D]etermining whether a given statement is material entail[s] fact-intensive assessments that are more properly left to the jury," which is why courts "must exercise great caution" when deciding whether a statement is material at this stage. *Mulligan v. Impax Lab'ys*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014); *see also In*

*re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 834 (N.D. Cal. 2019) ("Plaintiffs are correct that materiality arguments often are inappropriate for resolution on a motion to dismiss.").

## A.     The Misstatements Were Not Excusable Puffery

Defendants incorrectly argue that certain alleged misstatements are inactionable puffery. *See* MTD 10-11, 19, 22. Defendants' analysis cherry-picks certain catchphrases from the CAC's alleged misstatements and suggests that Honest's terms of art (*i.e.*, "costovation") are shielded from liability merely because it cannot be found "in any dictionary." MTD 11. If this were the law (it is not), companies would routinely create their own terms of art to disguise their false and misleading substance to investors. Importantly, "[w]hen determining whether statements amount[ ] only to puffery, the court must analyze the context in which the statements were made." *Mulligan*, 36 F. Supp. 3d at 966; *see In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1097 (N.D. Cal. 2017) ("the line between puffery and a misleading statement is often indistinct, and requires an analysis of the context in which the statements were made.").

Whenever "statements address specific aspects of a company's operation that the speaker knows to be performing poorly," they are not immaterial as a matter of law. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017). Here, the statements at issue addressed specific aspects of Honest's business: its Diapers & Wipes segment (which accounted for 63% of its revenue) and the Company's costovation strategy and omnichannel approach, which it touted throughout the Offering Documents as providing a "differentiated platform" for continued growth. ¶¶86, 88, 94. Thus, these statements are not puffery.

Statements emphasizing verifiable features of Honest's most important business segment are not mere "corporate optimism," including touting its diapers as a "strategic customer acquisition tool" and its purported improvement of the safety, efficacy, and design profiles of its existing products when the Company is self-described as creating

clean, natural and "better-for-you" products. ¶¶45, 86, 99; *see also Bielousov v. GoPro*, 2017 WL 3168522, at *6 (N.D. Cal. July 26, 2017) (statement that camera captured "amazingly smooth" imagery not puffery); *Roberts v. Zuora*, 2020 WL 2042244, at *9 (N.D. Cal. Apr. 28, 2020) (stating that a product had "seamless" "integration" was not puffery). Defendants ***cannot*** meaningfully argue that the Offering Documents' statement that its diapers are a "strategic customer acquisition tool" is not objectively verifiable, as the Company itself commissioned a third-party study to support this precise fact with respect to the diaper's prior formulation. *See* ¶¶48, 53. Further, contrary to statements that the Clean Conscious Diaper exemplified Honest's "continuous improvement in [their] existing products' safety, sustainability, efficacy and design profile," CW-1 and the negative reviews confirm the Clean Conscious Diaper "crashed and burned"—causing leaks, blow outs, and chemical irritations from the reformulation. *See* ¶¶59-62; *see also Smilovits v. First Solar, Inc.*, 2012 WL 6574410, at *3, *5 (D. Ariz. Dec. 17, 2012) (statement that defendants had "fairly high confidence that our product is delivering in the field" was misleading when defendants knew about "increasingly severe product defects").

The Offering Documents' statements regarding Honest's omnichannel approach are equally actionable. As the Ninth Circuit has held, "[w]hat might be innocuous 'puffery' … standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance on such a representation." *Mulligan*, 36 F. Supp. 3d at 966. In context, it cannot be said that these statements are "extremely unlikely to induce customer reliance," *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1004 (N.D. Cal. 2018), when the statement concretely explains how Honest is "balancing deep consumer connection" (*i.e.*, maintaining direct relationship with consumers via Honest's digital platforms) and "provides meaningful benefits to [its] consumer" (*i.e.*, increasing accessibility of Honest's products by selling through its Retail and Digital channels). *See* ¶94. Defendants have improperly cherry-picked snippets of statements

out of context and have not met their burden in demonstrating that the Court should conclude, as a matter of law at the pleading stage, that these statements are immaterial.

**B.    The Misstatements Are Not Protected by the Bespeaks Caution Doctrine**

Defendants blanketly argue that "any such claims" about Honest's decreases in revenue are barred by the bespeaks caution doctrine. MTD 12-13 (discussing risk factors in ¶¶99, 101).[11] Under Ninth Circuit law, "[i]nclusion of *some* cautionary language is not enough to support a determination as a matter of law that defendants' statements were not misleading." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996) (key inquiry is whether the "challenged documents include *enough* cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statements were not misleading") (emphasis in original). Here, the CAC alleges "[n]one of the untrue statements or omissions of material fact in the Registration Statement ... was a forward-looking statement[,]" but rather, "each such statement concerned existing facts. Moreover, the Registration Statement did not properly identify any of the untrue statements as a forward-looking statement[] and did not disclose information that undermined the putative validity of those statements." ¶138.

To the extent this Court finds the Offering Documents included some cautionary language, broad warnings are not enough to warrant dismissal on the pleadings as they are not "directly related" to the material adverse facts alleged in the Complaint and are "vague enough to ... obscure the issue of concern to reasonable investors"—*i.e.*, whether Honest's Clean Conscious Diaper reformulation was unsafe and ineffective at the time of the IPO.[12] Irrespective of Defendants' failure to address the majority of

_____

[11] Defendants' motion does not address the risk factors set forth in ¶¶97, 103, 106, 109. Nor do Defendants claim that the bespeaks caution doctrine is applicable to any misstatement or omission concerning the effects of COVID-19.

[12] *See In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 798 (9th Cir. 2017) ("[D]ismissal on the pleadings under the bespeaks caution doctrine ... requires a stringent showing: [t]here must be sufficient cautionary language ... such that reasonable minds could not disagree.... To meet this standard," the cautionary language must "relate directly" to the allegations).

Honest's risk factors, Defendants have failed to show the Offering Documents included specific cautionary language warranting dismissal.

Moreover, the risk factors cited by Defendants, MTD 12-13 (citing ¶¶99, 101), are statements that were rendered false and misleading by omission of historical fact and are thus wholly unprotected by the bespeaks caution doctrine. *Livid Holdings Ltd. v. Salomon Smith Barney*, 416 F.3d 940, 948 (9th Cir. 2005) ("We now expressly ... hold that extension of the bespeaks caution doctrine to statements of historical fact is inappropriate"); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 768-769 (S.D.N.Y. 2012) ("The bespeaks caution doctrine ... does not apply to cases, such as this, where a plaintiff alleges omissions or misrepresentations of historical fact" existing at the time of the IPO). Thus, the Offering Documents' disclosure of Honest's ***potential*** consumer dissatisfaction and harm to brand reputation, ¶99, which omitted any mention of then-existing issues with its Clean Conscious Diaper reformulation and the resultant negative consumer reviews and decline in diaper sales, is not protected by the doctrine. Nor is the Offering Documents' omission of a deceleration of sales in sanitization products, destocking by Honest's retailers, or the then-existing impact of COVID-19 on Honest's business protected. ¶¶97-98, 103-110.

## C.    Defendants' Remaining Materiality Arguments are Unavailing

Defendants take a kitchen sink approach to materiality, arguing that the existence of Honest's risk disclosures exculpate the Company and that any potential disclosure of Honest's "incremental" data about COVID-19 would not have altered the total mix of information available to investors. *See* MTD 19-22.[13] Both arguments fail.

As to Honest's risk factors, Ninth Circuit law is clear that inaccurately describing as "potential" risks that "may" have adverse impacts is not the same as disclosing actual

---

[13] Conversely, though, Defendants admit that affirmative misstatements regarding the pandemic might be considered material. MTD 22 n.18. Despite Defendants' contention and as explained further above, the CAC pleads several facts demonstrating the Offering Documents' false statements and omissions with respect to the COVID-19 pandemic. *See infra* Section V.B.

events, trends, and uncertainties already manifested. *Berson*, 527 F.3d at 987 ("[L]earning that stop-work orders *might* be issued is quite different from knowing that they were *in fact* issued. One indicates a risk, the other a certainty. It goes without saying that investors would treat the two differently") (emphasis in the original). Defendants cannot be saved by citing to boilerplate disclosures, many of which warned of risks that had already transpired. *See* ¶¶96-110; *see also infra* Section VII.

Defendants seem to proffer a truth-on-the-market defense based on the online reviews—the same reviews they describe as "unidentified," "uncorroborated," "dubious," and "of unknown provenance"—arguing that they were somehow part of the "total mix" of information provided to investors. *See* MTD 7, 8, 9, 21. Not only is this defense inappropriate at this stage, *In re Thoratec Corp. Sec. Litig.*, 2006 WL 1305226, at *4 (N.D. Cal. May 11, 2006), this defense is "less applicable to registration statements, IPOs, and Section 11 claims, where the stock price has been set privately; the public market has necessarily not had the opportunity to factor in information it may have into the share price." *Uber Techs.*, 2020 WL 4569846, at *6.[14]

Defendants' next argument not only contradicts its purported truth-on-the-market defense by suggesting that the negative internet comments are somehow insignificant despite the importance of Honest's Diapers & Wipes segment to its overall business, ¶¶4, 47, 64-65, Defendants suggest that a deceleration in consumer demand at the time of the IPO would not have been material to investors. MTD 22. To be sure, the CAC does not allege Honest needed to disclose "real-time revenue data." *Id*. at n.17. The CAC alleges the omission of ***material*** information that "sure mattered to investors." *Schueneman v. Arena Pharms.*, 840 F.3d 698, 709 (9th Cir. 2016). Even assuming, *arguendo*, Defendants had no generalized duty to disclose, Def. Mem. at 21-

---

[14] "Ordinarily, omissions by corporate insiders are not rendered immaterial by the fact that the omitted facts are otherwise availability to the public," and the "ultimate question of 'whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact.'" *Pirani v. Slack Techs.*, 445 F. Supp. 3d 367, 387 (N.D. Cal. 2020), *motion to certify appeal granted*, 2020 WL 7061035 (N.D. Cal. June 5, 2020), and *aff'd*, 13 F. 4th 940 (9th Cir. 2021).

22, once Defendants chose to tout Honest's product innovation and the importance of diapers as a "strategic customer acquisition tool" and touted COVID-19 as a "driver[s] of demand," "they were bound to do so in a manner that wouldn't mislead investors." *Schueneman*, 840 F.3d at 707-08. At bottom, it cannot be said that the misstatements alleged in the SAC were so obviously unimportant that they were immaterial as a matter of law. *See e.g. In re Ubiquiti Networks, Inc. Sec. Litig.*, 33 F. Supp. 3d 1107, 1126 n. 6 (N.D. Cal. 2014), *aff'd in part, rev'd in part and remanded*, 669 F. App'x 878 (9th Cir. 2016) (resolution of materiality for Section 11 purposes rarely appropriate to decide on motion to dismiss).

## VI.    DEFENDANTS HAD AN INDEPENDENT DUTY—BUT FAILED—TO DISCLOSE TRENDS, RISKS, AND UNCERTAINTIES SURROUNDING HONEST'S PROBLEMATIC PRODUCT INNOVATION AND CHANGING CONSUMER BEHAVIOR

In addition to the Securities Act's strict liability for misstatements and omissions of material fact, as well as omissions of material fact necessary to make other statements not misleading, Defendants were under alternative disclosure duties pursuant to Regulation S-K. *See Uber Techs.*, 2020 WL 4569846, at *7 ("For the same reasons [plaintiff] has plausibly alleged a claim under Section[ ] 11 … it has plausibly alleged a violation of Regulation S-K.").

Defendants were required to comply with Item 303 of Regulation S-K by "[d]escrib[ing] any known trends or uncertainties that have had or that [the registrant expects] will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(2)(ii); *see also Steckman v. Hart Brewing*, 143 F.3d 1293, 1296 (9th Cir. 1998) ("omission of facts required to be stated under Item 303 will produce liability" under the Securities Act). Thus, Item 303 disclosure merely "requires an observed pattern that accurately reflects persistent conditions of the particular registrant's business environment." *In re Restoration Robotics*, 417 F. Supp. 3d at, 1263.

Importantly, Item 303 requires disclosures to be "accurate and complete as of

the time [the] Registration Statement became effective." *In re Facebook Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 513 (S.D.N.Y. 2013). Whether a given fact or pattern "constitute[s] a trend is a factual inquiry for a later stage." *Slack Techs.*, 445 F. Supp. 3d at 386; *see also S.E.C. v. Todd*, 642 F.3d 1207, 1220-21 (9th Cir. 2011) ("[W]hether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact"). Similarly, Item 105 is violated, and gives rise to actionable claims under Section 11, when the offering materials fail to provide "a discussion of the [most significant] factors that make … [the] offering speculative or risky." 17 C.F.R. § 229.105(c); *see Mingbo Cai v. Switch*, 2019 WL 3065591, at *6 (D. Nev. July 12, 2019) (plaintiff plausibly pled that defendant violated Item 105 "by failing to discuss and explain the risks of its new sales strategy," notwithstanding that the "prospectus include[d] over thirty pages of risk disclosures" because those "kinds of boilerplate risk factors do not satisfy the requirements set forth in Item 503").[15]

Here, Defendants violated their duties to disclose under Items 303 and 105 by, *inter alia*, omitting any mention of trends and materialized risks that existed **at the time of the IPO**. *See* ¶¶98, 100, 102, 104-105, 107, 110. The CAC's allegations confirm exactly what Defendants dispute: that the Offering Documents failed to disclose adverse trends and uncertainties with respect to Honest's product innovation, inventory destocking, and declining sales and failed to warn against risks that, at the time of the IPO, had already materialized. *See Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017) (generic warning about a "potential failure to 'achieve … sales expectations'" was insufficient to warn investors about a specific known risk that its product would not appeal to a broad section of potential consumers); *Atossa Genetics*, 868 F.3d at 798 ("[d]ismissal. . . requires a stringent showing …of sufficient cautionary language or risk disclosure such that reasonable minds could not disagree that the challenged

---

[15] Defendants were also required to disclose all material information necessary to make the Offering Documents not misleading. 17 C.F.R. § 230.408. Whether a registrant complied with Rule 408 turns on materiality, a question for the fact-finder. *Sudunagunta v. NantKwest*, 2017 WL 8810760, at *10 (C.D. Cal. Sept. 20, 2017).

statements were not misleading."). Nor were these ongoing adverse facts, trends, uncertainties, or risks warned of—except in a misleading way that told investors these problems "might" occur even as they had already materialized and negatively impacted Honest at the time of the IPO. ¶¶96-110. This includes Honest's trends of problematic product innovation and resultant loss of diapers as a "strategic customer acquisition tool" (¶¶97-102, 106-107) and the declining demand for COVID-19 products, inventory stock-up during 2020 and retailer destocking (¶¶103-105, 109-110).

Defendants' only argument against this alternative basis of liability is that the CAC does not allege "undisclosed trends or uncertainties [that] were presently known to management" (MTD 24), however, Lead Plaintiff need only allege facts to support a plausible *inference* that Honest "knew of a trend" requiring Item 303 disclosure. *See In re CPI Card Grp. Inc. Sec. Litig.*, 2017 WL 4941597, at *4-5 (S.D.N.Y. Oct. 30, 2017). In *CPI*, the Court found factual allegations (based in part on one CW) about the temporal proximity of the IPO and the company's sales drop off and statements about CPI's inventory-tracking capabilities supported an inference of pre-IPO knowledge. *Id*. Here, not only do Lead Plaintiff's CW allegations support an inference that Honest "was able to know" about its inventory stock up and retailer destocking, the temporal proximity between the IPO and Honest's slowdown of sales attributed to a pre-IPO overstocking further support this inference. *Id*. at *4; ¶¶72-73, 112-13. Moreover, Defendants *admit* that the CAC alleges "[D]efendants were *aware* of undisclosed facts that plaintiffs allege rendered statements contained in the Offering Documents misleading." MTD 24. Defendants cannot have it both ways.

## VII.   CONCLUSION

For the forgoing reasons, Defendants' motion to dismiss should be denied in its entirety. While Lead Plaintiff does not believe the Court will need to reach this issue, if the Court grants any part of Defendants' motions, Lead Plaintiff respectfully requests leave to amend. *See, e.g.*, *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) ("[r]equests for leave [to amend] should be granted with 'extreme liberality'…").

Dated: March 28, 2022

Respectfully Submitted,

**LABATON SUCHAROW LLP**

By: */s/ Alfred L. Fatale III*
Jonathan Gardner*
David J. Schwartz*
Alfred L. Fatale III*
Lisa Strejlau*
140 Broadway
New York, NY 10005
Telephone: 212 907 0700
Fax: 212 818 0477
jgardner@labaton.com
dschwartz@labaton.com
afatale@labaton.com
lstrejlau@labaton.com

*admitted *pro hac vice*

*Lead Counsel for Lead Plaintiff Kathie Ng and the Proposed Class*

**THORNTON LAW FIRM LLP**
David Bricker (State Bar No. 158896)
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone: (310) 282-8676
Fax: (310) 388-5316
dbricker@tenlaw.com

*Liaison Counsel for Lead Plaintiff Kathie Ng and the Proposed Class*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
1880 Century Park East, Suite 404
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com
rina@schallfirm.com

*Additional Counsel for Lead Plaintiff Kathie Ng*