MICHAEL C. TU (State Bar No. 186793)
*mctu@cooley.com*
BENJAMIN B. SWEENEY (State Bar No. 313650)
*bsweeney@cooley.com*
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:  (310) 883-6400
Facsimile:  (310) 883-6500

KOJI F. FUKUMURA (State Bar No. 189719)
*kfukumura@cooley.com*
COOLEY LLP
4401 Eastgate Mall
San Diego, California 92121
Telephone:  (858) 550-6000
Facsimile:  (858) 550-6420

Attorneys for Defendants
THE HONEST COMPANY, INC., KATIE
BAYNE, SCOTT DAHNKE, KELLY KENNEDY,
ERIC LIAW, JEREMY LIEW, AVIK PRAMANIK,
NIKOLAOS VLAHOS and JESSICA WARREN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE THE HONEST COMPANY, INC. SECURITIES LITIGATION. | Case No. 2:21-cv-7405-MCS-PLA |
| | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE HONEST DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AND AMENDED COMPLAINT** |
| | Courtroom:  7C |
| | Judge:  Hon. Mark C. Scarsi |
| | Date:  April 18, 2022 |
| | Time:  9:00am |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   PLAINTIFFS DO NOT STATE AN ACTIONABLE CLAIM. ......................... 1

A.    Plaintiffs Do Not Allege Any Actionable Misstatements or Omissions. ....................................................................................... 1

1.    Allegations Regarding Honest's Clean Conscious Diapers. .......... 1

2.    Allegations Regarding the Effects of COVID-19 .......................... 5

C.    None of the Alleged Misstatements or Omissions Is Material. ................ 8

D.    Plaintiffs Do Not Allege Violations of Item 303. .................................. 10

III.  CONCLUSION ...................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

*3226701 Canada, Inc. v. Qualcomm, Inc.*,
2017 WL 4759021 (N.D. Cal. Oct. 20, 2017) ........................................................2

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ...................................................................................5

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) ...............................................................9

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ...............................................................................9

*Bielousov v. GoPro, Inc.*,
2017 WL 3168522 (N.D. Cal. July 26, 2017) ......................................................8

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ...............................................................2

*In re Coty Sec. Litig.*,
2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ...................................................2, 3

*Curry v. Yelp Inc.*,
2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) ......................................................2

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) .............................................................................8

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016) ........................................................9

*Gen-Probe, Inc. v. Amoco Corp., Inc.*,
926 F. Supp. 948 (S.D. Cal. 1996) .......................................................................3

*In re IAC/InterActiveCorp. Sec. Litig.*,
695 F. Supp. 2d 109 (S.D.N.Y. 2010) ..................................................................3

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...............................................................................4

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) ......................................................8

*Lorenz v. Safeway*,
241 F. Supp. 3d 1005 (N.D. Cal. 2017) ................................................................1

*Miller v. Thane Int'l, Inc.*,
519 F.3d 879 (9th Cir. 2008) .............................................................................10

# TABLE OF AUTHORITIES
(continued)

Page

*In re Netflix, Inc. Sec. Litig.*,
   2005 WL 1562858 (N.D. Cal. June 28, 2005) ......................................................2, 9

*In re Oracle Corp. Deriv. Litig.*,
   867 A.2d 904 (Del. Ch. 2004) ...............................................................................10

*Ostrofe v. H.S. Crocker*,
   670 F.2d 1378 (9th Cir. 1982) .................................................................................1

*In re Progenity*,
   2021 WL 3929708 (S.D. Cal. Sept. 1, 2021) .....................................................7, 10

*In re Quality Sys. Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) .................................................................................8

*In re Restoration Robotics, Inc. Sec. Litig.*,
   417 F. Supp. 3d 1242 (N.D. Cal. 2018).....................................................................7

*Robb v. Fitbit Inc.*,
   216 F. Supp. 3d 1017 (N.D. Cal. 2016).....................................................................2

*Roberts v. Zuora, Inc.*,
   2020 WL 2042244 (N.D. Cal. April 28, 2020) .........................................................8

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ..............................................................................5, 9

*Shaw v. Digital Equipment Corp.*,
   82 F.3d 1194 (1st Cir. 1996).................................................................................10

*Steckman v. Hart Brewing, Inc.*,
   1996 WL 881659 (S.D. Cal. Dec. 24, 1996) ...........................................................10

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ...............................................................................10

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994)...................................................................................9

*Wozniak v. Align Tech., Inc.*,
   850 F. Supp. 2d 1029 (N.D. Cal. 2012).....................................................................8

**Statutes and Rules**

15 United States Code
   § 77k ...............................................................................................................3, 5, 10

17 Code of Federal Regulations
   § 240.13a-13 ............................................................................................................7

COOLEY LLP
ATTORNEYS AT LAW

The Honest Defendants respectfully submit this reply memorandum in further support of their motion to dismiss the CAC (the "Motion" or "Mot.").

## I.   INTRODUCTION

Rather than respond to the numerous deficiencies in the CAC outlined in the Motion, plaintiffs' opposition ("Opposition" or "Opp.") instead restates the same conclusory assertions.[1] *See, e.g.*, Opp. at 9 (online comments and uncorroborated confidential witness statements "demonstrate that . . . Honest's Clean Conscious Diaper was neither safe nor effective"), 13 ("significant decline in sales and build up in inventory would have been readily apparent from Honest's internal reporting"), 15 (COVID-related "risks were already occurring at the time of the IPO").

Plaintiffs also seek to shield their facially deficient allegations by arguing for a less demanding standard of review, complaining that the Motion "inappropriately ask[s] this Court to draw countless inferences in [defendants'] favor." Opp. at 2. But that is not so—plaintiffs cannot ask the Court to close its eyes to the inferences that arise from their own allegations and judicially noticeable facts that undermine their claims. For example, the item that causes plaintiffs the greatest distress, the statement by CFO Kelly Kennedy explaining that far from "crash[ing] and burn[ing]," Honest's Clean Conscious Diapers drove revenue growth, ***comes from the CAC itself***. CAC ¶¶ 59, 112. Nor can plaintiffs substitute conclusory assertions for well-pled factual allegations. The claims should be dismissed.

## II.   PLAINTIFFS DO NOT STATE AN ACTIONABLE CLAIM.

### A.   Plaintiffs Do Not Allege Any Actionable Misstatements or Omissions.

#### 1.   Allegations Regarding Honest's Clean Conscious Diapers.

The Motion specifically identifies the deficiencies in each of the four categories of alleged misstatements related to Honest's Clean Conscious Diapers. Mot. at 7-13.

---

[1] Plaintiffs insist their allegations must be read "as a whole" and accuse defendants of "cherry-pick[ing]." Opp. at 2, 17. But plaintiffs' authorities are not even securities cases. *See Ostrofe v. H.S. Crocker*, 670 F.2d 1378, 1381 (9th Cir. 1982) (Clayton Act); *Lorenz v. Safeway*, 241 F. Supp. 3d 1005, 1023 (N.D. Cal. 2017) (ERISA). Courts often analyze securities complaints by breaking allegations into categories.

*First*, plaintiffs do not allege any facts plausibly suggesting that the Clean Conscious Diapers were actually unsafe or ineffective, or viewed as such by a meaningful number of customers.[2]  As explained in the Motion (at 8-9), the mere existence of some anonymous online comments, many of which postdate the IPO, is insufficient.[3]  *In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *7 (N.D. Cal. June 28, 2005) ("[E]xistence of [several] complaints fail[ed] to render Netflix's statements [that consumers loved its service] false"); *Curry v. Yelp Inc.*, 2015 WL 1849037, at *8 (N.D. Cal. Apr. 21, 2015) (no cited cases holding that complaints "suffice to establish the falsity of [contrary] representations").[4]  After all, one can always find *some* support for just about any proposition, no matter how outlandish; but without more, that is not enough to establish plausibility.  Anyone can post on social media that the Earth is flat, but does that create a plausible inference that this is true?  This is particularly so for a product like diapers, which, unlike the devices at issue in *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016), that either work or do not, will fit and perform on each baby differently.[5]  Indeed, based on what little plaintiffs allege,

---

[2] The CAC couches this in terms of alleged customer perception, CAC ¶ 89(a) ("*According to customers . . .* Honest's Clean Conscious Diaper reformulation was neither safe nor effective." (emphasis added)), while the Opposition focuses on the nature of the diapers themselves, without reference to alleged customer perception, Opp. at 8 ("Honest failed to disclose . . . the Clean Conscious Diaper reformulation was neither safe nor effective.").  This is symptomatic of plaintiffs' approach and further demonstrates why dismissal is appropriate.  *See In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1080-81 (N.D. Cal. 2005) (criticizing "puzzle-style pleadings . . . [for] their evasive, non-committal style").

[3] At most, these allegations support the proposition that *particular* customers viewed the diapers unfavorably.  But individual customers' feelings are not material.

[4] The Opposition argues that plaintiffs in these cases sought to use "customer complaints to 'independently' establish . . . falsity" Opp. at 9, and cites *3226701 Canada, Inc. v. Qualcomm, Inc.*, 2017 WL 4759021, at *19 (N.D. Cal. Oct. 20, 2017).  But *Qualcomm* did **not** concern customer complaints—there, detailed, first-hand accounts by former employees, together with 6 corroborating news articles, was held sufficient to allege falsity." *Id*. at *19-20.  And in any event, it is not enough to layer one deficient allegation on top of another. *In re Coty, Inc. Sec. Litig.*, 2016 WL 1271065, at *9 (S.D.N.Y. Mar. 29, 2016) ("[O]ne-two punch of poor post-IPO earnings coupled with temporally nonspecific and substantively vague assertions of destocking by one confidential informant is not enough to establish . . . falsity.").

[5] Indeed, *Fitbit* supports dismissal.  Unlike the wearable devices at issue in that case, there is no dispute that Honest's diapers "d[id] the thing that [they] claimed to," 216 F. Supp. 3d at 1029, i.e., performed the function of a diaper.  Any disagreement is limited to how well the diapers performed that function.  *Cf. id.* at 1029.

the more logical inference consistent with the undisputed revenue increases for diapers alleged in the CAC is that consumers had greater *positive* feedback to the new offering. These cherry-picked, unreliable comments are insufficient to provide any inference regarding Honest's diapers, let alone a plausible one.

Plaintiffs' attempt to rehabilitate CW-1 is also unavailing. Even if as "a Manager of Social Marketing" she "ha[d] a grasp on online feedback," Opp. at 12, it does not follow that she was in a position to opine on safety or efficacy. And her statements that "customers were very unhappy," the diapers "crashed and burned," and "things were not great at the Company," CAC ¶ 59, are too conclusory to support any inference that the diapers were not safe and effective. *Coty*, 2016 WL 1271065, at *6 (CW statements that sales were "'struggling,' 'underperform[ing],' 'forecasted to be down,' and 'smaller than expected'" insufficient in Section 11 case); *In re IAC/InterActiveCorp. Sec. Litig.*, 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010) (CW statements "in the most general of terms" insufficient to support Section 11 claims).[6]

***Second***, plaintiffs still have not explained what about characterizing the diapers as a "strategic customer acquisition tool" was false or misleading. Instead, they suggest for the first time that "Honest was not able to take advantage of the benefits of such a tool after the Clean Conscious Diaper 'crashed and burned.'" Opp. at 10. But, again, plaintiffs have not plausibly alleged that the diapers "crashed and burned" or, even if they had, why they would cease to assist in customer acquisition.

***Third***, by failing to respond to the argument in the Motion, that "even if the Clean Conscious Diapers' adherence to 'the pillars of . . . '"costavation,"'" somehow could be objectively verified, *plaintiffs have not alleged any facts to suggest anything but adherence to the term*," Mot. at 11 (emphasis added), plaintiffs have waived the issue. *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 954 n.8 (S.D. Cal. 1996) (failure to oppose issue raised in motion to dismiss "may be construed as consent to

---

[6] Plaintiffs' attempt to distinguish these cases on hyper-specific factual grounds, Opp. at 11-12 n.8, misses the point that even in a Section 11 case the Court is not required to accept vague, uncorroborated confidential witness statements.

the granting of the relief requested"). None of the CAC's allegations plausibly suggest that Honest's diapers were "not achieving the pillars of Honest's 'costovation' strategy, which emphasizes safety, sustainability, efficacy and design profile" or were "not 'improving performance.'" CAC ¶¶ 89(b), 91(b); Mot. at 10-11.

*Fourth*, contrary to the conclusory assertion that, "[a]s a result of the Clean Conscious Diaper's new technology and defective design, Honest would—and did—lose customers and revenue," CAC ¶ 89(d); Opp. at 8 (similar), the CAC itself establishes that the Clean Conscious Diapers drove *growth* in the diaper business during the early part of 2021. CAC ¶ 112 (excerpting statement that "diaper growth *was positive* in Q1 behind [Honest's] new diaper launch" and, "[b]ased on consumption data for the last 12 weeks ending May 16, . . . up 13% while the overall market declined 1%."). Plaintiffs' argument that this fact is not properly before the Court, Opp. at 10, makes little sense since it was affirmatively pled in the CAC and expressly relied upon to support their characterization of the Clean Conscious Diapers and their effect on revenue. CAC ¶ 112 (quoting statement and asserting: "Kennedy explained that the decrease in Diapers and Wipes was attributable to COVID-19 pantry loading back in 2020 *and the Company's transition to Clean Conscious Diapers*" (emphasis added)); Opp. at 10 (continuing to insist that the quoted language supports a decrease in diaper revenue). Plaintiffs may regret including this public statement in their CAC, but they cannot ask the Court to close its eyes to it.[7] Nor are conflicting facts alleged that should be resolved in plaintiffs' favor: the CAC pleads no other allegations to substantiate the claimed negative impacts on customers and revenue. *Cf. Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) (where "a district court faces competing, often inconsistent versions of the facts," plaintiffs may "exploit" entitlement to favorable inferences).

Plaintiffs now seek to pivot, suggesting that the launch of the Clean Conscious Diapers led or will lead to a delayed negative impact on diaper revenue. Opp. at 10

[7] And to be clear, plaintiffs' objection to this fact is purely procedural; nowhere in the Opposition do plaintiffs question the veracity or accuracy of the quoted statements.

("In any event, an increase in revenue, if true, is still consistent with the false and misleading nature of the Offering Documents since the CAC does not allege that customers did not purchase the Clean Conscious Diapers, but rather once they did, they did not continue to do so."). This theory, too, is unworkable. Honest cannot be liable for not disclosing a revenue impact that had not yet occurred at the time of the IPO.[8] *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009) (Section 11 claim "must demonstrate that the omitted information existed at the time."). Moreover, nothing is alleged to suggest a negative impact *ever* occurred. To the contrary, the judicially noticeable public filings report consistent growth in diaper revenue following the launch of the new diapers. CAC ¶ 112 ("[D]iaper growth was positive in Q1 [2021]."); Ex. C [Q1 2021 10-Q] at 25 ("increase in sales volume of [Honest's] diaper business with [its] new Clean Conscious Diaper innovation" during first six months of 2021); Ex. G[9] [2021 10-K] at 59 (year-over-year "increase in sales volume of . . . diaper business . . . driven by . . . new Clean Conscious Diaper").

## 2. Allegations Regarding the Effects of COVID-19.

Rather than address the numerous COVID-related disclosures and risk factors in the Offering Documents, plaintiffs confoundingly argue that those disclosures are irrelevant because some were not quoted in their CAC. Opp. at 14. But these disclosures are highly relevant precisely because they disclosed the very risks plaintiffs accuse Honest of concealing. *Compare, e.g.*, CAC ¶ 8 (Honest "incorrectly touted the boon the COVID-19 pandemic had been for [Honest] while describing the potential negative impact of COVID-19 in generalized terms and as unascertainable") *with* Ex. A [S-1/A] at 22 ("the COVID-19 pandemic may have overshadowed the effect of seasonal variations on our historical operating results"), 36 (warning of

---

[8] Neither case plaintiffs cite is apposite. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 704 (9th Cir. 2021) ("[C]ybersecurity incident may be material even if it does not . . . have an immediate financial impact."); *Orexigen*, 899 F.3d at 1015 (company "learned new information that diminished the weight of [its financial] results").
[9] As set forth in the concurrently submitted Supplemental Request for Judicial Notice ("Supp. RJN"), the Honest Defendants request that the Court take judicial notice of Honest's Form 10-K and certain other SEC filings attached to the Supp. RJN.

"significant reductions or volatility in consumer demand . . . due to travel restrictions or social distancing directives, . . . quarantine or financial hardship, . . . decreased consumer confidence and spending or pantry-loading activity"), 83 (warning of "decline in use of online shopping and demand for sanitization products when the COVID-19 pandemic subsides"). Plaintiffs' arguments as to each of the three categories of COVID-related allegations are similarly unpersuasive.

First, as explained below, the CAC alleges *no facts* suggesting that at the time of the IPO, any of these risks had yet materialized such that Honest could have disclosed them. Contrary to plaintiffs' assertions, CAC ¶¶ 66-68; Opp. at 4, the Offering Documents did not present COVID-19 as an unalloyed "boon" to business. Instead, they accurately reported effects to date,[10] while cautioning about future risks. Mot. at 14-15. For instance, at the time of the IPO in early May 2021, no one could have predicted when or to what degree "more consumers [would] become vaccinated and return to their pre-COVID routine," one of the factors alleged to have contributed to declining revenues. CAC ¶ 113. It is similarly hard to understand how Honest could be faulted for acknowledging the obvious in warning that "[t]he full extent to which the . . . pandemic will . . . impact our cash flow, business, financial condition, . . . and prospects will depend on future developments that are uncertain." CAC ¶ 93.

And as to their allegation of an undisclosed COVID-related deceleration in demand, plaintiffs identify no facts plausibly suggesting that better information was available at the time of the IPO. The fact that the stock-up phenomenon itself predated the IPO, CAC ¶¶ 5, 8; Opp. at 15-16, does not mean the negative demand impacts associated with the *end* of that stock-up were observable (much less observed) at that time. Indeed, if it was a "year-long" phenomenon, CAC ¶ 5, the stock-up could not have ended before Q1 2021. And even then, the scope of the stock-up effect would not have been apparent—how could Honest have known, for instance, that customers would not quickly resume stockpiling sanitizing products in response to the

---

[10] Plaintiffs concede that Honest's statements regarding past financial results—and, necessarily, COVID-19's impacts thereon—were accurate. Opp. at 15.

next COVID-19 variant? *In re Progenity*, 2021 WL 3929708, at *6 (S.D. Cal. Sept. 1, 2021) (no misstatement in failing to disclose scope of accrual liability that it was still calculating while preparing 10-Q). This leaves only CW-2's statements, that "it was clear from [daily inventory] reports and meetings related to those reports that there was a significant decline in the sale of wipes and sanitizers," and that "COVID products were 'not moving' and . . . had been trending down for some time." CAC ¶¶ 72-73. But CW-2 does not allege *when* these trends became "clear" or if she attended any "meetings," and refers to sales from "Q2'21," which ended two months *after* the IPO. CAC ¶ 73. Absent allegations establishing this information was available at the time of the IPO, plaintiffs cannot show falsity. *Cf. In re Restoration Robotics Sec. Litig.*, 417 F. Supp. 3d 1242, 1265 (N.D. Cal. 2018) (no falsity where CW did "not allege *when*" defendant indicated knowledge of undisclosed negative development).

Moreover, even if plaintiffs could show that Honest had better or more accurate information regarding the alleged deceleration, it would not have been required to disclose it. *See* 17 C.F.R. § 240.13a-13 (earnings disclosed 40 days after quarter end); *Progenity*, 2021 WL 3929708, at *9 n.13 ("[C]ompanies . . . are not required to disclose every shred of data in their possession in real-time, so long as the omission of that data does not render the statements they do share misleading.").[11]

Finally, the Court should reject plaintiffs' characterization of Honest's "omnichannel approach": "whether or not Honest was 'agnostic as to the channel where consumers' shop, it did not insulate the Company from changing consumer preferences in the way the Offering Documents claimed . . . and could not [] overcome changing customer needs as the pandemic lessened." Opp. at 16–17. Honest never came close to representing that its omnichannel approach was a silver bullet that could

---

[11] Plaintiffs suggest *Progenity* is inapposite because the defendant in that case warned in its registration documents that, at the time of the IPO, it had already experienced a decline in sales volume. Opp. at 16. But the Offering Documents *did* accurately predict Honest's Q1 2021 revenue—if anything, Honest's projections were too conservative. *Compare* Ex. E [Prospectus] at 9 (projecting revenues of $78–80 million and losses of $4.5–$5 million) *with* Ex. F [10-Q for period ended March 31, 2021] at 4 (reporting revenue of $81 million and losses of $4.48 million).

completely insulate it from larger market forces. Its claims were more modest: "Our omnichannel approach seeks to meet consumers however they want to shop, balancing deep consumer connection with broad convenience and accessibility." CAC ¶ 94. No reasonable investor would imagine that the mere diversity of distribution channels could protect the business against all eventualities.

## C. None of the Alleged Misstatements or Omissions Is Material.

Several statements plaintiffs rely upon are puffery, and therefore non-material. CAC ¶¶ 63 (taking issue with diapers as "strategic customer acquisition tool"), 89(b) (disputing whether diapers "achieved the pillars of Honest's 'costovation' strategy"), 94 (claiming misrepresentation in connection with characterization of omnichannel approach as "balancing deep consumer connection" and "meaningful benefits to . . . consumer[s]"). Plaintiffs suggest that viewed "[i]n context," these otherwise non-actionable statements cross the line from puffery to misleading statements of verifiable fact.[12] Opp. at 18-19. But all the context in the world cannot convert "vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers" into actionable misstatements.[13] *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010); *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *6 (N.D. Cal. Mar. 23, 2020) (statement that devices "present[ed] an 'incredible opportunity for core and category growth'" non-actionable); *Wozniak v. Align Tech.*, 850 F. Supp. 2d 1029, 1036-37 (N.D. Cal. 2012) ("getting really great feedback" statement non-actionable).

Plaintiffs' "bespeaks caution" arguments are similarly unpersuasive. The

---

[12] Plaintiffs also resort to reinterpreting Honest's statements with their own language. Opp. at 19 (purporting to explain what Honest meant by "balancing deep consumer connection" and "provides meaningful benefits to . . . consumer[s]"). Needless to say, this interpretive gloss cannot provide the basis for an actionable misstatement.

[13] Plaintiffs' authorities are distinguishable. None of the alleged misstatements at issue "address[ed] specific aspects of [Honest's] operation that [Honest] kn[ew] to be performing poorly." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017). Nor did products perform so far from expectations as to render puffery misleading. *Cf. Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *6 (N.D. Cal. July 26, 2017) (misleading to claim footage from drone was "amazingly smooth" when "flight time and recording capabilities were severely limited by a design defect . . . that caused it to lose power mid-flight and crash"); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *10 (N.D. Cal. April 28, 2020) (misleading to describe integration as "seamless[]" when company aware that projects to address integration had failed).

doctrine bars claims premised on Honest's alleged failure to accurately predict *future* decreases in revenue as a result of the Clean Conscious Diaper launch.[14]  Mot. at 12–13; CAC ¶ 98(d) (faulting Honest for not disclosing that "[a]s a result of the Clean Conscious Diaper's new technology and defective design, Honest *would* lose customers and revenue" (emphasis added)); Opp. at 10-11.  "The bespeaks caution doctrine provides a mechanism by which a court can rule as a matter of law . . . that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994) (citation omitted).  Plaintiffs do not explain why the robust disclosures in the Offering Documents are not sufficient to invoke the doctrine.

Nor do plaintiffs refute the reality that even if the Offering Documents had omitted some alleged fact regarding the diapers, their reception by consumers, or their effect on revenue, no such fact "would have misled a reasonable investor about the nature of his or her investment." *Rubke*, 551 F.3d at 1161.  Plaintiffs do not address the on-point disclosures cited in the Motion.  *Compare id.* 20–21 *with* Opp. at 21-22.  They also ignore that without additional allegations to establish their significance, the internet comments' mere existence demonstrates at most that *particular* persons had a negative view of the new diapers, hardly the sort of fact that a reasonable investor would consider material.  *Netflix*, 2005 WL 1562858, at \*7; *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1070 (N.D. Cal. 2010) (no materiality where "witnesses confirm only the fact of certain ongoing customer complaints").

Plaintiffs' arguments concerning materiality also fall flat with respect to the COVID-related allegations.  Unlike the discrete events at issue in their cases,[15] the allegations here concern consumer demand and revenue, variables subject to constant fluctuation.  CAC ¶ 5.  There is no dispute that Honest accurately disclosed its

---

[14] Because defendants do not invoke the doctrine in relation to alleged misstatements or omissions of material fact, plaintiffs' authorities are inapposite.  Opp. at 21 (citing cases for the proposition that historical statements are not protected).

[15] *Cf. Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) ("stop-work orders"); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at \*10-11 (C.D. Cal. June 9, 2016) (investigation).

COOLEY LLP
ATTORNEYS AT LAW

9

REPLY MEMORANDUM ISO MOTION TO DISMISS
CASE NO. 2:21-cv-7405-MCS (PLA)

revenue through Q4 2020 and that actual revenues for Q1 2021 fell within the range of projections in the Prospectus.  *See* n.11 *supra*.  Instead, plaintiffs without any authority suggest that Honest was obligated to disclose intra-quarter revenue, even though the Offering Documents were not otherwise false or misleading.  *Cf. Progenity*, 2021 WL 3929708, at \*12 (no actionable omission in nondisclosure of real-time revenue data).  But consider the practical challenges this would pose.  Would a disclosure duty be triggered by one week of declining revenues?  What about one month?  What if revenue increased unexpectedly?[16]  Liability cannot attach simply because there is *some* variance between what a company says in its registration statement and what appears in *subsequent* SEC filings.  Plaintiffs do not allege with "substantial likelihood" how information regarding the stock-up would have "significantly altered the 'total mix' of information," *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 889 (9th Cir. 2008), which already included extensive disclosures of risks, Mot. at 14-15, revenue data through Q4 2020 and projections for Q1 2021, and information regarding the unpredictable nature of the pandemic.

### D.     Plaintiffs Do Not Allege Violations of Item 303.

Plaintiffs do not allege separate Item 303 claims,[17] and do not establish any Item 303 violation because they do not adequately allege the existence of any adverse trend known to Honest.  *Steckman*, 143 F.3d at 1296 at 1297 (dismissing claims where defendant could not "have reasonably expected" slowdown at time of registration).

## III.    CONCLUSION

For the foregoing reasons, the CAC should be dismissed with prejudice.

---

[16] Many courts employ an "extreme departure" standard to account for this difficulty. *Steckman v. Hart Brewing*, 1996 WL 881659, at \*2 (S.D. Cal. Dec. 24, 1996) (duty to disclose "adverse trend" arises "only upon a showing of extreme departure from prior earnings trends"); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1211 (1st Cir. 1996) (similar); *cf. In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904, 940 (Del. Ch. 2004) ("[I]t is only when the intraquarter information makes it likely that the company will either outperform or underperform its projections in some markedly unexpected manner that the materiality threshold is satisfied.").

[17] Courts do not recognize a standalone private right of action under Item 303. Rather, "any omission of facts required to be stated under Item 303 will produce liability under Section 11." *Steckman v. Hart Brewing*, 143 F.3d 1293, 1296 (9th Cir. 1998).

Dated:  April 4, 2022

Respectfully submitted,

COOLEY LLP

By:      /s/ Michael C. Tu
              Michael C. Tu

Attorney for Defendants
THE HONEST COMPANY, INC., KATIE BAYNE, SCOTT DAHNKE, KELLY KENNEDY, ERIC LIAW, JEREMY LIEW, AVIK PRAMANIK, NIKOLAOS VLAHOS and JESSICA WARREN