UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE HONEST COMPANY SECURITIES LITIGATION | Case No. 2:21-cv-07405-MCS-PLA

**ORDER RE: MOTION TO DISMISS (ECF NO. 60)** |

In this putative securities class action, Defendant The Honest Company ("Honest") and its officers and directors, Nikolaos Vlahos, Kelly Kennedy, Jessica Warren (also known as Jessica Alba), Katie Bayne, Scott Dahnke, Eric Liaw, Jeremy Liew, and Avik Pramanik (together, "Individual Defendants," and with Honest, "Movants"), move to dismiss the Consolidated Class Action Complaint of Lead Plaintiff Kathie Ng. (Mot., ECF No. 60; *see* Mem., ECF No. 60-1.) Lead Plaintiff filed a brief opposing the motion, (Opp'n, ECF No. 63), and Movants filed a reply, (Reply, ECF No. 65). Morgan Stanley & Co. LLC; J.P. Morgan Securities LLC; Jefferies LLC; BofA Securities, Inc.; Citigroup Global Markets, Inc.; William Blair & Company, L.L.C.; Guggenheim Securities, LLC; Telsey Advisory Group LLC; C.L. King & Associates, Inc.; Loop Capital Markets LLC; Penserra Securities LLC; and Samuel A. Ramirez & Company, Inc. (together, "Underwriter Defendants") joined Movants'

1

motion and reply. (Mot. Joinder, ECF No. 62; Reply Joinder, ECF No. 68.) The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I.    BACKGROUND

According to the Consolidated Complaint, Honest describes itself as a brand focused on developing clean, sustainable, effective, and thoughtfully designed products primarily in the diapers and wipes, skin and personal care, and household and wellness categories. (Consol. Compl. ¶¶ 45–52, ECF No. 59.) In support of its May 2021 initial public offering ("IPO"), Honest submitted a registration statement and prospectus ("offering documents") to the Securities and Exchange Commission ("SEC") that Lead Plaintiff alleges contained false and misleading statements and material omissions. (*Id.* ¶¶ 76–110.) First, the offering documents failed to disclose that customers panned one of Honest's recently launched products, the Clean Conscious Diaper. (*Id.* ¶¶ 53–63, 85–91.) Second, the offering documents failed to disclose the negative impact to the company of consumers' stock-up of Honest products in response to the COVID-19 pandemic. (*Id.* ¶¶ 64–75, 92–95.) Third, the offering documents failed to disclose and misrepresented risks associated with the offering, including the potential impact customer dissatisfaction with the Clean Conscious Diaper and COVID-19 stock-up of Honest products could have on the company. (*Id.* ¶¶ 96–110.) Shortly after the IPO, Honest reported a loss in the first quarter of 2021, and its stock price fell thereafter. (*Id.* ¶¶ 111–23.)

Lead Plaintiff alleges that Individual Defendants prepared and executed the registration statement; reviewed, edited, and approved the offering documents; and solicited the purchase of Honest's common stock in the IPO. (*Id.* ¶ 25.) She alleges that Underwriter Defendants participated in planning the IPO and caused the offering documents to be filed with the SEC, and that they "were negligent in not knowing of the materially untrue statements and omissions contained in the Offering Documents." (*Id.* ¶¶ 39–44.)

Lead Plaintiff seeks to represent a class of purchasers of Honest's common stock who were damaged by the misrepresentations and omissions in the offering documents. (*Id.* ¶¶ 124–29.) She asserts two claims: (1) against all Defendants, violation of Section 11 of the Securities Act, 15 U.S.C. § 77k, and (2) against Individual Defendants, violation of Section 15 of the Securities Act, 15 U.S.C. § 77o. (*Id.* ¶¶ 130–47.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.   DISCUSSION

### A.   Section 11

"Section 11 of the Securities Act creates a private remedy for purchasers of a security if the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869,

885 n.14 (9th Cir. 2012) (quoting 15 U.S.C. § 77k(a)). "The plaintiff in a § 11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403–04 (9th Cir. 1996) (internal quotation marks omitted). Movants assert four grounds for dismissal of the Section 11 claim.

> 1.      Actionable Misstatements or Omissions

Movants offer scattershot arguments why Lead Plaintiff has not pleaded any actionable misstatements or omissions. (Mem. 7–19.)

> a.      *Clean Conscious Diaper Allegations*

Lead Plaintiff asserts that Defendants misrepresented or materially omitted facts about the Clean Conscious Diaper product by failing to disclose:

> (a)     According to customers experiencing chemical irritations and rashes, leaking and blowouts, Honest's Clean Conscious Diaper reformulation was neither safe nor effective;
>
> (b)     Honest's Clean Conscious Diaper was not achieving the pillars of Honest's "costovation" strategy, which emphasizes safety, sustainability, efficacy and design profile;
>
> (c)     Honest was not capturing the benefits of its Diapers as a "strategic customer acquisition tool"; and
>
> (d)     As a result of the Clean Conscious Diaper's new technology and defective design, Honest would—and did—lose customers and revenue.

(Consol. Compl. ¶ 89; *accord id.* ¶¶ 91, 98, 100, 102, 104, 107.)

Movants argue that the allegations supporting Lead Plaintiff's contention that "customers did not view its new Clean Conscious Diaper as either safe or effective" are

implausible. (Mem. 7 (quoting Consol. Compl. ¶ 7); *see id.* at 7–9.) The Court disagrees. Lead Plaintiff provides dozens of examples of customers expressing negative sentiment about the product online and statements by a former employee indicating Honest internally acknowledged the negative sentiment. (Consol. Compl. ¶¶ 57–63.) Lead Plaintiff plausibly alleges that consumers viewed the Clean Conscious Diaper as neither safe nor effective. The Court declines Movants' invitation to weigh the reliability of Lead Plaintiff's allegations at the pleadings stage.

Movants' puffery arguments concerning the diaper-related allegations are unavailing. A court may grant a motion to dismiss on the basis that offered "statements are 'puffery' only if it concludes that the statement is 'so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance.'" *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014) (quoting *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004)). Movants contend the phrase "strategic consumer acquisition tool," as used in the offering documents, is nonactionable puffery. (Mem. 9–10.) Movants overlook a nuance in the Consolidated Complaint: Lead Plaintiff does not claim that the phrase itself was false or misleading; instead, she uses the phrase to advance a theory that Defendants misrepresented or omitted material facts concerning the *efficacy* of Honest diapers as a vehicle for customer acquisition given customers' negative response to Honest's new diaper product. (Consol. Compl. ¶ 89(c) ("Honest was not capturing the benefits of its Diapers as a 'strategic customer acquisition tool' . . . ."); *see id.* ¶¶ 88–89.) Similarly, Lead Plaintiff submits that Honest mischaracterized its Clean Conscious Diaper as an exemplar of its commitment to "continuous improvement in [Honest's] existing products' safety, sustainability, efficacy and design profile" given customer sentiment about the product's safety and effectiveness. (*Id.* ¶ 86 (emphasis removed).) That Honest used an invented term, "costovation," to describe this strategy does not render its statements linking its strategy with a lambasted product mere puffery. (*Contra* Mem. 10–11.) In short, Lead Plaintiff adequately tethers customers' efficacy and safety

concerns with the Clean Conscious Diaper to statements and omissions in the offering documents.

Movants contend that the pleaded facts do not support the inference that Honest "would—and did—lose customers and revenue" "[a]s a result of the Clean Conscious Diaper's new technology and defective design." (Mem. 11 (alteration in original) (quoting Consol. Compl. ¶¶ 89(d), 91(d)).) The Court agrees with Movants that Honest's financial results from the first quarter of 2021, which appears to show positive diaper growth,[1] does not support Lead Plaintiff's theory. (*Id.* at 12 (citing Consol. Compl. ¶ 112).) But Movants take a myopic view of the theory by pointing exclusively to net revenue growth in the general product category in a single financial quarter— different in scope from Lead Plaintiff's general allegation of "los[t] customers and revenue" over an unconstrained period of time due to a specific product. Lead Plaintiff provides facts from which one can infer that customer dissatisfaction with the Clean Conscious Diaper led to a decline in customers and revenue beyond the limited financial snapshot Movants highlight. For example, the online reviews excerpted in the Consolidated Complaint suggests that customers canceled subscriptions and stopped purchasing Honest products after the first quarter of 2021. (*E.g.*, Consol. Compl. ¶ 60 (stating "I will be cancelling our subscription and going with another company" in May 2021 review); *id.* (setting forth negative review from October 2021).) Lead Plaintiff's theory would be more appropriately challenged upon a more developed record.

///

---

[1] The Court notes some ambiguity in the allegations concerning the financial results. Defendant Kennedy noted that "the category decreased 2%," that "diaper growth was positive in Q1," and that the diaper business "was up 13%" "[b]ased on consumption data for the last 12 weeks ending May 16." (Consol. Compl. ¶ 112 (emphasis removed).) The statement leaves uncertain, for example, whether revenue from the Clean Conscious Diaper, as opposed to all Honest products in the diaper category, went up or down, and whether the 13% figure measured between February and May 2021 marks the same period of time as Honest's first quarter results.

The Court defers decision on whether the bespeaks caution doctrine applies here. (*See* Mem. 12–13 (arguing for application of the doctrine).) The doctrine allows courts to determine as a matter of law "that defendants' forward-looking representations contained enough cautionary language or risk of disclosure to protect the defendant against" Section 11 claims. *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 798 (9th Cir. 2017) (internal quotation marks omitted); *see In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1415 n.3 (9th Cir. 1994) (extending doctrine to Section 11 claims). To apply the doctrine to bar a claim at the pleadings stage requires a "stringent showing" that "the language bespeaking caution . . . relate[s] directly to that to which plaintiffs claim to have been misled." *In re Atossa Genetics*, 868 F.3d at 798 (internal quotation marks omitted). Movants do not make this stringent showing in the two pages they devote to the argument in their moving brief. The offering documents identified general risks associated with negative customer sentiment on social media, (Consol. Compl. ¶ 101), but on this limited briefing, the Court declines to conclude this warning is specific enough to the issues of concern with the Clean Conscious Diaper to warrant application of the doctrine. *Cf. In re Atossa Genetics*, 868 F.3d at 798 (rejecting application of the doctrine where language bespeaking caution about FDA's concerns with Atossa's diagnostic tool "is vague enough to cover any concern the FDA might have had related to Atossa, and obscures the issue of concern to reasonable investors"). Further, the doctrine does not apply to the extent Lead Plaintiff rests her theory on Defendants' failure to disclose past loss of customers or revenue due to dissatisfaction with the Clean Conscious Diaper technology and design. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 948 (9th Cir. 2005) ("[E]xtension of the bespeaks caution doctrine to statements of historical fact is inappropriate."). (*See* Consol. Compl. ¶ 102 (contending risk disclosures were inadequate because Defendants cast them as potential risks rather than "*then-existing* material events and adverse trends or uncertainties that Honest *had already been* facing").)

///

b.      *COVID-19 Stock-Up Allegations*

Lead Plaintiff asserts that Defendants improperly touted increased consumer demand for Honest products due to COVID-19 without disclosing the following:

(a)     Contrary to the Offering Document's claim that the COVID-19 pandemic was good for Honest's business, retailers were destocking COVID-19 products and Honest's sales for those products were decreasing;

(b)     Honest produced daily reports detailing the Company's inventory and monitored inventory on a monthly basis;

(c)     Despite Honest's products being available "wherever customers shop," Honest's omnichannel strategy failed to account for changing customer needs as the pandemic lessened;

(d)     As Defendant Vlahos would later admit, Honest's COVID-19 stock up began as early as August 2020— nine months before the IPO; and

(e)     As a result, Honest was *already* seeing a decline in demand for COVID-19 related products at the time of the IPO.

(Consol. Compl. ¶ 95; *accord id.* ¶¶ 105, 108, 110.)

Movants complain that Lead Plaintiff has not articulated how Honest's representations about consumer demand were false or misleading, and they assert that Lead Plaintiff cannot maintain a claim based on Defendants' failure to predict the future impact of COVID-19 on Honest's business. (Mem. 14–15.) Again, Movants misconstrue the thrust of Lead Plaintiff's claim. The Consolidated Complaint provides that, contrary to what Defendants led potential investors to believe through the offering documents, COVID-19 related product demand was declining at the time Defendants published the offering documents due to consumers' stockpiling of those products. (*See*

Consol. Compl. ¶¶ 95, 105, 108, 110.) For reasons similar to the reasons why the Court declines to apply the bespeaks caution doctrine outlined above, the Court will not dismiss this component of the claim on the basis that Defendants adequately cautioned potential investors of the risks associated with consumer behavior in an unpredictable pandemic market environment. (*See* Mem. 14–16.)

Movants argue that Lead Plaintiff's allegations that Defendants knew about a present decline in consumer demand are insufficiently supported. (*Id.* at 16–18.) The Consolidated Complaint includes facts from which it may be inferred that Honest management knew demand was easing at the time of the IPO. For example, Honest issued a press release citing product stock-up "in the prior year period" to explain losses and stagnating growth in the second quarter of 2021. (Consol. Compl. ¶ 116; *accord id.* ¶ 92 (attributing to Defendant Vlahos statement that COVID-19 stock-up occurred "over the prior year period").) Given the company's daily inventory reporting and monthly inventory trend tracking, (*see id.* ¶¶ 72–73), Lead Plaintiff raises a plausible inference that consumer stock-up of COVID-19 related products was observable at the time of the offering documents. Lead Plaintiff adequately pleads that Defendants should have disclosed such information in the offering documents.

Finally, Movants submit that Lead Plaintiff fails to describe how statements regarding Honest's "omnichannel approach" to making its products available in multiple retail formats and locations, which Movants describe as puffery, were false or misleading. (Mem. 18–19.) The Court agrees that Lead Plaintiff has not adequately explained how COVID-19 product stockpiling renders Defendants' representations about the omnichannel retail strategy misleading. The Consolidated Complaint neither logically connects the purportedly undisclosed facts about consumer stock-up behavior with the representations about Honest's retail strategy nor establishes an inference that consumers' purchasing behavior demonstrates how Honest's strategy "failed to account for changing customer needs as the pandemic lessened." (Consol. Compl. ¶ 95(c).) For example, the Consolidated Complaint does not provide facts raising an inference that

Honest could have mitigated the impact of customers' stockpiling if it had prioritized certain retail formats over others instead of pursuing its omnichannel approach. In her brief, Lead Plaintiff argues that the omnichannel approach "did not insulate the Company from changing consumer preferences in the way the Offering Documents claimed." (Opp'n 16 (citing Consol. Compl. ¶¶ 49–52, 94–96).) Lead Plaintiff does not expressly advance this insulation theory in the Consolidated Complaint, so the Court declines to address its merits. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

In sum, Lead Plaintiff failed to plead enough facts to show Defendants' representations about Honest's "omnichannel approach" were false or misleading, but the rest of the misrepresentations and omissions are adequately pleaded.

### 2. Materiality

Movants assert that the alleged misstatements and omissions were not material. (Mem. 19–23.) Generally, questions of materiality are inappropriate for resolution on a motion to dismiss. *See, e.g.*, *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 834 (N.D. Cal. 2019); *Mulligan*, 36 F. Supp. 3d at 966. Lead Plaintiff alleges that Defendants' misstatements and omissions about the Clean Conscious Diaper product and COVID-19 related product stockpiling obscured the negative impact these issues could pose to Honest's business and led investors to believe that the potential risks of investment identified in the offering documents had not yet manifested. (Consol. Compl. ¶¶ 85–110.) Although Movants offer persuasive arguments why the misstatements and omissions identified in the Consolidated Complaint would not have misled a reasonable investor about the risks of investing in Honest, the Court declines to find Lead Plaintiff's allegations supporting the materiality of Defendants' misstatements and omissions implausible.

### 3. Regulation S-K

Movants argue that Lead Plaintiff does not adequately allege a violation of Items 105 and 303 of Regulation S-K. (Mem. 23–24 & 23 n.19.) Omitting facts required to

be stated under Regulation S-K produces liability under Section 11. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998). Item 105 requires disclosure of "the material factors that make an investment . . . speculative or risky," 17 C.F.R. § 229.105, and Item 303 requires disclosure of "any unusual or infrequent events or transactions or any significant economic changes" affecting reported income and "any known trends or uncertainties" that have had or are likely to have a material impact on net sales or revenues or income, *id.* § 229.303(b)(2)(i)–(ii). A violation of these disclosure duties occurs when the event, transaction, trend, or uncertainty was "[1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation." *Steckman*, 143 F.3d at 1296 (alterations in original) (internal quotation marks omitted).

Movants assert that Lead Plaintiff offers no allegations supporting Honest management's knowledge of the issues she identifies. (Mem. 23–24.) As Movants tacitly concede in another section of their brief, Lead Plaintiff alleges Defendants "were *aware* of undisclosed facts that plaintiffs allege rendered statements contained in the Offering Documents misleading." (*Id.* at 24 (citing Consol. Compl. ¶¶ 72, 75, 92).) Through witness testimony recounted in the Consolidated Complaint, Lead Plaintiff raises an inference that Honest management knew of the issues concerning the Clean Conscious Diaper product and consumer stockpiling of Honest products. (Consol. Compl. ¶¶ 59, 72–75, 92.) Lead Plaintiff sufficiently pleads Honest management's knowledge.

### 4.    Rule 9(b)

Finally, in a one-paragraph argument, Movants contend the claim sounds in fraud and must be dismissed for failure to meet the heightened pleading requirements of Rule 9(b). (Mem. 24–25.) Movants fail to identify any allegations in the Consolidated Complaint that do not meet Rule 9(b) and would require dismissal of the claim. The Court will not scour the pleading to develop Movants' argument on their behalf. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). The Court

rejects the Rule 9(b) challenge and declines to decide whether Rule 9(b) applies here. *See Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (declining to address an "argument . . . too undeveloped to be capable of assessment").[2]

For the reasons discussed above, the Court dismisses the Section 11 claim only to the extent it rests on statements made in the offering documents about Honest's "omnichannel approach."

**B.    Section 15**

Movants contend the Section 15 claim should be dismissed because Lead Plaintiff has not alleged a primary violation of Section 11. (Mem. 25.) The Section 15 claim survives Movants' challenge to the extent it rests on the well-pleaded components of the Section 11 claim.

**C.    Leave to Amend**

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Lead Plaintiff may be able to plead additional facts to support her "omnichannel approach" theory. Given the Ninth Circuit policy of granting leave to amend with "extreme liberality," *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (internal quotation marks omitted), the Court gives Lead Plaintiff leave to amend.

///

---

[2] The Court notes, however, that Lead Plaintiff elected to limit the Section 11 count by expressly disavowing any allegations or claims sounding in fraud. (Consol. Compl. ¶ 132.)

12

## IV.   CONCLUSION

The motion is granted in part and denied in part. The Court dismisses part of Lead Plaintiff's Section 11 claim. Within 14 days, Lead Plaintiff shall file either (1) an amended complaint or (2) a statement indicating she will proceed on the basis of the Consolidated Complaint without the theory of the Section 11 claim dismissed in this Order. Failure to file a timely amended complaint or statement will result in dismissal under Rule 41(b). Leave to add new defendants or claims must be sought by a separate, properly noticed motion.

**IT IS SO ORDERED.**

Dated: July 18, 2022

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE