MICHAEL C. TU (State Bar No. 186793)
*mctu@cooley.com*
BENJAMIN B. SWEENEY (State Bar No. 313650)
*bsweeney@cooley.com*
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, California 90071
Telephone:   (213) 561-3250
Facsimile:   (213) 561-3244

KOJI F. FUKUMURA (State Bar No. 189719)
*kfukumura@cooley.com*
COOLEY LLP
10265 Science Center Drive
San Diego, California 92121
Telephone:   (858) 550-6000
Facsimile:   (858) 550-6420

Attorneys for Defendants
THE HONEST COMPANY, INC., KATIE
BAYNE, SCOTT DAHNKE, KELLY KENNEDY,
ERIC LIAW, JEREMY LIEW, AVIK PRAMANIK,
NIKOLAOS VLAHOS and JESSICA WARREN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| IN RE THE HONEST COMPANY, INC. SECURITIES LITIGATION. | Case No. 2:21-cv-7405-MCS-PLA |
| | **HONEST DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| | Courtroom:   7C<br>Judge:   Hon. Mark C. Scarsi<br>Date:   April 17, 2023<br>Time:   9:00 a.m. |

COOLEY LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     RELEVANT FACTS.............................................................................................2

    A.   Honest Conducted Its IPO on May 4, 2021. ............................................2

    B.   On August 19, 2021, Honest's IPO Shares Were Commingled with Non-IPO Shares. ...................................................................................2

    C.   Initiation of Litigation and the Appointment of Lead Plaintiff. ..............5

    D.   Motion for Class Certification and Lead Plaintiff's Deposition..............5

III.    RELEVANT LEGAL STANDARD .....................................................................6

IV.     DISCUSSION........................................................................................................8

    A.   Any Class Should Be Limited to Shareholders Who Purchased Honest Stock Prior to August 19, 2021. ...................................................8

        1.   Section 11's traceability requirement is strictly construed............8

        2.   The traceability requirement cannot be met following the commingling of non-IPO shares on August 19, 2021. ................11

    B.   Lead Plaintiff Cannot Satisfy Rule 23(a)'s Adequacy Requirement. .....12

        1.   Lead Plaintiff is not monitoring or directing the litigation...........12

        2.   Lead Plaintiff has not been forthcoming. ....................................15

V.      CONCLUSION ...................................................................................................17

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbey v. Computer Memories, Inc.,*
634 F. Supp. 870 (N.D. Cal. 1986)........................................................................4, 10

*Alberghetti v. Corbis Corp.,*
263 F.R.D. 571 (C.D. Cal. 2010)..........................................................................12, 15

*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.,*
2009 WL 10673338 (C.D. Cal. Dec. 9, 2009)............................................................15

*In re Century Aluminum Co. Sec. Litig.,*
729 F.3d 1104 (9th Cir. 2013) .........................................................................*passim*

*In re Countrywide Fin. Corp. Sec. Litig.,*
2014 WL 3014343 (C.D. Cal. Mar. 10, 2014) ...........................................................12

*In re Elscint, Ltd. Sec. Litig.,*
674 F. Supp. 374 (D. Mass. 1987).............................................................................12

*In re Enron Corp. Sec. Litig.,*
529 F. Supp. 2d 644 (S.D. Tex. 2006).......................................................................15

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.,*
270 F.R.D. 150 (S.D.N.Y. 2010)...............................................................................16

*Hanon v. Dataproducts, Corp.,*
976 F.2d 497 (9th Cir. 1992) .......................................................................................7

*Kirkwood v. Taylor,*
590 F. Supp. 1375 (D. Minn. 1984) .............................................................................9

*In re Kosmos Energy Ltd. Sec. Litig.,*
299 F.R.D. 133 (N.D. Tex. 2014)......................................................................7, 13, 15

*Krim v. pcOrder.com, Inc.,*
210 F.R.D. 581 (W.D. Tex. 2002)................................................................................9

*Krim v. pcOrder.com, Inc.*,
   402 F.3d 489 (5th Cir. 2005) ..................................................................................1, 9, 10

*In re LendingClub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017).......................................................1, 8, 10, 12

*Miller v. RP On-Site, LLC*,
   2020 WL 6940936 (N.D. Cal. Nov. 25, 2020) ........................................................15

*In re Mirant Corp. Sec. Litig.*,
   2008 WL 11334395 (N.D. Ga. Aug. 5, 2008) ..............................................10, 11, 12

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ......................................................................8

*In re Northfield Labs., Inc. Sec. Litig.*,
   267 F.R.D. 536 (N.D. Ill. 2010) ...............................................................................17

*Parsons v. Ryan*,
   754 F.d 657 (9th Cir. 2014) ........................................................................................6

*Perrin v. SW Water Co.*,
   2014 WL 10979865 (C.D. Cal. July 2, 2014) ...................................................4, 9, 12

*Pirani v. Slack*,
   13 F.4th 940 (9th Cir. 2021) .....................................................................................11

*Pryor v. Aerotek Scientific, LLC*,
   278 F.R.D. 516 (C.D. Cal. 2011).............................................................................12

*In re Quarterdeck Office Systems, Inc. Sec. Litig.*,
   1993 WL 623310 (C.D. Cal. Sept. 30, 1993) .......................................................1, 10

*Shiring v. Tier Techs., Inc.*,
   244 F.R.D. 307 (E.D. Va. 2007).............................................................................17

*Slack Techs., LLC v. Pirani*,
   143 S. Ct. 542 (2022)................................................................................................11

*Sundaram v. Freshworks*,
   2023 WL 1819158 (N.D. Cal. Feb. 8, 2023).............................................................11

COOLEY LLP
ATTORNEYS AT LAW

iii

*Vignola v. Fat Brands, Inc.*,

   2020 WL 1934976 (C.D. Cal. Mar. 13, 2020) ........................................................7

*Wal-Mart Stores, Inc. v. Dukes*,

   564 U.S. 338 (2011)..................................................................................6, 7

*Wang v. Chinese Daily News, Inc.*,

   737 F.3d 538 (9th Cir. 2013) ................................................................7

**Statutes & Other Authorities**

Federal Rules of Civil Procedure

   23 ..........................................................................................6, 8, 15

   23(a) ...............................................................................2, 7, 12, 15

   23(b)..........................................................................................7

**OPPOSITION MEMORANDUM**

Defendants The Honest Company, Inc. ("Honest" or the "Company"), Katie Bayne, Scott Dahnke, Kelly Kennedy, Eric Liaw, Jeremy Liew, Avik Pramanik, Nikolaos Vlahos, and Jessica Warren (collectively, the "Honest Defendants") respectfully submit this memorandum in opposition to Lead Plaintiff's Motion for Class Certification (the "Motion").

## I.    INTRODUCTION

The certification of a class of shareholders in this case may eventually be appropriate under a permissible class definition and with a proper class representative. But two important facts weigh strongly against certification of the class that is proposed by Lead Plaintiff.

*First*, any class that is certified should be limited, at minimum, to shareholders who purchased Honest's stock prior to August 19, 2021, the date on which non-registered, non-IPO shares transferred pursuant to an early lock-up release first became "commingled" with registered IPO shares, making the required "tracing" of title back to the disputed offering impossible. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106–07 (9th Cir. 2013). As numerous courts within the Ninth Circuit and around the country have held, merely alleging that it is "likely" or "probable" that shares can be traced to the IPO and the associated offering documents in dispute is a "speculative basis for standing [and], without more, is insufficient for the purposes of § 11." *In re Quarterdeck Off. Sys., Inc. Sec. Litig.*, 1993 WL 623310, at *2–3 (C.D. Cal. Sept. 30, 1993); *accord In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179–80 (N.D. Cal. 2017) (limiting proposed class to the date that non-IPO shares "entered the open market, and were commingled therein with IPO shares"); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 498 (5th Cir. 2005) (rejecting statistical tracing approach and observing, "Appellants' arguments may have the sound ring of economic reality but unfortunately they merely point up the problems involved in the present scheme of statutory regulation" (internal quotation marks and citation omitted)).

***Second***, setting aside the definition of the proposed class, it has become abundantly clear in recent discovery that the Lead Plaintiff, Kathie Ng, who seeks to be appointed as class representative, is in fact neither monitoring nor directing this litigation in any sense, notwithstanding the sworn statements that appear in the declarations and other papers that she has filed with the Court. To the contrary, deposition testimony reveals that Ms. Ng communicates infrequently with counsel, has only the most rudimentary understanding of the claims and allegations in this case, and is either unwilling or unable to devote the necessary time and attention to this matter. Further, there are a number of significant inconsistencies between Ms. Ng's testimony and her written discovery responses and sworn declarations that raise serious questions regarding her candor to the Court and to defendants. Taken together, these factors, each of which are discussed in greater detail below, preclude the finding of adequacy necessary to satisfy the requirements of Rule 23(a).

## II.    RELEVANT FACTS

### A.    Honest Conducted its IPO on May 4, 2021.

The Honest Company, Inc. ("Honest") conducted its Initial Public Offering ("IPO") on May 4, 2021. *See generally* Mot., Ex. 2 [S-1/A Registration Statement]. In connection with its IPO, Honest filed with the Securities and Exchange Commission ("SEC") both an S-1 Registration Statement (and amendments thereto), as well as a Prospectus. *See id.*, Exs. 2–3. Several different banks served as underwriters for the IPO, purchasing Honest's IPO shares and then reselling them to the public at a price of $16.00 per share. *See id.*, Ex. 3 [Prospectus] at 1.

### B.    On August 19, 2021, Honest's IPO Shares Were Commingled with Non-IPO Shares.

As often occurs in connection with an IPO, entities and individuals who held Honest securities prior to the IPO entered into so-called "lock-up" agreements with the underwriters, which, subject to certain exceptions, prevented them from disposing of their earlier-acquired non-IPO shares for a specified period of time. In this case, the

lock-up period lasted 180 days from the date of the IPO. *See* Declaration of Michael C. Tu ("Tu Decl."), Ex. C [Lock-up Agreement] at 45/55. Shareholders, including Honest employees, who acquired stock pursuant to the vesting of restricted stock units ("RSUs") and/or the exercise of stock options during the lock-up period were also subject to similar lock-up agreements. *See* Mot., Ex. 3 [Prospectus] at 186/247. Among other exceptions, the lock-up agreements permitted non-executive employees of Honest to transfer up to 15% of their non-IPO shares "beginning at the opening of the third Trading Day . . . immediately following the Company's regular disclosure . . . [of] financial results for the second quarter following the most recent period for which financial statements are included in the Prospectus." Tu Decl., Ex. C [Lock-up Agreement] at 49/55, ¶(A). Honest filed its Form 10-Q for the second quarter of 2021 on August 13, 2021, meaning that, as of August 17, 2021 certain employees could begin transferring non-IPO shares. *See generally id.*, Ex. E [Q2 2021 Form 10-Q]; Ex. I [Legend Removal Instructions]; *id.* ¶8. The lock-up agreements also included an exception for the sale of shares necessary to cover income and payroll tax withholding obligations in connection with RSUs, options, warrants, or other securities of Honest. *See id.*, Ex. C [Lock-up Agreement] at 48/55, ¶(l).

On August 19, 2021, at the request of two pre-IPO shareholders, Honest's stock transfer agent, ComputerShare, Inc. transferred 6,740 unregistered, non-IPO shares to the brokerage E*TRADE. *See* Tu Decl., Ex. F [5/7/21 Share List] at 4/7, 6/7; Ex. G [Legend Key]; Ex. H [Transfer Request], J [Confirmation of Transfer]. As with most other modern brokerages, shares belonging to E*TRADE customers are held by the Depository Trust Company ("DTC"), a registered clearing agency. *See id.*, Ex. H [Transfer Request]. Judge Dolly M. Gee has previously summarized DTC's role as follows:

> DTC is the nation's principal securities depository.
> Securities deposited at DTC are registered by a company in "street name"– that is, the name of DTC's nominee, Cede & Co. Thus, Cede & Co., and not the shares' beneficial owner, appears on the issuer's stock records as

> the registered owner of the shares. Street name accounts allow changes in beneficial ownership to be effected through automated book entries rather than through the physical transfer of securities certificates.
>
> DTC holds deposited securities in "fungible bulk," such that its participants do not own specifically identifiable shares. Rather, participants own a "pro rata interest in the aggregate number of shares of a particular issuer held at DTC.

*Perrin v. SW Water Co.*, 2014 WL 10979865, at *2 (C.D. Cal. July 2, 2014) (citations omitted). Upon receipt by E*TRADE, those non-IPO shares of Honest's stock were immediately "commingled" or "pooled" in street name, not only with all other Honest stock held by other E*TRADE customers, but with all other Honest stock *held by DTC*.[1] *See id*.; *accord Abbey v. Comput. Memories, Inc.*, 634 F. Supp. 870, 873 (N.D. Cal. 1986) ("The DTC maintains deposits of large quantities of various stocks for the benefit of its broker-participants. . . . Thus, all of the CMI shares purchased by Abbey were a part of the common pool of CMI shares held in DTC's vault on the day of the transfer."). Around the same time, beginning on August 17, 2021, other Honest shareholders who held stock as a result of stock options exercised post-IPO began selling those shares back into the market, including for the purposes of covering tax withholding obligations. *See* Tu Decl., Ex. K [Option Sales] (reflecting numerous "same-day sales" beginning August 17, 2021). These shares were *not* registered under the Form S-1 (as amended) that forms the basis for plaintiffs' Section 11 claims. Rather, these shares were registered and issued pursuant to a different registration statement, Honest's May 6, 2021 Form S-8. *See id.*, Ex. D [Form S-8] at 2 (describing categories of securities covered under S-8); Mot., Ex. 3 [Prospectus] at 1 (describing categories of securities covered under S-1), 167 (referencing intent to file separate Form S-8). Accordingly, once those shares issued under the Form S-8 entered the market in August 2021 and were commingled and pooled electronically in fungible street name with the shares that were issued in the IPO under the Form S-1, any purchaser of shares after that date

---

[1] As part of the transfer process, the transfer agent, ComputerShare, removed from these shares the restrictive "legends" reflecting that the shares were subject to a lock-up agreement. *See* Tu Decl., Ex. I [Legend Removal Instructions].

necessarily cannot be presumed to have purchased shares traceable to the IPO.

**C.     Initiation of Litigation and the Appointment of Lead Plaintiff.**

On September 15, 2021, plaintiff Cody Dixon, represented by Glancy Prongay & Murray LLP, filed the initial complaint in this consolidated action.  ECF No. 1.  On November 15, 2021, Mr. Dixon and two other plaintiffs—Mike Wang and Kathie Ng— moved to consolidate the related actions and to be appointed lead plaintiff.[2]  In support of her application to be named lead plaintiff, Ms. Ng, represented by Labaton Sucharow LLP and The Schall Firm, submitted both a certification and a declaration under oath, in which she made a number of claims.  Among other things, Ms. Ng represented that, in order to fulfill her obligations to the putative class, she would "communicate regularly with [her attorneys] and receive status updates regarding the litigation, discuss fees and expenses, and independently direct their activities."  ECF No. 22-5 ¶6.  Ms. Ng further stated that she "fully understand[s] the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act," and that she is "willing to . . . provid[e] testimony at deposition and trial, if necessary."  ECF No. 22-3 ¶3.  Ms. Ng also said that she had "experience working with attorneys," ECF No. 22-5 ¶3, and that she "had taken steps to preserve documents related to [her] investments," *id.* ¶9. On January 26, 2022, the Court issued an order consolidating the related actions and appointing Ms. Ng lead plaintiff.  ECF No. 47.  In so doing, the Court relied, in part, upon Ms. Ng's representations that she would actively oversee the litigation "to achieve the best possible result in prosecuting the case."  ECF No. 47 at 7.

**D.     Motion for Class Certification and Lead Plaintiff's Deposition.**

On February 6, 2023, counsel for defendants met and conferred with counsel for Lead Plaintiff regarding her forthcoming Motion for Class Certification.  Among other things, the parties discussed that defendants would want to take the deposition of the proposed class representative as soon as possible in advance of their March 6, 2023

---

[2] Messrs. Wang and Dixon later filed notices of non-opposition to the appointment of Ms. Ng as Lead Plaintiff.  ECF Nos. 27, 32.

deadline to oppose class certification.  Tu Decl. ¶ 2.

On February 13, 2023, Lead Plaintiff filed her Motion for Class Certification, seeking appointment as class representative for a putative class defined as follows:

> All persons and entities that purchased or otherwise acquired Honest's publicly traded common stock pursuant and/or traceable to the Offering Documents for Honest's IPO, and who were damaged thereby. Excluded from the Class are: (i) Defendants and the Individual Defendants' immediate family members; (ii) the officers, directors, and subsidiaries of Honest and the Underwriter Defendants, at all relevant times; (iii) Honest's affiliates and employee retirement and/or benefit plan(s) and their participants and/or beneficiaries to the extent they purchased or acquired Honest's common stock pursuant or traceable to the Offering Documents through any such plan(s); (iv) any person who had or has a controlling interest in Honest, at all relevant times; (v) any entity in which any of the Defendants have or had a controlling interest, provided, however, that any "Investment Vehicle" shall not be excluded from the Settlement Class; and (vi) the legal representatives, heirs, successors, or assigns of any such excluded person or entity, in their capacity as such.

Mot. at 1–2.  The following day, defendants' counsel noticed Lead Plaintiff's deposition to occur in Los Angeles on Thursday, February 23, 2023.  Lead Plaintiff's attorneys did not respond with Lead Plaintiff's availability until the following week, at which point they informed defendants' counsel that Ms. Ng was either unable or unwilling, due to work commitments, either to fly to Los Angeles or to have her deposition taken during the work week.  Tu Decl. ¶ 4.  Defendants agreed to Ms. Ng's request to have her deposition taken remotely on Sunday, February 26, 2023.  During that deposition, Ms. Ng demonstrated a concerning lack of familiarity with the claims, the allegations, and even the parties in this litigation, raising questions about her fitness to serve as class representative.  This testimony is discussed in further detail below.  *See infra*, Section IV.B.

## III.    RELEVANT LEGAL STANDARD

Before a class can be certified and a class representative appointed, plaintiffs must demonstrate that they satisfy each of the requirements set forth in Federal Rule of Civil Procedure 23.  "Rule 23 does not set forth a mere pleading standard," meaning that any party "seeking class certification must *affirmatively demonstrate* his compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51

(2011) (emphasis added); *accord Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014) ("We therefore require a party seeking class certification to affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." (internal quotation marks omitted)); *Vignola v. Fat Brands, Inc.*, 2020 WL 1934976, at *3 (C.D. Cal. Mar. 13, 2020) ("A plaintiff cannot merely allege the class certification requirements, instead a plaintiff bears the burden to affirmatively demonstrate his compliance with the Rule." (internal quotation marks omitted)).  Thus, in considering whether to certify a class, courts must conduct a "rigorous analysis" to determine whether plaintiffs can prove each element of Rule 23(a) and 23(b)(3) by a preponderance of the evidence.  *See Wal-Mart Stores*, 564 U.S. at 350–51; *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542–43 (9th Cir. 2013) ("Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied.").

Rule 23(a) demands, among other things, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and that "the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(3–4).  "The test of *typicality* is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts, Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (emphasis added) (internal quotation marks omitted).  To establish *adequacy*, plaintiffs must produce "actual, credible evidence that the proposed class representatives are informed, able individuals, who are themselves—not the lawyers—actually directing the litigation."  *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 145 (N.D. Tex. 2014).  Finally, to satisfy Rule 23(b), plaintiffs must demonstrate by a preponderance of the evidence that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

## IV. DISCUSSION

### A. Any Class Should Be Limited to Shareholders Who Purchased Honest Stock Prior to August 19, 2021.

#### 1. *Section 11's traceability requirement is strictly construed.*

Any class that is certified should be limited to shareholders who purchased Honest's stock prior to August 19, 2021, the date on which non-IPO shares became commingled with the IPO registered shares that are the basis for plaintiff's lawsuit. Because this issue, which concerns the statutory standing of individual class members, affects the membership of the proposed class, it is appropriate for resolution at the class-certification stage. *See, e.g.*, *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1093 (C.D. Cal. 2015) ("Where the court determines that the class definition is overbroad, the court has the discretion to narrow the class to bring it within the requirements of Rule 23."); *LendingClub*, 282 F. Supp. 3d at 1180 (deciding at class-certification stage that class definition should exclude shares purchased after commingling of IPO shares with private, non-IPO shares).

As the Ninth Circuit previously explained in *Century Aluminum*, in order to establish standing to sue under Section 11, plaintiffs must be able to show either that they purchased their shares directly in the disputed offering, or that they can "trace the chain of title for their shares back to the [disputed] offering, starting with their own purchase and ending with someone who bought directly in the [disputed] offering." 729 F.3d at 1106–07. As the court explained, in today's modern trading environment, where physical stock certificates are seldom-used antiques, this tracing requirement "is often impossible [to satisfy] because most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares, and many brokerages do not identify specific shares with particular accounts, but instead treat the account as having an undivided interest in the house's position."[3] *Id*. at 1107 (internal quotation

---

[3] This practical reality is well illustrated by the deposition testimony of Ms. Ng. *See* Tu Decl., Ex. B [Ng Dep. Tr.] at 108:23–109:5 ("Q. Have you ever held or possessed any hard-copy stock certificates for any of [your 20,000 Honest] shares? A. No. Q. Do you

marks omitted); *see also Perrin v. SW Water Co.*, 2014 WL 10979865, at *2 (C.D. Cal. July 2, 2014) (explaining that, once transferred to a securities depository such as DTC, securities are held "in 'fungible bulk,' such that its participants do not own specifically identifiable shares," and finding traceability requirement unmet on those grounds (internal quotation marks omitted)), *aff'd sub nom. Hemmer Group v. SW Water Co.*, 663 F. App'x 496 (9th Cir. 2016); *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 586 (W.D. Tex. 2002) ("Lead Plaintiffs must demonstrate *all* stock for which they claim damages was actually issued pursuant to a defective statement, not just that it might have been, probably was, or most likely was, issued pursuant to a defective statement."); *Kirkwood v. Taylor*, 590 F. Supp. 1375, 1379 (D. Minn. 1984) ("DTC holds all certificates, both old and new, in its nominee name as pooled shares in a fungible mass for the benefit of all its members.").

And although there is some difference of authority on this issue, the better approach—and the only one endorsed to date by any federal circuit court of appeals— holds that this tracing requirement is strictly construed and cannot be satisfied by merely demonstrating that there is a high *likelihood* that a particular plaintiff's or class member's shares were acquired pursuant to the disputed registration statement. As explained by the Fifth Circuit in *Krim v. pcOrder.com, Inc.*, this probabilistic or statistical approach to tracing is unworkable because, if followed, "every aftermarket purchaser would have standing for every share, despite the language of Section 11, limiting suit to 'any person acquiring such security.'" 402 F.3d at 497–98 (quoting 15 U.S.C. §77k(a)). The Fifth Circuit rejected this result, holding that aftermarket purchasers lacked Section 11 standing even when 99.85% of the total shares present in the market had been issued pursuant to the disputed offering. *See id*. at 497 ("Taking a United States resident at random, there is a 99.83% chance that she will be from somewhere other than Wyoming. Does this high statistical likelihood alone, assuming

have any way of knowing who owned any of the 20,000 shares before you purchased them? . . . THE WITNESS: No.").

for whatever reason there is no other information available, mean that she can avail herself of diversity jurisdiction in a suit against a Wyoming resident? Surely not."). This approach—of strictly construing Section 11's traceability requirement, has been followed by numerous courts within the Ninth Circuit, including for the purpose of narrowing a proposed class definition to exclude putative class members whose shares flunk this traceability requirement. *See, e.g.*, *LendingClub*, 282 F. Supp. 3d at 1179–80 (limiting class to shares purchased prior to date that non-IPO shares "entered the open market, and were commingled therein with IPO shares"); *Quarterdeck Off. Sys.*, 1993 WL 623310, at *2–3 (rejected class proposed class representative on grounds that "statistical analysis to show that [plaintiffs'] shares 'might' have been registered shares" was a "speculative basis for standing [and], without more . . . insufficient for the purposes of § 11."); *Abbey*, 634 F. Supp. at 874 (traceability requirement unmet where IPO shares held by DTC commingled with non-IPO shares). That this approach often results in a more narrowly circumscribed class of Section 11 plaintiffs is no reason to doubt its applicability. Indeed, the Ninth Circuit specifically observed in *Century Aluminum* that "[t]hough difficult to meet in some circumstances, this tracing requirement is the condition Congress has imposed for granting access to the relaxed liability requirements § 11 affords." 729 F.3d at 1107 (internal quotation marks omitted); *see also Krim*, 402 F.3d at 498 ("That present market realities, given the fungibility of stock held in street name, may render Section 11 ineffective as a practical matter in some aftermarket scenarios is an issue properly addressed by Congress. It is not within our purview to rewrite the statute to take account of changed conditions."); *In re Mirant Corp. Sec. Litig.*, 2008 WL 11334395, at *11 (N.D. Ga. Aug. 5, 2008) ("Plaintiffs' [statistical tracing] argument was recently rejected by the Fifth Circuit in *Krim* and has been rejected by all other courts to address the issue. . . . It is not within the province of this Court, in wake of this precedential uniformity and Congressional silence in response, to announce a contrary rule today.").

Further, as Judge Charles R. Breyer recently explained, strict application of the

traceability requirement remains the rule following the Ninth Circuit's decision in *Pirani v. Slack Techs., Inc.*, 13 F.4th 940 (9th Cir. 2021),[4] even where there is only one registration statement. *See Sundaram v. Freshworks, Inc.*, 2023 WL 1819158, at *4 (N.D. Cal. Feb. 8, 2023) ("<u>Pirani</u>, critically, addressed unregistered shares sold after a <u>direct listing</u>, where registered and unregistered securities are offered to the public at the same time without any lock-up period. . . . <u>Pirani</u> did not call into question cases like <u>Century Aluminum</u> (and this case and <u>Doherty</u>), which address traceability of shares purchased in a mixed market after an IPO (and subsequent lock-up period), not a direct listing.").

### 2. *The traceability requirement cannot be met following the commingling of non-IPO shares on August 19, 2021.*[5]

Between May 4, 2021 and August 19, 2021, the only Honest shares in the public market were those issued and registered pursuant to the IPO.[6]  However, as described

---

[4] The Supreme Court granted certiorari to hear Slack's appeal of the Ninth Circuit's decision in that case. *See Slack Techs., LLC v. Pirani*, 143 S. Ct. 542 (2022).  Argument is set for April 17, 2023.

[5] To the extent the Court believes additional evidence is necessary to adduce the effects of this commingling on the traceability of shares or the definition of the proposed class, the Honest Defendants recognize that these issues can also be decided later in the litigation, including at summary judgment.  However, a decision at this early stage of the proceedings certifying only an appropriate class would have the benefit of making discovery and expert proceedings more tailored and efficient for all parties.

[6] Alternatively, the putative class period can be cut off on August 17, 2021, the date that post-IPO options registered under Honest's Form S-8, but *not* its Form S-1, began to flow into the marketplace, where they commingled with the shares registered under the S-1.  *See* Tu Decl., Ex. K [Option Sales] (reflecting numerous "same-day sales" of options beginning August 17, 2021).  Because plaintiffs allege no misrepresentation or omission in connection with Honest's Form S-8, introduction of these shares into the market is yet another reason that defeats traceability.  Notably, although the S-8 incorporated by reference Honest's May 6, 2021 *Prospectus*, *id*., Ex. D [Form S-8] at 4, Item 3, it did not incorporate the registration statement (i.e., the Form S-1) itself.  Other courts confronted with similar facts have come to the same conclusion – that introduction into the marketplace of shares registered under a different registration statement than the one in dispute is sufficient to defeat traceability.  For instance, in *In re Mirant*, the court considered plaintiffs' argument that "the shares that entered the market [later] pursuant to the [second registration statement] . . . [could] still be traced through incorporation because both the [second registration statement] and the IPO registration statement incorporated the same prospectus which included the misstatements at issue."  2008 WL 11334395, at *10.  The court rejected this "novel theory of incorporation" on the grounds that "Plaintiffs' Section 11 allegations are limited to misstatements contained in the IPO Registration Statement and because

above, *see supra*, Section II.B, on August 19, 2021, Honest's stock transfer agent, ComputerShare, transferred 6,740 shares of Honest common stock to E*TRADE. Tu Decl., Ex. J [Confirmation of Transfer]. These shares were issued prior to the IPO and never registered under the operative registration statement, and once transferred to E*TRADE were merged or commingled with all the other Honest shares held in electronic "fungible bulk" by DTC, including shares issued in the IPO. *SW Water Co.*, 2014 WL 10979865, at *2. From that point forward (at minimum),[7] any shares purchased on the open market can no longer be traceable to the disputed registration statement and must, accordingly, be excluded from any proposed class. As such, Lead Plaintiff cannot meet her affirmative burden to show that certification is appropriate as to this portion of the putative class. *See, e.g.*, *LendingClub*, 282 F. Supp. 3d at 1180 ("only shares that were purchased in the IPO or on the open market before [the commingling], are traceable to the allegedly misleading disclosure statement (absent an individualized showing that post-lock-up purchases were individually traceable to the IPO)"); *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 382 (D. Mass. 1987) ("The class that proposed intervenors might properly represent could not properly extend to persons who could not 'trace' their shares to the offering at issue; as a matter of law, such persons have no claim upon which relief could be granted.").

### B.    Lead Plaintiff Cannot Satisfy Rule 23(a)'s Adequacy Requirement.

#### 1.    *Lead Plaintiff is not monitoring or directing the litigation.*

"Individuals are not adequate representatives of a class when it appears that they have abdicated any role in the case beyond that of furnishing their names as plaintiffs." *Pryor v. Aerotek Sci., LLC*, 278 F.R.D. 516, 529 (C.D. Cal. 2011) (internal quotation marks omitted); *accord Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 580 (C.D. Cal.

Plaintiffs have not alleged liability under Section 12 arising out of a prospectus they now claim is misleading." *Id.*; *see also In re Countrywide Fin. Corp. Sec. Litig.*, 2014 WL 3014343, at *4 (C.D. Cal. Mar. 10, 2014) (distinguishing between IPO shares and shares registered under Form S-8 for purposes of traceability analysis).

[7] To the extent future discovery reveals that additional portions of the proposed class are subject to similar traceability issues, the Honest Defendants respectfully reserve their rights to assert such arguments at a later point, including at summary judgment.

2010) ("One of this Court's duties is to ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney." (internal quotation marks omitted)).  To establish adequacy, "plaintiffs seeking certifications must produce actual, credible evidence that the proposed class representatives are informed, able individuals, who are themselves—not the lawyers—actually directing the litigation." *In re Kosmos*, 299 F.R.D. at 145.  A declaration "contain[ing] little more than formulaic, boiler-plate assertions . . . presented to the Court through Lead Plaintiff's counsel . . . carries little weight." *Id.* at 146.

Here, the declarations submitted by Ms. Ng, first in support of her motion for appointment as lead plaintiff and more recently in support of this Motion, are comprised exclusively of the kind of "formulaic, boiler-plate assertions" criticized by courts.  For instance, in her sworn declaration submitted in support of the Motion, Ms. Ng states that she "understand[s] that a class representative oversees the litigation," and that her "duties may include consulting with counsel on proposed strategies and tactics during the course of the litigation, making recommendations as to whether or not to accept a particular settlement offer, and testifying at deposition and trial if called upon to do so." ECF No. 113-4 ¶3.  She further states that she has "reviewed and monitored the progress of this litigation and ha[s] regularly conferred with counsel."  *Id*. ¶4; *see also id.* ("I have received and reviewed periodic updates and other correspondence from counsel regarding all aspects of the case, including the progress of discovery and the filing of significant pleadings and court orders. I also participate in discussions with counsel regarding significant developments in the litigation.").

The trouble with these and other similarly self-serving statements is that, in addition to being "formulaic" and "boiler-plate," they are also directly contradicted by Ms. Ng's deposition testimony, during which she made a number of highly relevant and concerning admissions.  First, contrary to her claims that she has "monitored the progress of this litigation and . . . regularly conferred with [her] counsel," ECF No. 113-4 ¶3, Ms. Ng testified that she is only in contact with her attorneys only "once every

quarter or so." Tu Decl., Ex. B [Ng Dep. Tr.] at 41:11–16. Ms. Ng also admitted that, in total, she has spent at most "an hour or two" familiarizing herself with the allegations in the Consolidated and Amended Complaint, and was unable to answer even basic questions regarding the nature of the claims, the allegations, or even the named parties. *See id.* at 37:23–38:10 ("Q:  And do you contend that The Honest Company violated the Securities Act in connection with particular SEC filings or other documents? . . . A: I believe so, yes.  Q.  And sitting here right now, do you know what those documents are? . . . A.  Not off the top of my head."); *id.* at 96:5–97:8 (unable to recall any details regarding the disputed offering documents except that the information "would have probably been favorable for me to – to actually take the next step to purchase the stocks"); 111:6–24 (suggesting, incorrectly, that the operative complaint contains allegations that Honest misreported prior sales numbers); *id.* at 120:2–10 (able to name only 1 of 9 individual defendants); 132:13–15 ("Q. Have your attorneys engaged any private investigators? A. I don't know.").

Ms. Ng's testimony also raised questions regarding her capacity to fully participate in and oversee this litigation.  As she explained, her employment as an escrow officer is demanding, *see id.* at 49:11–16—so demanding, in fact, that, during a period that she admitted is not unusually busy for her, she was unable either to travel to Los Angeles for deposition or to sit for deposition during the work week, *see id.* at 49:14–50:4; *see also id.*, Ex. A.  Asked if she had a plan to ensure that her unavailability would not pose an issue in the future, Ms. Ng was unable to offer specifics, suggesting bizarrely that, prior to that week, she had been unaware that she might need to make herself available for deposition.  *See id.*, Ex. B [Ng Dep. Tr.] at 50:15–51:2 ("Q.  Are you taking any steps to ensure that [your work schedule] does not interfere? A. Well, again, if I just have ample notice, I'll be able to participate no problem and be -- make myself available.").  Ms. Ng's professed surprise that she would need to appear for deposition is particularly troubling in light of her repeated representations to the Court, as far back as November 2021, that she was prepared to be deposed in connection with

this litigation. *See* ECF No. 22-3 ¶3 ("I am willing to . . . provid[e] testimony at deposition."); ECF No. 113-4 ¶3 (similar); ECF No. 102 (setting schedule for class certification briefing as of October 2022). Ms. Ng also emphasized repeatedly that she would require "ample notice" in order to make herself available to participate in this litigation going forward, further confirming that she is not adequately committed to prosecuting this litigation. Tu Decl., Ex. B [Ng Dep. Tr.] at 50:5–19, 51:17–19.

Taken together, these admissions strongly suggest that, in fact, this "suit [is] controlled entirely by" Ms. Ng's attorneys, not her. *Alberghetti*, 263 F.R.D. at 580. This could reflect either an unwillingness or an inability on the part of Ms. Ng to fulfill the roles of lead plaintiff and class representative. Either way, her lack of involvement and availability—both to this point and going forward—preclude the finding of adequacy necessary to satisfy Rule 23(a), and should result in denial of the Motion. *See In re Enron Corp. Sec. Litig.*, 529 F. Supp. 2d 644, 732 (S.D. Tex. 2006) (rejecting as inadequate proposed class representatives who "ha[d] little or no knowledge of the litigation beyond that provided by counsel, ha[d] not read the majority of documents given to them by their attorneys, nor even read the complaints carefully . . . . [spending] nowhere near the time [needed to] . . . meaningful[ly] review"); *In re Kosmos*, 299 F.R.D. at 149–50 (proposed class representative's lack of knowledge of the litigation's allegations and core themes, along with her unwillingness to participate in person for proceedings, "indicate[d] that [the Lead Plaintiff] lacks the incentive needed to fulfill its fiduciary duties and vigorously prosecute the claims filed on behalf of 'likely thousands' of potential class members who do not have the opportunity to represent themselves").

### 2. *Lead Plaintiff has not been forthcoming.*

Even where a proposed class representative otherwise satisfies the requirements of Rule 23, the representative will be deemed inadequate where "the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty." *Miller v. RP On-Site, LLC*, 2020 WL 6940936, at

*9 (N.D. Cal. Nov. 25, 2020); *accord Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, 2009 WL 10673338, at *8 (C.D. Cal. Dec. 9, 2009) (rejecting proposed class representative based upon "false" representations made in the course of the litigation); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160–61 (S.D.N.Y. 2010) (explaining, "court may consider honesty and integrity of putative class counsels," and denying class certification based upon false statements in interrogatory responses and deposition testimony).

Lead Plaintiff's deposition testimony raises serious questions regarding whether she has, in fact, been forthcoming in her prior representations to the Court and in her written discovery responses. ***First***, as mentioned above, she testified on multiple occasions that the "first time" she ever learned she might need be deposed was just last week, despite having represented to the Court in her lead plaintiff motion in October 2021, that she *knew* she might need to be deposed. *Compare* Tu Decl., Ex. B [Ng Dep. Tr.] at 15:15–24, 50:20–51:2 *with* ECF No. 22-3 ¶3. ***Second***, despite having stated unequivocally in her responses to written interrogatories that she was "unaware of any [other] lawsuits or proceedings," to which she was previously a party, plaintiff appeared to admit that she was, in fact, involved in at least two other undisclosed lawsuits. *See* Tu Decl., Ex. B [Ng Dep. Tr.] 56:23–57:4 ("Q. Do you recall having been sued in small claims court by Diaz and Partners Property Management? A. I vaguely remember that. That was, from my memory, against my property manager. My name may have been on it, but I -- I didn't go to court or anything like that."), 61:6–19 ("Q. And you see where it says 'Defendant Kathie Ng is an individual believed to reside in . . . San Francisco County, California, who may claim an interest in the Subject Property. . . . Do you have any understanding regarding whether this document is referring to you? A. Well, I do see a name on here that I recognize. So -- and I -- I do remember recording a deed of trust roughly around that time, me being the lender."). Ms. Ng offered no explanation for these omissions. ***Third***, despite touting her "experience working with attorneys . . . in connection with [her] occupation," in her lead plaintiff filing, ECF No.

22-5 ¶3, Ms. Ng admitted during her deposition that, in fact, she does "not often" interact with attorneys in connection with her job, Tu Decl., Ex. B [Ng Dep. Tr.] at 23:19–21.

Taken together, these troubling inconsistencies and half-truths raise questions regarding Ms. Ng's reliability and undermine her adequacy to serve as class representative. *See Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (rejecting proposed class representative based on false statements included in lead plaintiff certification; "[A]s plaintiff has failed to demonstrate the requisite standards of honesty and integrity required of a fiduciary for the putative class, he is an inadequate representative."); *In re Northfield Labs., Inc. Sec. Litig.*, 267 F.R.D. 536, 543 (N.D. Ill. 2010) ("[Proposed class representative's] willingness to give a false answer to a deposition question makes him an inadequate representative of the class.").

## V.   CONCLUSION

For the foregoing reasons, the Honest Defendants respectfully request that the Lead Plaintiff's Motion for Class Certification be denied in its entirety.

Dated:  March 6, 2023

Respectfully submitted,

COOLEY LLP

By:   */s/ Michael C. Tu*
　　　　Michael C. Tu

Attorney for Defendants
THE HONEST COMPANY, INC., KATIE BAYNE, SCOTT DAHNKE, KELLY KENNEDY, ERIC LIAW, JEREMY LIEW, AVIK PRAMANIK, NIKOLAOS VLAHOS and JESSICA WARREN