**LABATON SUCHAROW LLP**
Jonathan Gardner (*pro hac vice*)
David J. Schwartz (*pro hac vice*)
Alfred L. Fatale III (*pro hac vice*)
Joseph N. Cotilletta (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
dschwartz@labaton.com
afatale@labaton.com
jcotilletta@labaton.com

*Lead Counsel for Lead Plaintiff
and for the Proposed Class*

**THE SCHALL LAW FIRM**
Brian Schall (State Bar No. 290685)
Rina Restaino (State Bar No. 285415)
2049 Century Park East, Suite 2406
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (213) 519-5876
brian@schallfirm.com
rina@schallfirm.com

*Liaison Counsel for Lead Plaintiff
and for the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE HONEST COMPANY, INC. SECURITIES LITIGATION | Case No. 21-CV-07405-MCS-PLA<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: April 17, 2023<br>Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: Hon. Mark C. Scarsi |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... ii

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    ARGUMENT ............................................................................................. 3

    A.    Defendants' Traceability Argument Fails ........................................... 3

    B.    Lead Plaintiff Kathie Ng Satisfies the Adequacy Requirement of Rule 23(a) ......................................................................................... 5

        1.    Lead Plaintiff's Deposition Testimony Establishes That She Is Monitoring the Litigation ............................................... 5

        2.    Lead Plaintiff Has Been Entirely Forthcoming ......................... 9

III.   CONCLUSION ........................................................................................ 10

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbey v. Computer Memories, Inc.*,
    634 F. Supp. 870 (N.D. Cal. 1986)....................................................................5

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013)........................................................................4

*Krim v. pcOrder.com, Inc.*,
    210 F.R.D. 581 (W.D. Tex. 2002)................................................................ 4-5

*Krim v. pcOrder.com, Inc.*,
    402 F.3d 489 (5th Cir. 2005)..........................................................................4

*In re LendingClub Sec. Litig.*,
    282 F. Supp. 3d 1171 (N.D. Cal. 2017)..........................................................4

*Ornelas v. Tapestry, Inc.*,
    2021 WL 3471173 (N.D. Cal. Aug. 6, 2021) .................................................7

*In re Pilgrim Sec. Litig.*,
    1996 WL 742448 (C.D. Cal. Jan. 23, 1996) ..................................................7

*In re Quarterdeck Off. Sys., Inc. Sec. Litig.*,
    1993 WL 623310 (C.D. Cal. Sept. 30, 1993) .................................................4

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
    2012 WL 4482032 (D.N.J. Sept. 25, 2012) ....................................................3

*Sudunagunta v. NantKwest, Inc.*,
    2018 WL 3917865 (C.D. Cal. Aug. 13, 2018)..........................................3, 4, 7

*Sundaram v. Freshworks Inc.*,
    2023 WL 1819158 (N.D. Cal. Feb. 8, 2023) ..................................................4

*In re Twitter Inc. Sec. Litig.*,
    326 F.R.D. 619 (N.D. Cal. 2018) ...................................................................6

*Wyatt v. Creditcare, Inc.*,
    2005 WL 2780684 (N.D. Cal. Oct. 25, 2005)..................................................7

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

ii

**Statutes**

Securities Act of 1933.............................................................................................3, 6

**Other Authorities**

Fed. R. Civ. P. 23....................................................................................................1

Fed. R. Civ. P. 23(a) ...............................................................................................5

Fed. R. Civ. P. 26(f).................................................................................................8

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

iii

## I.    PRELIMINARY STATEMENT

After reviewing Defendants' Opposition to Lead Plaintiff's Motion for Class Certification ("Defendants' Brief"), it is abundantly clear that Lead Plaintiff, Kathie Ng ("Lead Plaintiff"), satisfies all the requirements for class certification under Federal Rule of Civil Procedure 23. Defendants do not challenge numerosity, commonality, typicality, predominance, or superiority. Instead, Defendants only challenge Lead Plaintiff's adequacy and do so through misinterpretation of the record. As discussed further below, Defendant's Brief calls into question Defendants' candor to this Court.

Defendants' Brief rests entirely on spurious arguments grounded neither in law nor fact. First, Defendants attempt to attack the class definition, arguing that the Class must be limited only to those who purchased shares before the expiration of the lock-up period, after which Honest insiders were able to sell shares received prior to Honest's Initial Public Offering ("IPO"). Defendants ignore that the class definition specifically excludes those unable to trace their shares to the IPO. Unable to cite a single favorable case, Defendants rely on inapposite authority that stands for the uncontroversial principal that a Lead Plaintiff must be able to trace her shares to the offering at issue to have standing under Section 11. To be clear, Defendants have not contested Lead Plaintiff's standing.

Defendants then turn their sights on Lead Plaintiff's adequacy, where Defendants make misguided claims that she is not adequate because of work-related time commitments and her alleged failure in understanding when she needed to be present for a deposition. Moreover, Defendants attempt to undermine her adequacy as a class representative through careless and disingenuous attacks on her credibility from alleged contradictions between Lead Plaintiff's testimony and her prior sworn statements made in connection with her: (1) motions for Lead Plaintiff appointment and Class Certification; and (2) answers to Defendants' interrogatories. However, a

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

1

closer look at the evidence shows that Defendants either grossly (or intentionally) misconstrued her testimony or failed to conduct a reasonable investigation.

First, Lead Plaintiff's testimony regarding her understanding of her "need" to be deposed has been misconstrued—Defendants claim she is allegedly inadequate for not being able to present herself for a deposition over 380 miles away on nine days' notice. Defendants created this conundrum by waiting until the last possible minute to notice Lead Plaintiff's deposition, which, due to Lead Plaintiff's work schedule, voluntarily took place on a Sunday. Defendants' attempts to excoriate Lead Plaintiff for scheduling her deposition around the realities of working a full-time job, establish only that Defendants' approach to coordinating discovery was to paint a misleading picture of Lead Plaintiff's ability to lead this Action. Lead Plaintiff, who lost over $100,000, is "super motivated to participate in the case" so much so that she sought to be deposed on a Sunday. Lead Plaintiff is looking forward to continuing to work "alongside the attorneys" and "oversee[ing] the whole general process . . . every step of the way." Ex. 1 at 45:16-46:2. Defendants ignore these facts.

Second, contrary to Defendants' claims of inconsistency, Lead Plaintiff's testimony regarding her "need" to be deposed (i.e., when a deposition was certain because of a notice of deposition) perfectly comports with her prior sworn statements made in connection with the Lead Plaintiff appointment and Class Certification motions where she said she was "willing" to be deposed, "if necessary."

Third, Lead Plaintiff's testimony regarding prior lawsuits was consistent with her prior answers to interrogatories—she was unaware of, or simply did not recall, prior lawsuits. After conducting a further investigation into this issue, Lead Plaintiff submits that two of three prior lawsuits that Defendants identified at her deposition, either: (1) did not involve Lead Plaintiff; or (2) never came to Lead Plaintiff's attention because the case was dismissed prior to Lead Plaintiff being served. The

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

2

third lawsuit, a small claims action from almost two decades ago, was an action Lead Plaintiff did not recall—but Lead Plaintiff's recollection was refreshed at the deposition, and she served supplemental responses to Defendants' interrogatories.

Accordingly, Defendants' Brief does nothing to undermine Lead Plaintiff's adequacy and the Court should grant Lead Plaintiff's Motion for Class Certification.

## II.   ARGUMENT

### A.   Defendants' Traceability Argument Fails

Defendants spill much ink arguing that the proposed class definition must be expressly limited to shareholders who purchased Honest stock prior to August 19, 2021, the date they contend "non-IPO shares became commingled with the IPO registered shares[.]" Defs' Br. at 8. This argument fails for two distinct reasons.

***First,*** Lead Plaintiff's class definition expressly limits the Class to only those who can establish that they "purchased or otherwise acquired Honest's publicly traded common stock ***pursuant and/or traceable to the Offering Documents for Honest's IPO[.]***" *See* Mot. at 1. Thus, the proposed class definition already contemplates that investors who purchased shares not traceable to the IPO would be excluded from the class. The court held the same in *Sudunagunta v. NantKwest, Inc.*, 2018 WL 3917865 (C.D. Cal. Aug. 13, 2018), when rejecting an identical argument that a Securities Act class must end with the date non-IPO shares enter the market, despite the class definition expressly requiring traceability. *Id.* at *9 ("The definition of the proposed class already addresses traceability."); *see also, e.g.*, *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, 2012 WL 4482032, at *11 (D.N.J. Sept. 25, 2012) (finding defendant's argument that "not every member of the proposed [c]lass can 'trace' its shares" premature when raised in connection with class certification).[1]

---

[1] While Defendants did not bring on point case law to the Court's attention, they appear to have anticipated that Lead Plaintiff would and essentially conceded the point on prematurity. *See* Defs' Br. at 11 n. 5 ("Defendants recognize that these issues can also be decided later in the litigation.").

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

3

Thus, there is no need or legal basis for the temporal cut-off that Defendants propose.[2]

**Second,** Defendants egregiously contort the holdings of numerous cases in an attempt to justify their unsupportable argument. Each of the cases Defendants cite discusses traceability only in the context of whether a ***lead plaintiff*** must establish the traceability of her shares. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106–07 (9th Cir. 2013) ("The question raised by this appeal is whether plaintiffs have adequately alleged that their shares are traceable to the secondary offering[.]"); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 493–94 (5th Cir. 2005) ("Appellants challenge . . . standing . . . . The denial of class certification is not before us."); *In re Quarterdeck Off. Sys., Inc. Sec. Litig.*, 1993 WL 623310, at *2 (C.D. Cal. Sept. 30, 1993) ("Defendants' first argument in opposition to class certification is that the named plaintiffs lack standing to bring a class under § 11 because they have not shown that their stock can be traced to the registration statement."); *Sundaram v. Freshworks Inc.*, 2023 WL 1819158, at *4 (N.D. Cal. Feb. 8, 2023) (denying motion to be appointed lead plaintiff because shares were purchased after the lock-up period expired); *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017) ("Defendants argue that [lead plaintiff] is atypical because . . . . [lead plaintiff] cannot show that its shares are traceable to IPO purchases"); *Krim v.*

---

[2] Defendants' authority does compel a contrary conclusion. Indeed, *In re NJOY, Inc. Consumer Class Action Litig.,* a consumer class action, merely stands for the non-controversial point that a court may limit a class definition, if it first finds that the definition is too broad. 120 F. Supp. 3d 1050, 1093 (C.D. Cal. 2015). Because the class is already limited to those who purchased shares traceable to the IPO (as in *Sudunagunta*), this principle has no bearing on Lead Plaintiff's Motion. Defendants also cite to *In re LendingClub Sec. Litig.*, however, *LendingClub* merely holds that a Lead Plaintiff may be subject to unique defenses where their shares were not traceable to the IPO. *Id.* at 1180; *see also* Defs' Br. at 8. For reasons discussed herein, that scenario is inapplicable here.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

4

*pcOrder.com, Inc.*, 210 F.R.D. 581, 584 (W.D. Tex. 2002) ("Defendants argue Lead Plaintiffs do not have standing to pursue their cause of action under Section 11"); *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 872 (N.D. Cal. 1986) ("Defendants argue that they are entitled to summary judgment . . . because . . . [lead plaintiff] cannot possibly trace his shares to the offering[.]"). Not one of these cases even discusses the traceability of an unnamed class member's shares, much less imposes a requirement to temporally limit a class's definition as a result thereof.

Defendants do not challenge the traceability of Lead Plaintiff's shares because they have no basis to do so. As established in her certification, *see* ECF No. 113-4 and as she testified, Ex. 1 at 84:10-15, Lead Plaintiff purchased her shares of Honest stock on June 18, 2021, over two and a half months before Defendants contend the lock-up expired. As a result, at the time of her purchase, the only shares available to Lead Plaintiff were those offered in Honest's IPO. *See* Defs' Br. at 11 ("Between May 4, 2021 and August 19, 2021, the only Honest shares in the public market were those issued and registered pursuant to the IPO."). Thus, to the extent Defendants' argument is construed as attacking Lead Plaintiff's standing or typicality as result of the traceability of her shares, it must fail.

### B. Lead Plaintiff Kathie Ng Satisfies the Adequacy Requirement of Rule 23(a)

#### 1. Lead Plaintiff's Deposition Testimony Establishes That She Is Monitoring the Litigation

In a strained attempt to undermine Lead Plaintiff's adequacy, Defendants selectively quote cherry-picked portions of her deposition testimony to create the appearance that Lead Plaintiff has failed to oversee the litigation. Not so. When questioned by Defendants, Lead Plaintiff affirmatively answered that she had reviewed each relevant filing in this litigation. *See, e.g,.* Ex. 1 at 18:10-12 (Q. Do you recall whether you reviewed that Complaint before it was filed? A. I did.), 53:10-24 (Q . . . Did you review, prior to filing, the Motion for Appointment as Lead

Plaintiff filed in fall of 2021? A. I did. Q. Did you review the Motion for Appointment as Class Representative and Certification of the Class filed in February of this year? A. I did. Q. And did you review the Consolidated and Amended Complaint filed in February of 2022? A. I did. Q. Can you think of any other court filings in this case that you have reviewed? A. The Complaint. There were several other documents that I did review"). She similarly recalled reviewing and responding to interrogatories propounded on her by Defendants. *Id.* at 54:9-11.

Defendants further attempt to undermine Lead Plaintiff's adequacy by arguing that her knowledge of the litigation is lacking, Defs' Br. at 13-14, however, as courts in the Ninth Circuit have held the "knowledge required to qualify a class representative is low . . . and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case." *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 628 (N.D. Cal. 2018). Indeed, that court "ha[d] not uncovered any case in this circuit finding a plaintiff inadequate on this ground." *Id.*

Here, Lead Plaintiff's deposition testimony establishes that she is familiar with this Action. Lead Plaintiff testified that this was a "Securities Act" case, Ex. 1 at 37:21-22, where Honest misled investors by failing to disclose that its "new diaper technology," the Clean Conscious Diaper, led to "consumer dissatisfaction," *id.* at 111:1-5, and was aware that the Complaint contained numerous references to negative customer reviews, *id.* at 88:15-21, because "it was a faulty product… that [] caused rashes…leaks and blow-backs," *id.* at 124:4-13. Similarly, Lead Plaintiff articulated that Honest failed to disclose information relating to the "the destocking of COVID products," *id. at* 128:20-21, including relating to "sales and inventory levels," *id* at 128:25-129:1, and explained that Honest "[re]presented the products that were COVID related to be selling . . . . But come to find out, . . . the sales were actually declining because, . . . COVID shots were available," *id. at* 120:15–121:3. The above testimony establishes that Lead Plaintiff is aware of the two primary

categories of misstatements sustained by the Court.[3] *See Sudunagunta,* 2018 WL 3917865, at \*7 (finding class representative adequate where "deposition testimony demonstrates a general understanding of the theory of the case").

That she was not able to remember each SEC filing or remember the names of ***all*** the individual defendants does not render her an inadequate class representative. *See In re Pilgrim Sec. Litig.*, 1996 WL 742448, at \*6 (C.D. Cal. Jan. 23, 1996) ("the class representatives may not be experts on every aspect of the case, or fully comprehend the relevant facts regarding [d]efendants allegedly fraudulent conduct, but such knowledge is not required to be an adequate class representative"). Indeed, courts merely ask whether the representatives, "through qualified counsel," are vigorously and tenaciously protecting the interests of the class. *Wyatt v. Creditcare, Inc*., 2005 WL 2780684, at \*5 (N.D. Cal. Oct. 25, 2005). Lead Plaintiff testified directly to this point: "Q. Why did you decide to apply for the class representative position? A. Well, based on the monetary loss that I suffered…I'm super motivated to participate in the case from beginning to end, and I just *want* to work alongside the attorneys and just oversee the whole general process…. I *want*[] to be involved [in] every step of the way." Ex. 1 at 45:14-46:2.  *See Ornelas v. Tapestry, Inc.*, 2021 WL 3471173, at \*5 (N.D. Cal. Aug. 6, 2021) (Plaintiff need only be "***willing*** to take the necessary steps to prosecute the action").

Defendants next take issue with Lead Plaintiff's request that her deposition be scheduled on a Sunday. This is simply an attempt by Defendants to weaponize their

---

[3] Defendants take Lead Plaintiff to task for allegedly "suggesting, incorrectly, that the operative complaint contains allegations that Honest misreported prior sales numbers." Defs' Br. at 14. However, Defendants egregiously fail to mention that Lead Plaintiff clarified minutes later. *See* Ex. 1 at 111:19-24 ("Q. Is it your understanding that Honest reported sales numbers that were higher than what it had, in fact, experienced? A. ***Well, I'm not too sure about that***, but the claim of the sales for COVID-related products being really good, when it actually wasn't, was a factor.").

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

7

dilatory tactics and distract from the fact that they waited until the last second to notice Lead Plaintiff's deposition. Indeed, though the Court set the class certification briefing scheduled on October 26, 2022, *see* ECF No. 102, almost four months before any brief was due, Defendants waited until three weeks before their opposition was due to notice Lead Plaintiff's deposition, *see* Ex. 2. Further, in their Joint Rule 26(f) report, the parties agreed that all discovery "on matters relevant to class certification to commence ***prior to*** Lead Plaintiff's filing of a Motion for Class Certification[.]" ECF No. 94 at 10. To facilitate this discovery, and as called for pursuant to the Joint 26(f) report, Lead Plaintiff provided Defendants with notice on November 4, 2022, that she would be seeking to be appointed as class representative. Ex. 3. Defendants sat on this information and waited until less than three weeks before their opposition was due to notice that deposition. That Lead Plaintiff was willing to proceed with the deposition on a Sunday does not undermine her willingness to lead this Action, but rather shows her commitment to make herself available to both Defendants and the Court even if that means providing herself for a deposition on one of her only days off because of Defendants' short notice.

Moreover, Defendants' assertion that Lead Plaintiff's testimony directly contradicts her prior declarations because she was unaware of the "need" to be deposed is misplaced. *See* Defs' Br. at 14. Indeed, at her deposition Defendants asked Lead Plaintiff when she knew "that [she] would ***need*** to testify at a deposition . . . in connection with this litigation?" Ex. 1 at 15:15-17; *see also id* at 15:21-23, 50:20-24. While Lead Plaintiff was aware she ***might*** be deposed there was no certainty that she would ***need*** to be deposed until she received a notice of deposition. Lead Plaintiff reiterated that she was more than willing to travel in connection with this litigation but was unable to do so for her deposition given "such short notice[.]" *Id.* at 50:5-10; *see also id.* at 50: 17-19, 51:19. This directly supports the assertions Lead Plaintiff made in her certification attached to her Lead Plaintiff Motion and

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

8

Declaration in support of Class Certification. *See* ECF 22-3 at ¶3 ("I am **willing** to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, **if necessary**."); ECF 113-4 at ¶3 ("I understand that, as class representative, my duties **may** include . . . testifying at deposition and trial **if called upon to do so**."). Had Defendants diligently proceeded with class certification discovery, Lead Plaintiff would have been willing and able to sit for an in-person deposition at a time and location of Defendants' choice.

## 2. Lead Plaintiff Has Been Entirely Forthcoming

Defendants' endeavor to undermine Lead Plaintiffs' credibility through an ostensible game of "gotcha" is a weak attempt at overcoming class certification. Indeed, Defendants first rehash their argument that Lead Plaintiff was not willing nor able to make herself available for a deposition. Defs' Br. at 16. As explained above, this is plainly wrong and inconsistent with her deposition testimony.

Then, in a second attempt at impugning Lead Plaintiff's credibility, Defendants trot out three lawsuits, to which they claim Lead Plaintiff was a party, in an effort to show a purported inconsistency with her interrogatory responses. These lawsuits, two of which are close to two decades old have no bearing on this litigation, do not undermine Lead Plaintiff's credibility, and, as explained below, are consistent with her interrogatory responses.

Defendants first allege Lead Plaintiff omitted a quiet title action ostensibly brought against her in California state court, captioned *Toorak Capital Partners, LLC v. La Mancha Systems Corp* (the "Toorak Action"). At her deposition Lead Plaintiff testified she was unaware of such a lawsuit and never heard of Toorak Capital Partners. *See* Ex. 1 at 62:13-15. After an investigation into the Toorak Action, it is clear Lead Plaintiff was unaware of the lawsuit as it was dismissed before she was served. *See* Ex. 4. Now that this litigation has been brought to her attention, Lead Plaintiff has supplemented her interrogatory responses. *See* Ex. 5.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

9

Defendants next confronted Lead Plaintiff with a lawsuit brought in 2005 captioned *Ng, K v. Loretto C.* (the "Loretto Action"), which Lead Plaintiff similarly testified she was unaware of. Ex. 1 at 62:16-19 ("Q. Do you recall having ever been . . . a party to a court case against someone named Carissa Loretto? A. No."), 63:20-23 ("Q. Sitting here, do you know, one way or another, whether that is referring to you or a different Kathie Ng? A. It has to be a different Kathie Ng."). After a search of a publicly available database, it is clear that the Loretto Action was brought by a different Kathie Ng who is 73 years old—Lead Plaintiff is younger and resides at 161 Otsego Avenue, San Francisco, California, a different location. *See* Exs. 6, 7.

Finally, Defendants point to an action brought in Idaho against Lead Plaintiff and her ex-husband in 2006, captioned *Diaz & Partners Prop. Mgmt., et al. vs. Howard Dong, et al.*, (the "Diaz Action"). While Lead Plaintiff was a party to the Diaz Action, she did not recall it at the time she submitted her interrogatory responses. Further, as Defendants were able to find the Diaz Action before Lead Plaintiff's deposition, they were not prejudiced as a result of Lead Plaintiff's inadvertent omission. That Lead Plaintiff failed to recall an action brought over 17 years ago in small claims court resulting in a payment of $165 dollars does not render her an inadequate class representative nor establish that she has not been forthcoming. Lead Plaintiff's response to Defendants' interrogatories clearly states she was "unaware" of any lawsuits, which she confirmed at her deposition. Ex. 1 at 59:23-60:8. Moreover, now that Lead Plaintiff's recollection has been refreshed, she has supplemented her initial interrogatory response. *See* Ex. 5. Accordingly, Defendants' attempts to attack Lead Plaintiff's credibility should be ignored.

## III. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: grant the Motion.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

10

Dated: March 27, 2023          LABATON SUCHAROW LLP
                               By:  */s/ Alfred L. Fatale III*
                                   Alfred L. Fatale III

                               Jonathan Gardner (*pro hac vice*)
                               David J. Schwartz (*pro hac vice)*
                               Alfred L. Fatale III (*pro hac vice*)
                               Joseph N. Cotilletta (*pro hac vice*)
                               140 Broadway
                               New York, New York 10005
                               Telephone: (212) 907-0700
                               Facsimile: (212) 818-0477
                               Email: jgardner@labaton.com
                               dschwartz@labaton.com
                               afatale@labaton.com
                               jcotilletta@labaton.com

                               *Lead Counsel for Lead Plaintiff*
                               *and for the Proposed Class*

                               THE SCHALL LAW FIRM
                               Brian Schall (State Bar No. 290685)
                               Rina Restaino (State Bar No. 285415)
                               2049 Century Park East, Suite 2406
                               Los Angeles, California 90067
                               Telephone: (310) 301-3335
                               Facsimile: (213) 519-5876

                               *Liaison Counsel for Lead Plaintiff and for*
                               *the Proposed Class*

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No.: 21-CV-07405-MCS-PLA

11