UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

-oOo-

HONORABLE MARK C. SCARSI, UNITED STATES DISTRICT JUDGE

CODY DIXON,

                    Plaintiff,

   v.                         No. 2:21-cv-07405-MCS

THE HONEST COMPANY, INC., et al.,

REPORTER'S TRANSCRIPT OF STATUS CONFERENCE HEARING

LOS ANGELES, CALIFORNIA

AUGUST 14, 2023

_____

SUZANNE M. McKENNON, CRR, RMR
UNITED STATES COURT REPORTER

UNITED STATES COURTHOUSE
350 W 1st STREET, ROOM 3411
LOS ANGELES, CALIFORNIA 90012
(213) 894-3913
suzanne@ears2hands.com

APPEARANCES:


On Behalf of the Plaintiff:

      ALFRED L. FATALE, III, Attorney at Law
            Labaton Sucharow LLP
            140 Broadway, 34th Floor
            New York, New York 10005


On Behalf of the Defendant The Honest Company, Inc.:

      MICHAEL C. TU, Attorney at Law
            Cooley LLP
            355 South Grand Avenue, Suite 900
            Los Angeles, California 90071-1560


On Behalf of Defendant Morgan Stanley and Co. LLC:

      DANIEL H. R. LAGUARDIA, Attorney at Law
            Shearman and Sterling LLP
            535 Mission Street, 25th Floor
            San Francisco, California 94105

(Proceedings commenced on August 14, 2023 at 10:55 a.m.)

THE COURTROOM DEPUTY:  Calling Item Number 3, Civil 21-7405, In Re The Honest Company, Inc. Securities Litigation.

Would Counsel make their appearances for the record?

MR. FATALE:  Hello.  Alfred Fatale for Labaton Sucharow on behalf of lead plaintiff.

MR. TU:  Michael Tu of Cooley LLP on behalf of The Honest Defendants.

THE COURT:  Good morning.

DANIEL LAGUARDIA:  Good morning.  Daniel Laguardia of Shearman and Sterling for the underwriting defendants.

THE COURT:  Good morning.  So we're here on a Motion to Amend the complaint.  I've just got some questions for the parties.  So the parties are arguing that, if the Court allows the amendment of the complaint, there is a stay of discovery, according to the PSLRA.

Why does that stay apply, considering the Court's already determined the legal sufficiency of the complaint on the first Motion to Dismiss?

MR. TU:  Your Honor, maybe I can address that.

THE COURT:  Sure.

MR. TU:  So I believe the case law under the Ninth Circuit as well as other Central District of California cases that have applied the relevant law are clear, that the intention of the Reform Act is to maintain a stay on all

discovery and other proceedings until the sufficiency of the complaint at issue has been determined.

In this case, if there is an amended complaint that adds six defendants and adds a host of other allegations, it is really no different than if you were on a second or third round, I think, of a Motion to Dismiss, in the usual case.  And I think the case law is pretty clear and on point.  We've cited to several of the cases in our submission to the Court, so I won't go into those unless you'd like me to.

THE COURT:  Let me ask you:  So the amended complaint we're adding -- you're adding new defendants.

Are there new substantive allegations in the complaint?

MR. TU:  There are.  I'll let Counsel for the plaintiffs address that.  I think he's in a better position.

MR. FATALE:  Your Honor, I can give citations to the complaint, if you'd like.  As I talk through this, I will.

The substantive allegations are essentially in paragraph -- the new substantive allegations are essentially in paragraphs 48 to 56 of the Amended Complaint -- proposed Amended Complaint.  Our new allegations include the fact that the IPO was conducted primarily for the benefit of the six Catterton defendants, that is was orchestrated by Catterton, who insisted that the board agree to it happening.

We allege that Catterton played a substantial role in reviewing the financials for Honest, which were incorporated

into registration statements.  That is paragraphs 49 and 50.

Central to the case is the due diligence process here.  We allege that Catterton performed parts of the due diligence that are at issue in this case and in defense of all defendants except the issuer.  That is paragraph 51.

In paragraph 52 and 53, we have allegations that Catterton was directly managing Honest's business and affairs leading up to the IPO and in connection with the IPO.

In paragraph 54, we allege that the underwriter defendants, particularly, the lead underwriter defendant, Morgan Stanley, was selected by the Catterton defendants for this case.

We have allegations in paragraph 55 and 56, going to more generally the control that Catterton had over The Honest employees in connection with the IPO and preparation of the offering documents.

THE COURT:  Okay.  So let me ask you this:  We've already determined class cert.  Would we -- is it -- we would have to go through that process again?  Would the Catterton defendants have an opportunity to challenge the Court's granting a class cert?

MR. FATALE:  They could try, Your Honor.  We have not changed the definition of the Catterton -- of the class.  The Catterton defendants would be included in defendants.  But the structure of the class doesn't change.  They were always

selling -- they didn't sell any offering.  They didn't buy any offering, so they wouldn't need to be excluded.

And in our notice to the class, we did notice to the potential class -- class members, the class members, that the definition might change before or after trial.  But standing here today, not knowing their arguments, I don't think there needs to be a change, and I put the definition that Your Honor approved in our Amended Complaint.  That is also a change in the complaint, that we updated the proposed definition.

THE COURT:  So if we were to add these new defendants, right -- and the discovery cut off in this case is -- what? -- September 22, 2023, which essentially means that any motion to compel discovery would have to be filed by August -- well, would already have to have been filed.

MR. FATALE:  Your Honor, we sent local Rule 37 letters to the defendants two weeks ago and attempted to meet and confer with everyone last week.  We're working through that process.  If the stay is not granted, then I am going to continue to meet and confer with them today after the hearing. We've been diligently working, even despite this stipulation, with that in mind.

THE COURT:  But it sounds like, in all practicality, we need to -- we're going to have to modify the schedule.  So we should be looking at this under the good cause standard of Rule 16, rather than the lower standard of 15(a)(2); right?

MR. FATALE:  Well, Your Honor, I think courts are -- I'm prepared to address Rule 16 just as an outside.  I think courts are a little split on whether, when a scheduling order doesn't explicitly say the deadline to amend, whether Rule 16 applies.  But I do think we need Rule 16, and I can tell you why.

THE COURT:  When did you discover you had a cause of action against these new defendants?

MR. FATALE:  Sure.  Through document discovery which The Honest defendants did not start in honest -- in earnest -- sorry.  A lot of "H's" -- producing, in earnest, until May 23, 2023.  Then we were diligently going for that.  We alerted defendants to our intention to amend and add the Catterton defendants in July of 2023.  So it took us about a month to get through the documents and discover the facts that I pointed to, that would give us a claim that these defendants were more than just passive shareholders, that they had active control under Section 15 and should be jointly and severally liable.  You know, just like in the plaintiffs, I have some cases if you would like them --

THE COURT:  No.  I'm not going to go through that. Let me ask you:  How long will the case be delayed if we add these defendants?

MR. FATALE:  I don't particularly think particularly long.  We're ready to serve them immediately.  Michael Tu -- my

colleague, Michael Tu had been representing the Catterton defendants when we served the subpoena on them, so they already know they're subject to discovery.  One of our local Rule 371 letters was that they hadn't responded to that yet.

I don't know if Mr. Tu is going to continue representing the Catterton defendants, but we're ready to serve them either by Counsel accepting service or having the service processor go out this week.

Then they'll have to file a Motion to Dismiss.  When that's ruled on, we're ready to go.  They already know what documents we're looking for, if that was to be sustained.

THE COURT:  Let me ask this:  If the Court denies the Leave to Amend, are you then barred from seeking relief against the Catterton defendants?  Or can you seek relief against them in a separate action?

MR. FATALE:  I think, if we brought a separate action, we would have Statute of Limitations issues, if we didn't get relation back.  And we're able to make arguments in this case based on the documents -- one, it's based on documents in this case subject to our a protective order; two, we could have relation back issues if we brought a separate action.  I think it's cleanest to go here.

Also, it would be -- we would be -- the trial of the Catterton defendants would be the primary violation of the defendants in this action.  So it complicates -- and probably

is very inefficient.

THE COURT:  Okay.  Let me hear from The Honest Company.  What is your view on this Motion to Amend and the potential that we're going to have a slight schedule slip?

MR. TU:  Yes, Your Honor.  Thank you.  Firstly, if I may address just several of the points that were made by Counsel so that you have a full record --

THE COURT:  Sure.

MR. TU:  -- of our position on this.

THE COURT:  I understand that the Catterton defendants aren't here at the hearing, so I'm not really looking for a response from them.

MR. TU:  Correct.

THE COURT:  I don't want to put you on the spot there.

MR. TU:  Correct.  But I can represent to you there was a third-party document subpoena served several months ago against the Catterton defendants.  We agreed for the limited purpose of just representing Catterton for purposes of that subpoena that didn't go beyond just serving objections --

THE COURT:  Sure.

MR. TU:  -- and having initial discussions.

I can tell you that we will not be representing the Catterton defendants with respect to the amendment, should it occur, for what probably are obvious reasons.  They're

differently situated in the case.  So just to be clear, it's not that I will be representing them and I'm not accepting service.  It's just we're not going to be Counsel.

THE COURT:  That is standard practice, usually, for third-party document subpoenas, to just handle it until it gets further?

MR. TU:  Correct.

THE COURT:  Understood.

MR. TU:  So just so the Court understands that background.

With respect to the document production, there was very lengthy -- there's been a very lengthy going on for the life of the case, back and forth, over search terms, ESI, all of those things.  And I can tell you that the document production is very close to complete.  The plaintiffs are aware of that. There are only a few remaining, discrete document categories that relate to certain outside directors, where it took longer to collect documents because they were not part of the company and did not have their e-mails actually through the company servers.

Having said that, I think in terms of the procedural posture of the case, where we are now is that document production is expected to be completely done very shortly.  But the issue, I think, is that what remains to happen is that the plaintiffs had noticed a large number of depositions of

witnesses.  So I think from The Honest defendants' perspective, as Your Honor knows from the submission, we believe that the Reform Act's automatic stay of discovery and proceedings clearly applies.

But even if it did not, even if this were a non-securities class action, where that stay did not apply, I would say that this situation -- clearly, I believe, it makes sense for those depositions to be stayed, at a minimum, until we know whether these additional defendants will be in the case, because they would, I believe, want to participate in these depositions as defendants, if they were deemed to be, you know, in the case.

And so what we wouldn't want to have happen is have a dozen depositions happen and then have to retake them because, you know, three months later it's deemed that one or more of these defendants actually now is in the case and, of course, has the right to take their own depositions, that didn't have the ability to participate in those depositions.

Putting all of that aside, I think your ultimate question as to what The Honest defendant's position is on this, as you have seen from the stipulation, we do not oppose the Motion to Amend, and that was really just because we were trying to be very efficient and not burden the Court with oppositions to motions to amend, which are very frequently granted.  Of course, the Court can do whatever it believes is the appropriate thing to do.

But our position is that we do not oppose the motion to amend but, of course, that has nothing to do with whether that amendment is sufficient under the relevant laws.  That would actually be much more of a question for whoever is going to be Counsel representing the newly added defendants after they are served.  And at this time, I am not aware of who that Counsel would be yet.

THE COURT:  So what you are saying is there are a couple of issues.  One, the automatic stay, your argument is that it applies.  And so if we allow this amendment, everything is on ice until we have a determination as to -- we go through the Motion to Dismiss process with it.

Secondly, though, even if the stay didn't apply, it really wouldn't make sense to do deposition discovery until the new defendants are on board, because they, obviously, would have a right to participate in those depositions, and we could have to do it twice.

And, three, it's hard to talk about a schedule with the defendants not here.

So those are all -- these sorts of issues mean that, if we allow the amendment, we're blowing up the schedule, and that is -- the Court's uncomfortable with that, because I like to keep things on track.

Tell me a little bit more about why you think that you wouldn't have any relief against these defendants if we deny

your motion?

MR. FATALE:  Yes.  That was with the last point in my notes is the practicality of why I'm doing this, and it's not to gunk up the system and destroy a schedule.

The case here -- our statutory damages are over $210,000,000 under the statute.  Honest, at the time that we notified them of this proposed amendment, so in July, at that time, in reviewing their SEC filings, had around $9,000,000 of cash on hand.

Throughout this litigation, that has been a concern, and I've been looking for joint and severally liable potential defendants to add.  We found these through discovery.  You might recall that -- well, it would have went to the Magistrate.  But earlier on in the case, I filed a Motion to Compel to get the underwriters' insurance proceeds.  I filed a Motion to Strike an answer.  Affirmative defense is something I usually don't do because it's not important.  Trying to clarify that indemnification and contribution were cross-claims and not affirmative defenses, because I want to get clear judgments that are strict, that are several and liable to all the defendants.

So there is a pot issue here that I'm also looking at.  And that is why I am bringing in these defendants who, through the documents, our allegations are were the people in the control of the situation.  And the statute says -- Section 15

is very simple -- a person or entity who controls a primary violator of Section 11 is joint and severally liable.  So that is the practical reason of why I'm going.

Now, I think my colleagues would argue that, given the cash position of Honest, there is also a practical reason for letting the mediation play out with all the defendants at the table.

THE COURT:  How do we keep from starting over at square one?  How do we keep from kicking the trial a year?

MR. FATALE:  We can do -- I can't speak for the Catterton defendants, now.

THE COURT:  Right.

MR. FATALE:  I always try to oblige fellow counsel when they ask for extensions on things, but I am ready and willing to burn the midnight oil on my opposition to their Motion to Dismiss, if they choose to file one.  I am willing to do whatever I can to make this move quickly.  It's in my client's and the class's interest to move quickly.  I don't like slowing down litigation when I'm getting close.

THE COURT:  Okay.

MR. FATALE:  It's not something I -- that's why -- I don't usually ask for stays, and that's why I've let Mr. Tu argue that point.

THE COURT:  I don't usually give stays.  It's kind of my thing.  I don't like to give stays.  I like to keep

everything on track.  But I guess I understand the point here.

The Court -- what I will do is I will allow the -- I'll grant the Motion to Amend the complaint.  I want you to, you know, serve it as soon as possible.  And as soon as I get a response, I want to have a status conference and talk about what kind of schedule will be in there.

MR. FATALE:  Understood, Your Honor.

THE COURT:  Anything -- any problem with that from The Honest Company?

MR. TU:  No.

THE COURT:  Okay.  That's the way we'll proceed. It's unfortunate, but I see the issues are made harder by doing this by piecemeal.  So that's what we'll do.

Okay.  Thank you, Counsel.

MR. FATALE:  Thank you very much, Your Honor.

MR. TU:  Thank you.

(Adjourned at 11:14 a.m.)

-oOo-

REPORTER'S CERTIFICATE


     I certify that the foregoing is a correct transcript of proceedings in the above-entitled matter.


/s/ Suzanne M. McKennon, CSR, CRR, RMR
_____        Date:  08/28/2023
United States Court Reporter