**LABATON SUCHAROW LLP**
Jonathan Gardner*
Alfred L. Fatale III*
David J. Schwartz*
Robert S. Rowley*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
afatale@labaton.com
dschwartz@labaton.com
rrowley@labaton.com

*admitted *pro hac vice*

*Lead Counsel for Lead Plaintiff
and the Class*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (213) 519-5876
Email: brian@schallfirm.com
rina@schallfirm.com

*Liaison Counsel for Lead Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE THE HONEST COMPANY, INC. SECURITIES LITIGATION | 2:21-CV-07405-MCS-PLA<br><br>ECF CASE<br><br>**LEAD PLAINITFF'S OPPOSTION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hearing Date: December 18, 2023<br>Hearing Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: Hon. Mark C. Scarsi |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 3

III.  ARGUMENT......................................................................................................... 4

      A.    Legal Standard........................................................................................ 4

      B.    Catterton Exercised Control Over Honest and the Offering
             Documents........................................................................................... 6

      C.    Lead Plaintiff's Claims Against Catterton Are Timely........................... 9

      D.    Lead Plaintiff's Claims "Relate Back" Under Rule 15 .........................13

      E.    Catterton's "Practical Considerations" Have No Impact .......................16

IV.  CONCLUSION ....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abels v. JBC Legal Grp., P.C.*,
229 F.R.D. 152 (N.D. Cal. 2005) ......................................................................14

*Arthur Children's Tr. v. Keim*,
994 F.2d 1390 (9th Cir. 1993)..............................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................4

*Belodoff v. Netlist, Inc.*,
2009 WL 1293690 (C.D. Cal. Apr. 17, 2009) ....................................................13

*In re BofI Holding, Inc. Sec. Litig.*,
2017 WL 2257980 (S.D. Cal. May 23, 2017)......................................................8

*Brink v. First Credit Res.*,
57 F. Supp. 2d 848 (D. Ariz. 1999).........................................................2, 14, 16

*In re Brocade Commc'ns Sys., Inc. Derivative Litig.*,
615 F. Supp. 2d 1018 (N.D. Cal. 2009)..............................................................15

*Chen v. Urb. Commons 6 Ave Seattle, LLC*,
2023 WL 4291439 (C.D. Cal. Apr. 18, 2023) .....................................................8

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
2012 WL 3834815 (C.D. Cal. Sept. 5, 2012) .......................................................6

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015)..............................................................................12

*Cole v. Hartford Fin. Servs. Grp.*,
2009 U.S. Dist. LEXIS 138451 (C.D. Cal. Dec. 17, 2009)................................6

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...............................................................6

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

*Dartley v. ErgoBilt Inc.*,
  2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ...................................................... 11

*In re Downey Sec. Litig.*,
  2009 U.S. Dist. LEXIS 25007 (C.D. Cal. Mar. 18, 2019) .................................. 5

*F.D.I.C. v. Countrywide Fin. Corp.*,
  2012 WL 5900973 (C.D. Cal. Nov. 21, 2012) ...................................................... 9

*FortunNet v. eQube Int'l Inc.*,
  2016 U.S. Dist. 58597 (D. Nev. May 3, 2016) (Defs' Mot. ) ............................. 5

*Guerrero v. RJM Acquisitions LLC*,
  499 F.3d 926 (9th Cir. 2007) ............................................................................ 13

*In re Gupta Corp. Sec. Litig.*,
  900 F. Supp. 1217 (N.D. Cal. 1994) .................................................................. 10

*In re Homestore.com, Inc. Sec. Litig.*,
  347 F. Supp. 2d 790 (C.D. Ca. 2004) ......................................................... 5, 7, 8

*Johnson v. Riverside Healthcare Sys., LP*,
  534 F.3d 1116 (9th Cir. 2008) ............................................................................ 5

*Leisher v. Wachovia Mortg. Inc.*,
  2011 U.S. Dist. LEXIS 3037 (S.D. Cal. Jan. 12, 2011) .................................... 6

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  2011 WL 4389689 (C.D. Cal. May 5, 2011) ..................................................... 10

*Martinez v. JPMorgan Chase Bank, N.A.*,
  2016 U.S. Dist. LEXIS 47935 (N.D. Cal. Apr. 7, 2016) .................................... 6

*Mayshack v. Gonzales*,
  437 F. App'x 615 (9th Cir. 2011) ..................................................................... 14

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010) ..................................................................................... 9, 10

*Myhrvold v. Lodsys Group, LLC*,
  2013 WL 5488791 (W.D. Wa. Sept. 27, 2013) ................................................. 12

iii

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

*In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equip. Antitrust Litig.*,
   2012 WL 3637291 (S.D. Cal. Aug. 20, 2012) .......................................................6

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ...............................................................5, 7, 8

*In re Peregrine Sys.*,
   2005 U.S. Dist. LEXIS 59408 (S.D. Cal. Mar. 30, 2005) ...................................5

*Pullins v. Klimley*,
   2008 WL 85871 (S.D. Ohio Jan. 7, 2008) ........................................................14

*Rieckborn v. Jefferies LLC*,
   81 F. Supp. 3d 902 (N.D. Cal. 2015) ...........................................................9, 10

*Sachs v. DiCarlo*,
   2022 WL 1811164 (D. Az. June 2, 2022) .........................................................12

*In re Semtech Corp. Secs. Litig.*,
   2008 U.S. Dist. LEXIS 126135 (C.D. Cal. Dec. 15, 2008) ................................6

*Special Situations Fund III QP, L.P. v. Brar*,
   2015 U.S. Dist. LEXIS 38825 (N.D. Cal. Mar. 26, 2015) ..............................5, 8

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ...............................................................................8

*Tellabs, Inc. v. Makor Issues & Rts, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................4

*Wasco Prods. V. Southwall Techs., Inc.*,
   435 F.3d 989 (9th Cir. 2006) ...............................................................................5

*Welgus v. TriNet Grp.*,
   2017 U.S. Dist. LEXIS 6347 (N.D. Cal. Jan. 17, 2017) ................................5, 8

*White v. City of Los Angeles*,
   2020 WL 9893054 (C.D. Cal. July 24, 2020) ...................................................15

*Wilkins-Jones v. Cty. of Alameda*,
   2012 WL 3116025 (N.D. Cal. July 31, 2012) ...................................................13

iv

*In re YogaWorks, Inc. Sec. Litig.*,
    2020 WL 2549290 (C.D. Cal. Apr. 23, 2020) ......................................................9

**Statutes**

Private Securities Litigation Reform Act of 1995.................................................10

Securities Act of 1933..................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 8.....................................................................................................5

Fed. R. Civ. P. 9(b) ................................................................................................5

Fed. R. Civ. P. 15............................................................................................3, 13

Fed. R. Civ. P. 15(c) ............................................................................................13

Local Rule 7-3 ........................................................................................................4

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

Lead Plaintiff Kathie Ng ("Lead Plaintiff") respectfully submits this memorandum in opposition to Defendants' Motion to Dismiss Amended Complaint (the "Motion" or "Defs' Mot.") submitted by Defendants Catterton Management Company L.L.C., L Catterton VIII, L.P., L. Catterton VIII Offshore, L.P., Catterton Managing Partner VIII, L.L.C., C8 Management, L.L.C., and THC Shared Abacus, LP (collectively, "Catterton"). ECF No. 169.

## I. INTRODUCTION

Lead Plaintiff's claims arise out of material misrepresentations and omissions contained in the Honest Company's ("Honest" or the "Company") Registration Statement and Prospectus (together the "Offering Documents") filed in connection with its May 4, 2021 initial public offering (the "IPO"). As the Court explained in its order substantially denying the prior motion to dismiss, Lead Plaintiff's allegations fit roughly into three categories: (1) "the offering documents failed to disclose that customers panned one of Honest's recently launched products, the Clean Conscious Diaper," (2) "the offering documents failed to disclose the negative impact to the company of consumers' stock-up of Honest products in response to the COVID-19 pandemic," and (3) "the offering documents failed to disclose and misrepresented risks associated with the offering, including the potential impact customer dissatisfaction with the Clean Conscious Diaper and COVID-19 stock-up of Honest products could have on the company." ECF No. 71 at 2 (the "MTD Order").

Lead Plaintiff made these claims against Honest, certain executives and members of Honest's board of directors (the "Individual Defendants" and together with Honest, the "Honest Defendants"), and several banks who acted as underwriters for the IPO (the "Underwriter Defendants"). Two of the Individual Defendants in this Action—Defendants Dahnke and Pramanik—are primarily employed by L Catterton, a private equity fund that held approximately 37% of Honest's stock prior to the IPO.

Lead Plaintiff now asserts claims against Catterton pursuant to Section 15 of the Securities Act of 1933 (the "Securities Act") as a result of newly uncovered evidence

1

discovered in documents produced by the Honest Defendants and the Underwriter Defendants evincing Catterton's control of Honest. Catterton opposes their addition as Defendants in this Action, advancing three unavailing arguments: (1) Catterton did not in fact control Honest within the meaning of Section 15; (2) Lead Plaintiff's claims are time-barred by the statute of limitations; and (3) certain "practical considerations" militate against holding Catterton accountable for the sake of expediency. Each one fails.

*First*, discovery from the Honest Defendants and the Underwriter Defendants has shown that Catterton were not merely passive shareholders of Honest's stock. Rather, Catterton actively managed Honest, directed the Company's employees, and made significant decisions regarding the IPO. As discussed further below, these activities go well beyond what Lead Plaintiff could have surmised at the time she filed the Consolidated Complaint. Indeed, the Offering Documents disclosed nothing more than Catterton's financial interest and the fact that certain of their employees held seats on Honest's board of directors—facts, which if alleged alone, as Catterton points out, are insufficient to allege control.

*Second*, Catterton argues that Lead Plaintiff's claims are time barred under the applicable statute of limitations. However, because Lead Plaintiff could not have uncovered the facts constituting Catterton's Section 15 violations from publicly available information, the statute of limitations did not begin to run until Lead Plaintiff reviewed the documents evincing Catterton's control. Moreover, because Catterton's liability arises from the same core set of facts as the Honest Defendants—including Defendants Dahnke and Pramanik—and Catterton had notice through its employees of Lead Plaintiff's claims and the fact that they were proper Defendants, Lead Plaintiff may rely on the relation back doctrine codified in Federal Rule of Civil Procedure 15 ("Rule 15").

*Finally*, Catterton asserts that a series of "practical considerations" including a trial date that has already been vacated should relieve them of liability. As Catterton

2

concedes, these arguments are not based in law and should be entirely disregarded. These practical arguments are not practical nor sufficient to shield Catterton from responsibility.

Each of Catterton's arguments can be rejected.

## II.     FACTUAL BACKGROUND

Lead Plaintiff filed the Consolidated Complaint for Violations of the Federal Securities Laws (the "Consolidated Complaint") on February 21, 2022, asserting claims pursuant to Sections 11 and 15 of the Securities Act. ECF No. 59. On July 18, 2022, the Court upheld the legal sufficiency of the Consolidated Complaint. ECF No. 71.

Thereafter, Lead Plaintiff propounded on the Honest Defendants and the Underwriter Defendants requests for the production of documents. The parties then negotiated a discovery protocol and the Honest Defendants and the Underwriter Defendants began producing documents. By the summer of 2023, Lead Plaintiff had reviewed a substantial portion of those documents and it became clear that Catterton had a more involved role in the Company than was disclosed in the Offering Documents.

Through the documents, Lead Plaintiff discovered that rather than being passive shareholders, Catterton were in fact directly managing Honest. Specifically, Catterton (1) directly participated in the preparation of the Offering Documents; (2) had a substantial role in reviewing the Company's financials, which were incorporated into the Offering Documents, including in the context of the Company's audits and due diligence process leading up to the IPO; (3) selected Defendant Morgan Stanley as a lead underwriter for the IPO, from which Catterton received sometimes daily briefings and with which Catterton participated in IPO meetings ***without any non-Catterton Honest personnel present***; and (4) Honest employees routinely reported to and took direction from Catterton, including with respect to the Company's financials and

3

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

business strategy in addition to IPO-related matters. ¶¶49-51, 54-55.[1] These facts, amongst others referenced below, established that Catterton controlled Honest and thus are liable under Section 15.

Once this information was uncovered, Lead Plaintiff immediately sought to add Catterton through an amended complaint. On July 28, 2023, the parties filed a joint stipulation allowing Lead Plaintiff to seek leave to amend the Consolidated Complaint to add Catterton. ECF No. 136. On August 14, 2023, the Court granted the parties' stipulation (ECF No. 140), and the Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "Amended Complaint") was filed. ECF No. 141. On August 17, 2023, Lead Plaintiff served Catterton with the Amended Complaint. ECF Nos. 156-161.

## III.    ARGUMENT

### A.    Legal Standard

In assessing a Rule 12(b)(6) motion, the Court must consider the complaint in its entirety, "accept all factual allegations . . . as true," and construe them in the light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts, Ltd.*, 551 U.S. 308, 322 (2007). A complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007), but rather must simply "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 n.12 (2009); *see* MTD Order at 3 (applying plausibility standard). Rule 8(a) does not impose "an onerous burden" as "[s]pecific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

---

[1] Citations to paragraphs ("¶") are to paragraphs in the Amended Complaint. Unless otherwise noted, emphasis is added and internal citations and quotation marks are omitted throughout.

Although Catterton plays lip service to the fact that the Amended Complaint is to be reviewed under Rule 8 and the plausibility standard (Defs' Mot. at 6-7), the cases Catterton cite in support of their statute of limitations or control person arguments are almost exclusively decided under the heightened pleading standard of Rule 9(b), at summary judgment, or under different state or federal law. *See FortunNet v. eQube Int'l Inc.*, 2016 U.S. Dist. LEXIS 58597, at *11 (D. Nev. May 3, 2016) (Defs' Mot. at 7) (applying Rule 9(b) where Lanham Act complaint "sounds in fraud"); *Wasco Prods. V. Southwall Techs., Inc.*, 435 F.3d 989, 991-92 (9th Cir. 2006) (Defs' Mot. at 7) (applying Rule 9(b) to complaint based on fraudulent conspiracy and California state law on civil conspiracy that tolls a statute of limitation "when a civil conspiracy is *properly alleged and proved*") (emphasis in original); *Welgus v. TriNet Grp.*, 2017 U.S. Dist. LEXIS 6347, at *14, 39, 61-62 (N.D. Cal. Jan. 17, 2017) (Defs' Mot. at 10) (applying Rule 9(b) to complaint sounding in fraud and finding "failure to allege particularized facts"); *Special Situations Fund III QP, L.P. v. Brar*, 2015 U.S. Dist. LEXIS 38825, at *6-7 (N.D. Cal. Mar. 26, 2015) (Defs' Mot. at 10) (applying Rule 9(b) in fraud action); *In re Downey Sec. Litig.*, 2009 U.S. Dist. LEXIS 25007, at *9-10 (C.D. Cal. Mar. 18, 2019) (Defs' Mot. at 10 n.12) (applying Rule 9(b) in fraud action); *In re Peregrine Sys.*, 2005 U.S. Dist. LEXIS 59408, at *247 (S.D. Cal. Mar. 30, 2005) (Defs' Mot. at 10 n. 12) (applying Rule 9(b)); *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 790, 810 (C.D. Ca. 2004) (Defs' Mot. at 10) (summary judgment); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1162-63 (9th Cir. 1996) (Defs' Mot. at 10) (summary judgment); *In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equip. Antitrust Litig.*, 2012 WL 3637291, at *3 (S.D. Cal. Aug. 20, 2012) (Defs' Mot. at 7) (applying a pleading standard higher than "plausibility," i.e. the "evidentiary facts" pleading standard applicable to pleading a conspiracy in Shearman Act litigation); *Cole v. Hartford Fin. Servs. Grp.*, 2009 U.S. Dist. LEXIS

5

138451, at *5-7 (C.D. Cal. Dec. 17, 2009) (Defs' Mot. at 7) (applying California state law on delayed discovery requiring specificity greater than Rule 8 notice).[2]

## B.   Catterton Exercised Control Over Honest and the Offering Documents

Pursuant to Section 15, a defendant is liable if: (1) there is a primary violation of the Securities Act; and (2) the defendant directly or indirectly controlled the person or entity liable for the primary violation. *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2012 WL 3834815, at *5 (C.D. Cal. Sept. 5, 2012). The inquiry into a defendant's control "is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Id*; *see Lester v. Preco Industries, Inc.*, 282 F. Supp. 459, 461 (S.D.N.Y. 1965) ("What constitutes control is one of the most difficult questions in securities law."). Accordingly, "[w]hether a defendant is a control person is a fact question rarely appropriate for motion practice." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008).[3]

The Court has already found that Lead Plaintiff sufficiently alleged that Honest committed a primary violation of Section 11 (MTD Order at 13), thus, the sole inquiry relevant to Catterton's liability at this stage is whether the Amended Complaint

---

[2] The only exceptions appear to be (1) *Martinez v. JPMorgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 47935, *3-5 (N.D. Cal. Apr. 7, 2016) (Defs Mot. at 8 n.8), an inapposite case where the complaint contained no allegations "relating to late discovery of any violation" and plaintiff's only opposition to the motion to dismiss was to "merely state[] that the 'complaint is not time barred;'" (2) *Leisher v. Wachovia Mortg. Inc.*, 2011 U.S. Dist. LEXIS 3037, at *11-12 (S.D. Cal. Jan. 12, 2011) (Defs' Mot. at 8 n.8), where, contrary to the present case, there were no allegations as to the statute of limitations; and (3) *In re Semtech Corp. Secs. Litig.*, 2008 U.S. Dist. LEXIS 126135, at *16, 45-46 (C.D. Cal. Dec. 15, 2008) (Defs' Mot. at 10-11 n.12), a case which recognized "Section 15 claims need only be plead under Rule 8," noted that control is "an intensely factual question," and found control liability sufficiently plead where—like here—more than the corporate position of the controller was alleged.

[3] The cases cited by Catterton recognize as much. *See Semtech Corp.*, 2008 U.S. Dist. LEXIS 126135, at *16 (Defs' Mot. at 10-11 n.12) ("The determination of who is a controlling person is 'an intensely factual question'"); *Homestore.com*, 347 F. Supp. 2d at 810 (Defs' Mot. at 10) (same); *Paracor Fin.*, 96 F.3d at 1161 (Defs' Mot. at 10) (same).

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

sufficiently alleges Catterton directly or indirectly controlled Honest and the contents of the Offering Documents, which contained the material misrepresentations and omissions at issue in this Action. It does.

As alleged in the Amended Complaint, Catterton actively managed Honest, providing instruction and direction to Honest employees concerning the Company's business strategy and financials. ¶¶53, 55. Honest employees *routinely* reported to and took direction from Catterton. ¶55.

Catterton's role in directing Honest's operations only grew as the Company's IPO loomed. Specifically, Catterton directly participated in drafting the Offering Documents, including with respect to functions generally reserved for management such as management's discussion and analysis, applicable risk factors, F-pages, and the audit of the Company's financials. ¶49. Catterton also reviewed and approved the financial information contained in the Offering Documents, including in the context of the Company's audits and due diligence process leading up to the IPO. ¶51.

Additionally, Catterton had substantial influence over Defendant Morgan Stanley, one of the lead underwriters for Honest's IPO. Defendant Morgan Stanley provided Catterton with briefings, sometimes daily, and Catterton participated in IPO meetings with Defendant Morgan Stanley *without any non-Catterton Honest personnel present*. Catterton even paid Defendant Morgan Stanley's incentive fee upon closing of the IPO. ¶54.

Together, Catterton's direct management of Honest employees, participation in and direction of the IPO, role in preparing the Offering Documents, and relationship with Defendant Morgan Stanley establish Catterton's control over Honest, the IPO, and the content of the Offering Documents.[4] *See Chen v. Urb. Commons 6 Ave Seattle,*

---

[4] Catterton's reliance on *Welgus v. TriNet Grp.*, 2017 U.S. Dist. LEXIS 6347, at *13 (N.D. Cal. Jan. 17, 2017) (Defs' Mot. at 10), and *Special Situations Fund III QP, L.P. v. Brar*, 2015 U.S. Dist. LEXIS 38825, at *32 (N.D. Cal. Mar. 26, 2015) (Defs' Mot. at 10), is misplaced as in each of those cases, plaintiffs relied on conclusory allegations baldly asserting defendants' control as opposed to allegations describing specific actions which constitute the exercise of control, as Lead Plaintiff as done here.

7

*LLC*, 2023 WL 4291439, at *7 (C.D. Cal. Apr. 18, 2023) (finding claims under Section 15 adequately pled where defendants were "owners" of company that committed primary violation, participated and were aware of the company's operations, and "had the power and control, and did influence and control, directly or indirectly, the decision making relating to the . . . [o]ffering.").

Catterton argues that Lead Plaintiff's Section 15 claims fail because the Amended Complaint does not contain allegations that Catterton had knowledge of the relevant misstatements. *See* Defs' Mot. at 11. This argument is unsupported by law and is in fact at odds with decades of Securities Act jurisprudence. Indeed, as an initial matter, knowledge of the alleged misstatements is not required to state a claim under Section 11, much less Section 15. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996) ("No scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions.");[5] *see also Arthur Children's Tr. v. Keim*, 994 F.2d 1390, 1398 (9th Cir. 1993) ("If the plaintiff had th[e] obligation [to demonstrate scienter], the controlling person provision would hardly make anyone liable who would not be so otherwise").[6] Further, as explained above, the control person analysis focuses on the relationship between the primary violator and the person or entity who exercises control over the primary violator, not whether the alleged control defendant was aware of the misstatements. *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *23 (S.D. Cal. May 23, 2017) ("The control inquiry, as defined by the Ninth Circuit, does not require any analysis of . . . what made a statement

---

[5] "[C]laims under Sections 11 and 12 of the Securities Act sound in strict liability and do not require knowledge by the defendants of the misrepresentations. Thus, the concept of culpability would not apply. Instead, to plead control person liability under the Securities Act, it is sufficient merely to demonstrate that the . . . defendants controlled an entity that violated the securities laws." *In re Twinlab Corp. Sec. Litig.*, 103 F.Supp.2d 193, 208 (E.D.N.Y. 2000).

[6] Once again, the cases cited by Catterton proves their arguments to be misplaced. *See Homestore.com*, 347 F. Supp. 2d at 809 (Defs' Mot. at 10) ("A plaintiff 'need not show a controlling person's scienter or that they culpably participated in the alleged wrongdoing"); *Paracor Fin.*, 96 F.3d at 1161 (Defs' Mot. at 10) (same).

8

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

or action misleading or false. Rather, . . . the control analysis requires [c]ourts to inquire into the realities of business relationships.").

Accordingly, the Amended Complaint sufficiently alleges Catterton's control over Honest and the contents of the Offering Documents. Nothing more is required.

### C. Lead Plaintiff's Claims Against Catterton Are Timely

The statute of limitations only begins to run "when the litigant first knows or with due diligence should know facts that will form the basis for an action." *Merck & Co. v. Reynolds*, 559 U.S. 633, 646 (2010); *see also In re YogaWorks, Inc. Sec. Litig.*, 2020 WL 2549290, at *2 (C.D. Cal. Apr. 23, 2020) (applying *Merck* to claims brought under Sections 11 and 15 of the Securities Act). Contrary to the pre-*Merck* case law relied on by Catterton,[7] "inquiry notice" is no longer the standard because "the 'discovery' of facts that put a plaintiff on inquiry notice does not automatically begin the running of the statute of limitations period." *Merck*, 559 U.S. at 653; *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 914-15 (N.D. Cal. 2015) ("The statute does not begin to run when the plaintiff merely should have begun investigating."). Post-*Merck*, "[p]laintiffs are considered to have discovered a fact when a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *F.D.I.C. v. Countrywide Fin. Corp.*, 2012 WL 5900973, at *3 (C.D. Cal. Nov. 21, 2012); *see also Merck*, 559 U.S. at 653 (holding limitations period only starts running when "a reasonably diligent plaintiff would have discovered 'the facts constituting the violation'").

Catterton's statute of limitations argument is premature. As courts within the Ninth Circuit have held, determining whether the discovery standard articulated in *Merck* has been met "is fact intensive and is usually not appropriate at the pleading

---

[7] Catterton cite to *In re Infonet Servs. Corp. Secs. Litig.*, 310 F. Supp. 2d 1106, 1113 (C.D. Cal. 2003), a case decided before *Merck*, in an attempt to support the inquiry notice standard explicitly rejected by the Supreme Court in *Merck. See* Defs' Mot. at 2.

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

stage." *Rieckborn*, 81 F. Supp. 3d at 915; *see also Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *16 (C.D. Cal. May 5, 2011) (holding that whether that statute of limitations on Section 15 claim had expired is an argument "best reserved for a motion for summary judgment"). This is particularly true here, where Lead Plaintiff was only able to discover the facts establishing Catterton's control from documents produced by the Honest Defendants and the Underwriter Defendants beginning at the end of May 2023. *See* Decl. of Alex Linhard, Ex. B at 7:9-20 (ECF No. 169-2). It is likely that the full extent of Catterton's control will only be uncovered through Catterton's internal documents.[8]

Even if Catterton's argument was appropriate on a motion to dismiss, it fails on the merits. Because Lead Plaintiff was only able to discover the facts establishing Catterton's control over Honest from non-public documents, it would have been impossible for Lead Plaintiff to include them in the Consolidated Complaint. Under *Merck*, the statute of limitations as to Lead Plaintiff's claims against Catterton did not begin to run until Lead Plaintiff discovered the facts that established Catterton's Section 15 violation, which only became possible after the automatic discovery stay imposed by the Private Securities Litigation Reform Act of 1995 was lifted when the Court denied the Honest Defendants' and the Underwriter Defendants' motions to dismiss, and those Defendants finally produced discovery.

At the time Lead Plaintiff filed the Consolidated Complaint, all that was disclosed concerning Honest's relationship with Catterton was its financial interest in Honest and the fact that Catterton had two of its employees on the board of directors.[9] However, stock ownership alone—even with representation on the board of directors—

---

[8] Notably, before Lead Plaintiff became aware of Catterton's level of control over Honest, Lead Counsel propounded a subpoena on Catterton. Catterton—who at the time was represented by the same counsel as the Honest Defendants—had not yet produced any documents when the Court entered the stay of discovery in this Action, nor has it produced any documents to date.

[9] Catterton concedes that these were the only facts available at the time Lead Plaintiff filed the Consolidated Complaint. *See* Defs' Mot. at 9.

10

is insufficient to establish Catterton's control over Honest. *See In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) (defendant's "position as a minority shareholder . . . with an agent on the board does not establish control person liability."); *Dartley v. ErgoBilt Inc.*, 2001 WL 313964, at *1 (N.D. Tex. Mar. 29, 2001) (a defendant's "status as a major shareholder . . . does not, without more, create control person liability."); *Twinlab Corp.*, 103 F. Supp. 2d at 209 (same).

It was not until Lead Plaintiff received documents from the Honest Defendants and the Underwriter Defendants that she was able to determine that Catterton used its ownership stake to actively manage Honest's operations and direct the Company's business affairs, including with respect to the IPO. For example, at the time of filing the Consolidated Complaint, Lead Plaintiff could not have known that Catterton employees directly participated in drafting the Offering Documents and reviewed and approved the Company's financial statements contained therein. ¶¶49-51.

Documents produced in discovery also for the first time revealed that Catterton directly managed Honest's business affairs, including with regard to functions normally reserved to a company's management such as searching for and evaluating CFO candidates, selecting bookrunners and co-managers for the IPO, quarterly dry-runs of disclosing and validating metrics and guidance, corporate governance matters and board composition, compensation plans, internal and external communications, FINRA approvals, exchange listing and listing approval, share class structure, and selecting a transfer agent. ¶53. Catterton also exerted direct control over Honest employees who had no direct affiliation with Catterton. As the Amended Complaint alleges, Honest employees routinely reported to and took direction from Catterton, including with respect to the Company's financials and business strategy in addition to IPO-related matters. ¶55.

Catterton ignores all these facts drawn from the document productions and seems to suggest that Lead Plaintiff was required to include the actual documents in the Amended Complaint. Defs' Mot. at 6. Not only is that not Lead Plaintiff's

11

pleading burden under Rule 8, but the suggestion ignores the fact that the documents were produced to Lead Plaintiff as "confidential" pursuant to the protective order entered in this case. To have included additional facts would have required Lead Plaintiff to file the Amended Complaint under seal, a practice that is "generally disfavored because the Ninth Circuit has recognized a strong presumption favoring public access to court filings." *Sachs v. DiCarlo*, 2022 WL 1811164, at *1 (D. Az. June 2, 2022); *see also Myhrvold v. Lodsys Group, LLC*, 2013 WL 5488791, at *3 (W.D. Wa. Sept. 27, 2013) ("filing *anything* under seal is disfavored") (emphasis in original). Moreover, in hopes that Catterton would not further prolong this litigation with unnecessary motion practice, on September 27, 2023, Lead Plaintiff—with the Honest Defendants' and the Underwriter Defendants' consent—produced to Catterton approximately 1,000 documents related to Catterton's control of Honest which Lead Plaintiff received through discovery in this Action. Tellingly, after having reviewed those documents, Catterton has not moved for summary judgment but instead they have buried their heads in the sand and hid behind inapplicable pleading burdens and inapposite case law.

While Catterton spills much ink explaining that Lead Plaintiff's inclusion of Defendants Dahnke and Pramanik amounts to some kind of "slight of hand" intended to make regular actions of the board of directors seem more nefarious than they are. *See* Defs' Mot. at 5-6. This is simply not true. By its very nature, a board of directors is not responsible for the day-to-day management of a company, however, the Amended Complaint explicitly alleges that Catterton engaged in the day-to-day management of Honest.[10] ¶55. Moreover, Defendants Dahnke and Pramanik are merely two of seven directors seated at the time of the IPO. For the two of them to act alone

---

[10] That Catterton may have at times acted though Defendants Pramanik and Dahnke (who is the Global co-CEO of Catterton) merely reflects the uncontroversial concept that "a corporation can only act through its employees and agents." *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015).

12

without other members of the board of directors, particularly in the context of meeting with one of the lead underwriters (¶54), would be highly unusual.

In sum, the Offering Documents made no mention of Catterton's outsized role in managing Honest nor did they include a warning to investors that Honest was controlled by Catterton as a result of its ownership interest in the Company, which is commonly included in situations where an investor exercises substantial control over an offering. Accordingly, Lead Plaintiff's claims against Catterton are timely.

### D.    Lead Plaintiff's Claims "Relate Back" Under Rule 15

Rule 15(c) provides "that an amendment adding a new defendant will relate back to the original complaint" where: (1) the claim brought against the new defendant "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"; (2) within 90 days of the initial complaint, the new defendant received notice of the action; and (3) within 90 days of the initial complaint, the new defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Wilkins-Jones v. Cty. of Alameda*, 2012 WL 3116025, at *6 (N.D. Cal. July 31, 2012). Consistent with the policy considerations undergirding Rule 15, courts analyzing whether an amended complaint relates back to an originally filed complaint should do so liberally and let the interests of justice guide its analysis. *See Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 933 (9th Cir. 2007) (finding that district court properly allowed relation back under Rule 15 in part because "the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a) . . . by freely granting leave to amend when justice so requires.").

The first element of the relation back doctrine is easily satisfied here. Catterton's liability stems from their participation in Honest's IPO and their role in drafting the Offering Documents that contained the misstatements and omissions at issue here. For the purposes of Rule 15, this is the same transaction or occurrence from which the other Defendants' liability is derived. *Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *14

13

(C.D. Cal. Apr. 17, 2009) (finding amended complaint arose from same transaction or occurrence as original complaint where both pleadings "relate to the same time frame and similar activities conducted by [d]efendants up to and at the time of the IPO.").

Similarly, Catterton received notice of the Action within 90 days of the filing of the Consolidated Complaint. Courts impute the notice of a lawsuit, termed "constructive notice," when there is sufficient "identity of interests" between the original and new parties. *Brink v. First Credit Res.,* 57 F. Supp. 2d 848, 854 (D. Ariz. 1999). Further, "constructive notice may exist when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced." *Pullins v. Klimley*, 2008 WL 85871, at *11-12 (S.D. Ohio Jan. 7, 2008); *see Mayshack v. Gonzales*, 437 F. App'x 615, 620-21 (9th Cir. 2011) (finding sufficient community of interest where the old and new defendants shared the same attorney, and the new defendant was an employee of the old defendant). As Catterton repeats throughout their brief, two Catterton employees—one of whom is the co-CEO of Catterton—were included as Individual Defendants in the Amended Complaint. As a result, Catterton has had notice of this Action since its inception. *See Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 158 (N.D. Cal. 2005) (holding that corporation had sufficient notice of lawsuit where the corporation's president was originally named as a defendant).

Finally, Catterton should have known that they were the proper parties to be included in this Action but for Lead Plaintiff's mistake.[11] The mistake element is expansive and encompasses a large swath of reasons why a potential defendant was not initially named as a party. *Id.* at 158 ("The Ninth Circuit seems to construe the mistake requirement more liberally to allow amendment in some cases where the previously

---

[11] Contrary to Catterton's unsupported suggestion, it is ***not*** "unusual for private equity investors to be included as 'control person' defendants." Defs' Mot. at 9; *see, e.g., In re Musicmaker.com Sec. Litig.*, 2001 WL 34062431, at *17 (C.D. Cal. June 4, 2001); *In re Cobalt International Energy, Inc.*, 2016 WL 215476, at *11-12 (S.D. Tex. Jan. 19, 2016); *In re AFC Enterprises, Inc. Sec. Litig.*, 348 F.Supp.2d 1363, 1382 (N.D. Ga. 2004).

14

unknown defendants were identified only after the statute of limitations had run."). For example, courts have found the mistake element satisfied when a plaintiff learns of the new defendant's identity through fact discovery. *Id.* at 158-59 ("This is a situation in which a plaintiff seeks to add a defendant after the statute of limitations has run when the information about the additional defendant's identity is within the defendants' control but the defendants are not forthcoming.") (citing *Brink*, 57 F. Supp. at 857 ("[T]he 'mistake concerning . . . identity' requirement may be satisfied when the plaintiff was unaware of the new defendant's identity at the time the complaint was filed and learns the identity of the new defendant only after the statute of limitations has expired because the named defendant failed to provide the information sooner."). This is true even where a plaintiff may have previously known of the existence of a later-added defendant but did not have in its possession facts suggesting their culpability. *See White v. City of Los Angeles*, 2020 WL 9893054, at *4 (C.D. Cal. July 24, 2020) ("A plaintiff's knowledge of the existence of a party does not foreclose the possibility that he has made a mistake in identifying a party in a complaint.").[12]

Here, Catterton was aware of their participation in the IPO and that two of their high-level employees were named as Defendants by virtue of their positions on Honest's board. Lead Plaintiff could not have ascertained this information before discovery as the Offering Documents provided only vague descriptions of Catterton's relationship to Honest and role in the IPO, focusing primarily on Catterton's financial interest and stock ownership. Because these facts alone do not constitute a violation of Section 15, Lead Plaintiff was not aware that Catterton were proper Defendants in this Action until after receiving discovery in May 2023. Further, Lead Plaintiff included only Defendants Dahnke and Pramanik in the Consolidated Complaint under the mistaken understanding that their liability was the result of their independent actions

---

[12] Catterton's reliance on *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1041 (N.D. Cal. 2009) (Defs' Mot. at 8) is misplaced as there the defendants plaintiff sought to add were "high-ranking officers and directors" unlike Catterton which were apparently just shareholders of Honest.

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

as members of Honest's board of directors. Discovery corrected that mistake when it became apparent that Defendants Dahnke and Pramanik were acting in their capacities as Catterton employees when engaging in the activities that gave rise to their independent liability under Sections 11 and 15.

Accordingly, regardless as to whether the statute of limitations has run on Lead Plaintiff's claims against Catterton (it has not),[13] the Amended Complaint should be found to relate back to the Consolidated Complaint.

### E.    Catterton's "Practical Considerations" Have No Impact

Recognizing that the law does not support their arguments, Catterton resorts to what they describe as "practical considerations" (Defs' Mot. at 11-12), in an attempt to use the desire for efficiency as a way to evade liability. However, the practical considerations addressed in the Motion are either moot, misleading, or plainly wrong.

***First***, Catterton references the May 28, 2024,[14] trial date set by the Court on June 12, 2023 (ECF No. 134), as well as the case schedule generally as a reason why the Court should allow them to evade responsibility for their control of the false and misleading statements contained in the Offering Documents. Defs' Mot. at 12. This argument fails because at present there is no trial date scheduled. After allowing Lead Plaintiff leave to amend the Consolidated Complaint to add Catterton as defendants, the Court vacated all dates in the then-current case schedule, meaning that there is no trial date currently set, much less one that is six months away. ECF No. 151. Moreover, even if Catterton were dismissed, the amount of discovery left to complete in this case,

---

[13] Contrary to Catterton's insinuations as to Lead Counsel's reference to the relation back doctrine during the hearing on the motion to amend (Defs' Mot. at 4, 8), Lead Plaintiff then and now puts forward relation back as just one alternative basis for why the claims against Catterton are timely. *See* Decl. of Alex Linhard, Ex. B at 8:12-9:13 (ECF No. 169-2) (arguing three reasons why Lead Plaintiff did not want to bring a separate action against Catterton: (1) availability of documents in this Action to address statute of limitations arguments, (2) availability of the relation back doctrine to address statute of limitations arguments, and (3) efficiency).

[14] Defendants' Motion mentions a May 24, 2024, trial date, which appears to be a scrivener's error.

16

including twenty depositions and Honest's final document productions, would preclude a trial in May. Thus, this argument carries no weight.

**Second**, Catterton complains that "there are a substantial number of documents produced by the existing defendants that will take Catterton's counsel time to review."[15] Defs' Mot. at 12. While it is true that there are many documents to review, Catterton could begin reviewing the documents now. All documents produced in this Action are in the possession of Catterton's co-Defendants any of which could easily produce those documents to Catterton.[16]

Further, Lead Plaintiff anticipates that once the discovery stay is lifted, it will propound upon Catterton document requests seeking documents in their possession that are relevant to this case.[17] While the parties negotiate the scope of those requests, and while Catterton reviews and processes those documents, Catterton should have ample time to review the documents produced thus far by its co-Defendants. Further, Lead Plaintiff has already provided Catterton—at its insistence—with approximately 1,000 documents evincing its control over the Company. Therefore, Catterton's reference to the time it will take to review documents is a red herring, intended to play on this Court's preference to efficiently litigate cases.

---

[15] Catterton also makes a passing reference to the currently noticed depositions yet fails to even attempt to explain how that fact supports dismissing Lead Plaintiff's claims. *See* Defs' Mot. at 12. Moreover, not a single deposition in this case has been scheduled. Once the stay of discovery in this case is lifted, Lead Plaintiff will work with all Defendants, including Catterton, to schedule depositions as quickly as possible. Lead Plaintiff was already attempting to do so at the time the Court entered the stay.

[16] Moreover, as noted above, the Honest Defendants and the Underwriter Defendants have already consented to allow Catterton to review documents produced in this Action in connection with a request from Catterton to Lead Plaintiff to produce all documents establishing Catterton's control of Honest.

[17] To the extent Catterton also believe that it will take time to review documents responsive to document requests that will be served by Lead Plaintiff, that argument is similarly without merit as Catterton should have already begun the process of collecting and reviewing documents. Lead Plaintiff has already served on Catterton a subpoena *deuces tecum* seeking documents relevant to Honest's IPO and the allegations in the Consolidated Complaint. Lead Plaintiff served this subpoena on May 18, 2023.

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

***Third,*** and finally, Catterton points to the fact that class notice has already been disseminated, explaining that the class should be notified of the fact that Catterton has been added as Defendants. *Id.* Catterton's argument makes no sense when the practical realities of class notice are considered. While class notice has been sent out in the form of a postcard, the notice does not include the names of any Defendant. ECF No. 163-1. Rather, the notice, which was approved by the Court (ECF No. 132), directs potential class members to a web page, which includes a link to the Amended Complaint, naming Catterton.[18] Moreover, Catterton has not actually articulated any actual due process concerns apart from speculation, let alone concerns that could not be remedied with further notice to the class. Indeed, should this case end in settlement or judgment after trial, further notice and the opportunity to opt-out will be afforded to the class at that time. Accordingly, no class member will be prejudiced if Catterton continues to be a defendant in this Action.

Based on the foregoing none of Catterton's practical considerations change the fact that they are liable under Section 15.

## IV.    CONCLUSION

Lead Plaintiff respectfully requests the Motion be denied in its entirety.[19]

---

[18]    *See*    www.thehonestcompanysecuritieslitigation.com;    *see    also* www.labaton.com/in-re-honest-company-inc.-securities-litigation.

[19] While Lead Plaintiff does not believe the Court will need to reach this issue, if the Court grants any part of the Motion, Lead Plaintiff respectfully request leave to amend. *See, e.g., Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) ("[r]equest for leave [to amend] should be granted with 'extreme liberality'"). In particular, if the Court were to find that the Amended Complaint did not sufficiently allege facts in support of compliance with the statute of limitations or control liability, amendment would not be futile because Lead Plaintiff would (a) meet and confer further with the Honest Defendants and the Underwriter Defendants to determine if additional facts from their document productions could be alleged in a public filing, or (b) seek leave to file under seal a further amended complaint with additional facts.

18

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA

Dated:  November 6, 2023          Respectfully submitted,

**LABATON SUCHAROW LLP**

By:  */s/ Alfred L. Fatale III*

Jonathan Gardner*
Alfred L. Fatale III*
David J. Schwartz*
Robert S. Rowley*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
afatale@labaton.com
dschwartz@labaton.com
rrowley@labaton.com

*admitted *pro hac vice*

*Lead Counsel for Lead Plaintiff
and the Class*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (213) 519-5876
Email: brian@schallfirm.com
rina@schallfirm.com

*Liaison Counsel for Lead Plaintiff*

19

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
2:21-CV-07405-MCS-PLA