DANIEL J. TYUKODY (SBN 123323)
tyukodyd@gtlaw.com
ALEX LINHARDT (SBN 303669)
linhardta@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Defendants
Catterton Management Company L.L.C., L Catterton VIII, L.P.,
L Catterton VIII Offshore, L.P., Catterton Managing Partner VIII,
L.L.C., C8 Management, L.L.C, and THC Shared Abacus, LP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE HONEST COMPANY, INC. SECURITIES LITIGATION, | CASE NO.: 2:21-cv-07405-MCS (PLA) |
| | **HON. MARK C. SCARSI** |
| | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| | Hearing Date:     December 18, 2023<br>Hearing Time:     9:00 a.m.<br>Courtroom:        7C |

Defendants Catterton Management Company L.L.C., L Catterton VIII, L.P., L Catterton VIII Offshore, L.P., Catterton Managing Partner VIII, L.L.C., C8 Management, L.L.C., and THC Shared Abacus, LP (collectively, "Catterton") file this reply brief in support of their motion to dismiss ("MTD") the Amended Complaint ("AC"), and in response to Plaintiffs' Opposition ("Opp.") brief.

## I.    INTRODUCTION

Plaintiffs' Opposition fails to address the fundamental flaws with the Amended Complaint, makes some remarkable arguments in defense of its sufficiency, and cites case law that undermines Plaintiffs' argument that the Amended Complaint is timely filed.  There are two separate problems:

First, the claims are subject to the one-year statute of limitations set forth in Section 13 of the '33 Act, and the AC was filed too late against Catterton.  The Opposition's case law only confirms that Plaintiffs made a strategic choice not to sue Catterton when they filed their original Complaint in this case, and FRCP 15(c) does not absolve Plaintiffs from what the Opposition calls Plaintiffs' "mistake."  Opp. at 14.

Second, the AC consists of insufficient, generic allegations of Section 15 control person liability.  In getting the Court to grant leave to amend, Plaintiffs argued that there were specific documents that newly revealed a basis for control person liability against Catterton.  However, those documents (and specific factual allegations arising therefrom) are nowhere to be found in the AC.  In an extraordinary argument, Plaintiffs say this is because the documents were subject to a confidentiality agreement Plaintiffs entered into with the original defendants, and if Plaintiffs were to be any more specific, they would have had to file the AC under seal.  Opp. at 12.  Obviously, it is not Catterton's role to tell Plaintiffs how to plead, but FRCP 12(b)(6) is designed to test the sufficiency of a complaint, and there is no "trust me" exception based upon private confidentiality agreements.

The Opposition fails to address the MTD's primary argument, namely that Plaintiffs themselves recognized that the newly discovered documents, which Plaintiffs say they can't publicly discuss, were not in fact sufficient to bring a control person claim against Catterton.

REPLY IN SUPPORT OF DEFENDANT CATTERTON'S
MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED COMPLAINT

Hence, Plaintiffs' need to introduce a smudge factor, where the new allegations are brought against the "Catterton Defendants," which conveniently includes two Catterton-affiliated Honest Company directors who were already named as defendants. AC ¶ 47. All of the AC's new allegations involve conduct that is consistent with the duties of a director in a company about to go public, such as participating in road shows, hiring a CFO, meeting with investment bankers, and having employees report back. AC ¶¶ 50-56. In light of the obvious statute of limitations issue in this case, and employing a plausibility standard that is "context-specific" and based upon "judicial experience and common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Court should conclude that Plaintiffs resorted to this artifice because they recognized that the newly discovered facts were insufficient to bring a control person claim against Catterton.

## II.    ARGUMENT

### A.    The Opposition Confirms That The Amended Complaint Is Untimely Against Catterton.

Under Section 13, there is a strict one-year statute of limitations "after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence[.]" 15 U.S.C. § 77m. That short statute of limitations reflects a legislative judgment that the harsh penalties accompanying a Section 11 violation should be tempered by a relatively short statute of limitations period. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 (1976) (amendments to the Securities Act "substantially shortened the statute of limitations provided by § 13," and constituted "carefully drawn procedural restrictions").

The Opposition's argument that Catterton is relying upon superseded case law that predates *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), is a red herring. The case referenced in Catterton's MTD is *In re Infonet Servs. Corp Sec. Litig.*, 310 F. Supp. 2d 1106 (C.D. Cal. 2003), which is cited for the proposition that "[t]he statute of limitations on Securities Act claims is triggered either by 'actual notice'—the discovery of the untrue statement or omission—or 'inquiry notice'—when discovery should have been made by the

REPLY IN SUPPORT OF DEFENDANT CATTERTON'S
MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED COMPLAINT

exercise of reasonable diligence." *Id*. at 1113 (cited in MTD at 2). That essentially repeats the statutory language, and is not inconsistent with *Merck*.[1]

Moreover, this is not a case where the Court is required to make fine factual distinctions as to exactly when a plaintiff had sufficient notice of its claim, as we are talking about roughly two years of notice. The Opposition cites *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902 (N.D. Cal. 2015), in support of its argument that Catterton's statute of limitations argument is "premature" because "whether the discovery standard articulated in *Merck* has been met 'is fact intensive and is usually not appropriate at the pleading stage.'" Opp. at 10-11. However, the Opposition omits mentioning that *Rieckborn* did undertake a factual analysis in dismissing one of the key allegations on statute of limitations grounds. 81 F. Supp. 3d at 916 ("While defendants face a high hurdle in establishing untimeliness on a motion to dismiss, these facts are sufficient to satisfy that burden . . . .").[2] Despite any "high hurdle," there are many cases where courts dismissed Section 15 cases on statute of limitations grounds.[3]

Regarding relation back under FRCP 15(c), the Opposition cites three cases,[4] saying,

---

[1] Courts after *Merck* continue to use the term "inquiry notice" in characterizing the statute of limitations under Section 13. *See In re Dropbox Sec. Litig*., 2020 U.S. Dist. LEXIS 195597, at *30 (N.D. Cal. Oct. 21, 2020) (citing *Merck*). In addition, the law is unsettled as to whether *Merck* is applicable to Securities Act claims. *See NCUA Bd. v. RBS Secs*., 2012 U.S. Dist. LEXIS 85849, at *7-8 (C.D. Cal. Jan. 30, 2012); *Xiang v. Inovalon Holdings, Inc*., 268 F. Supp. 3d 515, 521-22 (S.D.N.Y. 2017).

[2] While *Maine State Retirement System v. Countrywide Financial Corp.,* 2011 WL 4389689 at *56 (C.D. Cal. May 5, 2011), says that whether the statute of limitations has expired is "best reserved for a motion on summary judgment," the defendants' control person arguments were quite attenuated, with Countrywide Financial Corporation claiming that it should not have control person liability for RMBS entities it created, and Countrywide's President and COO arguing that he should not be considered a control person.

[3] *See* MTD 10-11 & n.12.

[4] These are: *In re Musicmaker.com Sec. Litig*., 2001 WL 34062431, at *17 (C.D. Cal. June 4, 2001); *In re Cobalt Int'l Energy, Inc*., 2016 WL 215476, at *11-12 (S.D. Tex. Jan. 19, 2016); and *In re AFC Enters., Inc. Sec. Litig*., 348 F. Supp. 2d 1363, 1382 (N.D. Ga. 2004).

3

REPLY IN SUPPORT OF DEFENDANT CATTERTON'S
MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED COMPLAINT

"Contrary to Catterton's unsupported suggestion, it is **not** 'unusual for private equity investors to be included as 'control person' defendants.'" Opp. at 14 n.11.  However, the cited cases only undermine Plaintiffs' argument that the AC was timely filed.   In *Musicmaker*, Virgin Holdings, Inc. ("Virgin"), a subsidiary of EMI Group, owned a majority interest in Musicmaker.com, which gave consumers the ability to create their own CDs combining the works of different artists.  2001 WL 34062431, at *5.  However, artists typically had "anticoupling provisions" in their contracts which prevented such compilations without their permission, and when the market learned this Musicmaker's stock price plummeted.  *Id.* at *6.  In their original complaint, plaintiffs brought control person claims against not just the usual defendant in a '33 Act case, but also against Virgin, EMI Holdings, and EMI-related subsidiaries.  *Id.* at *12, 17-18.  In denying defendants' motion to dismiss, the court cited the fact that Virgin had the right to designate three members of Musicmaker's board, and said "it is reasonable to presume that the directors Virgin appointed pursuant to the transactions that led to the challenged IPO had the power to control or influence the transactions at issue."  *Id.* at *17.  The court also found it important that Virgin had a majority interest in Musicmaker pre-IPO, and would own over a third of the company post-IPO.  *Id.*  Similar to the situation in *Musicmaker*, Catterton owned a substantial equity interest in the Honest Company pre-IPO and post-IPO, and two of the Honest Company's seven directors were affiliated with Catterton.

There is barely any control person analysis in *Cobalt Energy*, but the court did find a Section 15 claim to be viable against a number of private equity investors pursuant to the Fifth Circuit's "relaxed and lenient pleading standard."  2016 WL 215476, at *11.  The court in *AFC* also provided little analysis, but what is notable is that the plaintiff did not sue the private equity investor pursuant to Section 15, even though it did sue that investor for insider trading.  348 F. Supp. 2d at 1382.

The point is that at the time the original Complaint in this case was filed, under existing case law, Plaintiffs could have sued Catterton for a Section 15 violation; they just chose not to do so.  It was not until a failed mediation effort, and a subsequent search for

4

REPLY IN SUPPORT OF DEFENDANT CATTERTON'S
MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED COMPLAINT

another deep pocket defendant, that Plaintiffs changed their minds. While Catterton believes that it is unusual for private equity investors to be sued as control persons, Catterton never argued that it had never occurred, as Plaintiffs' cases demonstrate. There are reasons why a plaintiff might or might not want to bring an additional defendant into a case, but later regrets about that strategic decision is not a "mistake concerning the proper party's identity." FRCP 15(c)(1)(C)(ii); *see, e.g., Long v. Ford Motor Co.*, 2008 U.S. Dist. LEXIS 59742, at \*18 (D. Ariz. July 23, 2008) (Rule 15(c)'s relation back doctrine was designed only as a "mistake proviso" meant to "allow a party to correct a formal defect such as a misnomer or misidentification").[5]

### B.   The Opposition Confirms That The Amended Complaint Does Not Adequately Plead Control Against Catterton.

The AC fails to adequately allege Catterton's control over the "day-to-day affairs of the company." *In re Homestore.com Inc. Sec. Litig.,* 347 F. Supp. 2d 790, 810 (C.D. Cal. 2004). One of Catterton's main arguments was that the "substantive" allegations about Catterton's alleged control were entirely lacking in substance, and instead consisted of generic "tick-the-box" allegations. MTD at 10. The Opposition's response is essentially two-fold. First, the Opposition suggests the AC could have been more specific, but doing so might have brought a confidentiality agreement into play, and that might have required Plaintiffs to file the AC under seal, which is disfavored. Opp. at 12. Catterton is quite dubious about this argument, but even if it is true, it is of no legal significance in assessing the adequacy of the AC. Sophisticated counsel can figure out a way to plead facts sufficient to survive a motion to dismiss—confidentiality agreements notwithstanding—or not. If that requires a filing under seal, so be it, but Catterton views this as an attempt to hide the fact

---

[5] Moreover, Catterton finds quite rich the argument that it supposedly received the notice required under FRCP 15(c)(1)(C)(i), based on there being an "identity of interests" and "constructive notice" that Catterton should have surmised from the original Complaint filed on <u>September 15, 2021</u>, while Plaintiffs simultaneously use FRCP 15(c) to absolve themselves from their admitted "mistake" involving similar issues. Opp. at 14-15.

REPLY IN SUPPORT OF DEFENDANT CATTERTON'S
MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED COMPLAINT

that the documents do not support the arguments Plaintiffs made in support of leave to amend. Every plaintiff would like to avoid an adverse ruling through some version of, "Trust me, the documents are there, I just can't tell you about them now."

The second thing the Opposition does in an attempt to establish the AC's pleading sufficiency is to repeat the AC's generic allegations, only now in bolded and italicized type, which doesn't help.[6] Much of the Opposition's response refers to meetings allegedly held between the lead underwriter and Catterton, supposedly without "non-Catterton Honest personnel" being present. All this alleges is that a significant minority shareholder in a company about to go public met with the lead investment banker. If that is unusual, the AC fails to make that case. Moreover, this is another illustration of Plaintiffs' pattern of deliberate ambiguity. Does the phrase "non-Catterton Honest personnel" include Catterton directors Dahnke and Pramanik? Wouldn't it be normal for the lead investment banker to meet with two Honest Company board members who were representatives of a company that owned over a third of the Honest Company's stock prior to going public? In any event, so what? There is no allegation that Morgan Stanley got a better deal on fees, that the Honest Company was harmed, or that this has any relationship to the statements or omissions at issue in the Registration Statement.

The Opposition contends that the AC does not need to allege Catterton's "knowledge of the relevant misstatements" in the Registration Statement to plead control person liability. Opp. at 8. This mischaracterizes the MTD's argument, which did not mention scienter. The point was that the AC fails to adequately allege Catterton's control over the Honest Company's day-to-day affairs. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081 (N.D. Cal. 2010) (dismissing Section 15 claims because "plaintiffs fail

---

[6] *See* Opp. at 3 ("[Catterton] received sometimes daily briefings and with which Catterton participated in IPO meetings *without any non-Catterton Honest personnel present*."); Opp. at 7 ("Catterton had substantial influence over Defendant Morgan Stanley, one of the lead underwriters for Honest's IPO. Defendant Morgan Stanley provided Catterton with briefings, sometimes daily, and Catterton participated in IPO meetings with Defendant Morgan Stanley *without any non-Catterton Honest personnel present*.") (citing AC ¶ 54).

REPLY IN SUPPORT OF DEFENDANT CATTERTON'S
MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED COMPLAINT

to plead specific facts establishing that these persons exercised a significant degree of day to day operational control over the company, as the law requires"); *In re Tezos Secs. Litig.*, 2018 U.S. Dist. LEXIS 157247, at *30 (N.D. Cal. Aug. 7, 2018) ("it is clear the Ninth Circuit requires some assertion of a defendant's 'day-to-day' interaction with a company for a Section 15 claim to stand"); *Howard v. Hui*, 2001 U.S. Dist. LEXIS 15443, at *10 (N.D. Cal. Sept. 24, 2001) ("General control over a company is not enough; plaintiffs must allege that the defendants were active in the day-to-day affairs of [the issuer] or that they exercised specific control over the preparation and release of the financial statements.") (citing *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000)).

All the AC alleges are generic statements such as "Catterton actively managed Honest," "provid[ed] instruction and direction to Honest employees," "participated in drafting the Offering Statements," and "had substantial influence over [the lead underwriter]." Opp. at 7 (citing the AC). Not only is this insufficient, but it fails to recognize that this case is not being written on a blank slate. The fact that there are statute of limitations issues here is obvious, as is Plaintiffs attempt to avoid that issue by bringing their claims against the so-called, "Catterton Defendants." *In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equip. Antitrust Litig.*, 2012 WL 3637291 (S.D. Cal. Aug. 17, 2012), is similar in that it involved an obvious dispositive issue (i.e., pleading an agreement in violation of the antitrust laws) that the plaintiff tried to artfully plead around, and where the court cut right to the chase in dismissing the claim. *Id*. at *24 ("The fly in the ointment, however, is that [plaintiffs] already have been given discovery on this issue and have come up empty-handed."). The Opposition characterizes *Music Merchants* as supposedly applying some higher pleading standard (Opp. at 5); in fact, *Music Merchants* plainly employed *Twombly* in its analysis. *Id*. at *20.

The Opposition also makes what is really a factual argument, when it says Plaintiffs produced documents to Catterton, and "[t]ellingly, after having reviewed those documents, Catterton has not moved for summary judgment but instead they have buried their heads in the sand . . . ." Opp. at 12. FRCP 12(d) is unambiguous in saying that if a party brings up

7

"matters outside the pleadings . . . the motion must be treated as one for summary judgment under Rule 56," and Catterton filed its MTD attempting to stay entirely within the pleadings. However, without wanting to run afoul of that rule, Catterton has reviewed the documents and found them to be underwhelming.  Were this MTD to be denied, it would be Catterton's intention to pursue expedited summary judgment on the control person issue.

## III.   CONCLUSION

The Court should dismiss the case against Catterton.


DATED:  November 20, 2023          GREENBERG TRAURIG, LLP


By */s/ Daniel J. Tyukody*
Daniel J. Tyukody
Alex Linhardt

Attorneys for Defendants
Catterton Management Company L.L.C.,
L Catterton VIII, L.P., L Catterton VIII Offshore,
L.P., Catterton Managing Partner VIII, L.L.C., C8
Management, L.L.C., and THC Shared Abacus, LP

REPLY IN SUPPORT OF DEFENDANT CATTERTON'S
MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED COMPLAINT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Form CV-141. Certificate of Compliance**

**Case Number(s):  2:21-cv-06593-MCS (JPR)**

I am the attorney or self-represented party.

**This brief contains 2,740 words**, excluding the items exempted by Local Civil Rule 11-6.1.

I certify that this brief *(select only one)*:

☐    complies with the word limit of L.R. 11-6.1.

☒    complies with the word limit designated by the Court's initial standing order.

☐    complies with the page limit of L.R. 11-6.1 as a typewritten or handwritten brief.

**Signature** */s/  Daniel J. Tyukody*                        **Date**  November 20, 2023

9