**LABATON KELLER SUCHAROW LLP**
Jonathan Gardner*
Alfred L. Fatale III*
Joseph Cotilletta*
Beth C. Khinchuk*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
afatale@labaton.com
jcotilletta@labaton.com
bkhinchuk@labaton.com

*admitted *pro hac vice*

*Class Counsel for Class Representative Kathie Ng and the Class*

**THE SCHALL LAW FIRM**
Brian Schall (State Bar No. 290685)
Rina Restaino (State Bar No. 285415)
2049 Century Park East, Suite 2406
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (213) 519-5876
brian@schallfirm.com
rina@schallfirm.com

*Liaison Counsel for Class Representative Kathie Ng and the Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

IN RE THE HONEST COMPANY, INC. SECURITIES LITIGATION

Case No. 21-cv-07405-MCS-AS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

Hearing Date: July 28, 2025
Time: 9:00 a.m.
Courtroom: 7C
Judge: Hon. Mark C. Scarsi

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM .......... 4

ARGUMENT .......... 5

I. THE SETTLEMENT WARRANTS FINAL APPROVAL .......... 5

  A. Standards Governing Approval of Class Action Settlements .......... 5

  B. Rule 23(e)(2)(A): The Class Has Been Adequately Represented .......... 7

  C. Rule 23(e)(2)(B): The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel .......... 10

  D. Rule 23(e)(2)(C): The Relief Provided by the Settlement Is Adequate .......... 11

    1. Rule 23(e)(2)(C)(i): Risks of Continued Litigation .......... 12

    2. Rule 23(e)(2)(C)(ii): Effective Process for Distributing Relief to the Class .......... 16

    3. Rule 23(2)(C)(iii): Anticipated Legal Fees and Expenses .......... 18

  E. Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another .......... 18

II. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .......... 19

III. NOTICE PROGRAM AND REACTION OF THE CLASS TO DATE .......... 20

CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Banc of Cal. Sec. Litig.*,
2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ....................11

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ....................16

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....................10

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ....................5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ....................6, 11, 12, 21

*Ciuffitelli v. Deloitte & Touche LLP*,
2019 WL 1441634 (D. Or. Mar. 19, 2019) ....................19

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ....................19

*Destefano v. Zynga Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ....................11

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ....................10, 12

*Ferreira v. Funko, Inc.*,
2022 WL 22877154 (C.D. Cal. Dec. 13, 2022) ....................11

*Garner v. State Farm Mut. Auto Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................5

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................6, 7, 10, 12

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ....................9, 12, 15, 21

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) .......... 16

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......... 9

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .......... 15

*Officers for Justice v. Civil Serv. Comm'r*,
688 F.2d 615 (9th Cir. 1982) .......... 5

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12303367 (C.D. Cal. July 9, 2013) .......... 12, 20

*In re Snap Inc. Sec. Litig.*,
2021 WL 667590 (C.D. Cal. Feb. 18, 2021) .......... 7, 8

*In re Stable Road Acquisition Corp. Sec. Litig.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .......... *passim*

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .......... 5

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .......... 16

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
No. 16-cv-02942 (C.D. Cal. Mar. 13, 2023) .......... 18

*In re Wells Fargo Sec. Litig.*,
991 F.Supp. 1193 (N.D. Cal. 1998) .......... 18

**Statutes**

15 U.S.C. §77k(e) .......... 20

15 U.S.C. § 77z-1(a)(4) .......... 18

15 U.S.C. §77z-1(a)(7) .......... 21

**Rules**

Fed. R. Civ. P. 23 .......... 6, 7, 21

Fed. R. Civ. P. 23(c)(2)(B) .......... 21

Fed. R. Civ. P. 23(e)(1)(B) ....................20
Fed. R. Civ. P. 23(e)(2) ....................5, 6, 7
Fed. R. Civ. P. 23(e)(2)(A) ....................7, 10
Fed. R. Civ. P. 23(e)(2)(B) ....................10
Fed. R. Civ. P. 23(e)(2)(C) ....................11
Fed. R. Civ. P. 23(e)(2)(C)(i) ....................12
Fed. R. Civ. P. 23 (e)(2)(C)(ii) ....................16, 17
Fed. R. Civ. P. 23 (e)(2)(C)(iii) ....................18
Fed. R. Civ. P. 23 (e)(2)(C)(iv) ....................6
Fed. R. Civ. P. 23 (e)(2)(D) ....................18, 19
Fed. R. Civ. P. 23 (e)(3) ....................6
Fed. R. Civ. P. 23 (e)(4) ....................8

## PRELIMINARY STATEMENT

Class Representative, Kathie Ng, on behalf of herself and the certified Class, respectfully submits this memorandum of law in support of her motion for final approval of the proposed Settlement of the above-captioned class action (the "Action") in the aggregate amount of $27,500,000, in cash, pursuant to the terms of the Stipulation and Agreement of Settlement, dated March 11, 2025 (the "Stipulation").[1] The Settlement is with all defendants: The Honest Company, Inc. ("Honest" or the "Company"), the Individual Defendants (together with Honest, the "Honest Defendants"), the Underwriter Defendants, and the Catterton Defendants (together with Honest and the Individual Defendants, the "Defendants").[2]

As described below and in the accompanying Declaration of Alfred L. Fatale III, dated June 23, 2025 (the "Fatale Decl."), the Settlement is an excellent result for the Class. Facing significant challenges with respect to obtaining a greater recovery after summary judgment and trial, Class Representative and Class Counsel, being fully informed by substantial discovery and litigation efforts, negotiated a very favorable recovery for the Class. The Settlement was reached after more than three years of vigorously contested litigation in which all Parties strongly advanced their positions. During the course of the litigation, Class Representative, among other things: (i) drafted three detailed amended complaints; (ii) opposed three extensive motions to dismiss and a motion for partial reconsideration; (iii)

---

[1] All capitalized terms used herein that are not defined have the same meanings as in the Stipulation, previously filed with the Court, ECF No. 304-3.

[2] The "Individual Defendants" are Nikolaos Vlahos, Kelly Kennedy, Jessica Warren, Katie Bayne, Scott Dahnke, Eric Liaw, Jeremy Liew, and Avik Pramanik.

The "Underwriter Defendants" are Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Jefferies LLC, BofA Securities, Inc., Citigroup Global Markets, Inc., William Blair & Company, L.L.C., Guggenheim Securities, LLC, Telsey Advisory Group LLC, C.L. King & Associates, Inc., Loop Capital Markets LLC, Penserra Securities LLC, and Samuel A. Ramirez & Company, Inc.

The "Catterton Defendants" are Catterton Management Company L.L.C., L Catterton VIII, L.P., L Catterton VIII Offshore, L.P., Catterton Managing Partner VIII, L.L.C., C8 Management, L.L.C., and THC Shared Abacus, LP.

obtained class certification; (iv) propounded and responded to document requests and interrogatories; (v) reviewed approximately 75,000 documents (347,000 pages) produced by the Honest Defendants, 71,000 documents (300,000 pages) produced by the Underwriter Defendants, 2,900 documents (40,000 pages) produced by the Catterton Defendants; and 1,300 documents (13,000 pages) produced by third parties; (vi) took 19 depositions and defended two; (vii) negotiated and litigated numerous discovery disputes; (viii) consulted with experts in the fields of negative causation and damages, asset tracing, underwriter due diligence, private equity investments and control person liability, and consumer packaged goods industry standards during the COVID-19 pandemic; (ix) served six expert reports and rebuttal reports; and (x) exchanged extensive mediation briefing in connection with two arm's-length mediations overseen by a highly respected mediator, David M. Murphy. Indeed, at the time of settlement, the Parties had completed contested class certification proceedings as well as an arduous and thorough fact discovery process and were in the middle of expert discovery. *See generally* Fatale Declaration, filed herewith.[3] As a result of these efforts, Class Representative and Class Counsel had a well-developed understanding of the strengths and weaknesses of the claims at issue in the Action. Class Representative litigated the Action with persistence and tenacity and was prepared to take her claims to trial.

While Class Representative believes the Class's claims are meritorious and strong, she recognizes there were substantial risks to continued litigation and trial.

---

[3] The Fatale Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the litigation efforts; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation, among other things. Citations to "¶" in this memorandum refer to paragraphs in the Fatale Declaration.

All exhibits herein are annexed to the Fatale Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - __." The first numerical reference is to the designation of the entire exhibit attached to the Declaration and the second reference is to the exhibit designation within the exhibit itself.

As discussed in detail in the Fatale Declaration and summarized below, among other things, Defendants would likely argue in future dispositive motions and at trial that, for example, Class Representative would be unable to prove that Honest omitted information from the Offering Documents regarding the launch of its new diaper product or the impact of COVID-19 on the Company. Defendants would put forward facts and several highly qualified experts in support of numerous affirmative defenses, such as due diligence and negative causation, which could potentially absolve Defendants from liability or drastically reduce the size of the Class and the amount of recoverable damages.

The Settlement avoids these risks (and others), as well as the further delay and expense of continued litigation – while providing a substantial and certain benefit to the Class. Furthermore, Class Representative was actively involved throughout the litigation, diligently representing the Class, and has approved the Settlement. *See* Declaration of Kathie Ng, dated June 23, 2025, Ex. 6. The Class's reaction to date similarly reflects approval of the Settlement. Notice was provided to the Class beginning on May 21, 2025. *See* Declaration of Alexander Villanova Regarding (A) Mailing of the Settlement Postcard and (B) Publication of the Summary Notice, dated June 20, 2025 ("Mailing Decl."), Ex. 2. While the July 7, 2025 deadline to object to the Settlement has not yet passed, to date, no objections have been received by Class Counsel or docketed. Class Representative respectfully requests that the Court approve the Settlement.

In addition, the Plan of Allocation for the distribution of the proceeds of the Settlement, which was developed by Class Counsel with the assistance of Class Representative's damages expert, is a fair and reasonable method for distributing the Net Settlement Fund to eligible Claimants and should also be approved by the Court.

**PRELIMINARY APPROVAL AND THE NOTICE PROGRAM**

On May 7, 2025, the Court entered an order preliminarily approving the Settlement and approving the proposed forms and methods of providing notice to the Class (the "Preliminary Approval Order," ECF No. 311). Pursuant to and in compliance with the Preliminary Approval Order, using names and addresses gathered in connection with the prior Class Notice program, beginning on May 21, 2025, the Court-appointed Claims Administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq"), caused the Settlement Postcard to be mailed by first-class mail to potential Class Members and banks, brokers, and other nominees ("Nominees"). *See* Mailing Decl., Ex. 2 at ¶¶7-11. To date, a total of 36,349 Settlement Postcards have been mailed to Class Members or their Nominees. *Id*. at ¶10. On June 4, 2025, the Summary Notice was published in *The Wall Street Journal* and was disseminated over the internet using *PR Newswire*. *Id*. at ¶12 and Ex. B attached thereto.

The Claim Form and the long-form Settlement Notice, along with other Settlement related documents, have been posted on a website maintained for the Action, which was developed initially in connection with the Class Notice and has been updated for the Settlement. Ex. 2 at ¶13. In addition to posting the Settlement Notice and Claim Form, the website provides important dates and deadlines in connection with the Settlement, as well as access to downloadable copies of relevant documents, including the Second Amended Consolidated Complaint, the Stipulation, and the Preliminary Approval Order. *Id*. Copies of the Settlement Notice and Claim Form are also available on Class Counsel's website, www.labaton.com. ¶112.

The notices collectively described, *inter alia*, the claims asserted in the Action, the contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would be sought in attorneys' fees and

expenses, the proposed Plan of Allocation, and the right to object to the Settlement. *See generally* Ex. 2-A to C. The notices also gave the deadlines for objecting and submitting claims, and advised potential Class Members of the scheduled Settlement Hearing before this Court. *Id*. To date, the Class's reaction to the proposed Settlement has been positive. While the deadline (July 7, 2025) for objecting has not yet passed, to date there have been no objections to any aspect of the Settlement.[4]

**ARGUMENT**

## I. THE SETTLEMENT WARRANTS FINAL APPROVAL

### A. Standards Governing Approval of Class Action Settlements

The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020); *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008). It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir. 1982). Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims. *See, e.g.*, *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately

[4] Should any objections be received, Class Representative will address them in her reply papers, which are due to be filed with the Court on July 21, 2025.

represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3)[5]; and

(D) the proposal treats class members equitably relative to each other.

Rule 23, as amended in December 2018, has not changed the established overall standard for approving a proposed class settlement, *i.e.*, evaluating whether it is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).

In considering final approval, the Court may also consider the Ninth Circuit's long-standing approval factors, many of which overlap with the Rule 23 considerations: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Advisory Committee Notes to the 2018

[5] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the parties in connection with a proposed settlement. Here, in addition to the Stipulation, on January 14, 2025 the Parties executed a settlement Term Sheet and on March 11, 2025 they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, concerning the circumstances under which Honest and/or the Catterton Defendants could have terminated the Settlement based upon the number of exclusion requests, if the Court were to have required an additional opportunity to seek exclusion from the Class. The Court did not re-open the opt-out period and so the Supplemental Agreement is moot. The Term Sheet, Stipulation, and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

amendments to Rule 23 explain that the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 Advisory Comm. Notes to 2018 Amendments, Subdivision (e)(2); *see also In re Stable Road Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *5 (C.D. Cal. Apr. 23, 2024). "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Id.*

All of these factors, whether in Rule 23 or Ninth Circuit jurisprudence, favor approval of the Settlement.

**B. Rule 23(e)(2)(A): The Class Has Been Adequately Represented**

In determining whether to approve a class action settlement, courts consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon* 150 F.3d at 1027.

Class Representative's claims are based on the same common course of alleged conduct by Defendants, are typical of all other Class Members, and Class Representative has no interests antagonistic to the Class. *See In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *6 (finding lead plaintiff adequately represented the class where lead plaintiff's claims are typical of and coextensive with the claims of the settlement class with no antagonistic interests). Indeed, in granting class certification, the Court previously found Ms. Ng adequate to serve as Class Representative and Labaton Keller Sucharow fit to serve as Class Counsel. *See* ECF No. 127. *See also In re Snap Inc. Sec. Litig.,* 2021 WL 667590, at *1 (C.D.

Cal. Feb. 18, 2021) (noting adequacy of class representative and class counsel where the Court already found that they satisfied adequacy requirements of Rule 23(e)(4) in connection with class certification).

Since their appointment, Class Representative and Class Counsel have adequately represented the Class in both their vigorous prosecution of the claims and in their negotiation of the Settlement. Class Representative and Class Counsel developed a deep understanding of the facts of the case and merits of the claims by, *inter alia*: (i) conducting an extensive investigation of the claims and defenses; (ii) drafting three detailed amended complaints; (iii) responding to three extensive motions to dismiss and a motion for partial reconsideration; (iv) obtaining class certification; (v) propounding and responding to document requests and interrogatories; (vi) reviewing approximately 75,000 documents (347,000 pages) produced by the Honest Defendants, 71,000 documents (300,000 pages) produced by Underwriter Defendants, 2,900 documents (40,000 pages) produced by the Catterton Defendants; and 1,300 documents (13,000 pages) produced by third parties; (vii) serving at least 30 subpoenas on non-parties; (viii) taking 19 depositions and defending two; (ix) negotiating and litigating numerous discovery disputes; (ix) consulting with experts in the fields of negative causation, damages, asset tracing, underwriter due diligence, private equity investments and potential control person liability, and consumer packaged goods industry standards during the COVID-19 pandemic; (x) serving six expert reports and rebuttal reports; and (xi) exchanging extensive mediation briefing and participating in two mediations. *See generally* Fatale Decl. at §§III.-V.

Class Representative regularly communicated with Class Counsel and reviewed material filings in the case, such as the complaints, the briefing on Defendants' motions to dismiss, and the motion for class certification. Class Representative also responded to discovery requests, including searching for and

producing potentially relevant information and preparing and sitting for a deposition. *See* Ex. 6. Furthermore, Class Representative was involved in the ongoing settlement discussions and, with an informed understanding, agreed to the Settlement.

Likewise, Class Counsel, who is experienced in prosecuting and trying complex class actions, had a clear view of the strengths and risks of the case and was equipped to make an informed decision regarding the reasonableness of a potential settlement. *See Jiangchen v. Rentech, Inc.,* 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where counsel "has significant experience in securities class action lawsuits"). Over the course of the litigation, Class Counsel developed a deep understanding of the facts of the case and the merits of the claims. *See generally* Fatale Decl. at §§III.-V. Class Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 3-F) and was able to successfully conduct the litigation against skilled opposing counsel from Cooley LLP, Allen Overy Shearman Sterling US LLP, and Greenberg Traurig, LLP. Accordingly, the Class has been, and remains, well represented.

Through their efforts on behalf of the Class, Class Counsel and Class Representative have concluded that the proposed Settlement is fair, reasonable, and adequate. As the Ninth Circuit observed in *Rodriguez v. West Publishing Corporation,* Class Counsel's informed opinion supports approval as "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. 563 F.3d 948, 965 (9th Cir. 2009); *see also Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Accordingly, it is respectfully submitted that this factor supports approval of the Settlement.

### C. Rule 23(e)(2)(B): The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." This consideration (and Rule 23(e)(2)(A) discussed above) "overlaps with certain *Hanlon* factors, such as the non-collusive nature[6] of negotiations, the extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig*., 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019).

As detailed in the Fatale Declaration, the Settlement was achieved only after two formal mediation sessions over the span of a year and a half, which included the exchange of robust mediation materials and additional negotiations with the assistance of the Mediator. During the mediation sessions, Defendants, represented by well-regarded law firms with deep expertise in defense of securities class actions, vigorously asserted arguments against liability and damages. With the Parties still meaningfully apart in their respective settlement positions after the second mediation in December 2024, they agreed to continue negotiations through the Mediator. On December 23, 2024, after additional discussions between counsel, Class Representative and the Honest Defendants accepted the Mediator's proposal to resolve all claims against the Honest Defendants and the Underwriter Defendants for $20 million in cash, subject to the negotiation of non-financial terms for the Settlement and Court approval. On January 6, 2025, after several discussions between Class Counsel and counsel for the Catterton Defendants through the Mediator, Class Representative and the Catterton Defendants accepted the Mediator's proposal to resolve all claims against the Catterton Defendants for $7.5 million in cash, subject to the negotiation of non-financial terms for the Settlement

[6] The Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, *see In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,947 (9th Cir. 2011), such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants. *See* Stipulation at ¶12 ("This is not a claims-made settlement. As of the Effective Date, Defendants, and/or any other Person(s) funding the Settlement on Defendants' behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.").

and Court approval. *See* Fatale Decl. at §V. These negotiations were at all times adversarial and at arm's-length, and have produced a result that is in the best interests of the Class. *See Ferreira v. Funko, Inc*., 2022 WL 22877154, at *5 (C.D. Cal. Dec. 13, 2022) ("The parties' use of an experienced mediator is an 'important factor' supporting a finding that a proposed settlement is the 'product of arms-length negotiations'"); *In re Stable Road Acquisition Corp*., 2024 WL 3643393, at *6 (finding the settlement was achieved free of collusion where it involved a mediator with substantial experience); *In re Banc of Cal. Sec. Litig*., 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019) ("one important factor [to consider] is that the parties reached the settlement … with a third-party mediator)."

Furthermore, the Parties were at an advanced stage of the litigation when they agreed to settle, after fact discovery was complete and expert discovery was well underway, as detailed in the Fatale Declaration. There can be no question that Class Representative and Class Counsel had sufficient information to evaluate the merits of the Settlement by the time it was reached. *See Destefano v. Zynga Inc.,* 2016 WL 537946, at *12 (N.D. Cal. Feb. 11, 2016) (noting that the extent of discovery completed and stage of proceedings supports final approval of settlement where plaintiffs engaged in a pre-filing investigation, opposed defendants' motions to dismiss and a motion for reconsideration, worked with consultants, propounded and responded to some discovery, and prepared and participated in mediation session).

### D. Rule 23(e)(2)(C): The Relief Provided by the Settlement Is Adequate

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). This factor overlaps with the Ninth Circuit factors that consider "the strength of the plaintiffs' case," "amount offered in the settlement," and "the risk, expense, complexity, and likely duration of further litigation" and the

risk of maintaining class action status." *Churchill Vill. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon*, 150 F.3d at 1026.

### 1. Rule 23(e)(2)(C)(i): Risks of Continued Litigation

"In general, securities fraud class actions are complex cases that are time-consuming and difficult to prove." *Rentech,* 2019 WL 5173771, at *6. *See also In re Extreme Networks, Inc. Sec. Litig*., 2019 WL 3290770, at *8 ("It is well-recognized that securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win."). Although Class Representative and Class Counsel believe that the claims asserted against Defendants are strong, they recognize the significant challenges and risks they would face moving forward, as well as the expense and length of continued litigation through summary judgment motions, trial, and undoubtedly appeals. *See, e.g., Redwen v. Sino Clean Energy, Inc*., 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'").

As set forth below, the benefits conferred on the Class by the $27.5 million Settlement far outweigh the costs, risks, and delay of further litigation, and confirm the adequacy of and reasonableness of the Settlement.

**Falsity, Materiality, and Investor Knowledge:** Regarding the allegations of false and misleading statements and omissions in the Offering Documents, Defendants would have sought to convince the Court and a jury that the disclosures within the Offering Documents, and evidence gathered in discovery, showed that there were no false and misleading statements or omissions. In particular, Defendants would likely seek to establish that Class Representative could not prove that Defendants omitted information from the Offering Documents about the launch of Honest's new diaper product or the impact of COVID-19 on the Company's business. Regarding Honest's Clean Conscious Diaper, Defendants would likely

argue that evidence shows that it was the Company's best diaper product ever, which increased Honest's diaper sales and market share; and that any early consumer complaints about the product were common among any new product introduced to the market, and were quickly and completely resolved prior to the IPO. ¶¶97-99.

Defendants also would have likely argued that relevant information and reports about the impact of COVID-19 existed in the public domain. In support of this argument, Defendants would likely argue that the Company was transparent about the impact of COVID-19 on Honest's business both prior to the IPO and in the Offering Documents. These facts, if accepted at trial, could significantly assist Defendants in establishing a knowledge defense. Defendants would likely argue that because the investing public knew about the impact of COVID-19 on Honest's business and financial condition at the time of the IPO, even statements or omissions proven to be false and misleading would nonetheless be insulated from liability because Defendants cannot be held liable for failing to disclose information that was otherwise actually or imputably known to investors. ¶100.

**Due Diligence:** Each of the Individual Defendants and the Underwriter Defendants also have asserted a due diligence defense as to their liability. While Class Representative would have worked extensively with her due diligence expert with a view towards presenting compelling arguments to the jury to show that these Defendants were negligent in connection with the IPO, these Defendants would have put forth evidence, and in the case of the Underwriter Defendants a well-qualified expert of their own, showing that they conducted a reasonable investigation and had reasonable grounds for their belief in the Offering Documents' truthfulness and completeness. ¶101.

**Control:** The Catterton Defendants would also assert that they did not control Honest and that their actions in connection with the IPO were consistent

with standard private equity practices. In particular, the Catterton Defendants would most likely assert that they did not control Honest's board of directors, management, or day-to-day operations. As with the Underwriter Defendants' due diligence defenses, the Catterton Defendants would likely put forward well-qualified experts to support the reasonableness of their actions. ¶102.

**Damages:** While Class Representative's damages expert has estimated that statutory damages were approximately $210 million, Defendants and their experts would have pursued several credible arguments that any recoverable damages should be much lower, if not zero. Specifically, Defendants and their experts would likely argue that statutory damages should be reduced, if not eliminated, because of negative causation (*i.e.*, the decline in stock price was caused by something other than the alleged misstatements or omissions). In particular, most of the Class's statutory damages (approximately $173 million) occurred on just two dates: June 17, 2021 and August 13, 2021. Defendants would likely put forward strong negative causation arguments for the price declines on these two dates, including that the price declines were not caused by any new information about Class Representative's allegations entering the market. For example, Defendants would likely argue that rather than providing any corrective information about Honest's Clean Conscious Diapers, the Company's disclosures on August 12, 2021 provided the market with positive news about the diaper category, including "mid-single-digit growth for the quarter on [its] Diaper business" and that its "diaper market share increased this quarter as [its] diaper retail consumption growth outpaced the market," and "grew 33% compared to the total diaper market of 20%." As for June 17, 2021, Defendants' negative causation expert would likely seek to demonstrate that the price decline on that date was not statistically significant. Defendants would argue such declines cannot be recovered. ¶¶103-107.

If the arguments with respect to just these two dates were successful,

recoverable damages, according to Class Representative's damages expert, could likely be as low as $36 million. Accordingly, the Settlement recovers between approximately 13% and 76% of potential aggregate damages. ¶108.

Furthermore, issues relating to damages would have come down to an unpredictable and hotly disputed "battle of the experts." The uncertainty as to which side's expert's view might be credited by the jury presents a substantial litigation risk in securities actions. *See, e.g., Nguyen v. Radient Pharms. Corp*., 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky").

**Favorable and Timely Recovery:** The Settlement recovers at least 13% of the maximum $210 million in damages and recovers 76% of the Class Representative's expert's likely lower bound of estimated recoverable damages ($36 million), without any risk to the Class's ability to recover. In the sphere of securities class actions, this is an excellent outcome.

According to Cornerstone Research, for Securities Act cases with total estimated damages of $150 million or more, the median percentage of recovery from 2015 to 2024 was 5.7% of total estimated damages, and the median percentage of recovery for all Securities Act cases from 2015 to 2024 was 7.1%. *See* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements – 2024 Review and Analysis* (Cornerstone Research 2025), Ex. 1 at 9. Courts also regularly approve settlements with comparable or lower percentage recoveries than obtained here. *See, e.g., Rentech,* 2019 WL 5173771, at *9 (finding settlement that represented approximately 10% of total maximum potential damages to be a "favorable outcome in light of the challenging nature of a securities class action case" and supporting the fee award); *In re Stable Road Acquisition Corp*., 2024 WL 3643393,

at *8 (approving requested attorneys' fee and noting that a recovery approximately 10.5% of class-wide damages is more than two and a half times the typical recovery for cases of a similar magnitude); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement recovery of 8% of estimated damages "equals or surpasses the recovery in many other securities class actions").

Notably, the $27.5 million recovery is more than twice the median recovery of $10.3 million in securities class actions settled in 2024 which, like this Action, alleged only Securities Act claims. Ex. 1 at 8. In fact, the median settlement from 2015 to 2024 for class actions that allege only Securities Act claims was also only $10.3 million. *Id*.

Lastly, the Settlement represents a prompt and substantial tangible recovery, without the risks involved in enforcing a litigated judgment. Indeed here, Honest's financial condition over the course of the litigation has gone through periods of significant instability. ¶109. The Settlement also comes without the considerable risk, expense, and delay of summary judgment, trial, and post-trial litigation. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Accordingly, in light of all the substantial risks and expense of continued litigation, and compared to the certain and prompt recovery of $27,500,000, the Settlement is an excellent result.

#### 2. Rule 23(e)(2)(C)(ii): Effective Process for Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member

claims."

Here, the proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, Epiq, which was previously appointed by the Court to disseminate the Class Notice. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Specifically, a Claimant will submit, either by mail or online using the case website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶¶21, 27. Class Representative's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. Stipulation at ¶27(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶38) and the claims process is completed, Authorized Claimants will be issued payments in the form of checks and wire transfers. If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. Thereafter, Class Representative recommends that any *de minimis* balance that remains in the Net Settlement Fund, after payment of any outstanding Notice and Administration Expenses and Taxes, be donated to the Council of Institutional Investors ("CII"), a non-profit, non-sectarian organization, or such other organization approved by the

Court.[7] *Id* at ¶24; Ex. 2-C at ¶74.

**3. Rule 23(2)(C)(iii): Anticipated Legal Fees and Expenses**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Class Counsel's Memorandum of Points and Authorities in Support of an Award of Attorneys' Fees and Expenses, submitted herewith, Class Counsel seeks an award of attorneys' fees of 30% of the Settlement Fund and Litigation Expenses of $1,677,604.36. Class Counsel's Fee Memorandum also includes a request by Class Representative for $7,425.00 in connection with her work in the litigation, pursuant to the PSLRA. The attorneys' fee and expense request is not part of any agreement with Defendants, and the Settlement cannot be terminated based on any ruling on the fees or expenses.

**E. Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another**

The Settlement does not improperly grant preferential treatment to either Class Representative or any segment of the Class. Rather, all members of the Class, including Class Representative, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court, which is discussed below.[8] All Class Members that were allegedly harmed as a result of the alleged violations of the Securities Act, and that submit an eligible claim pursuant to the

---

[7] CII is a non-profit, non-partisan association of benefit funds, foundations, and endowments that seeks to educate its members, policymakers, and the public about corporate governance, shareowner rights, and related investment issues. *See, e.g., Vancouver Alumni Asset Holdings Inc. v. Daimler AG,* No. 16-cv-02942, ECF No. 346 (C.D. Cal. Mar. 13, 2023) (designating CII as *cy pres* recipient in securities class action); *In re Wells Fargo Sec. Litig*., 991 F.Supp. 1193, 1198 (N.D. Cal. 1998) (recognizing CII as a potential proper recipient of cy pres distributions in securities class actions). Neither Class Representative nor Class Counsel have a relationship with CII.

[8] Class Representative's request for reimbursement of her reasonable costs and expenses directly related to her participation in the Action, noted above, would not constitute preferential treatment. *See* 15 U.S.C. §15 U.S.C. § 77z-1(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See generally* Settlement Notice at ¶¶58-75.

## II. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

In addition to seeking final approval of the Settlement, Class Representative also seeks final approval of the Plan of Allocation. The Plan of Allocation, drafted with the assistance of Class Representative's damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible Claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D). The standard for approval of a plan of allocation in a class action is the same as the standard applicable to approval of the settlement as a whole – the plan must be fair, reasonable, and adequate. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *10. An allocation formula "need only have a reasonable and rational basis." *Id*.

Each Authorized Claimant, including Class Representative, will receive a distribution pursuant to the Plan, and Class Representative will be subject to the same formula for distribution of the Settlement as other class members. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses"). "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class

members' individual claims and the timing of purchases of the securities at issue." *Redwen* , 2013 WL 12303367, at *8.

Claimants' Recognized Loss Amounts per share will be calculated using the transactional information provided by Claimants in their Claim Forms. Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund based on the sum of their Recognized Loss Amounts per share, *i.e.*, their total Recognized Claims.

Here, the objective of the Plan of Allocation is to distribute the Net Settlement Fund equitably among those Class Members who suffered economic losses with respect to shares of Honest publicly traded common stock purchased or otherwise acquired pursuant and traceable to the Offering Documents for Honest's IPO.[9] In general, the Recognized Loss Amounts per share calculated under the Plan are based principally on the statutory formula for damages under Section 11(e) of the Securities Act, 15 U.S.C. §77k(e). The Plan of Allocation was fully described in the Settlement Notice and, to date, there has been no objection to the proposed plan. *See* Ex. 2-C at ¶¶58-75.

It is respectfully submitted that the proposed Plan of Allocation will result in a fair distribution of the available proceeds among Class Members who submit valid claims.

## III. NOTICE PROGRAM AND REACTION OF THE CLASS TO DATE

Notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). In granting preliminary approval of the Settlement, the Court approved Class Representative's proposed notice plan. *See* ECF No. 311. The notice

[9] Shares of Honest publicly traded common stock purchased or otherwise acquired from May 5, 2021 (the date of the IPO) through and including August 18, 2021 (the "Traceability Period") are considered traceable to the Offering Documents per the Court's Order Re: Motion For Class Certification (ECF No. 113), filed May 1, 2023. *See* ECF No. 127.

program's combination of individually mailed Settlement Postcards to all Class Members who could be identified with reasonable effort, supplemented by the Summary Notice in a widely circulated publication, transmission over a business newswire, and publication on internet websites, satisfied all requirements of Rule 23, due process, and the PSLRA. *See, e.g., Rentech,* 2019 WL 5173771, at *8 (approving similar notice program that included mailing postcard notices to potential class members and nominees followed by publication notice and posting notice on a settlement website).

As detailed in the accompanying Mailing Declaration of the Claims Administrator, as of June 20, 2025 a total of 36,349 Settlement Postcards have been mailed to potential Class Members, brokers, and nominees. *See* Ex. 2 at ¶10. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on June 4, 2025. *Id*. at ¶12. The Claims Administrator also continues to maintain a dedicated case website, www.TheHonestCompanySecuritiesLitigation.com. *Id*. at ¶13. Claim Forms can be submitted to the Claims Administrator by mail or using the case website. *Id*.

Notice of a class action settlement "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575. The contents of the notices here provided the necessary information for Class Members to make an informed decision regarding the Settlement and contained all of the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §77z-1(a)(7). The notices collectively informed Class Members of, among other things, (1) the nature of the Action and the claims asserted; (2) the definition of the Class; (3) the amount of the Settlement; (4) the Plan of Allocation; (5) the reasons why the Parties are proposing the Settlement; (6) the estimated average recovery per affected share; (7) the maximum amount of attorneys' fees and expenses that will be sought; (8)

the identity and contact information for the representatives of Class Counsel; (9) Class Members' right to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; (10) the binding effect of a judgment on Class Members; and (11) the dates and deadlines for Settlement-related events.

While the objection deadline – July 7, 2025 – has not yet passed, to date, no objections have been received by Class Counsel or docketed by the Court. The reaction to date supports approval of the Settlement and the proposed Plan of Allocation. Class Representative will address any objections, if any, in their reply submission.

## CONCLUSION

For all the foregoing reasons, Class Representative respectfully requests that the Court grant final approval to the proposed Settlement and approve the Plan of Allocation for the distribution of the Net Settlement Fund. Proposed orders are filed herewith.

Dated: June 23, 2025

**LABATON KELLER SUCHAROW LLP**

By: */s/ Alfred L. Fatale III*
Jonathan Gardner (*pro hac vice*)
Alfred L. Fatale III (*pro hac vice*)
Joseph N. Cotilletta (*pro hac vice*)
Beth C. Khinchuk (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
jgardner@labaton.com
afatale@labaton.com
jcotilletta@labaton.com
bkhinchuk@labaton.com

*Attorneys for Class Representative Kathie Ng and the Class*

**THE SCHALL LAW FIRM**
Brian Schall (State Bar No. 290685)
Rina Restaino (State Bar No. 285415)
2049 Century Park East, Suite 2406
Los Angeles, California 90067
Telephone: (310) 301-3335

brian@schallfirm.com
rina@schallfirm.com

*Liaison Counsel for Class Representative Kathie Ng and the Class*

# **Certificate of Word Count Compliance**

I, Court-appointed Class Counsel, hereby certify that this memorandum of law contains 6,971 words, which complies with the word limit of L.R. 11-6.1.

.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2025

/s/ *Alfred L. Fatale III*
Alfred L. Fatale III

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2025

/s/ *Alfred L. Fatale III*
Alfred L. Fatale III

Mailing Information for a Case 2:21-cv-07405-MCS-AS Cody Dixon v. The Honest Company, Inc. et al

Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- Zeeshan A. Ahmedani
  zeeshan.ahmedani@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,courtalert@shearman.com,rcheatham@shearman.com,manattyoffice@shearman.com,an.ahmedani@aosherman.com
- Rachel A Berger
  rberger@labaton.com
- Ryan E Blair
  rblair@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,chourani@cooley.com
- Thilini Chandrasekera
  tchandrasekera@cooley.com,eFilingNotice@cooley.com,smartinez@cooley.com,efiling-notice@ecf.pacerpro.com
- Joseph Cotilletta
  jcotilletta@labaton.com,6904786420@filings.docketbird.com
- Xiaoyu Ding
  christine.ding@aoshearman.com
- Alfred L. Fatale , III
  afatale@labaton.com,8305947420@filings.docketbird.com,cfrasca@labaton.com,electroniccasefiling@labaton.com
- Koji F Fukumura
  kfukumura@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,chourani@cooley.com
- Jonathan Gardner
  jgardner@labaton.com,lpina@labaton.com,afatale@labaton.com,4027988420@filings.docketbird.com,cfrasca@labaton.com,electroniccasefiling@labaton.com
- Patrick T. Hein
  patrick.hein@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,courtalert@shearman.com,rcheatham@shearman.com,manattyoffice@shearman.com
- Robert A Horowitz
  horowitzr@gtlaw.com,gtcourtalert@gtlaw.com
- Beth C. Khinchuk
  bkhinchuk@labaton.com

- Daniel H R Laguardia
  daniel.laguardia@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,CourtAlert@Shearman.com,Ron.Cheatham@aoshearman.com,manattyoffice@shearman.com
- Grace J Lee
  grace.lee@aoshearman.com
- Daniel Craig Lewis
  daniel.lewis@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,CourtAlert@Shearman.com,rcheatham@shearman.com,manattyoffice@shearman.com
- Charles Henry Linehan
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com
- Alexander L Linhardt
  linhardta@gtlaw.com,alexander-linhardt-0600@ecf.pacerpro.com,gutierrezd@gtlaw.com
- Wesley A. Mann
  wmann@labaton.com,1422309420@filings.docketbird.com,ElectronicCaseFiling@labaton.com
- Francis P. McConville
  fmcconville@labaton.com,HChang@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com
- Caitlin Bridget Munley
  cmunley@cooley.com,efiling-notice@ecf.pacerpro.com,hector-gonzalez-3380@ecf.pacerpro.com
- Nicholas Reddick Orr
  norr@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,jerry.gonzalez@cooley.com
- Jennifer Pafiti
  jpafiti@pomlaw.com,ahood@pomlaw.com,tsayre@pomlaw.com,egoodman@pomlaw.com,tprzybylowski@pomlaw.com,jlopiano@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,mtjohnston@pomlaw.com,jalieberman@pomlaw.com,abarbosa@pomlaw.com
- Robert Vincent Prongay
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com
- Pavithra Rajesh
  prajesh@glancylaw.com,info@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com
- Laurence M. Rosen
  lrosen@rosenlegal.com,lrosen@ecf.courtdrive.com
- Robert S. Rowley
  rrowley@labaton.com

- Brian J. Schall
  brian@schallfirm.com,rina@schallfirm.com
- David J. Schwartz
  dschwartz@labaton.com
- Elizabeth J Stewart
  elizabeth.stewart@shearman.com
- Lisa Marie Strejlau
  lstrejlau@labaton.com,2852082420@filings.docketbird.com,electroniccasefiling@labaton.com
- Daniel J Tyukody , Jr
  tyukodyd@gtlaw.com,daniel-tyukody-2461@ecf.pacerpro.com,phieferd@gtlaw.com
- Elizabeth L Walk
  lwalk@cooley.com
- Jonathan Widjaja
  jonathan.widjaja@gtlaw.com,jonathan-widjaja-8912@ecf.pacerpro.com,jackie.wernick@gtlaw.com
- Charles Wood
  cwood@labaton.com,7807213420@filings.docketbird.com
- Elizabeth M. Wright
  ewright@cooley.com
- Nicole M Zeiss
  NZeiss@labaton.com,5854006420@filings.docketbird.com,ElectronicCaseFiling@labaton.com,Settlementquestions@labaton.com,cboria@labaton.com,ERosenberg@labaton.com