**LABATON KELLER SUCHAROW LLP**
Jonathan Gardner*
Alfred L. Fatale III*
Joseph Cotilletta*
Beth C. Khinchuk*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
afatale@labaton.com
jcotilletta@labaton.com
bkhinchuk@labaton.com

*admitted *pro hac vice*

*Class Counsel for Class Representative
Kathie Ng and the Class*

**THE SCHALL LAW FIRM**
Brian Schall (State Bar No. 290685)
Rina Restaino (State Bar No. 285415)
2049 Century Park East, Suite 2406
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (213) 519-5876
brian@schallfirm.com
rina@schallfirm.com

*Liaison Counsel for Class
Representative Kathie Ng
and the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE HONEST COMPANY, INC. SECURITIES LITIGATION | Case No. 21-cv-07405-MCS-AS |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF LITIGATION EXPENSES** |
| | Hearing Date: July 28, 2025<br>Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: Hon. Mark C. Scarsi |

# **TABLE OF CONTENTS**

Page

Table of Authorities .......................................................................................... ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT...........................................................................................................3

I.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 30% OF THE COMMON FUND WOULD BE FAIR AND REASONABLE...................................................................................................3

   A.   Class Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund.................................................................................3

   B.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases .................................................................................................4

   C.   The Requested Attorneys' Fees Would Be Reasonable ......................5

   D.   Analysis Under the *Vizcaino* Factors Justifies a Fee Award of 30% in this Case..................................................................................7

      1.   The Excellent Result Achieved .................................................8

      2.   The Risks of Litigation...............................................................9

      3.   The Skill Required and the Quality of Work...........................12

      4.   The Contingent Nature of the Fee and the Financial Burden Carried by Counsel ......................................................13

      5.   Reaction of the Class to Date ..................................................15

   E.   A Lodestar Cross-check Confirms that the Requested Fee Would Be Reasonable...........................................................................16

II.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED .........19

III. CLASS REPRESENTATIVE'S REQUEST FOR REIMBURSEMENT PURSUANT TO 15 U.S.C § 77z-1(a)(4)................21

CONCLUSION.....................................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ali v. Franklin Wireless Corp.*,
  2024 WL 5179910 (S.D. Cal. Dec. 19, 2024)......................................................9

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....................................16, 18, 21

*Andrews v. Plains All Am, Pipeline L.P.*,
  2022 WL 4453864 (C.D. Cal. Sept. 20, 2022)............................................7, 8, 9

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996)............................................................................14

*In re Apple Inc. Device Performance Litig.*,
  2023 WL 2090981 (N.D. Cal. Feb. 17, 2023)................................4, 5, 12, 16

*In re Apple Inc. Sec. Litig.*,
  2024 WL 4246282 (N.D. Cal. Sept. 18, 2024).................................................17

*In re Banc of Calif. Sec. Litig.*,
  2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ....................................................6

*Barrett v. Apple Inc.*,
  2025 WL 1002786 (N.D. Cal. Apr. 3, 2025) ......................................................6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) ....................................................................................4, 13

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ...........................................18, 19

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .........................................................................4, 5

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................3

*Brown v. China Integrated Energy Inc.*,
  2016 WL 11757878 (C.D. Cal. July 22, 2016) .................................................11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

ii

*In re Capacitors Antitrust Litig.*,
  2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ......................................................7

*EK Vathana v. Everbank*,
  2016 WL 3951334 (N.D. Cal. July 20, 2016) ......................................................6

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ....................................................16

*Ferreira v. Funko, Inc.*,
  2022 WL 22877154 (C.D. Cal. Dec. 13. 2022) ................................................21

*Fleming v. Impax Lab'y Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) ......................................................6

*Glass v. UBS Fin. Servs. Inc.*,
  331 F. App'x. 452 (9th Cir. 2009) ......................................................................4

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................7

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ..........................................................................19, 20

*Hayden v. Portola Pharms. Inc.*,
  2023 WL 2375242 (N.D. Cal. Mar. 6, 2023) ....................................................19

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................8

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005)................................9, 12, 13, 15

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005)................................................6, 8

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................................................22

*Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..................................................12

*In re MacBook Keyboard Litig.*,
  2023 WL 3688452 (N.D. Cal. May 25, 2023) ....................................................6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

iii

*Marshall v. Northrop Gruman Corp.*,
  2020 WL 5668935 (C.D. Cal. Sept. 18, 2020)....................................................15

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ...........................................................................................16

*Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014)....................................................4, 5

*In re Nuvelo, Inc. Sec. Litig.*,
  2011 WL 2650592 (N.D. Cal. July 6, 2011) .........................................................5

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................5, 7, 9, 13

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .................................................................................7

*In re Oracle Corp. Sec. Litig.*,
  No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009),
  *aff'd*, 627 F.3d 376 (9th Cir. 2010) ....................................................................14

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)...................................................................................9

*Patel v. Trans Union*,
  2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) ......................................................5

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997)...........................................................................14

*Rutti v. Lojack Corp. Inc.*,
  2012 WL 3151077 (C.D. Cal. July 31, 2012) .....................................................16

*In re Silver Wheaton Corp. Sec. Litig.*,
  2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) .......................................................6

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990)...............................................................................6

*In re Stable Road Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. Apr. 23, 2024).............................................4, 5, 13

*Tait v. BSH Home Appliances Corp.*,
  2015 WL 4537463 (C.D. Cal. July 27, 2015) .......................................................4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

iv

*In re Telescopes Antitrust Litig*,
2025 WL 1093248 (N.D. Cal. Apr. 11, 2025) ......................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................................................................................4, 13

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ............................................................................3

*Vincent v. Reser*,
2013 WL 621865 (N.D. Cal. Feb. 19, 2013).................................................3, 19

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)...................................................................*passim*

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*,
19 F.3d 1291 (9th Cir. 1994), *aff'd in part, Class Plaintiffs v. Jaffe
Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) ........................................3, 5, 7

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................14

**Docketed Cases**

*In re Alphabet Inc. Sec. Litig.*,
No. 18-cv-06245, slip op. (N.D. Cal. Sept. 30, 2024)........................................18

*In re Intuitive Surgical Sec. Litig.*,
No. 5:13-cv-01920, slip op. (N.D. Cal. Dec. 20, 2018) ...............................21, 22

*In re Tezos Sec. Litig.*,
No. 17-cv-06779-RS, slip op. (N.D. Cal. Aug. 28, 2020)....................................6

*In re Twitter Inc. Sec. Litig.*,
No. 4:16-cv-05314, slip op. (N.D. Cal. Oct. 13, 2022)......................................18

*In re Twitter Inc. Sec. Litig.*,
No. 4:16-cv-05314, slip op. (N.D. Cal. Nov. 21, 2022) ....................................18

**Statutes**

15 U.S.C § 77k(e) ..............................................................................................11

15 U.S.C. § 77z-1(a)(4) ...................................................................................1, 21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

v

15 U.S.C. § 78u-4(a)(6) ...............................................................................................5


**Rules**

Fed. R. Civ. P. 23(e) ...................................................................................................1

Fed. R. Civ. P. 54(d) ...................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

vi

Class Counsel, Labaton Keller Sucharow LLP, respectfully submits this memorandum of points and authorities in support of its application, on behalf of itself and Liaison Counsel The Schall Law Firm (together "Plaintiffs' Counsel"), for an Order, pursuant to Fed. R. Civ. P. 23(e) and 54(d): (i) awarding attorneys' fees of 30% of the Settlement Fund; (ii) approving payment of Class Counsel's Litigation Expenses in the amount of $1,677,604.36; and (iii) approving Class Representative's request for reimbursement related to her representation of the Class, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1(a)(4) ("PSLRA"), in amount of $7,425.00.[1]

## PRELIMINARY STATEMENT

As detailed in the Stipulation and Agreement of Settlement, the proposed Settlement, if approved by the Court, will resolve the Action in its entirety in exchange for cash payments totaling $27,500,000. This recovery represents an excellent result for the Class and it provides substantial, near-term compensation to Class Members while avoiding the risks associated with pursuing the Action through summary judgment, trial and the inevitable appeals that would follow.

In order to achieve this significant recovery, Plaintiffs' Counsel tenaciously pursued the claims for more than three years. In litigating the Action, Class Counsel worked tirelessly on behalf of the Class and expended extensive time (18,379 hours in professional time) and resources to ensure the best possible recovery for Class Members, all without any guarantee of a recovery and compensation. As detailed in the Declaration of Alfred L. Fatale III, dated June 23, 2025 ("Fatale Declaration" or "Fatale Decl."),[2] filed herewith, Plaintiffs' Counsel engaged in a thorough pre-

---

[1] The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement ("Stipulation"). ECF No. 304-3. All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein.

[2] The Fatale Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to it for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Class in pursuing the litigation, the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

1

discovery investigation; drafted three detailed amended complaints; opposed three extensive motions to dismiss and a motion for partial reconsideration; obtained class certification; and built the case through extensive fact and expert discovery, which included the review of more than approximately 75,000 documents (347,000 pages) from the Honest Defendants, more than approximately 71,000 documents (300,000 pages) from the Underwriter Defendants, approximately 2,900 documents (40,000 pages) from the Catterton Defendants, and more than approximately 1,300 documents (13,000 pages) from third parties, and taking 19 depositions and defending two. In connection with expert discovery, Class Representative submitted six expert reports and rebuttal reports. The Parties exchanged extensive mediation briefing and participated in two mediations.

For these efforts, Class Counsel respectfully requests an award of attorneys' fees of 30% of the Settlement Fund, which includes accrued interest; Litigation Expenses in the amount of $1,677,604.36, plus accrued interest; and reimbursement in the amount of $7,425.00 to Class Representative, pursuant to the PSLRA, for her efforts on behalf of the Class.

As discussed herein, as well as in the Fatale Declaration, it is respectfully submitted that the requested fee, although greater than the 25% benchmark, would be fair and reasonable under the circumstances of this case given the excellent recovery obtained for the Class, the considerable litigation efforts undertaken by Plaintiffs' Counsel here, and the risks and challenges presented by the complex issues in this case. The negative lodestar "multiplier" of approximately 0.88 (at historic rates) and 0.81 (at current rates) confirms that the fee would fairly compensate counsel and is in line with their work on behalf of the Class. Moreover, the requested fee and expenses have been approved by Class Representative Kathie

efforts that led to a settlement, and a description of the services provided by Class Counsel. Citations to "¶" in this motion refer to paragraphs of the Fatale Declaration.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-cv-07405-MCS-AS

2

Ng. *See* Ex. 6 at ¶7.[3] Accordingly, it is respectfully submitted that the requested fees, Litigation Expenses, and PSLRA request should be awarded in full.

## ARGUMENT

### I.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 30% OF THE COMMON FUND WOULD BE FAIR AND REASONABLE

#### A.    Class Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

It is well settled that attorneys who represent a class and achieve a benefit for class members are entitled to a reasonable fee as compensation for their services. The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[4] *See also Vincent v. Reser*, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). Indeed, the Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

The Supreme Court has also emphasized that private securities actions, like this Action, are "an essential supplement to criminal prosecutions and civil

---

[3]    All exhibits referenced herein are annexed to the Fatale Declaration. For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex.__-__." The first numerical reference is to the designation of the entire exhibit to the Fatale Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

[4]    All internal quotations and citations are omitted unless otherwise noted.

enforcement actions" brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'").

### B.    A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

Although courts within the Ninth Circuit have discretion to employ either the lodestar or percentage method of calculating fees, in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002), the Ninth Circuit expressly approved the use of the percentage method in common fund cases. *See also Glass v. UBS Fin. Servs. Inc.*, 331 F. App'x. 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage of recovery method to award fee). The percentage-of-recovery method for awarding attorneys' fees is preferable in cases with a common-fund recovery as it "align[s] the lawyers' interests with achieving the highest award for class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015); *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014). Indeed, "the use of the percentage-of-the fund method in common fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17, 2023).

Further, the percentage of the fund method is appropriate in common fund cases where "the benefit to the class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *In re Stable Road Acquisition*

*Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024) ("where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method").

The use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see Nguyen*, 2014 WL 1802293, at *9 ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

## C.    The Requested Attorneys' Fees Would Be Reasonable

"In applying the percentage of the fund method, the Ninth Circuit has established 25% as a 'benchmark' percentage, which may be adjusted depending on the circumstances of a case." *Apple*, 2023 WL 2090981, at *12 (citing *Vizcaino*, 290 F.3d at 1047); *see also Bluetooth*, 654 F.3d at 942 ("Courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure"). However, "a reasonable fee award is the hallmark of common fund cases" and, as noted below, the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Notably, "in most common fund cases, the award exceeds [the] benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *1 (N.D. Cal. July 6, 2011) (applying relevant factors and finding that the settlement warrants an upward adjustment of the benchmark to 30%). "This is particularly true in securities class actions such as this." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *14; *see also Patel v. Trans Union*, 2018 WL 1258194, at *6 (N.D. Cal. Mar. 11, 2018) ("Courts diverge from the

benchmark based on a variety of factors, including 'the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases.'"); *EK Vathana v. Everbank*, 2016 WL 3951334, at *2 (N.D. Cal. July 20, 2016) ("courts have the power to award more or less than this starting point in "special circumstances"). It is respectfully submitted that the benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Fee awards of 30%, or more, have been awarded in district courts throughout the Ninth Circuit in numerous common fund settlements with comparable, and greater settlements (and many lesser ones). *See*, *e.g.*, *In re Telescopes Antitrust Litig*, 2025 WL 1093248, at *10 (N.D. Cal. Apr. 11, 2025) (awarding approximately 33.33% of $32 million settlement); *Barrett v. Apple Inc.*, 2025 WL 1002786, at *2 (N.D. Cal. Apr. 3, 2025) (awarding 33.33% of $25 million settlement); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *13-14 (N.D. Cal. May 25, 2023) (awarding 30% of $50 million settlement); *Fleming v. Impax Lab'y Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Banc of Calif. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement); *In re Tezos Sec. Litig.*, No. 17-cv-06779-RS, slip op. at 2 (N.D. Cal. Aug. 28, 2020) (awarding 33 1/3% of $25 million settlement) (Ex. 5)[5]; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (awarding 33.33% of $27,783,000 settlement and noting "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class

[5] All unreported "slip" opinions are annexed as Exhibit 5 to the Fatale Declaration.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

6

actions").[6]

As discussed below, Class Counsel respectfully submits that a fee greater than the benchmark would be warranted in this case, given the results achieved, the difficulty and complexity of the claims, the obstacles and challenges faced by Class Counsel, and the extensive time and labor dedicated by counsel.

### D. Analysis Under the *Vizcaino* Factors Justifies a Fee Award of 30% in this Case

The guiding principle in the Ninth Circuit is that a fee award must be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047. In assessing attorneys' fees under the percentage method, and whether a departure from the 25% benchmark is warranted, the Court can consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of the work; (4) awards made in similar cases; and (5) the contingent nature of the fee and financial burden carried by counsel. *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Vizcaino*, 290 F.3d at 1048 (district courts must ensure that fee awards are "supported by findings that take into account all of the circumstances of the case").

---

[6] Awards of 30% or more have also been awarded in much larger class action settlements in courts throughout the Ninth Circuit. *See, e.g.*, *In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *2 (N.D. Cal. Mar. 6, 2023) (awarding 40% of $165 million partial settlement); *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding 32% of $230 million settlement).

### 1. The Excellent Result Achieved

Courts have consistently recognized that the result achieved is a key factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 ("The result achieved is a significant factor to be considered in making a fee award."). Significantly, "[t]he law appropriately provides for some upward adjustment [from the federal benchmark] where the results achieved are significantly better than the norm." *Andrews*, 2022 WL 4453864, at *5. Class Counsel respectfully submits that the $27.5 million proposed Settlement is an excellent result for the Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through summary judgment, trial, and appellate challenges.

The $27.5 million recovery is more than twice the median recovery of $10.3 million in securities class actions settled in 2024 that, like this Action, alleged only Securities Act claims. *See* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements – 2024 Review and Analysis* (Cornerstone Research 2025), Ex. 1 at 8. In fact, the median settlement for class actions that allege only Securities Act claims *from 2015 to 2024* was also $10.3 million. *Id.*

As discussed in the Fatale Declaration and Class Representative's Memorandum of Points and Authorities in Support of Class Representative's Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Settlement Memorandum"), according to analyses prepared by Class Representative's damages expert, estimated aggregate damages the Class could have obtained at trial ranged from $210 million to approximately $36 million, based on whether Defendants' negative causation arguments were credited. ¶¶104-108. Thus, the Settlement recovers at least 13% of maximum potential statutory damages ($210 million) and 76% of Class Representative's experts' lower bound of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

8

estimated recoverable damages ($36 million). ¶108; Settlement Memorandum at §I.D.1.

In the sphere of securities class actions, this is an excellent outcome. According to Cornerstone Research, for Securities Act cases with total estimated damages of $150 million or more, the median percentage of recovery from *2015 to 2024* was 5.7% of total estimated damages, and the median percentage of recovery for *all Securities Act cases* from 2015 to 2024 was 7.1%. Ex. 1 at 9. *See also*, *Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at \*11 (S.D. Cal. Dec. 19, 2024) (finding the results achieved by counsel supported an upward adjustment from the benchmark where the settlement amount recovered 12.9% of maximum estimated damages).

In sum, the very favorable recovery here supports approval of the fee request.

### 2. The Risks of Litigation

The risk involved in a litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379, n.10 (9th Cir. 1995) (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at \*14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a favor in determining counsel's proper fee award."); *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d at 1047 (noting that the risk of litigation, including the ability to prove loss causation and the risk that Defendants prevail on damages, support the requested fee). As set forth in Section VI. of the Fatale Declaration, Plaintiffs' Counsel confronted, and would continue to do so if the litigation had continued, a number of significant legal and factual challenges during the course of the litigation.

Establishing the fundamental elements of materiality and falsity of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

9

alleged misstatements in the Offering Documents was a major undertaking. For example, Defendants persistently maintained that disclosures within the Offering Documents, and evidence developed in discovery, showed that there were simply no false and misleading statements or omissions. In particular, Defendants pressed the arguments, through complex factual and expert evidence, that Class Representative could not prove that Defendants omitted information from the Offering Documents about the launch of its new diaper product or the impact of COVID-19. Regarding Honest's Clean Conscious Diaper, Defendants argued that evidence shows that it was the Company's best diaper product ever, which increased Honest's diaper sales and market share; and that any early consumer complaints about the product were common among any new product introduced to the market, and were quickly and completely resolved prior to the IPO. ¶¶97-99.

Defendants also marshalled complex evidence that relevant information and reports about the impact of COVID-19 existed in the public domain. Defendants would likely continue to argue that the Company was transparent about the impact of COVID-19 on its business both prior to the IPO and in the Offering Documents. These facts were a challenge for Class Counsel and, if accepted at trial, could significantly assist Defendants in establishing a knowledge defense. ¶100.

Additionally, the Individual Defendants and the Underwriter Defendants asserted nuanced due diligence defenses. While Class Counsel would have worked extensively with a due diligence expert to show that these Defendants were negligent in connection with the IPO, these Defendants would also have put forth evidence, and in the case of the Underwriter Defendants, a well-qualified expert of their own, showing that they conducted a reasonable investigation and had reasonable grounds for their actions. The Catterton Defendants would also continue to argue that they did not control Honest, asserting that their actions in connection with the IPO were consistent with standard private equity practices. As with the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-cv-07405-MCS-AS

10

Underwriter Defendants' due diligence defenses, the Catterton Defendants put forward well-qualified experts to support the reasonableness of their actions, which Class Counsel sought to counter with factual and expert evidence. ¶101-102.

A key challenge faced by Class Counsel was the difficulty of overcoming Defendants' negative causation defense, particularly the "disaggregation" of confounding or unrelated information from the stock price declines. *See* 15 U.S.C § 77k(e). This defense is extremely complex and expert driven, weighing intricate factual and statistical elements. Defendants and their experts pursued several credible arguments that any recoverable damages should be much lower than the statutory $210 million that Class Representative's expert has estimated. Since most of the Class's statutory damages (approximately $173 million) occurred on just two dates, June 17, 2021 and August 13, 2021, Defendants focused on the price declines on these two dates and argued that the declines cannot be recovered. ¶¶103-108.

There were also substantial risks that the Court or the jury might not agree with Class Representative's evidence with respect to these expert-driven issues, resulting in no recovery for the Class and no attorneys' fees for counsel. *See Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("Plaintiffs acknowledge that much of their evidence would have been expert witness testimony that may not have been credited by the factfinder ... and they may have difficulty collecting any judgment they might obtain against Defendants" meaning "the high risks associated with this litigation weigh in favor of awarding Lead Counsel's requested fee.").

Class Counsel worked diligently to achieve a significant result for the Class in the face of these very real risks. Under these circumstances, the requested fee is appropriate.

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

11

### 3.    The Skill Required and the Quality of Work

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005); *see also Vizcaino,* 290 F.3d at 1048. "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Jiangchen* v. *Rentech, Inc.*, 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047).

Class Counsel—a firm that practices extensively in the highly challenging field of securities litigation and has skillfully litigated these types of cases in courts across the country through trial (*see* firm resume of Labaton Keller Sucharow LLP, Ex. 3-F) – engaged in a rigorous and concerted effort to obtain the maximum recovery for the Class. This case required a wide ranging and deep investigation, a thorough understanding of intricate factual and legal issues, voluminous fact and expert discovery, class certification efforts, and the skill to respond to the host of challenges that Defendants raised during the litigation. *See generally* Fatale Declaration. Counsel's efforts have resulted in a notable result for the Class, particularly in light of the risks of looming summary judgment motions and pre-trial challenges.

Accordingly, the quality of the legal services provided over the course of this case, together with Class Counsel's substantial experience in complex class actions and commitment to the litigation, enabled Plaintiffs' Counsel to obtain the very favorable Settlement, and support an upward adjustment of the benchmark. *See In re Apple*, 2023 WL 2090981, at *14 (noting class counsel's skill and quality of work supported a fee above the benchmark where the case withstood two motions to dismiss and where "class counsel diligently developed the facts, propounded

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

12

discovery, took depositions, and engaged a damages consultant, all of which was of great benefit to the class").

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' Counsel. *See, e.g.*, *In re Heritage Bond*, 2005 WL 1594389, at \*12. Here, Plaintiffs' Counsel was opposed by very skilled and highly respected lawyers at Cooley LLP, Allen Overy Shearman Sterling US LLP, and Greenberg Traurig LLP, with well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. In the face of this opposition, Plaintiffs' Counsel was able to develop the case so as to obtain an excellent recovery for the Class.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Counsel

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at \*13 ("the fact that Lead Counsel took this case on a contingent basis supports the fee request").

The Supreme Court has also emphasized that private securities actions such as this provide "a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). Yet, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

13

the enormous risks undertaken with a clear view of the economics of a securities class action.

Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. For example, Class Counsel tried *In re JDS Uniphase Securities Litigation*, Case No. C-02-1486 CW (EDL) (N.D. Cal. Nov. 27, 2007), through to a disappointing verdict for the defendants, receiving no compensation and expending millions of dollars in time and expenses. *See also In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million).

Class Counsel is aware of many other hard-fought lawsuits where excellent professional efforts by members of the plaintiff's bar produced no fee for counsel. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005), recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994; *see also* ¶¶133-137.

Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-cv-07405-MCS-AS

14

had been expended. Unlike counsel for defendants, who are paid and reimbursed for their expenses on a current basis, Class Counsel has received no compensation for its efforts during the course of the Action. In the face of very real uncertainties regarding the outcome of the case, Plaintiffs' Counsel prosecuted this Action on a wholly contingent basis, knowing that the litigation could last for years and would require devotion of a substantial amount of time and a significant advance of litigation expenses with no guarantee of compensation or reimbursement.

### 5.    Reaction of the Class to Date

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See In re Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."); *Marshall v. Northrop Grumman Corp.,* 2020 WL 5668935, at *6 (C.D. Cal. Sept. 18, 2020) (considering response from the class, including that there were very few objections, as a factor weighing in favor of the requested fee).

Here, a total of 36,349 Settlement Postcards reporting the maximum amount of the Fee and Expense Application have been sent to potential Class Members and their brokers, banks, and other nominees. *See* Declaration of Alexander Villanova Regarding (A) Mailing of the Settlement Postcard and (B) Publication of the Summary Notice, dated June 20, 2025, Ex. 2 ("Mailing Decl.") at ¶10. The long-form Settlement Notice and Claim Form, along with the Stipulation and other relevant documents, were made available on a website dedicated to the litigation. *Id*. at ¶13. Additionally, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire*. *Id*. at ¶12.

Although the objection deadline will not run until July 7, 2025, to date no objections to the requested amount of attorneys' fees and expenses have been filed with the Court or received by Class Counsel.[7]

### E. A Lodestar Cross-check Confirms that the Requested Fee Would Be Reasonable

Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the Ninth Circuit, it is often considered in order to ensure that an awarded fee would be reasonable. *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *10 (N.D. Cal. July 22, 2019) (noting that "lodestar may provide a useful perspective on the reasonableness of a given percentage award").

"Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate." *In re Apple*, 2023 WL 2090981, at *12. Class Counsel's lodestar derived by multiplying the hours worked on the litigation by each attorney and professional by their current hourly rates[8] is $10,173,968.50 and $9,390,860.00 using historical rates. *See* Declaration of Alfred L. Fatale III on behalf of Labaton Keller Sucharow LLP, dated June 23, 2025 ("Labaton Fee and Expense Decl."), Ex. 3-A.[9] This lodestar is a function of the

---

[7] Class Counsel will address any future objections in its reply papers, which will be filed with the Court on or before July 21, 2025.

[8] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.*, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

[9] The Schall Law Firm, which has been Liaison Counsel in the Action and will be compensated by Labaton from its fee award, is not filing its own declaration.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

16

extensive and rigorous litigation of the case, as described in the Fatale Declaration.[10] As detailed in the Fatale Declaration and in the accompanying Labaton Fee and Expense Declaration, more than 18,000 hours of attorney and professional time were expended for the benefit of the Class. Throughout the litigation, Class Counsel implemented effective project management and sought to maintain an appropriate level of staffing on all tasks. *Id.*

Class Counsel's rates ranged from $800 to $1,375 per hour for partners, $725 to $975 per hour for of counsels, $275 to $600 for associates, $420 to $455 for staff attorneys, and $200 to $415 for paralegals. *See* Ex. 3-B. Class Counsel submits that these rates are reasonable. *See, e.g., In re Apple Inc. Sec. Litig.,* 2024 WL 4246282, at *5 fn. 3 (N.D. Cal. Sept. 18, 2024) (finding the rates charged by counsel, including Labaton, "are reasonable and commensurate with those charged by attorneys with similar experience in the market"). They are also comparable to or less than those used by peer defense-side law firms litigating matters of similar magnitude and complexity. Sample defense firm rates in 2024, gathered by Labaton annually from bankruptcy court filings nationwide, often exceeded these rates. ¶146; Ex. 4.

The substantial work of Class Counsel was necessary for the success of the litigation. As set forth in the Fatale Declaration, Class Counsel: (i) drafted three amended complaints; (ii) opposed three motions to dismiss and a motion for partial reconsideration; (iii) obtained class certification and mailed Class Notice; (iv) propounded and responded to document requests and interrogatories; (v) reviewed more than approximately 150,200 documents (700,000 pages) produced by Defendants and third parties; (vi) took 19 depositions and defended two; (vii) litigated numerous discovery disputes; (viii) consulted with experts in the fields of

---

[10] Pursuant to the Court's Initial Standing Order for Civil Cases, breakdowns of the work associated with the firm's lodestar, by task category, are provided in Exhibit 3-B &-C. Exhibit 3-D is Labaton's standard task table. Copies of the tables will be emailed to the Court in Excel format.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

17

negative causation and damages, asset tracing, underwriter due diligence, private equity investments and control person liability, and consumer packaged goods industry standards during the COVID-19 pandemic; (ix) served six expert reports and rebuttal reports; and (x) exchanged extensive mediation briefing and participated in two mediations during the course of the litigation. *See generally* Fatale Decl. at §§III-V. The substantial time devoted to the Action reflects the dedicated effort needed to prosecute the claims and bring them to a favorable resolution.

Here, the requested fee of 30%, if awarded, would represent a *negative* "multiplier" of 0.81 of Class Counsel's lodestar at current rates and 0.88 of Class Counsel's lodestar at historical rates, meaning Class Counsel is seeking 81% to 88% of its fees in the case, rather than its full fees, or more. Ex. 3 - A. The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded an enhancement multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino,* 290 F.3d at 1051. In *Vizcaino*, the Ninth Circuit affirmed a 3.65 multiplier, noting that a range of multiples from 1.0 to 4.0 are frequently awarded. *Id*.; *see also In re Alphabet Inc. Sec. Litig.,* No. 18-cv-06245 (ECF No. 245 at 12) (N.D. Cal. Sept. 30, 2024)  (approving fee in $350 million settlement representing 4.58 multiplier) (Ex. 5); *In re Twitter Inc. Sec. Litig*., No. 4:16-cv-05314, ECF No. 661 at 2 (N.D. Cal. Oct. 13, 2022) and *Twitter*, ECF No. 670 (N.D. Cal. Nov. 21, 2022) (awarding fee in $809.5 million settlement representing a 4.14 multiplier) (Ex. 5).

With respect to a *negative* multiplier, courts have reasoned that a fee that falls below counsel's lodestar supports the reasonableness of the award. *See, e.g., In re Amgen Inc. Sec. Litig*., 2016 WL 10571773, at *9 (finding the fee request reasonable where the multiplier was negative); *In re Biolase, Inc. Sec. Litig.*, 2015

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-cv-07405-MCS-AS

18

WL 12720318, at *8 (C.D. Cal. Oct. 13, 2015) ("A negative multiplier in this context 'suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.'"); *Hayden v. Portola Pharms. Inc.*, 2023 WL 2375242, at *3 (N.D. Cal. Mar. 6, 2023) (approving fee request and noting that the negative lodestar multiplier "confirms the reasonableness of the requested fee").

Furthermore, additional work will be required of Class Counsel on an ongoing basis, including: correspondence with Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Class Members who have submitted valid Claim Forms. However, Plaintiffs' Counsel will not seek payment for this additional work.

For the foregoing reasons, it is respectfully submitted that the lodestar cross-check here confirms that the requested fee would be reasonable.

## II.     CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's application includes a request for payment of $1,677,604.36 in Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action. *See* Ex. 3-E. These expenses are explained in Class Counsel's individual fee and expense declaration filed herewith. *Id*. This amount is below the $1,725,000 maximum that the notices informed potential Class Members counsel may apply for. To date, there has been no objection to this request.

"Attorneys who created[] a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent,* 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look at whether the particular costs are of the type typically charged by attorneys to paying clients in the non-contingent marketplace. *Harris v. Marhoefer*,

24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"). The amount of Litigation Expenses here is consistent with the stage of the litigation. Class Counsel incurred expenses related to, among other things, expert fees, mediation fees, deposition discovery, and litigation support fees related to electronic discovery.

The largest component of the expenses relates to the retention of Class Representative's experts. These costs total $1,214,460.00, or approximately 72% of the Class Counsel's expenses. ¶152. Class Counsel retained experts to analyze class-wide damages and to provide merits expert reports and opinion on the elements of Class Representative's claims (*i.e.,* damages and tracing), and to rebut Defendants' defenses (negative causation, corporate control, the COVID-19 pandemic, and due diligence). These experts were essential to the prosecution of the Action. *Id*. Class Counsel also retained counsel for a confidential witness in the case, who was deposed by Defendants, incurring costs that totaled $6,835. ¶156.

Another substantial component of Class Counsel's expenses (*i.e.*, ($114,199.00 or approximately 7% of total expenses) was the cost of court reporters and videographers in connection with the 21 depositions and court hearings. ¶154.

The costs of electronic discovery totaled $178,160.62 or approximately 11% of total expenses. Class Counsel retained a third-party vendor to host Class Representative's production, Defendants' productions, and third-party productions in their sophisticated electronic database and litigation support platform. ¶153.

Class Counsel also incurred $73,560.00 in connection with the extensive mediation efforts of the Mediator, David M. Murphy, Esq. ¶155.

The other expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in complex commercial litigation. These

expenses include, among others, travel costs, duplicating costs, PACER, Westlaw/Lexis, and service and court filing fees. *See* Ex. 3-E.

In sum, it is respectfully submitted that Class Counsel's expenses, in the amount of $1,677,604.36, were reasonable and necessary to the litigation of the Action and should be approved.

## III.    CLASS REPRESENTATIVE'S REQUEST FOR REIMBURSEMENT PURSUANT TO 15 U.S.C § 77Z-1(A)(4)

The PSLRA, 15 U.S.C. § 77z-1(a)(4), permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Here, Class Representative is seeking $7,425 related to the 75 hours she dedicated to the Action. *See* Ex. 6 ¶¶8-9. "Courts have the discretion to grant payments to class representatives." *Ferreira v. Funko, Inc*., 2022 WL 22877154, at *12 (C.D. Cal. Dec. 13. 2022) (citing *In re Heritage Bond Litig*., 2005 WL 1594389, at *4).

As explained in her declaration, Class Representative was deposed and engaged in discovery. She was in regular contact with counsel, reviewed court filings and submitted declarations in support of motions, consulted with counsel during the course of the lengthy mediation process and approved of the Settlement. *Id.* Class Representative's efforts required her to devote time and resources to this Action that would otherwise have been devoted to her regular professional endeavors as an escrow officer. Ex. 6.

Many cases have approved reasonable payments to compensate representatives for the time, effort, and expenses they devoted on behalf of a class. *See, e.g., In re Amgen Inc. Sec. Litig*., 2016 WL 10571773, at *10 (reasoning that "courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class" and awarding the State of Connecticut $30,983.99); *In re Intuitive Surgical Sec. Litig.*,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

21

Case No. 5:13-cv-01920, (ECF No. 317 at 4) (N.D. Cal. Dec. 20, 2018) (Ex. 5) (awarding $49,754.18 and $9,100.00 to class representatives).

As explained in one decision, courts "award such costs and expenses to both reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place." *Hicks v. Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

Class Counsel respectfully submits that the amount sought here is reasonable based on Class Representative's active involvement in the Action.

## CONCLUSION

For all the foregoing reasons, Class Counsel respectfully requests that the Court award: (i) attorneys' fees of 30% of the Settlement Fund; (ii) Litigation Expenses in the amount of $1,677,604.36, plus accrued interest; and (iii) $7,425.00 to Class Representative pursuant to the PSLRA. A proposed order is being submitted herewith.

Dated: June 23, 2025

**LABATON KELLER SUCHAROW LLP**

By: _/s/ Alfred L. Fatale III_

Jonathan Gardner (*pro hac vice*)
Alfred L. Fatale III (pro hac vice)
Joseph N. Cotilletta (*pro hac vice*)
Beth C. Khinchuk (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
jgardner@labaton.com
afatale@labaton.com
jcotilletta@labaton.com
bkhinchuk@labaton.com

*Attorneys for Class Representative Kathie Ng and the Class*

**THE SCHALL LAW FIRM**
Brian Schall (State Bar No. 290685)
Rina Restaino (State Bar No. 285415)
2049 Century Park East, Suite 2406
Los Angeles, California 90067
Telephone: (310) 301-3335
brian@schallfirm.com

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

22

rina@schallfirm.com

*Liaison Counsel for Class Representative Kathie Ng and the Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 21-CV-07405-MCS-AS

23

## **CERTIFICATE OF WORD COUNT COMPLIANCE**

I hereby certify that this memorandum of law contains 6,956 words, which complies with the word limit of L.R. 11-6.1.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2025

/s/ *Alfred L. Fatale III*
Alfred L. Fatale III

CERTIFICATE OF SERVICE
CASE NO. 21-CV-07405-MCS-AS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2025

/s/ *Alfred L. Fatale III*
Alfred L. Fatale III

**Mailing Information for a Case 2:21-cv-07405-MCS-AS Cody Dixon v. The Honest Company, Inc. et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- Zeeshan A. Ahmedani
  zeeshan.ahmedani@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,courtalert@shearman.com,rcheatham@shearman.com,manattyoffice@shearman.com,an.ahmedani@aosherman.com

- Rachel A Berger
  rberger@labaton.com

- Ryan E Blair
  rblair@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,chourani@cooley.com

- Thilini Chandrasekera
  tchandrasekera@cooley.com,eFilingNotice@cooley.com,smartinez@cooley.com,efiling-notice@ecf.pacerpro.com

- Joseph Cotilletta
  jcotilletta@labaton.com,6904786420@filings.docketbird.com

- Xiaoyu Ding
  christine.ding@aoshearman.com

- Alfred L. Fatale , III
  afatale@labaton.com,8305947420@filings.docketbird.com,cfrasca@labaton.com,electroniccasefiling@labaton.com

- Koji F Fukumura
  kfukumura@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,chourani@cooley.com

- Jonathan Gardner
  jgardner@labaton.com,lpina@labaton.com,afatale@labaton.com,4027988420@filings.docketbird.com,cfrasca@labaton.com,electroniccasefiling@labaton.com

- Patrick T. Hein
  patrick.hein@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,courtalert@shearman.com,rcheatham@shearman.com,manattyoffice@shearman.com

- Robert A Horowitz
  horowitzr@gtlaw.com,gtcourtalert@gtlaw.com

- Beth C. Khinchuk
  bkhinchuk@labaton.com

CERTIFICATE OF SERVICE
CASE NO. 21-cv-07405-MCS-AS

- Daniel H R Laguardia
  daniel.laguardia@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,CourtAlert@Shearman.com,Ron.Cheatham@aoshearman.com,manattyoffice@shearman.com

- Grace J Lee
  grace.lee@aoshearman.com

- Daniel Craig Lewis
  daniel.lewis@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,CourtAlert@Shearman.com,rcheatham@shearman.com,manattyoffice@shearman.com

- Charles Henry Linehan
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- Alexander L Linhardt
  linhardta@gtlaw.com,alexander-linhardt-0600@ecf.pacerpro.com,gutierrezd@gtlaw.com

- Wesley A. Mann
  wmann@labaton.com,1422309420@filings.docketbird.com,ElectronicCaseFiling@labaton.com

- Francis P. McConville
  fmcconville@labaton.com,HChang@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- Caitlin Bridget Munley
  cmunley@cooley.com,efiling-notice@ecf.pacerpro.com,hector-gonzalez-3380@ecf.pacerpro.com

- Nicholas Reddick Orr
  norr@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,jerry.gonzalez@cooley.com

- Jennifer Pafiti
  jpafiti@pomlaw.com,ahood@pomlaw.com,tsayre@pomlaw.com,egoodman@pomlaw.com,tprzybylowski@pomlaw.com,jlopiano@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,mtjohnston@pomlaw.com,jalieberman@pomlaw.com,abarbosa@pomlaw.com

- Robert Vincent Prongay
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- Pavithra Rajesh
  prajesh@glancylaw.com,info@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- Laurence M. Rosen
  lrosen@rosenlegal.com,lrosen@ecf.courtdrive.com

- Robert S. Rowley
  rrowley@labaton.com

CERTIFICATE OF SERVICE
CASE NO. 21-cv-07405-MCS-AS

- Brian J. Schall
  brian@schallfirm.com,rina@schallfirm.com

- David J. Schwartz
  dschwartz@labaton.com

- Elizabeth J Stewart
  elizabeth.stewart@shearman.com

- Lisa Marie Strejlau
  lstrejlau@labaton.com,2852082420@filings.docketbird.com,electroniccasefiling@labaton.com

- Daniel J Tyukody , Jr
  tyukodyd@gtlaw.com,daniel-tyukody-2461@ecf.pacerpro.com,phieferd@gtlaw.com

- Elizabeth L Walk
  lwalk@cooley.com

- Jonathan Widjaja
  jonathan.widjaja@gtlaw.com,jonathan-widjaja-8912@ecf.pacerpro.com,jackie.wernick@gtlaw.com

- Charles Wood
  cwood@labaton.com,7807213420@filings.docketbird.com

- Elizabeth M. Wright
  ewright@cooley.com

- Nicole M Zeiss
  NZeiss@labaton.com,5854006420@filings.docketbird.com,ElectronicCaseFiling@labaton.com,Settlementquestions@labaton.com,cboria@labaton.com,ERosenberg@labaton.com

CERTIFICATE OF SERVICE
CASE No. 21-CV-07405-MCS-AS