**LABATON KELLER SUCHAROW LLP**
Jonathan Gardner*
Alfred L. Fatale III*
Joseph Cotilletta*
Beth C. Khinchuk*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
afatale@labaton.com
jcotilletta@labaton.com
bkhinchuk@labaton.com

*admitted *pro hac vice*

*Class Counsel for Class Representative
Kathie Ng and the Class*

**THE SCHALL LAW FIRM**
Brian Schall (State Bar No. 290685)
Rina Restaino (State Bar No. 285415)
2049 Century Park East, Suite 2406
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (213) 519-5876
brian@schallfirm.com
rina@schallfirm.com

*Liaison Counsel for Class
Representative Kathie Ng and the Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE THE HONEST COMPANY, INC. SECURITIES LITIGATION | Case No. 21-cv-07405-MCS-AS<br><br>**DECLARATION OF ALFRED L. FATALE III IN SUPPORT OF (I) CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND (II) CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES**<br><br>Hearing Date: July 28, 2025<br>Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: Hon. Mark C. Scarsi |

I, ALFRED L. FATALE III, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.	I am a member of the law firm of Labaton Keller Sucharow LLP ("Labaton"), which serves as court-appointed Class Counsel for the certified Class and Class Representative Kathie Ng in the above-captioned litigation (the "Action").[1] I am admitted to practice before this Court *pro hac vice* and have been the lead partner overseeing the prosecution and resolution of the Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my close supervision and participation in all material aspects of the Action.

2.	I respectfully submit this Declaration in support of Class Representative's motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Federal Rules" or "Rules") for final approval of the proposed settlement with all defendants in the Action: The Honest Company, Inc. ("Honest" or the "Company"), the Individual Defendants (the Individual Defendants and Honest are the "Honest Defendants"), the Underwriter Defendants, and the Catterton Defendants. If approved, the Settlement will resolve all claims asserted in the Action, or that could have been asserted, against Defendants, and related persons, on behalf of the Court-certified Class consisting of: "all persons and entities that purchased or otherwise acquired Honest's publicly traded common stock pursuant and traceable to the Offering Documents for Honest's IPO prior to August 19, 2021, as well as all persons and entities that acquired ownership of a trading account, retirement account, or any other similar investment account or portfolio containing Honest's publicly traded common stock that was purchased or otherwise acquired pursuant and traceable to the Offering Documents for Honest's

---

[1]	All capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Stipulation and Agreement of Settlement, dated as of March 11, 2025 ("Stipulation"). ECF No. 304-3.

IPO prior to August 19, 2021, and were damaged thereby."[2] The Court preliminarily approved the Settlement and directed notice thereof to the Class by Order entered May 7, 2025 (ECF No. 311) ("Preliminary Approval Order").

3.    I also respectfully submit this Declaration in support of: (i) the proposed plan for allocating the net proceeds of the Settlement to eligible Class Members ("Plan of Allocation" or "Plan"); and (ii) Class Counsel's motion, on behalf of all Plaintiffs' Counsel,[3] for an award of attorneys' fees of 30% of the Settlement Fund, which includes accrued interest; payment of Litigation Expenses in the amount of $1,677,604.36, plus accrued interest; and, in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(4), payment of $7,425.00 to Class Representative for costs incurred in connection with her representation of the Class (the "Fee and Expense Application").

4.    For the reasons discussed below, and in the accompanying memoranda,[4] I respectfully submit that: (i) the terms of the Settlement are fair, reasonable, and adequate in all respects and should be approved by the Court; (ii)

---

[2]    Excluded from the Class by definition are: (i) Defendants and the Individual Defendants' immediate family members; (ii) the officers, directors, affiliates, and subsidiaries of Honest, the Underwriter Defendants, and the Catterton Defendants at all relevant times; (iii) Honest's affiliates and employee retirement and/or benefit plan(s) and their participants and/or beneficiaries to the extent they purchased or acquired Honest's common stock pursuant or traceable to the Offering Documents through any such plan(s); (iv) any person who had or has a controlling interest in Honest, at all relevant times; (v) any entity in which any of the Defendants have or had a controlling interest, provided, however, that any "Investment Vehicle" shall not be excluded from the Class; and (vi) the legal representatives, heirs, successors, or assigns of any such excluded person or entity, in their capacity as such. Also excluded from the Class is any person or entity that requested exclusion from the Class in connection with the previously issued Class Notice.

[3]    "Plaintiffs' Counsel" refers collectively to Labaton and The Schall Law Firm ("Schall Law").

[4]    In conjunction with this Declaration, Class Representative and Class Counsel are submitting a Motion for Final Approval of Class Action Settlement and Plan of Allocation and Memorandum of Points and Authorities in Support Thereof ("Settlement Memorandum") and a Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses and Memorandum of Points and Authorities in Support Thereof ("Fee and Expense Memorandum").

the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved by the Court; and (iii) the Fee and Expense Application is fair, reasonable, supported by the facts and the law, and should be granted in all respects. Moreover, the Settlement, Plan of Allocation, and Fee and Expense Application have the full support of Class Representative. *See* Declaration of Kathie Ng, attached hereto as Exhibit 6.

## I.    PRELIMINARY STATEMENT

5.    The proposed Settlement now before the Court provides for the full resolution of all claims in the Action, and related claims, in exchange for cash payments totaling $27,500,000. As detailed herein, Class Representative and Class Counsel respectfully submit that the Settlement represents an excellent result for the Class by any measure.

6.    The decision to settle was informed by a comprehensive investigation into the claims and defenses in the Action, intensive motion practice and discovery (both fact and expert), certification of the Class, and extensive arm's-length negotiations overseen by a highly respected mediator over the span of more than a year. In choosing to settle, Class Representative and Class Counsel took into consideration the substantial risks associated with advancing the claims alleged in the Action, as well as the duration and complexity of the legal proceedings that remained ahead.

7.    The Settlement is materially higher than industry trends. The $27.5 million recovery is more than twice both the median recovery of $10.3 million in securities class actions settled in 2024 that, like this Action, alleged only Securities Act claims, and the median recovery in such cases from 2015-2024 of the same number. *See* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements – 2024 Review and Analysis* (Cornerstone Research 2025), Ex. 1 at 1, 8.

8.    Moreover, according to analyses prepared by Class Representative's damages expert, the aggregate damages the Class could have obtained at trial

ranged from maximum statutory damages of $210 million to approximately $36 million, based on different scenarios, as discussed herein. Thus, the Settlement recovers at least 13% of maximum potential damages ($210 million) and 76% of the Class Representative's expert's likely lower bound of estimated recoverable damages ($36 million). This recovery falls well above industry norms. According to Cornerstone Research, for Securities Act cases with total estimated damages of $150 million or more, the median percentage of recovery from 2015 to 2024 was 5.7% of total estimated damages, and the median percentage of recovery for all Securities Act cases from 2015 to 2024 was 7.1%. Ex. 1 at 9; *see also* Settlement Memorandum, §I.D.1.

9.     It is respectfully submitted that the Settlement is an excellent outcome for the Class, particularly in light of the current posture of the litigation and the risks ahead. Indeed, this case — which was litigated efficiently and aggressively from the initial consolidated complaint to the agreement to settle — spanned more than three years and was settled only after Class Representative, among other things: (i) drafted three detailed amended complaints; (ii) responded to and overcame three extensive motions to dismiss and a motion for partial reconsideration; (iii) obtained class certification; (iv) propounded and responded to document requests, interrogatories, and requests for admission; (v) reviewed approximately 75,000 documents (347,000 pages) produced by the Honest Defendants, 71,000 documents (300,000 pages) produced by Underwriter Defendants, 2,900 documents (40,000 pages) produced by the Catterton Defendants; and 1,300 documents (13,000 pages) produced by third parties; (vi) served at least 30 subpoenas; (vii) took 19 depositions and defended two; (viii) negotiated and litigated numerous discovery disputes; (ix) consulted with experts in the fields of negative causation and damages, asset tracing, underwriter due diligence, private equity investments and control person liability, and consumer packaged goods industry standards during the COVID-19 pandemic; (x) served six

expert reports and rebuttal reports; and (xi) exchanged extensive mediation briefing and participated in two mediations overseen by a highly respected mediator, David M. Murphy (the "Mediator").

10.    In addition to seeking approval of the Settlement, Class Representative seeks approval of the proposed Plan of Allocation governing the calculation of claims and the distribution of the Settlement proceeds. As discussed below, the proposed Plan of Allocation was developed with the assistance of Class Representative's damages expert and provides for the distribution of the Net Settlement Fund to Class Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on their losses attributable to the alleged violations of the federal securities laws.

11.    With respect to Class Counsel's request, on behalf of itself and Schall Law, for an award of attorneys' fees and payment of expenses, the requested fee of 30%, while above the benchmark, would be reasonable under the circumstances before the Court and would be fair both to the Class and counsel. This fee request is justified considering the outstanding benefits that Plaintiffs' Counsel conferred on the Class, the risks undertaken, the skill required and quality of the representation, the extensive litigation efforts, awards made in similar cases, and the contingent nature of the fee and the significant financial burden carried by counsel. Class Counsel also seeks Litigation Expenses in the amount of $1,677,604.36, plus reimbursement to Class Representative, pursuant to the PSLRA, for her efforts on behalf of the Class in the amount of $7,425.00. The expense amounts are less than the maximum amount of expenses of $1,725,000 provided for in the settlement notices.

12.    Class Counsel has worked with the Court-authorized Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), to disseminate notice of the Settlement to Class Members as directed in the Preliminary Approval Order. In this regard, to date Epiq has provided 36,349

copies of the Settlement Postcard to Class Members and their nominees. *See* Declaration of Alexander Villanova Regarding (A) Mailing of the Settlement Postcard and (B) Publication of the Summary Notice, dated June 20, 2025 ("Mailing Decl."), Ex. 2, ¶10. Additionally, Epiq has posted the long-form Settlement Notice and Claim Form, along with other relevant documents, on the website for the case, www.TheHonestCompanySecuritiesLitigation.com, and has caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire*. *Id.* at ¶¶12-13. As ordered by the Court and stated in the notices, objections are due no later than July 7, 2025. To date, there have been no objections to any aspect of the Settlement.[5]

## II.      SUMMARY OF CLASS REPRESENTATIVE'S CLAIMS

13.      Class Representative's claims in this Action are set forth in the operative Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws, filed on February 14, 2024 (ECF No. 185) (the "Second Amended Consolidated Complaint"), which asserts claims under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), against Defendants.

14.      In the operative complaint, Class Representative alleges, among other things, that the registration statement and prospectus (the "Offering Documents") filed in connection with Honest's May 5, 2021 initial public offering ("IPO") of more than 29 million shares of common stock, contained materially false and misleading statements and omissions. As alleged by the Class Representative, unbeknownst to investors in the IPO, Honest's introduction of its "clean conscious diaper" was negatively received by customers. Additionally, Class Representative alleges that the Offering Documents failed to disclose the extent to which the stockpiling of Honest products during the COVID-19 pandemic was negatively

---

[5]      Class Representative and Class Counsel will address any objections that may be received after this submission in their reply submission to be filed with the Court on or before July 21, 2025.

FATALE DECLARATION IN SUPPORT OF MOTIONS FOR APPROVAL OF SETTLEMENT AND FEES AND EXPENSES - Case No. 21-cv-07405-MCS-AS

6

impacting the Company at the time of the IPO. Finally, Class Representative alleges that the Offering Documents misrepresented the significant risks that made the IPO speculative and risky — in particular, risks associated with the COVID-19 stock-up and decreasing demand.

## III. RELEVANT PROCEDURAL HISTORY OF THE ACTION AND PLAINTIFFS' COUNSEL'S LITIGATION EFFORTS

### A. Commencement of the Action and Appointment of Lead Plaintiff and Lead Counsel

15. On or about May 5, 2021, Honest commenced its IPO.

16. On September 15, 2021, a securities class action captioned *Dixon v. The Honest Company, Inc., et al.*, Case No. 21-cv-07405 (the "*Dixon* Action"), was commenced in this Court asserting violations of Sections 11 and 15 of the Securities Act for alleged misstatements and omission in the Offering Documents. ECF No. 1.

17. On October 8, 2021, a second securities class action captioned *Gambino v. The Honest Company, Inc., et al.*, Case No. 21-cv-8033 (the "*Gambino* Action"), was commenced in this Court asserting violation of Sections 11 and 15 of the Securities Act for alleged misstatements and omissions in the Offering Documents.

18. On September 15, 2021, notice of the Action was published pursuant to the PSLRA, notifying eligible purchasers of Honest's common stock about their right to move for appointment as lead plaintiff. ECF No. 20-1.

19. On January 26, 2022, the Court appointed Kathie Ng as Lead Plaintiff and approved her selection of Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) as Lead Counsel, and consolidated the *Dixon* Action and *Gambino* Action under the caption *In re The Honest Company, Inc. Securities Litigation*, Case No. 21-cv-07405. ECF No. 47.

**B.    Class Representative's Investigation and Filing of the First Amended Complaint**

20.    On February 21, 2022, Class Representative filed a Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Consolidated Complaint"). ECF No. 59.

21.    Prior to filing the Consolidated Complaint, Plaintiffs' Counsel conducted an extensive investigation into the facts underlying potential claims. Counsel's investigation included reviewing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) Company press releases, transcripts of earnings calls, and other public statements issued and disseminated by the Company; (iii) the Company's website and marketing materials; (iv) customer reviews of the Company's products; (v) price and volume data for Honest's common stock; (vi) research reports from securities and financial analysts; (vii) news and media reports concerning the Company and other facts related to the Action; (viii) other publicly available materials and data; and (ix) the applicable law governing the claims and potential defenses.

22.    In addition to marshalling facts from these sources, Class Counsel's investigators developed leads for potential witnesses to interview for additional factual information, and also had telephonic communications with former Honest employees with potentially relevant knowledge. In total, Class Counsel contacted approximately 63 former Honest employees and interviewed approximately 12 in connection with the investigation. Ultimately, Class Counsel included information obtained from two former Honest employees in the Consolidated Complaint.

23.    Class Counsel also conducted extensive legal research before filing the Consolidated Complaint to determine which theories of liability to allege and how to allege those theories given the current state of the law. For example, Class Counsel comprehensively researched the law in the Ninth Circuit relating to pertinent legal issues, such as pleading standards for allegations based on

confidential witnesses, statutory standing for Securities Act claims, viability of claims premised on Items 105 and 303 of SEC Regulations S-K (17 C.F.R. §§ 220.105, 299.503), and the materiality of allegedly false and misleading statements.

## C.   Defendants' First Motion to Dismiss and Motion for Reconsideration

24.   On March 14, 2022, the Honest Defendants filed a motion to dismiss the Consolidated Complaint ("First Motion to Dismiss"). ECF No. 60. On the same day, the Underwriter Defendants joined in that motion. ECF No. 62.

25.   In their First Motion to Dismiss, the Honest Defendants argued that the Consolidated Complaint should be dismissed in its entirety primarily because it failed to plead: (i) any actionable false or misleading statements or omissions; or (ii) that any such statements or omissions were material. *See generally* ECF No. 60-1.

26.   Class Counsel reviewed and analyzed Defendants' First Motion to Dismiss brief and the legal authority cited therein. Class Counsel also conducted extensive legal research into Defendants' arguments and potential responses thereto. In its opposition to the First Motion to Dismiss filed on March 28, 2022, Class Representative rebutted the arguments and authorities in the motion, and argued that the Consolidated Complaint adequately alleged all elements of its Securities Act claims. ECF No. 63.

27.   On April 4, 2022, the Honest Defendants filed a reply in further support of their First Motion to Dismiss. ECF No. 65. In their reply, the Honest Defendants advanced further arguments in support of their purported bases for dismissing the Consolidated Complaint. *See generally id.* The Underwriter Defendants joined in the Honest Defendants' reply. ECF No. 68.

28.   On July 18, 2022, the Court granted in part and denied in part the First Motion to Dismiss (the "First Motion to Dismiss Order") and ordered Class

Representative to either file "(1) an amended complaint or (2) a statement indicating she will proceed on the basis of the Consolidated Complaint without the theory of the Section 11 claim dismissed in the Order." ECF No. 71.

29.    On July 27, 2022, Class Representative filed a notice of intent not to amend the Consolidated Complaint. ECF No. 72.

30.    On August 1, 2022, the Honest Defendants filed a Motion for Partial Reconsideration of the First Motion to Dismiss Order, which the Underwriter Defendants joined. ECF Nos. 75-76. On August 8, 2022, Class Representative opposed that motion. ECF No. 77. On August 15, 2022, the Honest Defendants filed a reply in which the Underwriter Defendants joined. ECF Nos. 78-79.

31.    On August 25, 2022, the Court denied, in full, the Honest Defendants' Motion for Partial Reconsideration. ECF No. 84.

### D.    Defendants' Answers and Class Representative's Motion to Strike

32.    On August 17, 2022, Defendants filed their answers and defenses to the Consolidated Complaint, denying all allegations of wrongdoing or damages and asserting affirmative defenses. ECF Nos. 80-81.

33.    On September 7, 2022, Class Representative field a Motion to Strike Affirmative Defenses ("Motion to Strike") from both the Honest Defendants' and the Underwriter Defendants' answers to the Consolidated Complaint. ECF No. 85. On September 21, 2022, the Defendants opposed the Motion to Strike and, on September 28, 2022, Class Representative filed a reply. ECF Nos. 88-89.

34.    On October 26, 2022, the Court granted in part and denied in part the Motion to Strike and ordered the Honest Defendants the Underwriter Defendants to file amended answers to the Consolidated Complaint. ECF No. 99.

35.    On November 9, 2022, the Honest Defendants and the Underwriter Defendants filed amended answers to the Consolidated Complaint, denying all

allegations of wrongdoing or damages and asserting affirmative defenses. ECF Nos. 104-105.

### E.    Class Representative's Amended Consolidated Complaint

36.    On August 14, 2023, Class Representative filed an Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws, adding the Catterton Defendants to the pleadings (the "Amended Consolidated Complaint"). ECF No. 141. The Amended Consolidated Complaint added allegations concerning the Catterton Defendants' alleged control of Honest and their alleged liability under Section 15 of the Securities Act. The allegations against the Honest Defendants and the Underwriter Defendants remained the same.

### F.    The Catterton Defendants' Motion to Dismiss the Amended Consolidated Complaint

37.    On October 16, 2023, the Catterton Defendants filed a motion to dismiss the Amended Consolidated Complaint ("Second Motion to Dismiss"). ECF No. 169.

38.    In the Second Motion to Dismiss, the Catterton Defendants argued that the Court should dismiss the claims against them as time-barred and that, in any event, the Amended Consolidated Complaint did not adequately plead control person liability against the Catterton Defendants. *See generally id*.

39.    Class Counsel reviewed and analyzed the Second Motion to Dismiss brief and the legal authority cited therein. Class Counsel also conducted extensive legal research into Defendants' arguments and potential responses thereto. In its opposition to the Second Motion to Dismiss filed on November 6, 2023, Class Representative rebutted the arguments and authorities in the motion. ECF No. 177.

40.    On November 20, 2023, the Catterton Defendants filed a reply in further support of the Second Motion to Dismiss. ECF No. 178. In their reply, the Catterton Defendants advanced further arguments in support of their purported bases for dismissing the Amended Consolidated Complaint. *See generally id.*

41. On January 31, 2024, the Court issued an Order granting the Second Motion to Dismiss ("Second Motion to Dismiss Order") but gave Class Representative leave to amend the operative complaint. ECF No. 183.

**G.     Class Representative's Second Amended Consolidated Complaint**

42. On February 14, 2024, following the instructions from the Court in the Second Motion to Dismiss Order, Class Representative filed the Second Amended Consolidated Complaint adding additional allegations as to the Catterton Defendants' alleged control of Honest. ECF No. 185. The Second Amended Consolidated Complaint is currently the operative complaint in the Action.

**H.     The Catterton Defendants' Motion to Dismiss the Second Amended Consolidated Complaint**

43. On February 28, 2024, the Catterton Defendants moved to dismiss the Second Amended Consolidated Complaint (the "Third Motion to Dismiss"), again arguing that the Court should dismiss the claims against them as time-barred and that, in any event, the Second Amended Consolidated Complaint did not adequately plead control person liability against the Catterton Defendants. *See generally* ECF No. 195.

44. Class Counsel reviewed and analyzed the Third Motion to Dismiss brief, and the legal authority cited therein. Class Counsel also conducted extensive legal research into Defendants' arguments and potential responses thereto. In its opposition to the Third Motion to Dismiss filed on March 13, 2024, Class Representative rebutted the arguments and authorities in the motion.  ECF No. 204.

45. On March 20, 2024, the Catterton Defendants filed a reply in further support of the Second Motion to Dismiss. ECF No. 213. In their reply, the Catterton Defendants advanced further arguments in support of their purported bases for dismissing the Amended Consolidated Complaint. *See generally id.*

46. On April 22, 2024, the Court issued an Order denying the Third Motion to Dismiss in its entirety. ECF No. 217.

## I.    Defendants' Answers to the Second Amended Consolidated Complaint

47.    On May 29, 2024, Defendants filed their answers to the Second Amended Consolidated Complaint, denying all allegations of wrongdoing or damages and asserting affirmative defenses. ECF Nos. 231-233.

48.    On June 21, 2024, Class Representative and the Catterton Defendants filed a Joint Stipulation to Amend Catterton Defendants' Answer to Complaint (ECF No. 252) and Class Representative, and the Honest Defendants filed a Joint Stipulation to Amend Honest Defendants' Answer to Complaint (ECF No. 253). On June 24, 2024, the Court granted both stipulations. ECF No. 254.

49.    On June 28, 2024, the Honest Defendants filed their amended answer to the Second Amended Consolidated Complaint, denying all allegations of wrongdoing or damages and asserting affirmative defenses. ECF No. 259.

50.    On August 22, 2024, the Catterton Defendants filed their amended answer to the Second Amended Consolidated Complaint, denying all allegations of wrongdoing or damages and asserting affirmative defenses. ECF No. 262.

## J.    Class Representative's Motion for Class Certification

51.    On February 13, 2023, Class Representative moved for class certification, appointment of herself as class representative, and appointment of Labaton as class counsel ("Motion for Class Certification"). ECF No. 113.

52.    On March 6, 2023, the Honest Defendants filed an opposition to the Motion for Class Certification. ECF No. 115. The Underwriter Defendants joined in that opposition. ECF No. 116.

53.    On March 27, 2023, Class Representative filed a reply in further support of her Motion for Class Certification. ECF No. 117.

54.    On May 1, 2023, after briefing and oral argument, the Court entered an order granting in part the Motion for Class Certification, which certified the

Class, appointed Kathie Ng as Class Representative, and appointed Labaton as Class Counsel. ECF No. 127.

### K.    Class Notice

55.    On May 22, 2023, Class Representative, the Honest Defendants, and the Underwriter Defendants entered into a Joint Stipulation as to Notice of Pendency of Class Action. ECF No. 130. On May 24, 2023, the Court entered an order approving the proposed notice of pendency program (ECF No. 132) ("Class Notice"), which included the mailing of a postcard notice to all potential Class Members who could be identified through reasonable efforts, publication of a summary notice, and the posting of a long-form notice on a website created for the litigation.

56.    Beginning on June 8, 2023, the Class Postcard was mailed to potential Class Members and their nominees, and a long-form notice was made available on the website for the Action, www.TheHonestCompanySecuritiesLitigation.com. *See* ECF No. 163. On June 15, 2023, a summary notice was published in *The Wall Street Journal* and distributed on the internet using *PR Newswire*. In addition to summarizing the Action, the notices collectively provided potential class members with the opportunity to request exclusion from the Class (*i.e.*, to "opt-out"), explained that right, and set forth procedures for doing so. The notices informed Class Members that if they did not request exclusion, they would remain a member of the Class, and that they would be bound by all Court orders, whether favorable or unfavorable.

57.    The deadline for submitting a request for exclusion from the Class was August 7, 2023. As of August 28, 2023, no requests for exclusion were received. ECF No. 163. After August 28, 2023, three untimely requests for exclusion were received, purportedly representing 158 shares of Honest common stock in total. ECF Nos. 166, 175.

## IV.    CLASS REPRESENTATIVE'S DISCOVERY EFFORTS

58.    In October 2022, Class Representative began extensive and aggressive discovery efforts on behalf of the Class. Class Representative's efforts included propounding formal discovery requests on Defendants and responding to discovery requests served on Class Representative by Defendants. The Parties' extensive discovery included, for example, the review of more than approximately 75,000 documents (347,000 pages) from the Honest Defendants, 71,000 documents (300,000 pages) from the Underwriter Defendants, and 2,900 documents (40,000 pages) from the Catterton Defendants. Class Representative also served nearly 30 subpoenas on third parties who produced over 1,300 additional documents. Class Counsel took 19 depositions and defended two, including the depositions of Class Representative, numerous current and former employees of the Company (including one of the confidential witnesses identified in the Second Amended Consolidated Complaint), the Individual Defendants, and Rule 30(b)(6) corporate designees of Honest, the Underwriter Defendants, and the Catterton Defendants. In connection with expert discovery, the Parties submitted a total of 11 expert reports, including rebuttal reports, and were in the process of preparing for expert depositions at the time of settlement. The discovery efforts set forth herein provided Class Representative with a thorough understanding of the strengths and weaknesses of Class Representative's claims and assisted her and Class Counsel in considering and evaluating the fairness of the Settlement.

### A.    Rule 23(f) Conference, Initial Disclosures, and Protective Order

59.    On October 3, 2022, Class Representative, the Honest Defendants, and the Underwriter Defendants completed their Rule 26(f) Conference and subsequently filed a joint status report with the Court. ECF No. 93.

60.    On October 14, 2022, Class Representative, the Honest Defendants, and the Underwriter Defendants exchanged initial disclosures pursuant to Federal

Rule 26(a). Initial Disclosures were subsequently exchanged with the Catterton Defendants on June 6, 2024.

61.  Class Representative, the Honest Defendants, and the Underwriter Defendants also engaged in a series of conferences to negotiate a protective order (the "First Protective Order") to govern confidentiality produced documents and information. On October 26, 2022, Class Representative filed the proposed stipulated First Protective Order. ECF No. 100. On October 26, 2022, the Court denied the stipulated First Protective Order without prejudice. ECF No. 101.

62.  Class Representative, the Honest Defendants, and the Underwriter Defendants then engaged in a further series of conferences to negotiate a revised protective order (the "Second Protective Order"). On November 23, 2022, Class Representative filed the proposed stipulated Second Protective Order. ECF No. 106. The Court approved and so-ordered the proposed stipulated Second Protective Order on November 23, 2022. ECF No. 108.

**B.  Discovery Propounded on Defendants**

63.  Class Representative served multiple sets of document requests, interrogatories, and requests for admission on Defendants between October 2022 and the close of fact discovery in December 2024. Class Representative also served notices under Rule 30(b)(6) for a corporate deposition on the Company, the Catterton Defendants, Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, and Jefferies LLC.

64.  The Parties engaged in numerous meet-and-confer conferences and exchanged multiple meet-and-confer letters and emails, as to the scope and manner of the requested document productions, interrogatories, requested admissions, and corporate depositions, including issues pertaining to search terms, document custodians, privilege logs, and other disputes related to the requests. Through this comprehensive effort, the Parties were able to reach an understanding as to the

scope of Defendants' discovery and reached many compromises without having to seek the Court's assistance.

65. Class Counsel conducted an efficient review of the documents produced in discovery. A team of experienced staff attorneys reviewed and analyzed the productions. Many of these staff attorneys had worked on multiple securities cases and specialize in securities and/or corporate governance litigation and are experienced in utilizing the latest technology with respect to document review.

66. Document production efforts began in December 2022 with attorneys ultimately reviewing approximately 75,000 documents (347,000 pages) from the Honest Defendants, 71,000 documents (300,000 pages) from the Underwriter Defendants, and 2,900 documents (40,000 pages) from the Catterton Defendants, and 1,300 documents (13,000 pages) produced by third parties.

67. The team of attorneys assembled by Class Counsel to review these productions varied at different times during the litigation, *i.e.*, when the production of documents increased, more attorneys were added to the review team, and as discovery reached completion attorneys were removed from the review team. After the completion of the review, members of the review teams then focused on assisting Class Representative's experts, preparing for depositions, marshalling evidence for summary judgment and trial, and preparing for mediation. Thus, these attorneys were integral to Class Counsel's prosecution of the Action.

68. To efficiently focus on the most relevant documents, these attorneys used the Relativity eDiscovery platform's search and data analytic software tools to analyze the data and to target the most significant communications, workpapers, and reports. The review was conducted with a combination of linear review, targeted search terms, and custodial document review using the Relativity eDiscovery platform.

69.     The attorneys conducted targeted searching through text, file names, document type (*e.g.,* emails, memoranda, SEC filings, and correspondence), dates, bates numbers, etc. to identify relevant, irrelevant, and "hot" documents for additional review, and to create collections of documents sorted by issue. Documents were allocated to be reviewed by specific experts retained by Class Counsel. Through experience and their increasing familiarity with the documents, the review team identified additional swaths of important documents, which were also run through the analytics and search functions to derive the most significant documents for use in connection with depositions, summary judgment, trial preparation, expert discovery, and Class Representative's mediation statements. The review team analyzed and coded documents, prepared for periodic "hot" document meetings, privilege log review, and conducted deposition preparation which included reviewing and coding all deponent custodial documents if practicable, or in the alternative, the use of targeted searches, and organizing the final set of documents for use at the deposition.

70.     At the start of the document review, attorneys on the review team generally held weekly document review sessions (with one or more of the more senior attorneys on the litigation team) to discuss the results of their ongoing review, their progress on existing projects, and new projects to be undertaken by the team. Throughout the case, the attorneys reviewing the documents prepared meaningful work product, including chronologies, compendiums of key players, and analyses of hot documents, which they continually updated and refined as the team's knowledge of the issues in the case expanded.

71.     Building upon the knowledge learned through the document discovery process, Class Counsel conducted 19 depositions of fact witness and Rule 30(b)(6) designees.

72.     Collectively, the depositions provided substantial evidence and insight into events reflecting upon the allegations in the Second Amended

Consolidated Complaint. However, as discussed herein, they also provided a preview of the difficulties of proving Class Representative's case through adverse witnesses aligned with the Defendants and the battle of the experts that would be on display at trial.

### C.    Discovery Propounded on Class Representative

73.    The Honest Defendants also aggressively sought discovery from Class Representative. The Honest Defendants served document requests and interrogatories on Class Representative. Class Representative objected to many of the Honest Defendants' requests on the basis that they were exceedingly broad and sought information that was protected by various privileges and other protections. As a result of the breadth of Defendants' document requests, the Parties engaged in extended meet-and-confer conferences to negotiate the scope of production. Thereafter, Class Representative worked diligently with Class Counsel to collect and produce responsive material, respond in detail to the interrogatories, and prepare for her deposition.

74.    Defendants took the depositions of Class Representative and one of the confidential witnesses identified in the Second Amended Consolidated Complaint.

### D.    Discovery Disputes

75.    As described above, discovery in this matter was both intense and voluminous. The Parties held numerous meet-and-confer sessions throughout the course of discovery. The Parties also engaged in several letter writing campaigns and contentious email correspondence, concerning the scope of discovery and Defendants' privilege logs.

76.    Through productive meet and confers, the Parties were often able to reach compromises on many issues, which lead to the production of additional information that was at times critical to supporting Class Representative's claims.

However, Class Representative did raise numerous discovery disputes with Magistrate Judge Alka Sagar.

77. In particular, Class Representative challenged the sufficiency of the Individual Defendants' interrogatory responses. Class Representative also challenged many entries on Defendants' voluminous privilege logs on the grounds that they: (i) included non-attorney communications; (ii) concerned non-legal business matters; (iii) involved waiver from third parties; (iv) inappropriately applied the common interest doctrine; (v) inappropriate applied the work product protection; (vi) involved waiver under *Asia Global*; and (vii) did not assert any privilege or protection.

78. Through the efforts of the Parties, and with the assistance of Magistrate Sagar (ECF No. 288), these matters were resolved through an informal discovery conference and additional meet and confers between the Parties. As a result, Class Representative received amended interrogatory responses from the Individual Defendants, amended privilege logs from the Honest Defendants and Underwriter Defendants, and additional document productions from Defendants. Class Counsel believes that the discovery of this additional evidence led to additional support of Class Representative's claims.

**E.    Expert Disclosures and Discovery**

79. On November 18, 2024, Class Representative served two expert opening reports. One report was authored by Daniel Taylor on the topic of tracing shares issued in the IPO and the second report was authored Chad Coffman in support of Class Representative's claimed damages.

80. On the same date, the Honest Defendants served two expert reports, one authored by Jan Kniffen on how the COVID-19 pandemic affected the consumer packaged goods industry and another authored by Kenneth M. Lehn regarding negative causation's impact on any claimed damages. At the same time, the Underwriter Defendants served an expert report authored by Gary Lawrence

regarding their due diligence defense to Class Representative's claims against them. Likewise, the Catterton Defendants served two expert reports, one authored by Tom Schryver, on whether the actions the Catterton Defendants undertook with respect to Honest were customary among private equity investors, and another by Steven Davidoff Solomon, on whether the Catterton Defendants' actions and involvement with Honest were typical for a similarly situated private equity investor.

81.    On December 15, 2024, Class Representative served one rebuttal expert report authored by Chad Coffman in response to Kenneth M. Lehn's report on negative causation.

82.    On December 16, 2024, Class Representative served three additional rebuttal expert reports authored by: (i) Joe Leiwant in response to Jan Kniffen's report on the impacts of the COVID-19 pandemic; (ii) James Miller in response to Gary Lawrence's report on due diligence; and (iii) William Purcell in response to Steven Davidoff Solomon's and Tom Schryver's reports on the customs and practices of private equity investors.

83.    At the time the Parties reached an agreement in principle to settle the Action, Class Counsel was fully prepared to begin taking and defending expert depositions, with the first expert deposition scheduled to occur on January 7, 2025, one day after Class Representative and the Catterton Defendants agreed to accept the Mediator's proposal to resolve all claims against the Catterton Defendants.

## V.    THE SETTLEMENT

### A.    The Parties' Settlement Negotiations and Mediation

84.    In May 2023, Class Representative and the Honest Defendants began discussing the possibility of a mediated resolution of the Action. To facilitate these discussions, Class Representative and the Honest Defendants engaged David M. Murphy, Esq., a well-respected and highly experienced mediator from Phillip ADR.

85. On July 20, 2023, Class Counsel and counsel for the Honest Defendants met with the Mediator to explore a potential resolution of this Action through an all-day mediation. ECF No. 135. This mediation was preceded by the exchange of confidential mediation statements. However, no settlement was reached at the session.

86. Beginning in October 2024, Class Representative and the Honest Defendants again agreed to explore the possibility of a negotiated resolution of the Action with the assistance of the Mediator. These efforts were now joined by the Catterton Defendants.

87. Class Representative, the Honest Defendants, and the Catterton Defendants, each exchanged extensive mediation statements laying out their respective positions on December 9, 2024.

88. On December 16, 2024, Class Counsel, counsel for the Honest Defendants, and Counsel for the Catterton Defendants, met in person for a full-day mediation with the Mediator in an attempt to reach a settlement. After extensive arm's-length negotiation, Class Representative, the Honest Defendants, and the Catterton Defendants were unable to reach an agreement to settle the Action but agreed to continue negotiations through the Mediator.

89. On December 23, 2024, after several discussions between Class Counsel and counsel for the Honest Defendants through the Mediator, Class Representative and the Honest Defendants accepted a Mediator's proposal to resolve all claims against the Honest Defendants and the indemnified Underwriter Defendants for $20,000,000 in cash, subject to the negotiation of non-financial terms for the Settlement and Court approval.

90. On January 6, 2025, after several discussions between Class Counsel and counsel for the Catterton Defendants through the Mediator, Class Representative and the Catterton Defendants accepted a Mediator's proposal to

resolve all claims against the Catterton Defendants for $7,500,000, subject to the negotiation of non-financial terms for the Settlement and Court approval.

### B.    Preparation of Settlement Documentation and Preliminary Approval Motion

91.    Thereafter, the Parties worked diligently to negotiate the full settlement terms set forth in the Stipulation and its exhibits and exchanged multiple drafts of these documents. As of March 11, 2025, the Parties executed the Stipulation setting forth the full terms and conditions of the Settlement.

92.    On March 12, 2025, Class Representative submitted an unopposed motion for an order preliminarily approving the Settlement, approving the manner and form of notice to be sent to Class Members, and scheduling a hearing for final approval of the Settlement ("Preliminary Approval Motion"). ECF No. 304. On April 14, 2025, the Court held a hearing on the Preliminary Approval Motion. By entry of the Preliminary Approval Order on May 7, 2025, the Court granted Class Representative's motion, and scheduled the Settlement Hearing for July 28, 2025 at 9:00 a.m. ECF No. 311.

## VI.    RISKS OF CONTINUED LITIGATION

93.    As explained above, the Settlement is the result of extensive arm's-length negotiations by fully informed Class Representative and Class Counsel, resolves this hard-fought litigation, and represents an excellent result for the Class by any measure, particularly when evaluated in light of the risks of continued litigation through the remainder of expert discovery, summary judgment, trial, and appeal.

94.    Class Representative and Class Counsel understood that, while Class Representative's claims were strong and Class Representative believes she had adduced substantial evidence to support the Class's claims at summary judgment and trial, there were also a number of factors that made the outcome of continued litigation uncertain, weighing in favor of a settlement.

95.    If the Court at summary judgment or a jury at trial sided with Defendants on even one of their defenses, it could have substantially decreased or potentially foreclosed any recovery at all for the Class. Even if Class Representative prevailed at trial, Defendants could have appealed any such verdict, injecting additional risk and delay into the process. Several of the most serious risks of an adverse outcome faced by the Class are discussed in the following paragraphs.

96.    Overall, Class Counsel's extensive discovery efforts, factual and legal analyses, the considerable factual record developed through document discovery, depositions of fact witnesses, expert reports, the Parties' legal and factual arguments in connection with their litigated disputes through the date of reaching an agreement to settle in principle, and the Parties' settlement negotiations, allowed Class Representative and Class Counsel to undertake a comprehensive evaluation of the strengths and weaknesses of the claims. Based on that evaluation, Class Counsel (a firm with extensive experience in the prosecution and trial of complex securities litigation) together with Class Representative determined that the Settlement was in the best interest of the Class.

**A.    Risks Related to Proving Falsity, Proving Materiality and Overcoming Defendants' Affirmative Defenses**

97.    As an initial matter, Class Representative faced several challenges with respect to proving that all of the surviving misstatements were materially false. Defendants strenuously argued that Class Representative would be unable to prove that each of their statements were false and misleading at trial. Any failure in this regard would have significant consequences with respect to proving damages.

98.    For example, regarding the allegations of false and misleading statements and omissions in the Offering Documents, Defendants would have sought to convince the Court and a jury that the disclosures within the Offering

Documents, and evidence gathered in discovery, showed that there were no false and misleading statements or omissions. In particular, Defendants would likely seek to establish that Class Representative could not prove that Defendants omitted information from the Offering Documents about the launch of Honest's new diaper product or the impact of COVID-19 on the Company's business.

99.    Regarding Honest's Clean Conscious Diaper, Defendants would likely argue that evidence shows that it was in fact the Company's best diaper product ever, which increased Honest's diaper sales and market share. Moreover, Defendants would argue that any early consumer complaints about the product were common for any new product introduced to the market, and those issues (if any) were quickly and completely resolved prior to the IPO.

100.    Defendants also would have likely argued that relevant information and reports about the impact of COVID-19 existed in the public domain at the time of the IPO. Defendants would likely argue that the Company was transparent with investors about the impact of COVID-19 on Honest's business both prior to the IPO and in the Offering Documents. These facts, if accepted at trial, not only could prevent Class Representative from proving materiality but could significantly assist Defendants in establishing a knowledge defense under the Securities Act.

101.    Each of the Individual Defendants and the Underwriter Defendants would have asserted a due diligence defense. While Class Representative would have worked extensively with her due diligence expert to show that these Defendants were negligent in connection with the IPO, these Defendants would also have put forth evidence and, in the case of the Underwriter Defendants, a well-qualified expert of their own, showing that they conducted a reasonable investigation at the time of the IPO and had reasonable ground for believing in the truthfulness and completeness of the Offering Documents.

102.    Finally, the Catterton Defendants would also argue that they did not control Honest in connection with the IPO. In particular, the Catterton Defendants

would most likely assert that they did not control Honest's board of directors, management, or day-to-day operations, and that their actions in connection with the IPO were consistent with standard private equity practices. As with the Underwriter Defendants' due diligence defense, the Catterton Defendants would put forward well-qualified experts to support the reasonableness of their actions. While Class Representative would have her own expert on this issue, it would be for the jury to decide which of the competing views to accept.

### B.    Risks Related to Recovering Damages

103.   Even if Class Representative convinced a jury to render a unanimous verdict on liability, she also faced challenges and uncertainty with respect to proving damages.

104.   While Class Representative's damages expert has estimated that statutory damages were approximately $210 million, Defendants and their expert would likely make several credible arguments that any recoverable damages should be much lower, if not zero.

105.   Specifically, Defendants and their expert would likely argue that statutory damages should be reduced, if not eliminated, because of negative causation, *i.e.*, the decline in stock price was caused by something other than the alleged misstatements or omissions. *See* 15 U.S.C. § 77k(e).

106.   In particular, most of the Class's statutory damages (approximately $173 million) occurred on just two dates: June 17, 2021 and August 13, 2021. Defendants would likely put forward strong negative causation arguments for the price declines on these two dates, including that the price declines were not caused by any new information about Class Representative's allegations entering the market.

107.   For example, Defendants would likely argue that rather than providing any corrective information about Honest's new Clean Conscious Diapers, the Company's disclosures on August 12, 2021 provided the market with

positive news about the diaper category, including "mid-single-digit growth for the quarter on [its] Diaper business" and that its "diaper market share increased this quarter as [its] diaper retail consumption growth outpaced the market," and "grew 33% compared to the total diaper market of 20%." As for June 17, 2021, Defendants' negative causation expert would likely seek to demonstrate that the price decline on that date was not statistically significant and, as such, not recoverable.

108.   If arguments with respect to just these two dates were successful, recoverable damages, according to Class Representative's consulting damage expert, could likely be as low as $36 million. Accordingly, the Settlement recovers between approximately 13% and 76% of potential aggregate damages.

109.   Moreover, the Settlement represents a prompt and substantial tangible recovery, without the risks involved in enforcing a litigated judgment.  Indeed here, Honest's financial condition over the course of the litigation has gone through periods of significant instability.

110.   Accordingly, substantial risks with respect to recovering damages remained in the case at the time the Settlement was reached.

## VII.   COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER AND REACTION OF THE CLASS TO DATE

111.   As required by the Court's Preliminary Approval Order, Epiq, working under Class Counsel's supervision, began disseminating notice of the Settlement on May 21, 2025. Ex. 2 at ¶¶7-11. Epiq mailed the Settlement Postcard, by First-Class mail, to potential Class Members and to their banks, brokers and other nominees ("Nominees"), using information previously gathered in connection with the Class Notice. Additionally, Epiq forwarded Settlement Notices to Nominees in Epiq's Nominee database. *Id*. As of June 20, 2025, Epiq has provided 36,349 Settlement Postcards to potential Class Members and Nominees.

*Id.* at ¶10. Epiq also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire* on June 4, 2025. *Id.* at ¶12.

112.    The Settlement Postcard, long-form Settlement Notice, and Claim Form, along with other case related documents, were posted on the website maintained for the Action, www.TheHonestCompanySecuritiesLitigation.com, which was developed initially in connection with the Class Notice and has been updated for the Settlement. The website also provides information concerning the case and important dates and deadlines in connection therewith, as well as an online claim portal, and access to downloadable copies of relevant documents, including the Second Amended Consolidated Complaint, Court orders, the Stipulation, and the Preliminary Approval Order. *Id.* at ¶13. Copies of the Settlement Notice and Claim Form are also available on Class Counsel's website, www.labaton.com. Additionally, Epiq maintains a toll-free telephone number to respond to inquiries regarding the Settlement. *Id.* at ¶15.

113.    Collectively, the notices contain important information about the Action and the Settlement, including, among other things, the definition of the Court-certified Class, a description of the proposed Settlement, and Class Members' options in connection with the Settlement. *See generally id.*, Ex. 2-A to C. The long-form Settlement Notice provides more detailed information about the Action and the Settlement, including the Plan of Allocation. The notices also inform recipients of Class Counsel's intent, on behalf of Plaintiffs' Counsel, to apply for attorneys' fees in an amount not to exceed 30% of the Settlement Fund, and for payment of Litigation Expenses in an amount not to exceed $1,750,000. *Id.*

114.    The deadline for Class Members to file an objection to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application is July 7, 2025. To date, no objection to any aspect of the Settlement has been received by Class Counsel or docketed with the Court. Class Counsel will file a reply on or before July 21, 2025, which will address any objections that may be received.

## VIII.  THE PLAN FOR ALLOCATING THE NET SETTLEMENT FUND TO THE CLASS IS FAIR, REASONABLE, AND ADEQUATE

115.    In accordance with the Preliminary Approval Order, Class Members who wish to participate in the distribution of the Net Settlement Fund (*i.e.*, the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Expenses; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) any other costs or fees approved by the Court) must submit a valid Claim Form and all required supporting documentation to the Claims Administrator, Epiq, no later than July 14, 2025. The Claims Administrator will calculate Claimants' "Recognized Claims" using the transactional information provided in their Claim Forms, which can be mailed to the Claims Administrator, submitted online using the case website, or, for large investors with hundreds of transactions, sent via email to the Claims Administrator's electronic filing team.

116.    As provided in the notice, the Net Settlement Fund will be distributed to Authorized Claimants[6] in accordance with the plan for allocating the Net Settlement Fund among Authorized Claimants approved by the Court ("Plan of Allocation"). The Plan of Allocation proposed by Class Representative is set forth on pages 11-13 of the Settlement Notice. *See* Ex. 2-C.

117.    The objective of the Plan is to distribute the Net Settlement Fund equitably among those Class Members who suffered economic losses as a result of the alleged violations of the federal securities laws with respect to shares of Honest publicly traded common stock purchased or otherwise acquired pursuant and traceable to the Offering Documents for the IPO.[7]

---

[6]    As defined in ¶ 1(c) of the Stipulation, an "Authorized Claimant" is a Class Member who submits a valid Claim Form to the Claims Administrator that is approved for payment from the Net Settlement Fund.

[7]    Shares of Honest publicly traded common stock purchased or otherwise acquired from May 5, 2021 (the date of the IPO) through, and including, August 18, 2021 (the "Traceability Period"), are considered traceable to the Offering Documents per the Court's Order Re: Motion For Class Certification (ECF No. 113), dated May 1, 2023. ECF No. 127.

118. Class Counsel developed the Plan in consultation with Class Representative's damages expert. The Plan, however, is not a formal damages analysis. The calculations made pursuant to the Plan are not intended to estimate, or be indicative of, the amounts that Class Members might have been able to recover as damages at trial. Nor are the calculations, including the Recognized Loss formulas, intended to estimate the amounts that will be paid to Authorized Claimants. The computations under the Plan are only a method to weigh the claims of Authorized Claimants against one another for purposes of making *pro rata* allocations of the Net Settlement Fund, and the Recognized Claim amounts are the basis upon which the Net Settlement Fund will be proportionately allocated to Authorized Claimants.

119. Class Representative's claims asserted in the Action under Section 11 of the Securities Act serve as the basis for the calculation of the Recognized Loss Amounts under the Plan. Section 11 provides a statutory formula for the calculation of damages and the formulas set forth in paragraph 65 of the Settlement Notice, which were developed by Class Representative's damages expert, generally track the statutory formula.

120. Epiq, as the Claims Administrator, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund by dividing the Authorized Claimant's Recognized Claim (*i.e.*, the sum of the Claimant's Recognized Loss Amounts for each purchase, as calculated under the Plan) by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Class Representative's losses will be calculated in the same manner.

121. Once Epiq has processed all submitted Claim Forms and provided Claimants with an opportunity to cure any deficiencies in their claims or challenge the rejection of their claims, processed responses, and made claim determinations,

distributions will be made to Authorized Claimants in the form of checks and wire transfers.

122.   As set forth in the Plan, if there is any balance remaining in the Net Settlement Fund (whether by reason of uncashed checks, or otherwise), after at least six (6) months after the initial distribution, and after payment of any unpaid fees and expenses incurred in administering the Settlement, and Taxes, the Claims Administrator will, if feasible, reallocate such balance among Authorized Claimants who have cashed their initial distribution checks in an equitable and economic fashion. Redistributions will be repeated until the balance in the Net Settlement Fund is no longer feasible or economical to distribute. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of Notice and Administration Expenses and Taxes, shall be contributed to the Council of Institutional Investors, a non-profit, non-sectarian organization, or such other organization approved by the Court. *See* Ex. 2-C at ¶74.

123.   The structure of the Plan is similar to that of numerous other plans of allocation that have been used in other class actions under the Securities Act.

124.   To date, no objections to the Plan have been filed.

125.   In sum, the proposed Plan of Allocation, developed in consultation with Class Representative's damages expert, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Class Counsel respectfully submits that the proposed Plan is fair, reasonable, and adequate and should be approved.

## IX.    THE FEE AND EXPENSE APPLICATION

126.   In addition to seeking final approval of the Settlement and approval of the Plan of Allocation, Class Counsel, on behalf of Plaintiffs' Counsel, is applying to the Court for an award of attorneys' fees and payment of expenses. Consistent with the notices, Class Counsel is applying for attorneys' fees in the

amount of 30% of the Settlement Fund, or $8,250,000, plus interest earned at the same rate as earned by the Settlement Fund, and for litigation expenses in the amount of $1,677,604.36. Class Counsel also seeks reimbursement in the amount of $7,425.00 to Class Representative for her costs, including lost wages, incurred in connection with her representation of the Class in accordance with the PSLRA, 15 U.S.C. §77z-1(a)(4). As noted above, Class Counsel's Fee and Expense Application is consistent with the amounts set forth in the notices and, to date, not one objection regarding the maximum fee and expense amounts set forth in the notices has been received.

127. The lodestar and expense submissions of Alfred L. Fatale III on behalf of Labaton Keller Sucharow LLP ("Labaton Fee and Expense Decl.") are attached hereto as Exhibit 3.[8] Pursuant to the Court's Initial Standing Order for Civil Cases, breakdowns of the work associated with the firm's lodestar, by task category, are provided in Exhibits B and C.[9] Exhibit D is Labaton's standard task category table. The schedules were prepared from daily time records regularly prepared and maintained by my firm. Time expended in preparing this application for fees and payment of expenses has not been included.

128. Below is a summary of the primary factual bases for Class Counsel's Fee and Expense Application. A full analysis of the factors considered by courts within the Ninth Circuit when evaluating requests for attorneys' fees and expenses from a common fund, as well as the supporting legal authority, is presented in the accompanying Fee and Expense Memorandum.

---

[8]    Liaison Counsel Schall Law is not submitting an individual declaration with its time and expenses. It will be compensated from any fees awarded to Labaton.

[9]    Pursuant to the Court's Standing Civil Order, copies of Exhibits A through E to the Labaton Fee and Expense Declaration will be emailed to the Court in Excel format.

### A.    Class Counsel's Fee Request Is Fair and Reasonable and Warrants Approval

#### 1.    The Result Achieved

129.    Here, the Settlement provides for a recovery of $27,500,000 in cash for the benefit of the Class. For the reasons set forth above and given the challenges and obstacles in this case, Class Counsel believes that the Settlement represents an excellent result for the Class.

130.    The Settlement recovers at least 13% of the potential maximum $210 million in damages. And it recovers 76% of Class Representative's expert's likely lower bound of estimated recoverable damages ($36 million). This recovery falls well above the range of reasonableness courts regularly approve in similar circumstances. *See, e.g., Jiangchen v. Rentech Inc.,* 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (finding settlement that represented approximately 10% of total maximum potential damages to be a "favorable outcome in light of the challenging nature of a securities class action case" and supporting the fee award); *In re Stable Road Acquisition Corp. Sec. Litig.,* 2024 WL 3643393, at *12 (C.D. Cal. Apr. 23, 2024) (approving requested attorneys' fee and noting that a recovery approximately 10.5% of class-wide damages is more than two and a half times the typical recovery for cases of a similar magnitude). Moreover, according to Cornerstone Research, for Securities Act cases with total estimated damages of $150 million or more, the median percentage of recovery from 2015 to 2024 was 5.7% of total estimated damages, and the median percentage of recovery for all Securities Act cases from 2015 to 2024 was 7.1%. Ex. 1 at 9.

131.    Notably, the $27.5 million recovery is more than twice the $10.3 million median recovery in securities class actions alleging only Securities Act claims that settled from 2015 to 2024. *See* Ex. 1 at 8.

132.   Here, as a result of the Settlement, numerous Class Members will benefit and receive compensation for their losses and avoid the substantial risks of a lesser, or no, recovery in the absence of settlement.

### 2.        The Risks of Litigation and the Contingent Nature of the Fee

133.   The risks faced by Plaintiffs' Counsel in prosecuting this Action are highly relevant to the Court's consideration of an award of attorneys' fees, as well as its approval of the Settlement. Here, Defendants adamantly deny any liability and, if the Action had continued, would have aggressively litigated their defenses through dispositive motions, a complex trial, and the appeals that would inevitably follow. As detailed in Section VI. above, notwithstanding that the claims survived Defendants' motions to dismiss, Plaintiffs' Counsel and Class Representative faced significant risks with respect to surviving summary judgment challenges and actually proving Defendants' liability and damages at each of the future stages of the litigation.

134.   These case-specific litigation risks are in addition to the risks accompanying securities litigation generally, such as the fact that this Action is governed by stringent case law interpreting the federal securities laws and was undertaken on a contingent-fee basis. From the outset, Class Counsel understood that this would be a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and financial expenditures that vigorous prosecution of the case would require. In undertaking that responsibility, Class Counsel was obligated to ensure that sufficient resources (in terms of attorney and support-staff time) were dedicated to prosecuting the Action, and that funds were available to compensate vendors and consultants and to cover the considerable out-of-pocket costs that a case like this typically demands. With an average lag time of several years for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a

firm that is paid on an hourly, ongoing basis. Counsel have dedicated more than 18,000 hours to prosecuting the Action for the benefit of the Class yet have received no compensation for their efforts.

135. Plaintiffs' Counsel also bore the risk that no recovery would be achieved. Class Counsel is aware that despite the most vigorous and competent efforts, a law firm's success in contingent litigation such as this is never guaranteed. Moreover, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to persuade sophisticated defendants to engage in serious settlement negotiations at meaningful levels. Class Counsel is aware of many hard-fought lawsuits in which, because of the discovery of facts unknown when the case commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by a plaintiff's counsel produced no fee for counsel.

136. Successfully opposing a motion to dismiss or even for summary judgment is also not a guarantee that plaintiffs will prevail at trial. While only a few securities class actions have been tried before a jury, several have been lost in their entirety, such as *In re JDS Uniphase Securities Litigation*, No. 02-cv-1486, slip op. (N.D. Cal. Nov. 27, 2007) (tried by Labaton), and *In re Tesla, Inc. Sec. Litig.*, No. 18-cv-4865, slip op. (N.D. Cal. Feb. 3, 2023), or substantially lost as to the main case, such as *In re Clarent Corp. Sec. Litig.*, No. 01-cv-3361, slip op. (N.D. Cal. Feb. 16, 2005).

137. Even plaintiffs who succeed at trial may find their verdict overturned by a post-trial motion for a directed verdict or on appeal. *See, e.g.*, *In re BankAtlantic Bancorp, Inc.,* No. 07-cv-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2010) (in case tried by Labaton, after plaintiffs' jury verdict, court granted defendants' motion for judgment as a matter of law on loss causation grounds), *aff'd,* 688 F. 3d 713 (11th Cir. 2012) (trial court erred, but defendants entitled to

judgment as matter of law on lack of loss causation); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1998) (reversing plaintiffs' jury verdict for securities fraud); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice). And, the path to maintaining a favorable jury verdict can be arduous and time consuming. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-cv-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) (unanimous verdict for plaintiffs rejected by trial court and later reinstated by the Ninth Circuit Court of Appeals).

138. The United States Supreme Court and numerous other courts have repeatedly recognized that the public has a strong interest in having experienced and able counsel enforce the federal securities laws through private actions. *See, e.g.*, *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (Private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are a 'necessary supplement to [SEC] action.'") (citations omitted). Vigorous private enforcement of the federal securities laws can only occur if private investors can obtain some parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action as well as the economics involved.

139. Plaintiffs' Counsel's efforts, in the face of substantial risks and uncertainties, have resulted in what Class Counsel believes is a significant (and

certain) recovery for the Class. In these circumstances, and in consideration of their hard work and the excellent result achieved, Class Counsel believes the 30% fee request is fair and reasonable and should be approved.

### 3. The Skill Required and Quality of Counsel's Representation

140. The skill and diligence of Class Counsel also support the requested fee. As demonstrated by the firm biography included as Exhibit F to the Labaton Fee and Expense Declaration, Class Counsel is among the most experienced and skilled law firms in the securities litigation field, with a long and successful track record representing investors in such cases, and is consistently ranked among the top plaintiffs' firms in the country.

141. The substantial result achieved for the Class here also reflects the superior quality of this representation.

142. The quality of the work performed in obtaining the Settlement should also be evaluated in light of the quality of opposing counsel. Defendants in this case were represented by experienced counsel from Cooley LLP, Allen Overy Shearman Sterling US LLP, and Greenberg Traurig LLP – prominent litigation firms that vigorously and ably defended the Action on behalf of Defendants. In the face of this formidable defense, Plaintiffs' Counsel were nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle the Action on terms that are very favorable to the Class.

### 4. The Time and Labor Devoted to the Action

143. As more fully described above, Class Counsel: (i) engaged in a thorough pre-discovery investigation; (ii) drafted three detailed amended complaints; (iii) opposed three extensive motions to dismiss and a motion for partial reconsideration; (iv) obtained class certification; and (v) built the case through extensive fact and expert discovery, which included the review of more than approximately 75,000 documents (347,000 pages) from the Honest

Defendants, more than approximately 71,000 documents (300,000 pages) from the Underwriter Defendants, approximately 2,900 documents (40,000 pages) from the Catterton Defendants, and more than approximately 1,300 documents (13,000 pages) from third parties, and taking 19 depositions and defending two. In connection with expert discovery, Class Representative submitted six expert reports. The Parties exchanged extensive mediation briefing and participated in two mediations. *See supra* Sections III.-V. These efforts were driven and focused on advancing the litigation to achieve the most successful outcome for the Class, whether through settlement or trial, by the most efficient means possible. Throughout the litigation, Class Counsel implemented effective project management and sought to maintain an appropriate level of staffing on all tasks.

144. The time devoted to this Action by Class Counsel is set forth in the Labaton Fee and Expense Declaration, Exhibit 3 hereto. Included with the Declaration are several schedules that summarize the time expended by the attorneys and professional support staff at the firm, as well as its expenses ("Fee and Expense Schedules"). The Fee and Expense Schedules report each person's resulting "lodestar," *i.e.*, their hours multiplied by their historical and current hourly rates, and their time broken down into different categories of work.

145. Over the course of the Litigation, the hourly rates of Class Counsel here ranged from $800 to $1,375 per hour for partners, $725 to $975 per hour for of counsels, $275 to $600 for associates, $420 to $455 for staff attorneys, and $200 to $415 for paralegals. *See* Ex. 3-B. These hourly rates are reasonable for this type of complex litigation. Exhibit 4, attached hereto, is a table of hourly rates for defense firms compiled by Class Counsel from fee applications submitted by such firms nationwide in bankruptcy proceedings in 2024. The analysis shows that across all types of attorneys, Class Counsel's hourly rates here are consistent with, or lower than, the firms surveyed.

146. In total, Class Counsel has expended 18,379 hours on the investigation, prosecution, and resolution of the claims against Defendants representing a total lodestar of $10,173,968.50 (current rates) and $9,390,860.00 (historical rates).[10] Thus, pursuant to a lodestar "cross-check," Class Counsel's fee request of 30% of the Settlement Fund (or $8,250,000, plus interest), if awarded, would yield a *negative* multiplier of approximately 0.81 to 0.88 on its lodestar, which is below the range of fee multipliers typically awarded in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere. *See* Fee and Expense Memorandum, §I.E.

### 5. Class Representative's Endorsement of the Fee Application

147. Class Representative has closely monitored and actively participated in the prosecution and settlement of the Action and has evaluated and fully supports Class Counsel's fee request. As set forth in her declaration (Ex. 6), Class Representative has concluded that the requested fee has been earned based on the efforts of Plaintiffs' Counsel and the excellent recovery obtained for the Class in a difficult and challenging case. Accordingly, Class Representative's endorsement of the fee request further demonstrates its reasonableness, and this endorsement should be given meaningful weight in the Court's consideration of the fee award.

### B. Class Counsel's Request for Litigation Expenses Warrants Approval

#### 1. Class Counsel Seeks Payment of Reasonable and Necessary Litigation Expenses from the Settlement Fund

148. Class Counsel seeks payment from the Settlement Fund of $1,677,604.36 for expenses that were reasonably and necessarily incurred in connection with the Action. The Settlement Postcard and long-form notice inform

---

[10] Plaintiffs' Counsel will continue to perform legal work on behalf of the Class should the Court approve the Settlement. Additional resources will be expended assisting Class Members with their Claim Forms and related inquiries and working with the Claims Administrator to ensure the smooth progression of claims processing. No additional legal fees will be sought for this work.

the Class that Class Counsel would be applying for payment of Litigation Expenses in an amount not to exceed $1,750,000, which may include a request for reimbursement of the reasonable costs and expenses (including lost wages) incurred by Class Representative directly related to her representation of the Class in accordance with 15 U.S.C. § 77z-1(a)(4). The amount of Litigation Expenses requested by Class Counsel, along with the amount requested by Class Representative, is below the maximum set forth in the notices.

149.    Class Counsel's expenses are detailed in the Labaton Fee and Expense Declaration. *See* Exhibit 3-E. As explained, the expenses incurred are reflected on the books and records maintained by the firm. These books and records are prepared from expense vouchers, check records, and other source materials, and are an accurate record of the expenses incurred. Pursuant to the Court's Standing Order, Exhibit E will be emailed to the Court in Excel format.

150.    From the inception of the Action, Class Counsel was aware that Plaintiffs' Counsel might not recover any of the expenses incurred in prosecuting the claims against Defendants and, at a minimum, would not recover any expenses until the Action was successfully resolved. Class Counsel also understood that, even if the Action was ultimately successful, an award of expenses would not compensate counsel for the lost use or opportunity costs of funds advanced to prosecute the claims against Defendants. Thus, we were motivated to take steps to manage expenses without jeopardizing the vigorous and efficient prosecution of the case.

151.    Class Counsel's expenses include fees and costs for, among other things: (i) experts in connection with various stages of the litigation; (ii) mediation; (iii) litigation support related to electronic discovery; (iv) transcript and deposition-related expenses; (v) work-related travel; and (vi) online factual and legal research. Courts have consistently found that these types of expenses are payable from a fund recovered by counsel for the benefit of a class.

152. The largest component of Class Counsel's expenses (*i.e.*, $1,214,460.00, or approximately 72% of total expenses) was incurred for experts. As noted above, Class Counsel retained experts to provide merits expert reports and opinion on issues related to the elements of the Class Representative's claims (damages and tracing) and Defendants' purported defenses (negative causation, falsity and due diligence). These experts were essential to the prosecution of the Action. *See* Ex. 3 at ¶7(c)-E.

153. Another substantial component of the expenses ($178,160.62 or 11% of the total) was for document hosting and management related to electronic discovery. Among other things, Class Counsel retained a third-party vendor to process and host the production documents. *See* Ex. 3 at ¶7(e)-E. Plaintiffs' Counsel used this vendor and database to, among other things: (i) maintain potentially relevant documents collected from Class Representative for review and production in response to Defendants' discovery demands, (ii) maintain the approximately 700,000 pages of documents produced by Defendants and third parties for review; (iii) process documents so that they would be in a searchable format, including the conversion and upload of any hard copy documents; and (iv) apply data analysis tools to focus the review on the most significant documents to efficiently target information counsel needed to support their allegations.

154. Another substantial component of counsel's Litigation Expenses ($114,199.00 or 7% of the total) was the cost of court reporters, videographers, and transcripts in connection with the 21 depositions and the hearings before the Court. Ex. 3 at ¶7(g)-E.

155. Class Representative's share of the fees of the Mediator in connection with the mediation process that spanned more than a year totaled $73,560.00 or 4% of the total. Ex. 3 at ¶7(f)-E.

156. Class Counsel also retained counsel for a confidential witness in the case who was deposed by Defendants, whose fees and expenses totaled $6,835.00.

157.    The Litigation Expenses include approximately $22,368.78 for work-related transportation expenses, meals, and lodging related to, among other things, traveling in connection with court hearings, the depositions, working late hours, and the mediations. (Any first-class airfare has been reduced to be comparable to economy rates.)  Ex. 3 at ¶7(h)-E.

158.    The other expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in complex commercial litigation and routinely paid in non-contingent cases. These expenses include, among others, online legal and factual research, court and service fees, duplicating costs, and overnight delivery expenses. All of the Litigation Expenses incurred by Plaintiffs' Counsel were reasonable and necessary for the successful litigation of the Action.

**2.    PSLRA Reimbursement to Class Representative Is Fair and Reasonable**

159.    The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 77z-1(a)(4). Accordingly, Class Representative seeks reimbursement of $7,425.00 for the reasonable costs she incurred in connection with her efforts on behalf of the Class. Class Representative was deposed and engaged in discovery. She was in regular contact with counsel, reviewed court filings and submitted declarations in support of motions, consulted with counsel during the course of the lengthy mediation process and approved of the Settlement. *See* Ex. 6 at ¶¶2-5. Class Representative's efforts required her to devote time and resources to this Action that would otherwise have been devoted to her regular professional endeavors as an escrow officer.

160.    As discussed in the Fee and Expense Memorandum and in Class Representative's supporting declaration, Class Representative has been fully committed to pursuing the Class's claims. Class Representative provided valuable

assistance to Plaintiffs' Counsel during the prosecution and resolution of the Action. The efforts expended by Class Representative during the course of this Action, as set forth in her declaration, including communicating with counsel, reviewing pleadings and motion papers, gathering and reviewing documents in response to discovery requests, responding to written interrogatories, responding to requests for admissions, preparing for depositions and being deposed, and communicating with counsel regarding the mediations and settlement negotiations are precisely the types of activities courts have found to support reimbursement to representatives, and fully support the request for reimbursement here.

## X.    MISCELLANEOUS EXHIBITS

161.    Attached hereto as Exhibit 5 is a compendium of unreported cases, in alphabetical order, cited in the accompanying Fee and Expense Memorandum.

## XI.    CONCLUSION

162.    For all the reasons set forth above, Class Counsel respectfully submits that the Settlement and the Plan of Allocation should be approved as fair, reasonable, and adequate.  Class Counsel further submits that the requested fee in the amount of 30% of the Settlement Fund should be approved as fair and reasonable under the particular circumstances of this case, and the request for payment of Litigation Expenses in the amount of $1,677,604.36, and reimbursement of Class Representative's costs in the amount of $7,425.00, should also be approved.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed in New York, New York this 23rd day of June 2025.

*/s/ Alfred L. Fatale*

ALFRED L. FATALE III

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*s/ Alfred L. Fatale III*
ALFRED L. FATALE III

**Mailing Information for a Case 2:21-cv-07405-MCS-AS Cody Dixon v. The Honest Company, Inc. et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive email notices for this case.

- Zeeshan A. Ahmedani
  zeeshan.ahmedani@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,courtalert@shearman.com,rcheatham@shearman.com,manattyoffice@shearman.com,an.ahmedani@aosherman.com

- Rachel A Berger
  rberger@labaton.com

- Ryan E Blair
  rblair@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,chourani@cooley.com

- Thilini Chandrasekera
  tchandrasekera@cooley.com,eFilingNotice@cooley.com,smartinez@cooley.com,efiling-notice@ecf.pacerpro.com

- Joseph Cotilletta
  jcotilletta@labaton.com,6904786420@filings.docketbird.com

- Xiaoyu Ding
  christine.ding@aoshearman.com

- Alfred L. Fatale , III
  afatale@labaton.com,8305947420@filings.docketbird.com,cfrasca@labaton.com,electroniccasefiling@labaton.com

- Koji F Fukumura
  kfukumura@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,chourani@cooley.com

- Jonathan Gardner
  jgardner@labaton.com,lpina@labaton.com,afatale@labaton.com,4027988420@filings.docketbird.com,cfrasca@labaton.com,electroniccasefiling@labaton.com

- Patrick T. Hein
  patrick.hein@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,courtalert@shearman.com,rcheatham@shearman.com,manattyoffice@shearman.com

- Robert A Horowitz
  horowitzr@gtlaw.com,gtcourtalert@gtlaw.com

- Beth C. Khinchuk
  bkhinchuk@labaton.com

- Daniel H R Laguardia
  daniel.laguardia@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,CourtAlert@Shearman.com,Ron.Cheatham@aoshearman.com,manattyoffice@shearman.com

- Grace J Lee
  grace.lee@aoshearman.com

- Daniel Craig Lewis
  daniel.lewis@aoshearman.com,managing-attorney-5081@ecf.pacerpro.com,CourtAlert@Shearman.com,rcheatham@shearman.com,manattyoffice@shearman.com

- Charles Henry Linehan
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- Alexander L Linhardt
  linhardta@gtlaw.com,alexander-linhardt-0600@ecf.pacerpro.com,gutierrezd@gtlaw.com

- Wesley A. Mann
  wmann@labaton.com,1422309420@filings.docketbird.com,ElectronicCaseFiling@labaton.com

- Francis P. McConville
  fmcconville@labaton.com,HChang@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- Caitlin Bridget Munley
  cmunley@cooley.com,efiling-notice@ecf.pacerpro.com,hector-gonzalez-3380@ecf.pacerpro.com

- Nicholas Reddick Orr
  norr@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,jerry.gonzalez@cooley.com

- Jennifer Pafiti
  jpafiti@pomlaw.com,ahood@pomlaw.com,tsayre@pomlaw.com,egoodman@pomlaw.com,tprzybylowski@pomlaw.com,jlopiano@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,mtjohnston@pomlaw.com,jalieberman@pomlaw.com,abarbosa@pomlaw.com

- Robert Vincent Prongay
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- Pavithra Rajesh
  prajesh@glancylaw.com,info@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- Laurence M. Rosen
  lrosen@rosenlegal.com,lrosen@ecf.courtdrive.com

- Robert S. Rowley
  rrowley@labaton.com

- Brian J. Schall
  brian@schallfirm.com,rina@schallfirm.com

- David J. Schwartz
  dschwartz@labaton.com

- Elizabeth J Stewart
  elizabeth.stewart@shearman.com

- Lisa Marie Strejlau
  lstrejlau@labaton.com,2852082420@filings.docketbird.com,electroniccasef iling@labaton.com

- Daniel J Tyukody , Jr
  tyukodyd@gtlaw.com,daniel-tyukody-2461@ecf.pacerpro.com,phieferd@gtlaw.com

- Elizabeth L Walk
  lwalk@cooley.com

- Jonathan Widjaja
  jonathan.widjaja@gtlaw.com,jonathan-widjaja-8912@ecf.pacerpro.com,jackie.wernick@gtlaw.com

- Charles Wood
  cwood@labaton.com,7807213420@filings.docketbird.com

- Elizabeth M. Wright
  ewright@cooley.com

- Nicole M Zeiss
  NZeiss@labaton.com,5854006420@filings.docketbird.com,ElectronicCase Filing@labaton.com,Settlementquestions@labaton.com,cboria@labaton.com,ERosenberg@labaton.com