# Exhibit 1



**2024 REVIEW & ANALYSIS**

# Securities Class Action Settlements

REVIEW & ANALYSIS

## CORNERSTONE RESEARCH
Economic and Financial Consulting and Expert Testimony

# Table of Contents

| | |
|---|---|
| 2024 Highlights | 1 |
| Author Commentary | 2 |
|     Findings | 2 |
|     Looking Ahead | 2 |
| Total Settlement Dollars | 3 |
| Settlement Size | 4 |
| Introduction of Plaintiff-Style Damages | 5 |
| Type of Claim | 6 |
|     Rule 10b-5 Claims and Plaintiff-Style Damages | 6 |
|     '33 Act Claims and Statutory Damages | 8 |
| Analysis of Settlement Characteristics | 10 |
|     GAAP Violations | 10 |
|     Derivative Actions | 11 |
|     Institutional Investors | 12 |
| Time to Settlement and Case Complexity | 13 |
| Case Stage at the Time of Settlement | 14 |
| Cornerstone Research's Settlement Analysis | 15 |
|     Determinants of Settlement Outcomes | 15 |
| Research Sample | 16 |
| Endnotes | 17 |
| Appendices | 19 |
| About the Authors | 22 |

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Figures and Appendices

Figure 1: Settlement Statistics                                                                    1

Figure 2: Total Settlement Dollars                                                                 3

Figure 3: Distribution of Settlements Amounts                                                      4

Figure 4: Median and Average Plaintiff-Style Damages in Rule 10b-5 Cases                           6

Figure 5: Median Settlement as a Percentage of Plaintiff-Style Damages by Damages Ranges in Rule 10b-5 Cases                                                                                    7

Figure 6: Settlements by Nature of Claims                                                          8

Figure 7: Median Settlement as a Percentage of Statutory Damages by Damages Ranges in Cases with Only '33 Act Claims                                                                             9

Figure 8: Jurisdictions of Settlements of '33 Act Claim Cases                                      9

Figure 9: Percentage of Cases Involving Accounting Allegations                                    10

Figure 10: Number of Settlements with an Accompanying Derivative Action                           11

Figure 11: Median Settlement Amount by Institutional Investor Participation as Lead or Co-Lead Plaintiff                                                                                       12

Figure 12: Median Statistics by Institutional Investor Participation as Lead or Co-Lead Plaintiff  12

Figure 13: Median Settlement Amount by Duration from Filing Date to Settlement Hearing Date       13

Figure 14: Median Settlement Dollars and Stage of Litigation at Time of Settlement                14

Figure 15: 2024 Median Statistics for Cases Settled Prior to and After a Filing for MCC           14

Appendix 1: Settlement Percentiles                                                                19

Appendix 2: Settlements by Select Industry Sectors                                                19

Appendix 3: Settlements by Federal Circuit Court                                                  20

Appendix 4: Mega Settlements                                                                       20

Appendix 5: Median and Average Settlements as a Percentage of Plaintiff-Style Damages             21

Appendix 6: Median and Average Settlements as a Percentage of Statutory Damages                   21

CORNERSTONE RESEARCH REVIEW & ANALYSIS



# 2024 Highlights

The median settlement amount declined from the 13-year high in 2023, but remained 24% above the 2015–2023 median. Median plaintiff-style damages[1] also fell in 2024, despite reaching the third-highest level in the past decade.

In 2024, there were 88 securities class action settlements totaling approximately $3.7 billion, compared to 83 settlements totaling $4.0 billion in 2023.

The median settlement amount of $14.0 million declined 10% from 2023.

The average settlement amount of $42.4 million decreased 13% from 2023.

Seven mega settlements ($100 million or greater) accounted for 54% of the total settlement value.

The median settlement amount for cases with only Securities Act of 1933 ('33 Act) claims was $10.3 million, a 26% decrease from 2023.

Median plaintiff-style damages declined 20% year-over-year to $272 million following a record high in 2023.[2]

Issuer defendant firms with settlements in 2024 were 65% smaller than those in 2023, as measured by median total assets, which reached its lowest level since 2018.

The median duration from case filing to settlement hearing (3.2 years) declined 14% from the record peak observed in 2023 (3.7 years), but remains historically elevated.

In 2024, 19% of settlements were related to a special purpose acquisition company (SPAC).[3] The median settlement amount for SPAC cases was $12.0 million, compared to $15.3 million for non-SPAC cases.

**Figure 1: Settlement Statistics**
(Dollars in millions)

| | 2015–2023 | 2023 | 2024 |
|---|---|---|---|
| **Number of Settlements** | 736 | 83 | 88 |
| **Total Amount** | $37,294.2 | $4,043.2 | $3,732.9 |
| **Minimum** | $0.4 | $0.8 | $0.6 |
| **Median** | $11.3 | $15.4 | $14.0 |
| **Average** | $50.7 | $48.7 | $42.4 |
| **Maximum** | $3,748.3 | $1,029.5 | $490.0 |

Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented.

# Author Commentary

CORNERSTONE RESEARCH REVIEW & ANALYSIS

## FINDINGS

Settlements in securities class actions continued at a pace typical of recent years. While both total settlement dollars and the median settlement amount declined from 2023, they remained at high levels compared to the past decade.

This decline in settlement sizes can largely be attributed to lower plaintiff-style damages—a proxy for the amount of potential investor losses that plaintiffs may claim in a securities class action, which our research finds to be the single most important factor in explaining individual settlement amounts.

Institutional investors served as lead plaintiff less frequently in 2024 settlements, with their involvement reaching the lowest level over the last 10 years. An institutional investor serving as lead or co-lead plaintiff has historically been associated with cases with larger settlements and higher plaintiff-style damages. Lower institutional investor involvement is consistent with lower median plaintiff-style damages.

Issuer defendants had significantly smaller median total assets than in 2023, marking the lowest level observed since 2018. Additionally, a greater percentage of 2024 settlements involved issuers that had been delisted from a major exchange and/or had declared bankruptcy. Issuer

**IN THEIR WORDS**

**Eric Tam,** Principal at Cornerstone Research

*"Median settlement amount and plaintiff-style damages declined from their highs observed in 2023, but remained at elevated levels relative to the past decade."*

**IN THEIR WORDS**

**Laarni T. Bulan,** Vice President at Cornerstone Research

*"What is interesting in 2024 is the high proportion of settled cases related to SPACs.  The median settlement for SPAC cases was 21% lower than the median for non-SPAC cases."*

defendant firm assets and issuer distress both have potential implications for the ability to fund a settlement, which is consistent with the smaller settlements in 2024.

This was also the first year in which a large number of settled cases were related to SPACs. SPAC cases tended to settle for smaller amounts compared to non-SPAC cases. Commentators have suggested that D&O insurance coverage for SPAC cases was likely limited,[4] which may have played a role in the lower SPAC-related settlement values.

## LOOKING AHEAD

Absent a change in dismissal rate, the number of settled cases in the coming years is not expected to change substantially given recent securities case filing trends. Further, the elevated levels in recent years of proxies for potential investor losses reported in Cornerstone Research's *Securities Class Action Filings—2024 Year in Review* suggest that settlement amounts could remain at relatively high levels. The large proportion of SPAC-related settlements will likely continue for a few years before tapering off.

# Total Settlement Dollars

In 2024, total settlement dollars declined by 8%, even as the number of settled cases increased from the prior year.

Fewer mega settlements ($100 million or greater) contributed to lower total settlement dollars. There were seven such settlements in 2024 down from nine in 2023. Additionally, the largest mega settlement was $490 million, compared to a $1 billion settlement in 2023.

**QUICK STAT**

## −8%

Change in total settlement dollars from 2023 to 2024

See Appendix 4 for an analysis of mega settlements.

**Figure 2: Total Settlement Dollars**
2015–2024
(Dollars in billions)



Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented. "N" refers to the number of settlements.

# Settlement Size

The median settlement amount in 2024 was $14 million, a 10% decline from the 13-year high observed in 2023.

The average settlement amount in 2024 was $42.4 million, a 13% decrease from 2023.

Issuers that have been delisted from a major exchange and/or declared bankruptcy prior to settlement are generally associated with lower settlement amounts. The proportion of settlements with such issuers increased from 6% in 2023 to 16% in 2024, contributing to the decline in settlement amounts.

Seventeen settlements were related to SPACs. In comparison, there were only six SPAC-related settlements in total between 2017 and 2023. The median and average settlement amounts for

**FAST FACT**

*Issuer defendant firms in 2024 settlements were 65% smaller, as measured by median total assets, than those in 2023, the lowest observed level since 2018.*

SPAC cases were $12.0 million and $16.7 million, respectively—21% and 66% smaller than the median and average settlement amounts, respectively, for non-SPAC cases.

See Appendix 1 for an analysis of settlement amounts by percentiles.

**Figure 3: Distribution of Settlements Amounts**
2015–2024
(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented. Percentages may not sum to 100% due to rounding.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Introduction of Plaintiff–Style Damages

In this report, we introduce plaintiff-style damages—a new proxy for the amount of potential investor losses that plaintiffs may claim in a securities class action.

Our research has consistently found that the most important determinant of settlement outcomes is potential investor losses. Plaintiff-style damages are estimated using an approach that more closely aligns with approaches used by plaintiffs in the current securities class action litigation environment.

In the past, we presented "simplified tiered damages" as a measure of potential investor losses. That approach reflected certain data limitations but allowed for consistency across a large volume of cases, enabling the identification and analysis of settlement trends. Cornerstone Research's latest investments in big data analytics and capabilities have enhanced the estimation of potential investor losses by incorporating additional case-specific data while maintaining a consistent approach across cases. For example, when estimating the number of shares eligible for damages, the new plaintiff-style damages approach adjusts for short interest positions and shares estimated to be held by institutional investors throughout the entire class period. These and other adjustments result in plaintiff-style damages that tend to be smaller than the previously used measure of simplified tiered damages.

> *Cornerstone Research's latest investments in big data analytics and capabilities have enhanced the estimation of potential investor losses by incorporating additional case–specific data while maintaining a consistent approach across cases.*

Our analysis also finds that plaintiff-style damages are generally larger than the aggregate damages amounts reported by plaintiffs in their motions for settlement approval, referred to as "plaintiff-estimated damages." As previously discussed in Cornerstone Research's *Securities Class Action Settlements—2023 Review and Analysis*, plaintiff-estimated damages are often represented by plaintiffs as the "best-case scenario" or the "maximum potential recovery."[5] As other authors have noted, plaintiff counsel have an incentive to report "the lower end of the range of estimated total aggregate damages" in order "to demonstrate to the court a high settlement amount relative to potential recovery."[6]

# Type of Claim

## RULE 10B-5 CLAIMS AND PLAINTIFF-STYLE DAMAGES

Cornerstone Research's analysis finds a proxy for investor losses—in this case plaintiff-style damages—to be the most important determinant of settlement outcomes based on regression analysis.[7] However, plaintiff-style damages do not represent actual economic losses borne by shareholders. Determining any such economic losses for a given case requires more in-depth analysis.

**QUICK STAT**

## −36%

Change in median length of the class period for settled cases from 2023 to 2024

Median and average plaintiff-style damages both declined in 2024, but remained at similarly elevated levels as observed in recent years.

All else equal, larger plaintiff-style damages are generally associated with longer class periods. Consistent with the lower levels of plaintiff-style damages observed in 2024, the median length of the class period for settled cases in 2024 was 1.2 years, compared to 1.9 years in 2023.

**Figure 4: Median and Average Plaintiff-Style Damages in Rule 10b-5 Cases**
2015–2024
(Dollars in millions)



Note: Plaintiff-style damages are adjusted for inflation based on class period end dates and are estimated for common stock/ADR/ADS only; 2024 dollar equivalent figures are presented. Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims).

Type of Claim (continued)

In 2024, the overall median settlement as a percentage of plaintiff-style damages was 7.3% — an increase of 16% from 2023, but equaling the 2015–2023 median.

For cases with plaintiff-style damages less than $25 million, the median settlement as a percentage of plaintiff-style damages reached 28.2%, the highest level observed since 2017.

See Appendix 5 for additional information on median and average settlements as a percentage of plaintiff-style damages.

**FAST FACT**

*Larger cases, as measured by plaintiff–style damages, typically settle for a smaller percentage of those damages.*

**Figure 5: Median Settlement as a Percentage of Plaintiff-Style Damages by Damages Ranges in Rule 10b-5 Cases**
2015–2024
(Dollars in millions)



Note: Plaintiff-style damages are adjusted for inflation based on class period end dates and are estimated for common stock/ADR/ADS only; 2024 dollar equivalent figures are presented. Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims).

Type of Claim (continued)

## '33 ACT CLAIMS AND STATUTORY DAMAGES

For cases with only '33 Act claims— those involving Section 11 and/or Section 12(a)(2) claims and no Rule 10b-5 claims—potential shareholder losses (referred to here as "statutory damages") are estimated based on the difference between the statutory purchase and sales prices for those shares that are assumed to be traceable to the registration statement at issue.[8]

There were nine settlements with only '33 Act claims in 2024. The majority of those cases were filed in federal court (six), with the remainder in state court (three).[9]

**QUICK STATS**

**9**

Number of '33 Act settlements in 2024

**$10.3 million**

The median settlement for cases with only '33 Act claims in 2024

In 2024, the median settlement amount for '33 Act–only cases declined by 26% from 2023 to $10.3 million, aligning with the 2015–2023 median.

Additionally, 89% of these cases in 2024 named an underwriter defendant, up from 70% in 2023 and consistent with the 2015–2023 average of 86%.

**Figure 6: Settlements by Nature of Claims**
2015–2024
(Dollars in millions)

|  | Number of Settlements | Median Settlement | Median Statutory Damages | Median Settlement as a Percentage of Statutory Damages |
|---|---|---|---|---|
| **Section 11 and/or Section 12(a)(2) Only** | 93 | $10.3 | $129.9 | 7.9% |

|  | Number of Settlements | Median Settlement | Median Plaintiff-Style Damages | Median Settlement as a Percentage of Plaintiff-Style Damages |
|---|---|---|---|---|
| **Both Rule 10b-5 and Section 11 and/or Section 12(a)(2)** | 128 | $16.2 | $262.8 | 8.8% |
| **Rule 10b-5 Only** | 602 | $11.3 | $216.6 | 6.9% |

Note: Settlement dollars and damages are adjusted for inflation; 2024 dollar equivalent figures are presented.

Type of Claim (continued)

The median statutory damages in 2024 decreased by 14% from the 2023 median, but remained the second-highest in the past decade.

The median settlement as a percentage of "statutory damages" increased to 7.1% from the 10-year low of 5.4% in 2023.

The median size of issuer defendants (measured by total assets) was 26% larger for settlements with only '33 Act claims relative to those that included Rule 10b-5 claims, reversing a two-year trend in which these cases involved smaller issuer defendants.

The median length of time from case filing to settlement hearing date for '33 Act claim cases was 3.7 years in 2024, down from 4.2 years in 2023.

**QUICK STATS**

## 7.1%
Median settlement as a percentage of statutory damages in 2024

## 3.7 years
The median time to settle for 2024 cases with only '33 Act claims

See Appendix 6 for additional information on median and average settlements as a percentage of statutory damages.

**Figure 7: Median Settlement as a Percentage of Statutory Damages by Damages Ranges in Cases with Only '33 Act Claims**
2015–2024
(Dollars in millions)



| | < $50 N=19 | $50–$149 N=31 | >= $150 N=43 | Total Sample N=93 |
| --- | --- | --- | --- | --- |
| | 19.5% | 10.2% | 5.7% | 7.9% |

Note: "N" refers to the number of cases. Damages are adjusted for inflation; 2024 dollar equivalent figures are presented. This analysis excludes cases alleging Rule 10b-5 claims.

**Figure 8: Jurisdictions of Settlements of '33 Act Claim Cases**

| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| **State Court** | 2 | 4 | 5 | 4 | 4 | 7 | 6 | 6 | 3 | 3 |
| **Federal Court** | 3 | 6 | 3 | 4 | 5 | 1 | 12 | 3 | 7 | 6 |

Note: This analysis excludes cases alleging Rule 10b-5 claims.

# Analysis of Settlement Characteristics

## GAAP VIOLATIONS

This analysis examines allegations of GAAP violations in settlements of securities class actions involving Rule 10b-5 claims, including two subcategories of GAAP violations—financial restatements and accounting irregularities.[10]

The percentages of settled cases involving GAAP violations generally and financial restatements specifically have declined substantially in the past five years (2020–2024) compared to the first half of the last decade (2015–2019).

Between 2015 and 2024, the median settlement amount for cases involving accounting irregularities was $33 million, significantly higher than the $12 million median for cases without such allegations.

Similarly, the median settlement as a percentage of plaintiff-style damages was higher in cases involving accounting irregularities (8.6%) than in those without (7.2%).

For further details regarding settlements of accounting cases, see Cornerstone Research's forthcoming annual report on *Accounting Class Action Filings and Settlements*.[11]

**Figure 9: Percentage of Cases Involving Accounting Allegations**

|  | 2015–2019 | 2020–2024 |
|---|---|---|
| **GAAP Violations** | 53% | 38% |
| **Restatement** | 26% | 14% |
| **Accounting Irregularities** | 3% | 2% |
| **Auditor Codefendant** | 9% | 3% |

Note: This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

## DERIVATIVE ACTIONS

Securities class actions often involve an accompanying (or parallel) derivative action with similar claims, and such cases have historically settled for higher amounts than securities class actions without an accompanying derivative matter.[12]

In 2024, the median plaintiff-style damages for cases with an accompanying derivative action was $333 million—47% higher than the $227 million median for cases without one, marking the largest percentage difference since 2020.

The percentage of settlements with an accompanying derivative action in 2024 (52%) rebounded from 2023 (40%). The accompanying derivative actions were most frequently filed in the Delaware Court of Chancery, which accounted for 19 out of 46 such settlements in 2024.

In 2024, the median settlement for cases with an accompanying derivative action ($18.6 million) decreased by 14% from the 2023 median ($21.6 million).

### QUICK STATS

## 52%

Percentage of 2024 cases involving an accompanying derivative action

## $18.6 million

Median settlement for 2024 cases involving an accompanying derivative action

For more information on settlement outcomes of the accompanying derivative actions, see Cornerstone Research's *Parallel Derivative Action Settlement Outcomes*.[13]

**Figure 10: Number of Settlements with an Accompanying Derivative Action**
2015–2024



- Settlements without an Accompanying Derivative Action
- Settlements with an Accompanying Derivative Action

| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| Without | 35 | 49 | 41 | 38 | 34 | 35 | 50 | 58 | 50 | 42 |
| With | 37 | 35 | 37 | 40 | 40 | 41 | 36 | 47 | 33 | 46 |

CORNERSTONE RESEARCH REVIEW & ANALYSIS

## INSTITUTIONAL INVESTORS

As discussed in prior reports, increasing institutional investor participation as lead plaintiff in securities litigation was a focus of the Private Securities Litigation Reform Act of 1995 (Reform Act).[14] In the years following passage of the Reform Act, institutional investor involvement as lead plaintiff did increase, particularly in cases with higher plaintiff-style damages.

In 2024, however, only 39% of settlements involved an institutional investor serving as lead (or co-lead) plaintiff—the lowest rate since 2005. Of the 17 SPAC settlements in 2024, two included an institutional investor as a lead (or co-lead) plaintiff.

While fewer settlements had institutional investor participation as lead (or co-lead) plaintiff, the difference in median settlements for cases with and without such participation was $30 million—the largest dollar amount difference and the second-largest percentage gap since 2004.

**Figure 11: Median Settlement Amount by Institutional Investor Participation as Lead or Co-Lead Plaintiff**
2015–2024
(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented.

**Figure 12: Median Statistics by Institutional Investor Participation as Lead or Co-Lead Plaintiff**
2024
(Dollars in millions)

|  | With an Institutional Investor | Without an Institutional Investor |
|---|---|---|
| **Settlement Amount** | $37 | $7 |
| **Plaintiff-Style Damages** | $705 | $118 |
| **Settlement Amount as a % of Plaintiff-Style Damages** | 8.3% | 7.0% |
| **Total Assets** | $5,056 | $630 |

Note: Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims) and are adjusted for inflation based on class period end dates; 2024 dollar equivalent figures are presented.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Time to Settlement and Case Complexity

The median duration from case filing to settlement hearing (3.2 years) declined 14% from the record peak observed in 2023 (3.7 years).

Despite the decline, the median time to settlement remains the third longest in the last decade. This finding is consistent with heightened case activity among 2024 settled cases, as measured by the number of docket entries—a proxy for the time and effort expended by the litigants and/or case complexity. In 2024, the median number of docket entries reached its highest level since 2010 (149).

**QUICK STATS**

## 3.2 years
2024 median time to settlement

## 149
Median number of docket entries for 2024 cases

**Figure 13: Median Settlement Amount by Duration from Filing Date to Settlement Hearing Date**
2015–2024
(Dollars in millions)



Note: "N" refers to the number of cases. Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented.

# Case Stage at the Time of Settlement

Using data obtained through collaboration with Stanford Securities Litigation Analytics (SSLA), this report analyzes settlements in relation to the stage in the litigation process at the time of settlement.

Cases with larger issuer defendant total assets and plaintiff-style damages tend to settle later in the litigation process.

For example, median issuer defendant total assets and median plaintiff-style damages for cases that settled in 2024 after the filing of a motion for class certification were substantially larger than for cases that settled prior to such a motion being filed.

In 2024, only two cases settled prior to the filing of a motion to dismiss, well below the 2015–2023 average of over seven cases per year.

**Figure 14: Median Settlement Dollars and Stage of Litigation at Time of Settlement**
2015–2024
(Dollars in millions)



Note: "N" refers to the number of cases. Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented. MTD refers to "motion to dismiss," MCC refers to "motion for class certification," and MSJ refers to "motion for summary judgment." This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

**Figure 15: 2024 Median Statistics for Cases Settled Prior to and After a Filing for MCC**
(Dollars in millions)

|  | Settled Prior to MCC Filed | Settled After MCC Filed |
|---|---|---|
| **Settlement Amount** | $7 | $29 |
| **Plaintiff-Style Damages** | $118 | $567 |
| **Settlement Amount as a % of Plaintiff-Style Damages** | 8.2% | 6.1% |
| **Total Assets** | $506 | $1,864 |

Note: MCC refers to "motion for class certification." Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims) and are adjusted for inflation based on class period end dates; 2024 dollar equivalent figures are presented.

# Cornerstone Research's Settlement Analysis

This research examines the relationship between settlement outcomes and certain securities case characteristics. Regression analysis is employed to better understand the factors that inform case settlements given the characteristics of a particular securities class action.

## DETERMINANTS OF SETTLEMENT OUTCOMES

Based on regression analysis, important determinants of settlement amounts include the following:

- Plaintiff-style damages
- The most recently reported total assets prior to the settlement hearing date for the defendant issuer
- Whether there were accounting irregularities
- Whether there were criminal charges against the issuer, officers, directors, or other defendants with allegations similar to those included in the underlying class action complaint
- Whether there was a derivative action with allegations similar to those included in the underlying class action complaint

- Whether, in addition to Rule 10b-5 claims, Section 11 claims were alleged and were still active prior to settlement
- Whether the issuer has been delisted from a major exchange and/or has declared bankruptcy (i.e., whether the issuer was "distressed")
- Whether an institutional investor acted as lead plaintiff
- Whether securities other than common stock/ADR/ADS were included in the alleged class

Cornerstone Research analyses show that, all else being equal, settlement amounts tended to be higher in cases involving larger plaintiff-style damages, greater issuer defendant total assets, or cases in which Section 11 claims were alleged in addition to Rule 10b-5 claims.

Settlement amounts also tended to be higher in cases that involved accounting irregularities, criminal charges, an accompanying derivative action, an institutional investor lead plaintiff, or securities in addition to common stock/ADR/ADS included in the alleged class.

Settlement amounts tended to be lower if the issuer was distressed.

Collectively, the factors above explain more than 75% of the variation in settlement outcomes.

# Research Sample

The database compiled for this report is limited to cases alleging Rule 10b-5, Section 11, and/or Section 12(a)(2) claims brought by purchasers of a corporation's common stock. The sample contains only cases alleging fraudulent inflation in the price of a corporation's common stock.

Cases with alleged classes of only bondholders, preferred stockholders, etc.; cases alleging fraudulent depression in price; and mergers and acquisitions cases are excluded. These criteria are imposed to ensure data availability and to utilize a relatively homogeneous set of cases in terms of the nature of the allegations.

The database includes 2,270 securities class actions filed after passage of the Reform Act (1995) and settled from 1996 through 2024. These securities class actions correspond to approximately $148.5 billion in total settlement dollars, adjusted for inflation and expressed in 2024 dollars. These settlements are identified based on a review of case activity collected by Securities Class Action Services LLC (SCAS).[15]

The designated settlement year, for purposes of this report, corresponds to the year in which the hearing to approve the settlement was held.[16] Cases involving multiple settlements are reflected in the year of the most recent partial settlement, provided certain conditions are met.[17]

In addition to SCAS, data sources include Bloomberg, the Center for Research in Security Prices (CRSP) at University of Chicago Booth School of Business, LSEG Workspace, court filings and dockets, SEC registrant filings, SEC litigation releases and administrative proceedings, LexisNexis, Stanford Securities Litigation Analytics (SSLA), Securities Class Action Clearinghouse (SCAC), and public press.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Endnotes

CORNERSTONE RESEARCH REVIEW & ANALYSIS

1    For purposes of our settlement research and modeling, we utilize a measure of potential investor losses that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends. This measure, "settlement model plaintiff-style damages" ("plaintiff-style damages" as referred to in this report), is estimated using a methodology that more closely aligns with approaches used by plaintiffs in the current securities class action litigation environment. See page 5 for more details.

2    Plaintiff-style damages are calculated for cases that settled in 2014 or later, and account for the U.S. Supreme Court's 2005 landmark decision in *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336. Plaintiff-style damages are based on the stock-price movements associated with the alleged disclosure dates that are described in the settlement plan of allocation.

3    A SPAC is a shell company that raises capital through an initial public offering to later acquire an existing business. SPAC cases are classified as those with a defendant issuer that was a SPAC during any portion of the class period or that had a de-SPAC transaction within 180 days prior to the start of the class period.

4    Kevin LaCroix, "Record-Setting Settlements in Two SPAC-Related Securities Suits," The D&O Diary, January 13, 2025, https://www.dandodiary.com/2025/01/articles/securities-litigation/record-setting-settlements-in-two-spac-related-securities-suits/.

5    *Securities Class Action Settlements 2023 Review and Analysis*, Cornerstone Research (2024).

6    Catherine J. Galley, Nicholas D. Yavorsky, Filipe Lacerda, and Chady Gemayel, *Approved Claims Rates in Securities Class Actions: Evidence from 2015–2018 Rule 10b-5 Settlements*, Cornerstone Research (2020). Data on "plaintiff-estimated damages" are made available to Cornerstone Research through collaboration with Stanford Securities Litigation Analytics (SSLA). SSLA tracks and collects data on private shareholder securities litigation and public enforcements brought by the U.S. Securities and Exchange Commission (SEC) and the U.S. Department of Justice (DOJ). The SSLA dataset includes all traditional class actions, SEC actions, and DOJ criminal actions filed since 2000. Available on a subscription basis at https://sla.law.stanford.edu/.

7    Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, *Estimating Damages in Settlement Outcome Modeling*, Cornerstone Research (2017).

8    In the past, we presented "simplified statutory damages" as a measure of potential investor losses for cases with Section 11 claims but no Rule 10b-5 claims. In this report, we introduce a new measure: "statutory damages." Statutory damages are estimated using an approach that more closely aligns with approaches used by plaintiffs in the current securities class action litigation environment. For example, when estimating the number of shares eligible for damages, the new statutory damages approach adjusts for short interest positions. Statutory damages are calculated using data through the settlement hearing date.

9    As noted in prior reports, the March 2018 U.S. Supreme Court decision in *Cyan Inc. v. Beaver County Employees Retirement Fund* (*Cyan*) held that '33 Act claim securities class actions could be brought in state court. While '33 Act claim cases had often been brought in state courts before *Cyan*, filing rates in state courts increased substantially following this ruling. This trend reversed, however, following the March 2020 Delaware Supreme Court decision in *Salzberg v. Sciabacucchi* which upheld the validity of federal forum-selection provisions in corporate charters. See, for example, *Securities Class Action Filings—2021 Year in Review*, Cornerstone Research (2022).

10   The two subcategories of accounting issues analyzed in this report are (1) restatements—cases involving a restatement (or announcement of a restatement) of financial statements, and (2) accounting irregularities—cases in which the defendant has reported the occurrence of accounting irregularities (intentional misstatements or omissions) in its financial statements.

11   *Accounting Class Action Filings and Settlements—2024 Review and Analysis*, Cornerstone Research, forthcoming in spring 2025.

12   To be considered an accompanying (or parallel) derivative action, the derivative action must have underlying allegations that are similar or related to the underlying allegations of the securities class action and either be active or settling at the same time as the securities class action.

13   *Parallel Derivative Action Settlement Outcomes—2023 Review and Analysis*, Cornerstone Research (2024).

14   See, for example, *Securities Class Action Settlements—2006 Review and Analysis*, Cornerstone Research (2007); Michael A. Perino, "Have Institutional Fiduciaries Improved Securities Class Actions? A Review of the Empirical Literature on the PSLRA's Lead Plaintiff Provision," St. John's Legal Studies Research Paper No. 12-0021 (2013).

Endnotes (continued)

CORNERSTONE RESEARCH REVIEW & ANALYSIS

15   Available on a subscription basis. For further details, see https://www.issgovernance.com/securities-class-action-services/.

16   Movements of partial settlements between years can cause differences in amounts reported for prior years from those presented in earlier reports.

17   This categorization is based on the timing of the settlement hearing date. If a new partial settlement equals or exceeds 50% of the then-current settlement fund amount, the entirety of the settlement amount is recategorized to reflect the settlement hearing date of the most recent partial settlement. If a subsequent partial settlement is less than 50% of the then-current total, the partial settlement is added to the total settlement amount and the settlement hearing date is left unchanged.

# Appendices

**Appendix 1: Settlement Percentiles**
(Dollars in millions)

| Year | Average | 10th | 25th | Median | 75th | 90th |
|---|---|---|---|---|---|---|
| 2015 | $54.2 | $1.8 | $2.8 | $8.9 | $22.2 | $131.0 |
| 2016 | $87.7 | $2.5 | $5.4 | $11.1 | $39.9 | $165.4 |
| 2017 | $24.1 | $1.9 | $3.4 | $7.3 | $20.2 | $47.6 |
| 2018 | $81.1 | $1.9 | $4.5 | $14.1 | $30.9 | $61.4 |
| 2019 | $34.6 | $1.8 | $6.9 | $13.5 | $24.5 | $61.4 |
| 2020 | $66.8 | $1.7 | $3.9 | $11.9 | $24.5 | $64.6 |
| 2021 | $23.9 | $2.0 | $3.6 | $9.1 | $20.9 | $68.6 |
| 2022 | $39.0 | $2.1 | $5.4 | $13.9 | $37.5 | $77.0 |
| 2023 | $48.7 | $3.1 | $5.1 | $15.4 | $34.2 | $104.0 |
| **2024** | **$42.4** | **$2.8** | **$4.5** | **$14.0** | **$36.6** | **$78.4** |

Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented.

**Appendix 2: Settlements by Select Industry Sectors**
2015–2024
(Dollars in millions)

| Industry | Number of Settlements | Median Settlement | Median Plaintiff-Style Damages | Median Settlement as a Percentage of Plaintiff-Style Damages |
|---|---|---|---|---|
| **Financial** | 90 | $19.6 | $267.2 | 8.8% |
| **Technology** | 111 | $12.0 | $299.7 | 6.2% |
| **Pharmaceuticals** | 125 | $9.8 | $161.5 | 6.4% |
| **Telecommunications** | 29 | $11.8 | $186.5 | 7.0% |
| **Retail** | 47 | $24.5 | $322.7 | 7.0% |
| **Healthcare** | 22 | $21.0 | $232.4 | 8.3% |

Note: Settlement dollars and plaintiff-style damages are adjusted for inflation; 2024 dollar equivalent figures are presented. This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

CORNERSTONE RESEARCH REVIEW & ANALYSIS

## Appendix 3: Settlements by Federal Circuit Court
### 2015–2024
(Dollars in millions)

| Circuit | Number of Settlements | Median Settlement | Median Settlement as a Percentage of Plaintiff-Style Damages |
|---|---|---|---|
| First | 22 | $19.3 | 6.2% |
| Second | 211 | $9.3 | 7.0% |
| Third | 87 | $8.1 | 7.4% |
| Fourth | 25 | $28.9 | 4.9% |
| Fifth | 40 | $12.7 | 5.6% |
| Sixth | 33 | $17.3 | 9.8% |
| Seventh | 38 | $19.6 | 6.2% |
| Eighth | 13 | $51.3 | 5.6% |
| Ninth | 198 | $10.0 | 7.5% |
| Tenth | 19 | $13.4 | 9.1% |
| Eleventh | 37 | $12.7 | 8.2% |
| DC | 4 | $28.7 | 4.8% |

Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented. This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

## Appendix 4: Mega Settlements
### 2015–2024

- Total Mega Settlement Dollars as a Percentage of All Settlement Dollars
- Number of Mega Settlements as a Percentage of All Settlements



Note: Mega settlements are defined as total settlement funds of $100 million or greater.

**Appendix 5: Median and Average Settlements as a Percentage of Plaintiff-Style Damages**
2015–2024



Note: Plaintiff-style damages are calculated for cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

**Appendix 6: Median and Average Settlements as a Percentage of Statutory Damages**
2015–2024



Note: Statutory damages are calculated for cases alleging Section 11 ('33 Act) claims and no Rule 10b-5 claims.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# About the Authors

**Laarni T. Bulan**
*Vice President, Cornerstone Research*

Laarni Bulan has over a decade of experience consulting on complex litigation involving economic and financial issues. Dr. Bulan specializes in securities, mergers and acquisitions and other corporate transactions, firm valuation, risk management, executive compensation, and corporate governance matters.

Dr. Bulan serves as co-head of the firm's corporate governance practice. She is a member of the Advisory Board of the Institute for Law and Economics, University of Pennsylvania Carey Law School.

Dr. Bulan has published numerous articles in peer-reviewed journals, including *Financial Management*, the *Journal of Banking and Finance*, the *Journal of Economics and Business*, and the *Journal of Urban Economics*. Her research covers dividend policy, capital structure, executive compensation, corporate governance, and real options. Prior to joining Cornerstone Research, Dr. Bulan held a joint appointment at Brandeis University, where she served as an assistant professor of finance in the International Business School and also in the economics department.

**Eric Tam**
*Principal, Cornerstone Research*

Eric Tam specializes in securities litigation. Mr. Tam has more than 20 years of experience consulting to clients and addressing financial economics issues and class actions in federal and state courts, including the Delaware Court of Chancery. His experience spans all stages of the litigation process, including exposure analysis, class certification, expert support, summary judgment filings, mediation and settlement analysis, trial preparation, and regulatory proceedings.

Mr. Tam has extensive expertise with securities litigation involving alleged misrepresentations under Section 10(b) of the Exchange Act and Sections 11 and 12 of the Securities Act. He also addresses allegations of market manipulation under Sections 9 and 10(b) of the Exchange Act and claims under Section 14(a) of the Exchange Act.

Mr. Tam has analyzed class certification issues (market efficiency, price impact, and evaluation of damages methodologies in the context of *Comcast* standards), as well as loss causation, damages, and materiality in numerous securities class actions.

The views expressed herein are solely those of the authors and do not necessarily represent the views of Cornerstone Research.

## CORNERSTONE RESEARCH
Economic and Financial Consulting and Expert Testimony

The authors request that you reference Cornerstone Research in any reprint of the information or figures included in this report.

Please direct any questions to:

**Laarni Bulan**
617-927-3093
LBulan@cornerstone.com

**Eric Tam**
650-470-7071
ETam@cornerstone.com

**Cornerstone Research**

Cornerstone Research provides economic and financial consulting and expert testimony in all phases of complex disputes and regulatory investigations. The firm works with an extensive network of prominent academics and industry practitioners to identify the best-qualified expert for each assignment. With a reputation for high quality and effectiveness, Cornerstone Research has consistently delivered rigorous, state-of-the-art analysis since 1989. The firm has more than 1,000 professionals in nine offices across the United States, UK, and EU.

www.cornerstone.com

© 2025 by Cornerstone Research

All rights reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc.
C and design is a registered trademark of Cornerstone Research, Inc.